Eugene P. Ramirez (State Bar No. 134865)
*eugene.ramirez@manningkass.com*
Andrea Kornblau (State Bar No. 291613)
*andrea.kornblau@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON

MANNING | KASS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

HENRY BARNHILL,

Plaintiff,

v.

CITY OF HEMET, OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; CATHERINE TIPTON; and DOES 1-10, inclusive,

Defendants.

**Case No. 5:23-cv-00589 JGB(SPx)**

[District Judge: Jesus G. Bernal
Magistrate Judge: Sheri Pym]

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

*Filed concurrently with Notice of Motion and Motion; Separate Statement of Uncontroverted Facts; Notice of Lodging; Index of Exhibits; Declaration of Andrea Kornblau; Declaration of Custodian of Records; and (Proposed) Order*

Date: February 9, 2026
Time: 9:00 a.m.
Crtrm.: 1 (2nd Floor)

*Action Filed: 04/12/2024*

MANNING | KASS

## I. INTRODUCTION

Plaintiff HENRY BARNHILL ("Plaintiff") alleges that individual defendant officers BRETT MAYNARD ("MAYNARD"); JOSHUA BISHOP ("BISHOP"); PEDRO AGUILA ("AGUILA"); and CORPORAL DOUGLAS KLINZING ("KLINZING") ("Defendant Officers") violated his Fourth and Fourteenth Amendment right to be free from excessive force. Plaintiff also argues for municipal liability against CITY OF HEMET ("CITY"), JAMIE GONZALEZ ("GONZALEZ"); and CATHERINE TIPTON ("TIPTON") for holding unconstitutional policies, customs, and practices, for ratifying the excessive force, and for failing to train defendant officers. In addition, Plaintiff alleges that Defendants battered him, were negligent, and violated California's Bane Act. None of these claims have merit.

The uncontroverted material facts demonstrate that Defendants did not violate Plaintiff's rights, that Defendant Officers are otherwise entitled to qualified immunity, and there exists no practice, policy, ratification, or training failure upon which municipal liability can be assigned to the remaining Defendants, namely CITY, GONZALEZ, or TIPTON.

Accordingly, Defendants request that the Court grant their request for summary judgment.

## II. STATEMENT OF FACTS

### A. 911 Call And Officer Arrival At The Elementary School

On April 29, 2022, 911 operators received a 911 call from a witness identified as Plaintiff's girlfriend who reported Plaintiff Henry Barnhill ("Plaintiff") had harmed her the previous night and held a gun to her face. (UF 1) Plaintiff's girlfriend reported that, unusually, Plaintiff drove her and her child to McSweeny Elementary School where he was waiting for her outside. (UF 2) Plaintiff's girlfriend reported that she feared for her life. (UF 3) Plaintiff's girlfriend identified that Plaintiff was driving a black Dodge Challenger that belonged to her and was parked on Chambers Avenue.

(UF 4) Plaintiff's girlfriend identified that Plaintiff was between forty-two (42) and forty-three (43) years old. (UF 5)

At approximately 7:36 a.m., Officer BRETT MAYNARD ("MAYNARD") responded to the dispatch call at the elementary school. (UF 6) MAYNARD immediately saw the sole black 2019 Dodge Challenger on the north side of Chambers Avenue (license plate 8RUU690). (UF 7) MAYNARD broadcasted the vehicle's license plate information. (UF 8) Officer JOSHUA BISHOP ("BISHOP") and PEDRO AGUILA ("AGUILA") arrived to the elementary school as well concurrently with MAYNARD. (UF 9) AGUILA and BISHOP attempted a traffic stop using their marked police vehicles with forward facing solid red lamps. (UF 10) Officers observed the vehicle start up and flee at a high rate of speed from them. (UF 11) MAYNARD broadcasted that the vehicle was "taking off." (UF 12) Officers believed that the driver fleeing was Plaintiff who, based on Plaintiff's girlfriend's statements, was suspected of assault warranting a felony traffic stop. (UF 13) MAYNARD identified Plaintiff's suspected actions towards his girlfriend as possible violations of California Penal codes 273.5(a), 245(a)(2), and 417(a)(2). (UF 14) MAYNARD, BISHOP, and AGUILA gave chase in their marked police vehicles, utilizing their red lamps and audible sirens for about 1.5 miles. (UF 15) While in pursuit, it was communicated to Defendant Officers that Plaintiff may be in possession of a firearm. (UF 16)

**B. Officers Follow Plaintiff to 354 Gardenia Circle and Detain Him**

After a few minutes, the chase concluded as Plaintiff stopped in front of 354 Gardenia Circle. (UF 17) Plaintiff got out of the Dodge Challenger and ran directly to the front porch of 354 Gardenia Circle. (UF 18) On that day, Plaintiff was over six (6) feet tall and around 220 pounds. (UF 19) MAYNARD observed that Plaintiff wore a large, dark hoodie. (UF 20) Officer MAYNARD and BISHOP observed that Plaintiff appeared to be reaching for the front portion of his waistband as he ran to and made it onto the porch. (UF 21) Defendant Officers understood it to be common for suspects





MK MANNING | KASS

to conceal firearms and weapons in their front waistband. (UF 22)

MAYNARD gave chase and told Plaintiff "show us your hands! Show us your f**king hands!" (UF 23) MAYNARD observed that Plaintiff lifted his hands but continued to run away. (UF 24) Plaintiff ran up the front porch to the front door and grabbed the handle. (UF 25) To prevent Plaintiff from barricading himself within the residence, MAYNARD took Plaintiff away from the door into a patio chair nearby. (UF 26) MAYNARD attempted to grab Plaintiff's right wrist but was initially unsuccessful. (UF 27) Plaintiff then kneed MAYNARD in the chest. (UF 28) MAYNARD, in response and now determinatively viewing Plaintiff as a threat, struck Plaintiff in the face to distract him. (UF 29) AGUILA made it up the porch and grabbed Plaintiff's left wrist. (UF 30) Together, MAYNARD and AGUILA struggled to move Plaintiff to the ground, commanding him to "get the fuck on the ground" several times. (UF 31) MAYNARD and AGUILA struggled to keep ahold of Plaintiff's wrists and hands but he continually struggled and managed to free himself from officers' grasp. (UF 32)

BISHOP arrived on the porch within moments and, viewing what looked like officers MAYNARD and AGUILA struggling to move Plaintiff to the ground, deployed a taser. (UF 33) BISHOP observed two probes make purchase near Plaintiff's abdomen area and another in the thigh area. (UF 34) The taser probes did not appear to Defendant Officers MAYNARD or BISHOP to have any effect or noticeable change on Plaintiff's behavior. (UF 35) Later, it was determined that the taser probes only breached Plaintiff's clothing but not his skin. (UF 36) MAYNARD felt Plaintiff push against his chest indicating he was still able to manipulate his arms in resistance. (UF 37)

MAYNARD tried to get Plaintiff's right hand behind his back but Plaintiff wrenched his arm out of MAYNARD's grip. (UF 38) MAYNARD and AGUILA managed to get Plaintiff into the ground on his butt and finally onto his stomach. (UF 39) However, Plaintiff was pulling his arms underneath himself. (UF 40) MAYNARD



MK MANNING | KASS

heard Plaintiff shout "I'm not refusing" and observed that Plaintiff continued to pull his hands away. (UF 41) Based on Plaintiff continuing to pull away, MAYNARD determined Plaintiff was still resisting his efforts to take Plaintiff into custody. (UF 42) BISHOP heard Plaintiff say "they're behind my back" which BISHOP understood to mean Plaintiff's hands were behind his back. (UF 43) However, BISHOP observed that Plaintiff's hands, particularly his right arm, was not under MAYNARD's control. (UF 44) BISHOP charged his taser but did not deploy it again. (UF 45) AGUILA got ahold of Plaintiff's left hand and placed it behind Plaintiff's back. (UF 46) MAYNARD struck Plaintiff once on the side of his face with a knee and Plaintiff's right arm came free from under him. (UF 47) BISHOP utilized the taser as an improvised blunt object to strike Plaintiff twice on the side of the head to subdue him. (UF 48) Seeing Plaintiff start to get up and pushing his head and body against officers, BISHOP grabbed Plaintiff's hoodie area and pushed Plaintiff's head down towards the ground and it slammed. (UF 49) Meanwhile, AGUILA struck Plaintiff several times around his right side ribs to get him to release his arm. (UF 50)

After these combined efforts, MAYNARD was able to secure Plaintiff's right arm behind his back. (UF 51) However, MAYNARD was unable to successfully secure Plaintiff into handcuffs. (UF 52) Officer KLINZING arrived and assisted MAYNARD and AGUILA in handcuffing Plaintiff's hands behind his back, making use of two sets of handcuffs. (UF 53)

### C. Plaintiff's Charges And Subsequent Convictions

Plaintiff was charged and detained for several counts of penal and vehicle code violations, including Penal Code Sections 148(A) for obstruction and resistance of officers, 30305(A)(1) for possession of ammunition, and 29800(A)(1) for possessing a firearm while being a felon. (UF 54) Plaintiff was charged with violations of Vehicle Code Sections 2800.2 for evading arrest. (UF 55) Plaintiff was later convicted of Penal Code Sections 148(A), 30305(A)(1), 29800(A)(1), and Vehicle Code Sections 2800.2 on August 2, 2023. (UF 56)



MK MANNING | KASS

**D. Plaintiffs' Operative Complaint and Testimony**

Plaintiff filed this lawsuit on April 4, 2023. (UF 57) Plaintiffs' First Claim for Relief is brought against individual officers under 42 U.S.C. § 1983 and is labeled Unreasonable Search and Seizure – Excessive Force. (UF 58) To support his First Claim, Plaintiff alleges that defendants were excessive in detaining him and violently tackled him, slammed his face and head into a brick wall, threw him to the ground, and beat on him. (UF 59) Additionally, Plaintiff alleges that defendant officers unnecessarily tased him at least twice and struck him with the taser. (UF 60) Plaintiff also alleges he sustained severe injuries including a blowout fracture to his orbital floor, an ear avulsion, and a large parieto-occipital hematoma. (UF 61) Plaintiff's medical records indicate that he completed surgeries for his injuries, namely his orbital fracture and ear by December 2022 and the listed complaints were marked resolved as of 4/21/2023. (UF 62)

Plaintiffs' Second Claim for Relief is brought against CITY, GONZALEZ, and TIPTON and 42 U.S.C. § 1983 (Municipal Liability – Unconstitutional Custom, Practice, or Policy). (UF 63) Plaintiff's Second Claim is based on several theories of unlawful policies and practices regarding excessive force, inadequate reporting and discipline, and a "blue wall of silence." (UF 64) Plaintiff also sets forth theories of failures to train, and supervise, and a practice of "allowing" unconstitutional behavior on the part of officers as identified, according to Plaintiff, in settlements wherein suspects in officer-involved shooting and K-9 cases. (UF 65) Plaintiff's Third Claim for Relief is brought against CITY, GONZALEZ, and TIPTON and 42 U.S.C. § 1983 (Municipal Liability – Failure to Train). (UF 66) Plaintiff alleges theories of failure to train defendant officers on proper use of physical force, detention of an automobile, detention of a person, and arrest of a person and reiterates case settlement as showcasing failed training. (UF 67) Plaintiff's Fourth Claim for Relief is brought against CITY, GONZALEZ, and TIPTON under 42 U.S.C. § 1983 (Municipal Liability – Ratification). (UF 68) Plaintiff reiterates the theories of failures to train



MK MANNING | KASS

and failure to "penalize" officers who perform actions which have given rise to settled lawsuits. (UF 69)

Plaintiffs' Fifth Claim for Relief is brought against all Defendants for Battery based on the same theories underlying Plaintiff's First Claim for Excessive Force. (UF 70) Plaintiffs' Sixth Claim for Relief is brought against all Defendants for Negligence based on the same theories that underly Plaintiff's First, Second, Third, and Fourth Claims. (UF 71) Plaintiff's Seventh Claim for Relief is brought against all Defendants for Violations of Cal. Civil Code § 52.1 (*Bane Act*) based on the same allegations underlying Plaintiff's First Claim. (UF 72) In discovery, Plaintiff fails to point to any definitive policy or practice, formalized or informal, implemented by CITY or HPD in support of his claims. (UF 73) At deposition, Plaintiff testified multiple times that his memory on April 29, 2022 and at time of being deposed was distorted. (UF 74) Plaintiff testified that he only remembered parts of April 29, 2022 and found it difficult to distinguish between his memories and false or created memories. (UF 75) Insofar as Plaintiff knows, he does not need any further surgeries or medications for his claimed injuries as a result of the encounter with police on April 29, 2022. (UF 76)

**E. HPD Policy and Defendant Officers' Backgrounds**

Incorporated into HPD's policy manual is a Use of Force policy effective at the time of Plaintiff's detention which accounts for all of the following: the proper use of force to effectuate arrests, determining reasonable force for several categories of suspects, and de-escalation and prevention techniques. (UF 77) Defendant Officers' training profiles from the police academy and with HPD include annual review of a vehicle pursuit policy, taser training, use of force training, arrest and control tactics, and critical legal issues regarding use of force. (UF 78) MAYNARD testified he has never had a sustained finding of excessive force. (UF 79) MAYNARD testified he has been named in one lawsuit which was closed. (UF 80) BISHOP testified he has never had a sustained finding of excessive force. (UF 81) BISHOP testified he has



MK MANNING | KASS

never been named in a lawsuit (UF 82) KLINZING testified he has never had a sustained finding of excessive force. (UF 83) In his 25 year tenure, KLINZING testified he was named in two lawsuits, one with LAPD where he was alleged to have used excessive force. (UF 84) In discovery, Plaintiff does not identify evidence or facts indicating that MAYNARD, BISHOP, AGUILA or KLINZING had sustained findings of excessive force against them. (UF 85) In discovery, Plaintiff does not identify evidence or facts indicating that MAYNARD, BISHOP, or AGUILA were named lawsuits wherein they were accused of using excessive force. (UF 86)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure (FRCP) Rule 56(a) permits a party to move for summary judgment on each claim, or a part of each claim. Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). If the nonmoving party fails to show a genuine issue of material fact, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catreett*, 477 U.S. 317, 323 (1986).

Rule 56(c) mandates judgment against a party who fails to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 323. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and…it should be interpreted in a way that allows it to accomplish this purpose. *Id.* at 323-324.

## IV. ARGUMENT

### A. Plaintiff's Force-Based First, Fifth, Sixth, and Seventh Claims for Relief Fail Against Defendant Officers as a Matter of Law

In the context of the Fourth Amendment, courts ask whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them. *Graham v. Connor*, 490 U.S. 386, 396 (1989). This standard is applied "from



MK MANNING | KASS

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 397. Moreover, "[t]he Constitution is not blind to the fact that police officers are often forced to make split-second judgments." *City and County. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775 (2015).

Courts have adopted *Graham* standards of reasonableness to inform the inquiry that should be applied to similarly situated battery, negligence, and Bane Act claims. *Archibald v. County. of San Bernardino*, 2018 U.S. Dist. LEXIS 171243, at *22 (C.D. Cal. Oct. 2, 2018); *See also Hayes v. County of San Diego*, 57 Cal. 4th 622, 637-39 (2013) (adopting Graham reasonableness standard for seizure-related negligence claims against officers); *Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334, 349-50 (1996) (holding that where officers used reasonable force under the Fourth Amendment standards, there could be no liability under comparable state-law torts); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272-73 (1998) (holding that the standard for reasonable force under state assault/battery law is the same as it is for federal excessive force cases).

For negligence, a plaintiff cannot maintain a claim for negligence when it is determined that the Defendant Officers' use of force was reasonable under the totality of the circumstances. *Hayes v. County of San Diego*, 57 Cal.4th 622, 629 (2013); see also *Cal. Penal Code* § 835(a) (An officer that "makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested," and the "officer [shall not] be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance")

Plaintiff's force-based claims, including the first claim for excessive force, and the fifth, sixth, and seventh state law claims for violation of the battery, negligence, and violation of the Bane Act all fail because Defendant Officers used force that was objectively reasonable under the totality of the circumstances.

/ / /



MK MANNING | KASS

MK MANNING | KASS

**1. Defendant Officer KLINZING's Use of Force Was Objectively Reasonable**

Plaintiff cannot maintain any force-based claims against KLINZING. Per the uncontroverted video evidence, KLINZING participated in the arrest of Plaintiff only to assist in placing handcuffs on Plaintiff. (UF 53, 58 – 59, 70) Plaintiff's claims of KLINZING "joining in" on his alleged "beating" is simply not reflected in any evidence. Further, Plaintiff himself admits that his memory on the date and in present day is not reliable. (UF 74 – 75) Therefore, his recollection without more cannot create a dispute of fact. *See Montague v. AMN Healthcare, Inc.*, 223 Cal.App.4th 1515, 1525 (2014) ("speculative inferences do not raise a triable issue of fact").

The uncontroverted video evidence demonstrates that the minimal application of force by KLINZING in this case was limited to handcuffing Plaintiff to effect the arrest and was reasonable under the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989). There is simply no factual or legal basis to maintain a cause of action against Defendant Officer KLINZING who made little to no arrest contact with Plaintiff and did not hit, strike, tase, or perform any other action against Plaintiff outside of putting handcuffs around his wrists. (UF 53, 58 – 59, 70 – 72) The use of handcuffs as a form of restraint is proper for the protection of officers or others. There are no cases that hold handcuffing by itself to be unreasonable or excessive.

In sum, because video evidence does not show Defendant Officer KLINZING applying any force on Plaintiff save for assisting placing handcuffs on him, he is entitled to summary judgment on all claims, as a matter of law. Fed. R. Civ. P. 56.

**2. Remaining Defendant Officers' Use of Force was Objectively Reasonable Under the Totality of the Circumstances**

Defendant Officers used varying degrees of force in their attempts to detain Plaintiff. The uncontroverted facts show that MAYNARD tackled Plaintiff away from the door, struck Plaintiff , brought Plaintiff to the ground and rolled him into his stomach, briefly kneed Plaintiff, and pulled Plaintiff's right hand behind his back. (UF

26 – 32, 37 – 39, 47, 52 – 53) AGUILA grabbed hold of Plaintiff's wrist and pulled his arm behind his back and administered several strikes to Plaintiff's right side rib area to make Plaintiff release his arm to MAYNARD. (UF 30, 32, 39, 46, 50) BISHOP deployed a seemingly unsuccessful taser probe on Plaintiff, utilized the taser as a blunt object and struck Plaintiff twice on the side of the head, and grabbed Plaintiff's hoodie/pony-tail and pushed Plaintiff's head downward and it slammed as it did so. (UF 33 – 36, 45, 48 – 49)

Defendants have a clear community and officer safety interest as well as an interest in detaining Plaintiff who was suspected of being an armed felon previously evading their arrest. *United States v. Perez-Garcia*, 96 F.4th 1166, 1176 (9th Cir. 2024) (Affirming that the government has an interest in preventing danger and flight); *United States v. Salerno*, 481 U.S. 739, 748 (1987). (The government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest.) In this case, each of Defendant Officers' uses of force to achieve these interests were reasonable.

To assess the reasonableness of a particular use of force, courts balance the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Hart v. City of Redwood City*, 99 F.4th 543, 549 (9th Cir. 2024) (internal quotation marks and citation omitted). To this end, the *Graham* Court set forth a non-exhaustive list of factors to be considered in evaluating whether the force used to effect a particular seizure is reasonable, set forth below. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989). Courts are called to consider the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2015).

Here, Plaintiff's suspected and observable crimes are patently severe. The ninth circuit has held that "a particular use of force would be more reasonable, all other





MK MANNING | KASS

things being equal, when applied against a felony suspect than when applied against a person suspected of only a misdemeanor." *See S.R Nehad v. Browder*, 929 F.3d 1125, 1136 (9th Cir. 2019). In addition, the "severity of the crime" has been used as a proxy for the danger a suspect poses at the time force is applied. *Id.*

At the time of Plaintiff's detainment, he was suspected of felony assault with a firearm and criminal threats of death against his girlfriend. (UF 1 – 5, 13 – 14, 16) Officers visually saw Plaintiff perform felony evasion of arrest by leading them on a 1.5 mile chase through the city and to a residence. (UF 6 – 12, 15 – 18, 25) Defendant Officers were also informed that Plaintiff was a felon that may be armed and, while giving chase, he did not show his hands and had on clothing that could conceal a weapon. (UF 16, 20 – 22) Plaintiff being suspected of, and performing in real-time, these felonies weighs in favor of the reasonableness of Defendant Officers' use of force to apprehend Plaintiff.

The second, and most important factor when analyzing use of force, is whether the suspect posed a threat to officers or others. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005). "If the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat." *See Estate of Strickland v. Nevada County.*, 69 F.4th 614, 620 (9th Cir. 2023) In this case, Defendant Officers were informed that Plaintiff was armed the previous night and was possibly armed that day. which they learned of while making chase as Plaintiff evaded arrest. (UF 1, 11 – 13, 16) Plaintiff is also a larger individual, markedly tall and heavyset at more than six (6) feet tall and 220 pounds, and proved difficult to detain and subdue. (UF 19, 31 – 33, 28 – 39, 51 – 53) Plaintiff actively resisted arrest, reached for his waist and beneath himself when prone, attempted to barricade himself within a residence and kneed MAYNARD in the chest at the start of the interaction. (UF 25 – 28, 32, 38, 40 – 44) These facts warrant the use of force to persuade him to comply. *Thompson v. Rahr* (9th Cir. 2018) 885 F.3d 582, 585–586. The fact that Plaintiff was also taller and heavier than



MK MANNING | KASS

Defendant Officers such that it took their combined strength to subdue him further supports the use of force in this case. *Id.* The threat posed by Plaintiff was clear due to the size disparity, his possibly being armed, and the pressing need for officers to detain him. The second factor weighs in favor of the reasonableness of Defendant Officer's actions.

The third factor as to suspect flight and resistance also weighs in favor of Defendant Officers' use of force. Plaintiff initially fled from officers upon their arrival. (UF 11 – 18, 25) Further, after Defendant Officers stopped Plaintiff's flight attempts, he continued to struggle successfully out of Defendant Officers' grasp. (UF 26 – 53) Despite Plaintiff stating he was "not refusing," his behavior of removing his arms from Defendant Officers and not allowing them to handcuff him indicates he was in fact actively resisting. (UF 41 – 42) In order to get Plaintiff into custody, Defendant Officers had to use some force and the force utilized by Defendant Officers to achieve this purpose was not fully successful until each use had been effectuated. (UF 53) Even when officers' behaviors caused actual harm, the seriousness of the strong interest in detaining a larger, violent, fleeing felon, was commensurate with the repeated attempts Defendant Officers made to immobilize, detain, and subdue Plaintiff—including those techniques such as closed hand strikes and taser use which cause pain. *Puente v. City of Phoenix*, 123 F.4th 1035, 1058 (9th Cir. 2024) (Even though officers' actions rendered plaintiff immobile, plaintiff experienced "temporary blindness," suffered "permanent loss of visual acuity," and was "forced to endure multiple surgeries," this intermediate force is still reasonable given the strong interest in avoiding breach of the fence).

It is anticipated that Plaintiff will argue there was trivial force that could have been used. However, this theoretical possibility of force options does not equate to officer's different use of force being unreasonable. Indeed, "requiring officers to find and choose the least intrusive alternative would require them to exercise superhuman judgment." *Scott v. Henrich*, 39 F.3d 912, 915 (9h Cir. 1994) Even force that results



MK MANNING | KASS

in injury or constitutes a "blow" can be reasonable to effectuate arrest. Courts decide reasonability with the understanding that officers must make "split second decisions" in a "rapidly evolving circumstances" with the purpose to disable and detain suspects. *Ames v. King County*, 846 F.3d 340, 345 (9th Cir. 2017) This also true for the use of a taser. Though it proved ineffective here, the successful use of a taser is reasonable against actively resistant suspects. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1095 (9th Cir. 2013). The mere fact that Plaintiff sustained injuries does not render the force unreasonable. *See Williamson v. City of National City*, 23 F.4th 1146, 1152 (9th Cir. 2022) (where court held that a plaintiff's officer-caused injuries—including a sprained wrist, mild swelling, and torn rotator cuff—did not render the officer's actions unreasonable).

Because the Defendant Officers' use of force was either near nonexistent or reasonable under the totality of the circumstances, there can be no liability for any of Plaintiff's force-based claims, including the First Claim for excessive force, and the state law claims negligence, battery, and violation of the Bane Act.

**3. Plaintiff's Civ. Code Section 52.1(b) Claim Also Fails for Lack of Intent**

The Bane Act (codified in California Civil Code Section 52.1(b)) provides for liability for interference with an individual's rights "by threat, intimidation, or coercion." Cal. Civ. Code § 52.1(b). Here, the Bane Act claims fails because as demonstrated above there is no evidence of an underlying constitutional violation. In addition, the Bane Act requires "specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Reese v. County. of Sacramento*, 888 F.3d 1030, 1043–45 (9th Cir. 2018). There is absolutely no evidence that the officers acted with any specific intent to interfere with Plaintiff's rights at all, let alone unrelated to a legitimate law enforcement objective of detaining a suspected felon who gave chase and taking him into custody. The uncontroverted evidence demonstrates that Defendant Officers were responding to a possibly armed suspect and intended to first



MK MANNING | KASS

perform a traffic stop, then stop his flight, then take him into custody. (UF 1, 10 – 26, 51). Because the record is devoid of any evidence of specific intent, and Plaintiff's unreliable claims to the contrary do serve as such, the Defendant Officers are entitled to summary judgment. And because the underlying claim fails, so does the vicarious liability claim against the City.

**B. Defendant Officers are Entitled to Qualified Immunity**

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Waid v. Cnty. of Lyon*, 87 F.4th 383, 387 (9th Cir. 2023). It protects government officials "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018). This immunity protects all but the **plainly incompetent** or those who knowingly violate the law. *White v. Pauly*, 137 S. Ct. 548, 551-552 (2017), emphasis added.

As discussed above, Defendant Officers did not violate Plaintiff's rights. Without a violation, Defendant Officers are immune from liability. However, if the court disagrees, Plaintiff's claim still fails the second prong because there was no clearly established law at the time of the incident that would have put officers on notice that they were engaged in a violation of Plaintiff's constitutional rights.

"Clearly established" means that, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Smith v. Agdeppa*, 81 F.4th 994, 1001 (9th Cir. 2023) (internal quotation marks omitted). "Although '[the Supreme] Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond





MK MANNING | KASS

MK MANNING | KASS

debate.'" *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (q*uoting White v. Pauly*, 580 U.S. 73, 78-79 (2017)).

Here, MAYNARD could not have known it was unlawful for him to use controlled, single use blows and a preventative tackle on a large, fast, fleeing suspect he believed to be a felon with a firearm on him. (UF 23 – 29, 31 – 35, 38 – 41, 47.) Simply put, there is no law that Plaintiff can point to that would place the constitutionality of MAYNARD's actions beyond debate. *District of Columbia v. Wesby* (2018) 583 U.S. 48, 63. This reasoning also applies to the de minimis or nonexistent force utilized of KLINZING.

AGUILA utilized consecutive strikes to make Plaintiff free his arm so that he could be fully detained. This pain compliance technique to subdue a felonious Plaintiff who posed a flight risk and with whom AGUILA and MAYNARD had been struggling for minutes to get into handcuffs were reasonable and proportionate to the threat and stakes of the situation. *Graham v. Connor*, 490 U.S. 386, 394–395 (1989). (UF 30 – 33, 39, 46, 50)

BISHOP cannot have known it would violate Plaintiff's constitutional rights to make use of a taser to subdue Plaintiff and stop the struggle that was continuing between Plaintiff and arresting officers. (UF 33 – 36) Within a set for facts where Plaintiff poses a threat, a flight risk, and is suspected of a serious crime, the constitutionality of deploying a taser is not at all beyond debate. Nor is BISHOP's use of the taser as a blunt object used to bang of Plaintiff's head as an attempt to daze. Although Plaintiff's ear was inadvertently cut, this unintended injury is not a facial constitutional violation. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." *Heien v. North Carolina*, 135 S. Ct. 530, 536 (2014). The high-stress and rapidly evolving chase and detainment against Plaintiff—with whom MAYNARD and AGUILA were struggling—prompted BISHOP to attempt to quickly and succinctly daze the Plaintiff

to that he would no longer be able to fight against officers, reach for the gun officers believed he possessed, or flee. (48)

Therefore, Defendant Officers are entitled to qualified immunity in this matter, and Plaintiff's First Claim for excessive force barred as a matter of law.

**C. Plaintiff's Fifth, Sixth, and Seventh Causes of Action Fail Against CITY, GONZALEZ, and TIPTON Fail As a Matter of Law**

**1. Plaintiff's Fifth Claim For Battery Fails**

Plaintiff's battery claim is dependent on the officers applying an unreasonable amount of force. *See Johnson v. Cnty. of L.A.*, 340 F.3d 787, 794 (9th Cir. 2003). A battery claim fails when a plaintiff cannot show the officers used unreasonable force. *Monzon v. City of Murrieta*, 978 F.3d 1150, 1164 (9th Cir. 2020). Thus, Plaintiff's battery claim fails. Because it fails, so does the vicarious liability claim against CITY, GONZALEZ, and TIPTON.

**4. Plaintiff's Sixth Claim for Negligence Fails**

As discussed above, Plaintiff's negligence claim as based on the use of force fails; as such, CITY, GONZALEZ, and TIPTON cannot be held vicarious liable.

To the extent Plaintiff is asserting a separate negligence claim premised on Defendant Officers' pre-force conduct, his claim also fails because he did not show a separate injury attributable to such negligence. Where the "only injury plaintiff alleges" resulted from the force used, courts find that the negligence claim is based on a "single indivisible cause of action, seeking recovery for a single wrong." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 637-39 (2013). Plaintiff does not set forth in the Complaint or in discovery any additional or separate duty or primary right. (UF 71) Instead, the negligence claim is referenced as based on Plaintiff's right to be free from excessive force. (UF 72) Because Plaintiff did not allege a separate injury from separate conduct, such conduct is only relevant "to the extent it shows, as part of the totality of circumstances, that the force itself was negligent." *Id.* at 632.

/ / /





MK MANNING | KASS

Defendants also benefit from statutory immunity for discretionary conduct. Section 820.2 provides that, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Gov. Code § 820.2. "Discretionary immunity under section 820.2 has been found to apply to many areas of police work." *Conway v. Cnty. of Tuolumne*, 231 Cal. App. 4th 1005, 1015 (2014). For example, "[a] decision to arrest, or to take some protective action less drastic than arrest, is an exercise of discretion for which a peace officer may not be held liable in tort." *Watts v. Cnty. of Sacramento*, 136 Cal. App. 3d 232, 234 (1982). Here, to the extent Plaintiff challenges Defendant Officers' discretionary decisions as to how to safely contain the situation and get Plaintiff into handcuffs, this claim would be barred by § 820.2 immunity.

Because Defendant Officers are immune from liability for their performance of discretionary acts, the CITY, GONZALEZ, and TIPTON as the officers' employers and supervisors are likewise immune. *See Watts*, 136 Cal. App. 3d at 234–35.

**5. <u>Plaintiff's Seventh Claim for Bane Act Violation Fails</u>**

Plaintiff's Bane Act claim is premised on the same allegations underlying his excessive force Claim. (UF 72)

Plaintiff's Bane Act claim is dependent on a finding of specific intent. As discussed above, the uncontroverted facts are devoid of evidence of Defendant Officers' specific intent to violate Plaintiff's rights. Therefore, Defendant Officers are are entitled to summary judgment. And because the underlying claim fails, so does the vicarious liability claim against the City.

**D. Plaintiff's Second, Third, and Fourth Claims Against CITY, GONZALEZ, and TIPTON Fail As a Matter of Law**

Municipal entities are not subject to respondeat superior liability for federal civil rights claims. *Monell v. Department of Social Services*, 436 U.S. 658, 691-94 (1978); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989). Instead, plaintiffs



MK MANNING | KASS

suing state actors must establish that their alleged injury was the result of a "policy or custom" of that state actor. *Bd. of Cnty. Commr's v. Brown*, 520 U.S. 397, 403 (1997). To do this, Plaintiff has to satisfy one of the following: (1) a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a long-standing practice or custom which constitutes the standard operating procedure of the local governmental entity; (2) the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself this constituted an act of official governmental policy; and (3) an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. Under any theory, a plaintiff must prove (1) deprivation of a constitutional right; (2) the municipality has a policy; (3) the policy amounts to deliberate indifference to plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *City of Canton*, 489 U.S. at 389; *see also Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

Here, Plaintiff suffered no constitutional harm; lacking a constitutional violation, Plaintiff cannot bring a *Monell* claim. *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996); *see also City of Los Angeles v. Heller*, 475 U.S. at 799. Moreover, even if a constitutional violation were shown, Plaintiff has set forth no evidence of an unconstitutional pattern and practice, a failure to train defendant officers, or approval for unconstitutional behavior that would give rise to liability under *Monell*.

### 1. **Plaintiff's Second Claim for Monell Unconstitutional Policy Fails**

Plaintiff's Second Claim based on *Monell* under a theory of an unconstitutional policy or custom fails because Plaintiff does not point to a policy or practice in place which amounted to deliberate indifference to Plaintiff's constitutional right. *City of Canton v. Harris*, 489 U.S. 378, 389-391 (1989). Nor can Plaintiff establish that such a policy or custom was the moving force behind his alleged constitutional violation.



MK MANNING | KASS

*Id.*

Plaintiff only alleges in his Complaint that Defendant officers acted on a "policy or longstanding practice or custom" of the CITY and that Defendants maintained policies for excessive and unreasonable force…for persons who "do not pose an immediate risk;" providing inadequate use of force, de-escalation and overall training; continuing to employ Defendants like Defendant Officers who have propensities for unlawful and unconstitutional behavior; maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining, and controlling misconduct by officers; creating a "blue code of silence," and having inadequate discipline. (UF 63 – 65) Plaintiff notes that the City has settled prior cases involving officers using deadly force or making use of police dogs. (UF 65)

These spurious and speculative conclusions have no support beyond Plaintiff's assertions. Indeed, Plaintiff does not specify any actual custom, policy, or practice that demonstrates these claims exist in practice. Nor does Plaintiff set forth any actual practice or policy in discovery that would do the same. Instead, the undisputed facts showcase policies on use of force that exist, no Defendant Officers having any pattern of unconstitutional behavior, and no "failure" to discipline Defendant Officers based thereon. Going off of Plaintiff's interactions with Defendant Officers alone, a single incident will not suffice to show a policy. *See Oyenik v. Corizon Health, Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) (noting that "one or two incidents are insufficient to establish a custom or policy"). Similarly, the settlements Plaintiff points to are immaterial and factually distinct to this case.

### 2. <u>Plaintiff's Third Claim for Monell Failure to Train Fails</u>

Plaintiff fails to identify a lack of training to support a finding of liability. (UF 66 – 67) For *Monell* liability, an alleged failure to train must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "An inadequate training



MK MANNING | KASS

policy itself cannot be inferred from a single incident." *Hyde v. City of Willcox*, 23 F.4th 863, 874–75 (9th Cir. 2022). This is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Not only does the evidence demonstrate that all Defendant Officers received training on use of force, but Plaintiff does not show evidence of training gaps or behaviors that amount to deliberate indifference. (UF 78)

Plaintiff's argument appears require that the court find the Defendant Officers' behavior unconstitutional and also connect the Defendant Officers' behaviors to that of the Defendant Officers mentioned in *Acosta. v. City of Hemet, et al.*, case number 5:19-CV00779-CJC, Defendant CITY settled with an unarmed man who was shot in the back by CITY officers; (b*) In Erickson v. City of Hemet, et al.*, case number 5:19-CV00779-CJC, Defendant CITY settled with a man who was attacked by a K-9; (c) In *Mendoza v. City of Hemet, et al.*, case number 5:21-cv01134-JGB-SHK, Defendant CITY settled with an unarmed woman who was shot in the back with kinetic rounds requiring emergency surgery. However, a failure to train, though it can be shown by the existence of "[a] pattern of similar constitutional violations by untrained employees" the key here is that the pattern has to be established by the other untrained employees. Here, the Defendant Officers are not untrained. And the cases Plaintiff cites to involve officer involved shootings were are not present in this case; nor does it involve use of a canine. These circumstances are so dissimilar that to equate them would inevitably result in an erroneous conclusion.

Plaintiff has set forth no evidence of a failure to train, let alone behavior amounting to deliberate indifference. Without this, his *Monell* failure to train claim is subject to summary judgment.

**3. <u>Plaintiff's Fourth Claim for Monell Ratification Fails</u>**

A municipality may be held liable for a constitutional violation "if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). To prove ratification, a plaintiff must show that an authorized policymaker





MK MANNING | KASS

"approved a subordinate's decision and the basis for it." *Alvarez v. City of Santa Ana*, No. SA CV 24-516-DMG (KSX), 2025 WL 2860324, at *12 (C.D. Cal. Sept. 30, 2025) In other words, the policymaker must have "knowledge of the constitutional violation and actually approve of it." *Id*. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Id*. Here, Plaintiff alleges ratification mainly by CITY, GONZALEZ, and TIPTON failing to penalize, discipline, and finding Defendant Officers' actions to be okay. (UF 68 – 69)

It is not enough to allege a negative the way that Plaintiff attempts. Plaintiff must show that a policymaker "knew of and specifically made a deliberate choice to approve" a constitutional violation. *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1065–66 (C.D. Cal. 2024). A singular decision by a policymaker may be sufficient to trigger Section 1983 liability "even though the decision is not intended to govern future situations, but the plaintiff must show that the triggering decision was the product of a 'conscious, affirmative choice' to ratify the conduct in question." *Lassiter v. City of Bremerton*, 556 F.3d 1049, 1055 (9th Cir. 2009) "[P]laintiff[s] must include factual allegations about actions that policymakers took in connection with their 'approval' of the misconduct that would support an inference that they actually ratified the alleged misconduct." *Gaetz v. City of Riverside*, 722 F. Supp. 3d 1054, 1066 (C.D. Cal. 2024).

Plaintiff points to no such actions in this case. There was no praise, no plan formal or informal, nor any mention of official internal decisions on Defendant Officers' conduct. *See Hernandez v. City of San Jose*, 241 F. Supp. 3d 959, 979–80 (N.D. Cal. 2017), *aff'd in part, dismissed in part*, 897 F.3d 1125 (9th Cir. 2018) (holding that a police chief's statements praising the unconstitutional actions of his officers were sufficient to finding municipal liability under *Monell* ratification); *Drum v. City of Manhattan Beach*, No. CV 21-8492 PSG (KKX), 2022 WL 19039619, at *5–6 (C.D. Cal. Nov. 8, 2022) (finding City Council vote and statements in support of the termination of defendant due to a disagreement with his prior statements was



MK MANNING | KASS

sufficient to plead *Monell* claim); *1066 *St. Maron Properties, L.L.C. v. City of Houston*, 78 F.4th 754, 761 (5th Cir. 2023) (finding *Monell* liability via ratification where, among other actions, the mayor and city council members made multiple statements in support of an unlawful taking)

As based on a "failure" to discipline Defendant Officers' and therefore a failure to act, Plaintiff must establish that "the municipality exhibited deliberate indifference to the violation of his federally protected rights" by pointing "to a pattern of prior, similar violations of federally protected rights, of which the relevant policymakers had actual or constructive notice." *Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141–42 (9th Cir. 2020). Here, Plaintiff has identified vague and conclusory policies, procedures, and customs but has not submitted any evidence to support his claims. Furthermore, the extraneous cases cited by Plaintiff are not factually similar to the instant case here, which importantly does not involve shots fired or the use of a canine.

**E. Plaintiff's Request for Punitive Damages Lacks Merit**

To obtain punitive damages the plaintiff must prove that the defendant's actions were malicious, oppressive, or in reckless disregard of the defendant's rights. *Dang v. Cross*, 422 F.3d 800, 810 (9th Cir. 2005); Ninth Circuit Model Jury Instructions 5.5 (2018). The United State Supreme Court determined that punitive damages are available in a § 1983 action only when a defendant's conduct is who to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade*, 461 U.S. 30, 51 (1983). Where there is no evidence that a § 1983 defendant has acted with evil intent, there is no legal right to punitive damages. *Ward v. City of San Jose*, 967 F.2d 280, 286 (9th Cir. 1991). Here, there is no evidence that Defendant Officers, let alone the CITY, GONZALEZ, or TIPTON acted with evil intent. Instead, the undisputed evidence shows that Defendant Officers using proportional force to subdue Plaintiff and ceasing force once Plaintiff was apprehended. Thus, Plaintiff's request for punitive damages fails.



MK MANNING | KASS

**V. CONCLUSION**

For the foregoing reasons, Defendants respectfully request that court grant summary judgment in their favor.

DATED: January 12, 2025

Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: /s/ Andrea Kornblau
Eugene P. Ramirez
Andrea Kornblau
Attorneys for Defendants CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON

MK MANNING | KASS