Eugene P. Ramirez (State Bar No. 134865)
 *eugene.ramirez@manningkass.com*
Andrea Kornblau (State Bar No. 291613)
 *andrea.kornblau@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HENRY BARNHILL,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HEMET, OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; CATHERINE TIPTON; and DOES 1-10, inclusive,<br><br>Defendants. | **Case No. 5:23-cv-00589 JGB(SPx)**<br><br>[District Judge:  Jesus G. Bernal<br>Magistrate Judge:  Sheri Pym]<br><br>**SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>*Filed concurrently with Notice of Motion and Motion; Memorandum of Points and Authorities; Notice of Lodging; Index of Exhibits; Declaration of Andrea Kornblau; Declaration of Custodian of Records; and (Proposed) Order*<br><br>Date:  February 9, 2026<br>Time:  9:00 a.m.<br>Crtrm.: 1 (2nd Floor)<br><br>*Action Filed:       04/12/2024* |

Pursuant to Federal Rule of Civil Procedure 56 and Civil Local Rule 56-1, Defendants CITY OF HEMET, BRETT MAYNARD, JOSHUA BISHOP, PEDRO AGUILA, CORPORAL DOUGLAS KLINZING, JAMIE GONZALEZ, and CATHERINE TIPTON submit their Statement of Uncontroverted Facts, together with references to supporting evidence, in support of Defendants' Motion for

1

**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Summary Judgment.

I. **STATEMENT OF UNCONTROVERTED FACTS**

| No. | Defendants' Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 1 | On April 29, 2022, 911 operators received a 911 call from a witness identified as Plaintiff's girlfriend who reported Plaintiff Henry Barnhill ("Plaintiff") had harmed her the previous night and held a gun to her face. | Ex. A at 0:00–0:25; 1:17-1:25 |
| 2 | Plaintiff's girlfriend reported that, unusually, Plaintiff drove her and her child to McSweeny Elementary School where he was waiting for her outside. | Ex. A at 1:55–2:10 |
| 3 | Plaintiff's girlfriend reported that she feared for her life. | Ex. A at 00:00–00:25 |
| 4 | Plaintiff's girlfriend identified that Plaintiff was driving a black Dodge Challenger that belonged to her and was parked on Chambers Avenue. | Ex. A at 00:00–01:20 |
| 5 | Plaintiff's girlfriend identified that Plaintiff was between forty-two (42) and forty-three (43) years old. | Ex. A at 2:05–2:22 |
| 6 | At approximately 7:36 a.m., Officer BRETT MAYNARD ("MAYNARD") responded to the dispatch call at the elementary school. | Ex. J at pp 1 *see also* Ex. G at 17:6-18:5 |
| 7 | MAYNARD immediately saw the sole black 2019 Dodge Challenger on the north side of Chambers Avenue (license plate 8RUU690). | Ex. J at pp 2 *see also* Ex. G at 21:24-22:12 |
| 8 | MAYNARD broadcasted the vehicle's license plate information. | Ex. J at pp 2 |
| 9 | Officer JOSHUA BISHOP ("BISHOP") and PEDRO AGUILA ("AGUILA") arrived to the elementary school as well concurrently with MAYNARD. | Ex. J at pp 2; Ex. K at pp 1-2; Ex. L at pp 1 |
| 10 | AGUILA and BISHOP attempted a traffic stop using their marked police vehicles with forward facing solid red lamps. | Ex. J at pp 2; Ex. K at pp 2; Ex. L at pp 1 |

2

**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Defendants' Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 11 | Officers observed the vehicle start up and flee at a high rate of speed from them. | Ex. M at 00:30-00:40 *see also* Ex. J at pp 2<br><br>Ex. N at 00:18-1:00 *see also* Ex. K at pp 1-2<br><br>Ex. O at 00:00-:30 *see also* Ex. L at pp 1 |
| 12 | MAYNARD broadcasted that the vehicle was "taking off." | Ex. M at 00:30 – 00:35 *see also* Ex. J at pp 2 |
| 13 | Officers believed that the driver fleeing was Plaintiff who, based on Plaintiff's girlfriend's statements, was suspected of assault warranting a felony traffic stop. | Ex. J at pp 2 *see also* Ex. G at 19:3-20:16<br><br>Ex. K at pp 1 *see also* Ex. H at 27:22-28:5<br><br>Ex. L at pp 1 |
| 14 | MAYNARD identified Plaintiff's suspected actions towards his girlfriend as possible violations of California Penal codes 273.5(a), 245(a)(2), and 417(a)(2). | Ex. J at pp 2 *see also* Ex. G at 19:3-20:16 |
| 15 | MAYNARD, BISHOP, and AGUILA gave chase in their marked police vehicles, utilizing their red lamps and audible sirens for about 1.5 miles. | Ex. M at 00:40-02:40 *see also* Ex. J at pp 2<br><br>Ex. N at 00:37-2:42 *see also* Ex. K at pp 2<br><br>Ex. O at 00:10-:2:20 *see also* Ex. L at pp 1 |
| 16 | While in pursuit, it was communicated to Defendant Officers that Plaintiff may be in possession of a firearm. | Ex. M at 01:50-02:25 *see also* Ex. J at pp 2<br>Ex. G at 19:3-20:16<br><br>Ex. H at 28:20-29:15, 30:2-30:17<br><br>Ex. E at 28:7-28:23 |

3
**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Defendants' Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 17 | After a few minutes, the chase concluded as Plaintiff stopped in front of 354 Gardenia Circle. | Ex. M at 02:25-02:50 *see also* Ex. J at pp 2<br><br>Ex. N at 02:40-2:50 *see also* Ex. K at pp 2<br><br>Ex. O at 02:15-:2:30 *see also* Ex. L at pp 1 – 2 |
| 18 | Plaintiff got out of the Dodge Challenger and ran directly to the front porch of 354 Gardenia Circle. | Ex. N at 02:40-2:50 |
| 19 | On that day, Plaintiff was over six (6) feet tall and around 220 pounds. | Ex. D at pp 5-7 *see also* R at pp 117 |
| 20 | MAYNARD observed that Plaintiff wore a large, dark hoodie. | Ex. J at pp 2 |
| 21 | Officer MAYNARD and BISHOP observed that Plaintiff appeared to be reaching for the front portion of his waistband as he ran to and made it onto the porch. | Ex. J at pp 2 *see also* Ex. G at 19:3-20:16<br><br>Ex. K at pp 2 *see also* Ex. H at 34:1-34:17 |
| 22 | Defendant Officers understood it to be common for suspects to conceal firearms and weapons in their front waistband. | Ex. J at pp 2<br><br>Ex. K at pp 2<br><br>Ex. L at pp 1-2 |
| 23 | MAYNARD gave chase and told Plaintiff "show us your hands! Show us your f**king hands!" | Ex. M at 02:40-02:50 *see also* Ex. J at pp 2-3 |
| 24 | MAYNARD and BISHOP observed that Plaintiff lifted his hands but lowered them as he continued to run away. | Ex. M at 02:40-02:50 *see also* Ex. J at pp 2-3<br><br>Ex. N at 02:40-2:55 *see also* Ex. K at pp 2 |
| 25 | Plaintiff ran up the front porch to the front door and grabbed the handle. | Ex. M at 02:25-02:50 *see also* Ex. J at pp 2<br><br>Ex. N at 02:40-2:50 *see also* Ex. K at pp 2 |

4
**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Defendants' Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 26 | To prevent Plaintiff from barricading himself within the residence, MAYNARD took Plaintiff away from the door into a patio chair nearby. | Ex. M at 02:25-02:50 *see also* Ex. J at pp 2-3 *see also* Ex. G at 37:13-39:12 *see also* Ex. N at 02:40-2:55 |
| 27 | MAYNARD attempted to grab Plaintiff's right wrist but was initially unsuccessful. | Ex. M at 02:25-02:50 *see also* Ex. J at pp 3 *see also* Ex. G at 39:16-39:25; 41:13-42:20 Ex. K at pp 2 |
| 28 | Plaintiff then kneed MAYNARD in the chest. | Ex. M at 02:25-02:50 *see also* Ex. J at pp 2 *see also* Ex. G at 41:13-42:20 |
| 29 | MAYNARD, in response and now determinatively viewing Plaintiff as a threat, struck Plaintiff in the face to distract him. | Ex. M at 02:25-02:50 *see also* Ex. J at pp 2 *see also* Ex. G at 41:13-43:8 |
| 30 | AGUILA made it up the porch and grabbed Plaintiff's left wrist. | Ex. O at 02:15-:2:30 *see also* Ex. L at pp 1 – 2 *see also* Ex. I at 68:14-68:22 Ex. J at pp 3 |
| 31 | Together, MAYNARD and AGUILA struggled to move Plaintiff to the ground, commanding him to "get the fuck on the ground" several times. | Ex. M at 02:40-02:57 *see also* Ex. J at pp 3 Ex. O at 02:15-:2:38 *see also* Ex. L at pp 1 – 2 |
| 32 | MAYNARD and AGUILA struggled to keep ahold of Plaintiff's wrists and hands but he continually struggled and managed to free himself from officers' grasp. | Ex. M at 02:40-02:57 *see also* Ex. J at pp 3 *see also* Ex. G at 41:13-42:10, 43:24-44:7, 50:3-52:21 |

**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Defendants' Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| | | Ex. O at 02:15-:2:38 *see also* Ex. L at pp 1 – 2 |
| 33 | BISHOP arrived on the porch within moments and, viewing what looked like officers MAYNARD and AGUILA struggling to move Plaintiff to the ground, deployed a taser. | Ex. N at 02:40-3:02 *see also* Ex. K at pp 2-3 *see also* Ex. H at 39:12-40:1, 40:22-41:4, 46:4-48:5 |
| 34 | BISHOP observed two probes make purchase near Plaintiff's abdomen area and another in the thigh area. | Ex. N at 02:40-3:02 *see also* Ex. K at pp 3 |
| 35 | The taser probes did not appear to Defendant Officers MAYNARD or BISHOP to have any effect or noticeable change on Plaintiff's behavior. | Ex. J at pp 3 *see also* Ex. G at 49:6--49:23 Ex. K at pp 2-3 *see also* Ex. H at 46:4-48:5 |
| 36 | Later, it was determined that the taser probes only breached Plaintiff's clothing but not his skin. | Ex. K at pp 3 |
| 37 | MAYNARD felt Plaintiff push against his chest indicating he was still able to manipulate his arms in resistance. | Ex. J at pp 3 |
| 38 | MAYNARD tried to get Plaintiff's right hand behind his back but Plaintiff wrenched his arm out of MAYNARD's grip. | Ex. M at 02:40-02:57 *see also* Ex. J at pp 3 *see also* Ex. G at 50:3-52:21, 65:24-66:13 |
| 39 | MAYNARD and AGUILA managed to get Plaintiff into the ground on his butt and finally onto his stomach. | Ex. M at 02:57-03:00 *see also* Ex. J at pp 3 Ex. O at 02:25-2:42 *see also* Ex. L at pp 1 – 2 Ex. N at 02:50-3:02 |
| 40 | However, Plaintiff was pulling his arms underneath himself. | Ex. M at 03:05-03:20 *see also* Ex. J at pp 3 *see also* Ex. G at 50:3- |

6
**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Defendants' Uncontroverted Facts | Supporting Evidence |
|---|---|---|
|  |  | 52:21 <br><br> Ex. N at 02:50-3:02 <br> *see also* Ex. K at pp 2 |
| 41 | MAYNARD heard Plaintiff shout "I'm not refusing" and observed that Plaintiff continued to pull his hands away. | Ex. J at pp 3 |
| 42 | Based on Plaintiff continuing to pull away, MAYNARD determined Plaintiff was still resisting his efforts to take Plaintiff into custody. | Ex. J at pp 3 |
| 43 | BISHOP heard Plaintiff say "they're behind my back" which BISHOP understood to mean Plaintiff's hands were behind his back. | Ex. H at 58:2-58:22 |
| 44 | However, BISHOP observed that Plaintiff's hands, particularly his right arm, was not under MAYNARD's control. | Ex. H at 58:2-58:22 |
| 45 | BISHOP charged his taser but did not deploy it again. | Ex. N at 02:50-3:15 <br> *see also* Ex. H at 47:2-48:2 |
| 46 | AGUILA got ahold of Plaintiff's left hand and placed it behind Plaintiff's back. | Ex. O at 02:38-2:50 <br> *see also* Ex. L at pp 1 |
| 47 | MAYNARD struck Plaintiff on the side of his face with a knee and Plaintiff's right arm came free from under him. | Ex. M at 03:05-03:20 <br> *see also* Ex. J at pp 3 <br> *see also* Ex. G at 50:3-52:21 |
| 48 | BISHOP utilized the taser as an improvised blunt object to strike Plaintiff twice on the side of the head to subdue him. | Ex. N at 03:04-3:30 <br> *see also* Ex. K at pp 3 <br> *see also* Ex. H at 44:20-45:15 |
| 49 | Seeing Plaintiff start to get up and pushing his head and body against officers, BISHOP grabbed Plaintiff's hoodie area and pushed Plaintiff's head down towards the ground and it slammed. | Ex. N at 03:15-3:22 <br> *see also* Ex. K at pp 3 <br> *see also* Ex. H at 60:17-63:7 |
| 50 | Meanwhile, AGUILA struck Plaintiff several times around his right side ribs to get him to release his arm. | Ex. O at 02:45-2:57 <br> *see also* Ex. L at pp 1-2 |
| 51 | After these combined efforts, MAYNARD was able to secure Plaintiff's right arm behind his back. | Ex. M at 03:05-03:20 <br> *see also* Ex. J at pp 3 <br> *see also* Ex. G at 50:3-52:21 |

7
**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Defendants' Uncontroverted Facts | Supporting Evidence |
|---|---|---|
|  |  | Ex. N at 03:04-3:30 *see also* Ex. K at pp 3 *see also* Ex. H at 44:20-45:15, 60:17-63:7<br><br>Ex. O at 02:45-2:57 *see also* Ex. L at pp 1-2 |
| 52 | However, MAYNARD was unable to successfully secure Plaintiff into handcuffs. | Ex. M at 03:25-03:50 *see also* Ex. J at pp 3 |
| 53 | Officer KLINZING arrived and assisted MAYNARD and AGUILA in handcuffing Plaintiff's hands behind his back, making use of two sets of handcuffs. | Ex. M at 03:30-04:00 *see also* Ex. J at pp 3<br><br>Ex. O at 02:55-3:30<br><br>Ex. E at 34:6-34:20 |
| 54 | Plaintiff was charged and detained for several counts of penal and vehicle code violations, including Penal Code Sections 148(A) for obstruction and resistance of officers, 30305(A)(1) for possession of ammunition, and 29800(A)(1) for possessing a firearm while being a felon | Ex. D pp 1, 8 |
| 55 | Plaintiff was charged with violations of Vehicle Code Sections 2800.2 for evading arrest. | Ex. D at pp 1, 8 |
| 56 | Plaintiff was later convicted of Penal Code Sections 148(A), 30305(A)(1), 29800(A)(1), and Vehicle Code Sections 2800.2 on August 2, 2023. | Ex. P at pp 1-4 |
| 57 | Plaintiff filed this lawsuit on April 4, 2023. | Ex. B |
| 58 | Plaintiffs' First Claim for Relief is brought against individual officers under 42 U.S.C. § 1983 and is labeled Unreasonable Search and Seizure – Excessive Force. | Ex. B at pp 10 |
| 59 | To support his First Claim, Plaintiff alleges that defendants were excessive in detaining him and violently tackled him, slammed his face and head into a brick wall, threw him to the ground, and beat on him. | Ex. B ¶¶ 36-39, 46-55<br><br>Ex. C, No. 2, 13, 14, 17, 42 |

8

**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Defendants' Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 60 | Additionally, Plaintiff alleges that defendant officers unnecessarily tased him at least twice and struck him with the taser. | Ex. B ¶¶ 36-39, 46-55<br><br>Ex. C, No. 2, 13, 14, 17, 42 |
| 61 | Plaintiff also alleges he sustained severe injuries including a blowout fracture to his orbital floor, an ear avulsion, and a large parieto-occipital hematoma. | Ex. B ¶ 43<br><br>Ex. C, No. 6 |
| 62 | Plaintiff's medical records indicate that he completed surgeries for his injuries, namely his orbital fracture and ear by December 2022 and the listed complaints were marked resolved as of 4/21/2023. | Ex. R at pp 270 – 290 |
| 63 | Plaintiffs' Second Claim for Relief is brought against CITY, GONZALEZ, and TIPTON and 42 U.S.C. § 1983 (Municipal Liability – Unconstitutional Custom, Practice, or Policy). | Ex. B at pp 12 |
| 64 | Plaintiff's Second Claim is based on several theories of unlawful policies and practices regarding excessive force, inadequate reporting and discipline, and a "blue wall of silence." | Ex. B ¶¶ 36-39, 56-68<br><br>Ex. C, No. 1, 17 |
| 65 | Plaintiff also sets forth theories of failures to train, and supervise, and a practice of "allowing" unconstitutional behavior on the part of officers as identified, according to Plaintiff, in settlements wherein suspects in officer-involved shooting and K-9 cases. | Ex. B ¶¶ 36-39, 56-68<br><br>Ex. C, No. 1, 17 |
| 66 | Plaintiff's Third Claim for Relief is brought against CITY, GONZALEZ, and TIPTON and 42 U.S.C. § 1983 (Municipal Liability – Failure to Train). | Ex. B at pp 16 |
| 67 | Plaintiff alleges theories of failure to train defendant officers on proper use of physical force, detention of an automobile, detention of a person, and arrest of a person and reiterates case settlement as showcasing failed training. | Ex. B ¶¶ 36-39, 69-80<br><br>Ex. C, No. 1, 17 |
| 68 | Plaintiff's Fourth Claim for Relief is brought against CITY, GONZALEZ, and TIPTON under 42 U.S.C. § 1983 (Municipal Liability – Ratification). | Ex. B at pp 18 |

| No. | Defendants' Uncontroverted Facts | Supporting Evidence |
|---|---|---|
| 69 | Plaintiff reiterates the theories of failures to train and failure to "penalize" officers who perform actions which have given rise to settled lawsuits. | Ex. B ¶¶ 36-39, 81-93<br><br>Ex. C, No. 1, 17 |
| 70 | Plaintiffs' Fifth Claim for Relief is brought against all Defendants for Battery based on the same theories underlying Plaintiff's First Claim for Excessive Force. | Ex. B at pp 21<br><br>Ex. B ¶¶ 94-100<br><br>Ex. C, No. 1, 2, 13, 14, 17, 42 |
| 71 | Plaintiffs' Sixth Claim for Relief is brought against all Defendants for Negligence based on the same theories that underly Plaintiff's First, Second, Third, and Fourth Claims. | Ex. B at pp 22<br><br>Ex. B ¶¶ 101-107<br><br>Ex. C, No. 1, 2, 13, 14, 17, 42 |
| 72 | Plaintiff's Seventh Claim for Relief is brought against all Defendants for Violations of Cal. Civil Code § 52.1 (*Bane Act*) based on the same allegations underlying Plaintiff's First Claim. | Ex. B at pp 24<br><br>Ex. B ¶¶ 108-115<br><br>Ex. C, No. 1, 2, 13, 14, 17, 42 |
| 73 | In discovery, Plaintiff fails to point to any definitive policy or practice, formalized or informal, implemented by CITY or HPD in support of his claims. | Ex. C, No. 1, 2, 13, 14, 17, 42 |
| 74 | At deposition, Plaintiff testified multiple times that his memory on April 29, 2022 and at time of being deposed was distorted. | Ex. F at pp 52:23-53:20, 85:2-87:4, 92:4-92:19, 98:18-99:5 |
| 75 | Plaintiff testified that he only remembered parts of April 29, 2022 and found it difficult to distinguish between his memories and false or created memories | Ex. F at pp 98:18-99:5 |
| 76 | Insofar as Plaintiff knows, he does not need any further surgeries or medications for his claimed injuries as a result of the encounter with police on April 29, 2022 | Ex. F at pp 144:25-145:14, 149:10-149:24 |
| 77 | Incorporated into HPD's policy manual is a Use of Force policy effective at the time of Plaintiff's detention which accounts for all of the following: | Ex. Q in total |

10
**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| No. | Defendants' Uncontroverted Facts | Supporting Evidence |
|---|---|---|
|  | the proper use of force to effectuate arrests, determining reasonable force for several categories of suspects, and de-escalation and prevention techniques. |  |
| 78 | Defendant Officers' training profiles up to and with HPD include annual review of a vehicle pursuit policy, taser training, use of force training, arrest and control tactics, and critical legal issues regarding use of force. | Ex. S at pp 2-3, 6 *see also* Ex. E at pp 12:4-13:18 Ex. T at pp 1-3, 5-6 Ex. U at pp 2-3, 6-7 Ex. V at pp 2-3, 6 |
| 79 | MAYNARD testified he has never had a sustained finding of excessive force | Ex. G at pp 16:10-16:24 |
| 80 | MAYNARD testified he has been named in one lawsuit which was closed | Ex. G at pp 16:10-16:24 |
| 81 | BISHOP testified he has never had a sustained finding of excessive force. | Ex. H at pp 26:13-14:20 |
| 82 | BISHOP testified he has never been named in a lawsuit. | Ex. H at pp 26:13-14:20 |
| 83 | KLINZING testified he has never had a sustained finding of excessive force | Ex. E at pp 14:21-15:1 |
| 84 | In his 25 year tenure, KLINZING testified he was named in two lawsuits, one with LAPD where he was alleged to have used excessive force. | Ex. E at pp 16:24-17:13, 25:14-26:8 |
| 85 | In discovery, Plaintiff does not identify evidence or facts indicating that MAYNARD, BISHOP, AGUILA or KLINZING had sustained findings of excessive force against them. | Ex. B ¶¶ 36-39, 69-80 Ex. C |
| 86 | In discovery, Plaintiff does not identify evidence or facts indicating that MAYNARD, BISHOP, or AGUILA were named lawsuits wherein they were accused of using excessive force. | Ex. B ¶¶ 36-39, 69-80 Ex. C |
|  |  |  |

11
**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| DATED: January 12, 2025 | **MANNING & KASS**<br>**ELLROD, RAMIREZ, TRESTER LLP**<br><br>By: _____/s/ Andrea Kornblau_____<br>Eugene P. Ramirez<br>Andrea Kornblau<br>Attorneys for Defendants CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON |

---

12

**DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**