# EXHIBIT I

Deposition Of:

# Officer Pedro Aguila

## January 31, 2025

---

Henry Barnhill

vs

City of Hemet, et al.

---

Job Number 238692



1                    UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3

4   HENRY BARNHILL,                          )
                                             )
5                    Plaintiff,              )
                                             )
6         vs.                                )CASE NO.
                                             )5:23-CV-00589-JGB-SP
7   CITY OF HEMET; OFFICER BRETT             )
    MAYNARD; OFFICER JOSHUA BISHOP;          )
8   OFFICER PEDRO AGUILA; CORPORAL           )
    DOUGLAS KLINZING; CATHERINE              )
9   TIPTON; AND DOES 1-10, INCLUSIVE,        )
                                             )
10                                           )
                     Defendants.             )
11                                           )
                                             )
12

13

14  DEPOSITION OF : OFFICER PEDRO AGUILA
    Taken By       : PAUL GRECH, ESQ.
15  Commencing     : 10:01 a.m.
    Location       : Zoom Remote Proceeding
16  Day, Date      : FRIDAY, JANUARY 31, 2025
    Reported by    : Ora Kohn, CSR No. 11933
17  Pursuant to    : Notice
    Original to    : PAUL GRECH, ESQ.

18

19

20

21

22

23

24  Pages 1-91

25  JOB NO. 238692

Deposition Of Officer Pedro Aguila

```
1    APPEARANCES OF COUNSEL:

2

3

4     FOR PLAINTIFF:

5     GRECH, PACKER & HANKS
      BY: PAUL GRECH, ESQ.
6         TRENTON PACKER, ESQ.
      7095 Indiana Avenue
7     Suite 200
      Riverside, California, 92506
8     951.682.9311
      Paulgesq@aol.com
9     Tpacker@grechpackerlaw.com

10

      FOR DEFENDANTS:
11

      MANNING & KASS
12    BY: ANDREA K. KORNBLAU, ESQ.
      801 Figueroa Street
13    15th Floor
      Los Angeles, California, 90017
14    213.624.6900
      Andrea.kornblau@manningkass.com
15

16

17

18

19

20

21

22

23

24

25
```

Deposition Of Officer Pedro Aguila

```
 1                   INDEX TO EXAMINATION

 2

 3                                              Page

 4   EXAMINATION BY MR. GRECH                     5

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Deposition Of Officer Pedro Aguila

```
1                    INDEX TO EXHIBITS

2    Exhibit No.            DESCRIPTION              PAGE

3

4        Exhibit A   Body-worn video of Officer        64

5                    Aguila

6

7     EXHIBITS PROVIDED TO THE REPORTER ELECTRONICALLY

8

9

10              QUESTION INSTRUCTED NOT TO ANSWER

11   QUESTION:                                   PAGE

12

13    Q. And forgive me if I asked this already,      20
      but what is your date of birth?
14

15

16

17

18

19

20

21

22

23

24

25
```

Deposition Of Officer Pedro Aguila

```
 1                    REPORTED REMOTELY
 2                  FRIDAY, JANUARY 31, 2025
 3           COURT REPORTER: Good morning.  My name is Ora
 4    Kohn.  I'm a certified Court Reporter with the State of
 5    California.  My CSR number is 11933.
 6                         DEPONENT,
 7             Sworn as a witness by the Certified
 8          Shorthand Reporter, testified as follows:
 9                 EXAMINATION BY MR. GRECH
10           MR. GRECH:  Q.  Okay, good morning, Mr.
11    Aguila.  Is that the correct pronunciation?
12        A.   That's close.  It's Aguila.
13        Q.   Aguila?
14        A.   Yes.
15        Q.   Okay.  Have you ever had your deposition taken
16    before?
17        A.   No.
18        Q.   Have you ever testified in a courtroom before?
19        A.   I have.
20        Q.   About how many times have you testified in a
21    courtroom?
22        A.   Approximately fifteen to twenty.
23        Q.   Have you been trained in how to testify?
24        A.   Yes.
25        Q.   And can you tell me where you received the
```

Deposition Of Officer Pedro Aguila

1   training in how to testify?

2       A.   During my LAPD academy.

3       Q.   And is that formal training in a classroom

4   setting?

5       A.   Yes, and the other half is in a practice

6   courtroom.

7       Q.   And is that where an attorney would ask

8   questions of you?

9       A.   Yes.

10      Q.   Okay.  Do you have any questions about how the

11  process works?

12      A.   No.

13      Q.   Fair to say you're familiar with the process

14  and you know how to answer questions put to you in a

15  professional setting?

16      A.   I do.

17      Q.   I'm going to ask you some questions, and do

18  you understand I'm entitled to your best answer?  Do

19  you understand that?

20      A.   I do.

21      Q.   And if you don't understand a question, you

22  understand you can tell me you don't understand; is

23  that right?

24      A.   Yes, sir.

25      Q.   Do you understand that I could, if I wished

Deposition Of Officer Pedro Aguila

1  to, clarify a question if you don't understand it?  Is

2  that fair?

3      A.   Yes, sir.

4      Q.   Now, if you need a break, do you understand

5  you can ask me and we'll take a break?

6      A.   Yes, sir.

7      Q.   All right.  I want to ask you about how you

8  prepared for today's testimony.  Did you look at any

9  documents?

10          MS. KORNBLAU:  I'll just object to the extent

11  that it calls for any attorney/client privileged

12  communications, but otherwise you can answer.

13          MR. GRECH:  Q.  Did you personally look at any

14  documents to prepare for today's testimony?

15          MS. KORNBLAU:  Same objection.  Go ahead.

16          THE WITNESS:  Yes.  Yes, I did.

17          MR. GRECH:  Q.  I want to ask you some

18  questions about the documents that you looked at to

19  prepare for today's testimony.  Do you know what I'm

20  talking about?

21      A.   I need you to clarify.

22      Q.   Okay.  So we look at things with our eyes,

23  right?

24      A.   Um-hm.

25      Q.   And sometimes we look at paper, correct?

Deposition Of Officer Pedro Aguila

1      A.    Yes.

2            MS. KORNBLAU:  He didn't understand what you

3   were talking about as far as this incident or what you

4   were referring to specifically.

5            MR. GRECH:  Q.  He will now.  And when we look

6   at papers, sometimes there's words on them, right?

7      A.    Um-hm.  Yes.

8      Q.    And sometimes the words are words that we have

9   written ourselves, correct, or typed ourselves,

10  correct?

11     A.    Correct.

12     Q.    Did you look at any words on paper that had

13  something to do with this case?

14     A.    I did.

15     Q.    Would you tell me all of the documents that

16  you reviewed to prepare for this case.

17     A.    Yes.  I reviewed my own document.

18     Q.    Can you tell me what they were?

19     A.    It was my supplemental report.

20     Q.    Did you review the reports of any other

21  officer?

22     A.    Briefly.

23     Q.    Can you tell me which officers' reports that

24  you reviewed?

25     A.    I believe I reviewed Officer Bishop's.

Deposition Of Officer Pedro Aguila

1      Q.    Other than Officer Bishop's reports, did you
2  review any other reports?
3      A.    No.
4      Q.    Did you review any other documents to prepare
5  for today's hearing other than your report and the
6  report of officer Bishop?
7      A.    No.
8      Q.    Did you review any photographs to prepare for
9  today's testimony?
10     A.    No.
11     Q.    Did you review any video for today's
12 testimony?
13     A.    Yes.
14     Q.    Can you tell me what video you reviewed to
15 prepare for today's testimony?  In fact, tell me all of
16 the videos you looked at.
17     A.    I looked at all the -- my body-worn camera for
18 myself, officer Bishop, Detective Maynard and former
19 Corporal Klinzing.
20     Q.    When you say former Corporal, what do you mean
21 by former?
22     A.    Retired.
23     Q.    Did you review any audio recordings to prepare
24 for today's testimony?
25     A.    Only the audio from the videos.

Deposition Of Officer Pedro Aguila

1     Q.   And is that the audio from the videos in

2 Officer Bishop's, Officer Maynard's, yourself and the

3 retired Corporal's --

4     A.   Yes.

5     Q.   -- body-worn cameras?  So there's no other

6 audio that you reviewed to prepare for today's

7 testimony?

8     A.   No.

9     Q.   And there's no other video you reviewed to

10 prepare for today's testimony?

11    A.   No.

12    Q.   Did you prepare any notes to assist you in

13 this case?

14        MS. KORNBLAU:  I object to the extent it calls

15 for attorney/client privileged communications, but go

16 ahead.

17        THE WITNESS:  No.

18        MR. GRECH:  Q.  Did you prepare any

19 typewritten notes or notes on a computer to assist you?

20    A.   No.

21        MS. KORNBLAU:  Same objection, but go ahead.

22        THE WITNESS:  No.

23        MR. GRECH:  Q.  Did you talk to officer Bishop

24 in preparation for your testimony today?

25        MS. KORNBLAU:  And again, objection to the

Deposition Of Officer Pedro Aguila

1  extent it calls for attorney/client privileged

2  communications, but go ahead.

3          THE WITNESS:  No.

4          MR. GRECH:  Q.  Did you talk with Officer

5  Maynard in preparation for your testimony today?

6          MS. KORNBLAU:  Same objection.  Go ahead.

7          THE WITNESS:  No.

8          MR. GRECH:  Q.  Did you talk with the retired

9  Corporal in preparation for your testimony today?

10          MS. KORNBLAU:  Same objection.  Go ahead.

11          THE WITNESS:  No.

12          MR. GRECH:  Q.  In the past sixty days have

13  you spoken with Bishop, Maynard or the retired Corporal

14  regarding this case?

15      A.   No, not privately.

16      Q.   When you mean (sic) not privately, what do you

17  mean?

18          MS. KORNBLAU:  Again, objection to the extent

19  it calls for attorney/client privileged communications,

20  but go ahead.

21          THE WITNESS:  Only in a group setting with our

22  attorney present.

23          MR. GRECH:  Q.  I'd like to ask you some

24  questions about your qualifications to become a police

25  officer.  Did you go to high school?

Deposition Of Officer Pedro Aguila

1          A.    I did.

2          Q.    And where did you go to high school?

3                MS. KORNBLAU:  Objection.  Law enforcement

4    privacy privilege.  He's not going to give the name of

5    any educational institutions that he attended, but he

6    can tell you the state where he attended.

7                MR. GRECH:  Q.  Can you tell me which state in

8    which you attended high school?

9          A.    In California.

10         Q.    Did you graduate high school and receive a

11   diploma from that high school?

12         A.    I did.

13         Q.    When did you graduate high school?

14         A.    In 2014.

15         Q.    How old were you at the time?

16         A.    18.

17         Q.    Did you attend any college after graduating

18   high school?

19         A.    I did.

20         Q.    Where did you first attend college?

21               MS. KORNBLAU:  Again, objection.  Law

22   enforcement privacy privilege.  He can give you the

23   state where he attended school.

24               MR. GRECH:  Q.  What state did you attend

25   college?

Deposition Of Officer Pedro Aguila

1     A.   In California.
2     Q.   Can you tell me whether it was a two-year
3  institution or a four-year institution?
4     A.   It was a four-year institution.
5     Q.   And how long did you attend that four-year
6  institution?
7     A.   Three quarters.
8     Q.   Can you tell me what you studied at that
9  four-year institution for three quarters?
10    A.   Mathematics with an emphasis on statistics.
11    Q.   Did you take any classes at that four-year
12 institution on law?
13    A.   No.
14    Q.   Did you take any courses in that institution
15 regarding public policy?
16    A.   No.
17    Q.   Did you take any courses at that institution
18 regarding politics?
19    A.   No.
20    Q.   When did you attend that institution?
21    A.   Beginning of 2014 to the beginning of 2015.
22    Q.   Did you receive any kind of a credential like
23 a diploma or Associate's degree, Bachelor's Degree from
24 that institution?
25    A.   I did not.

Deposition Of Officer Pedro Aguila

1      Q.   After leaving that institution, did you
2  receive any other formal scholastic training?
3      A.   There was no more college after that.
4      Q.   How old were you when you completed your three
5  quarters at that academic institution?
6      A.   19.
7      Q.   Did you hold any employment outside of
8  attending college during the years when you were 18 to
9  19?
10      A.   I'm sorry, can you repeat the question?
11      Q.   Did you work while you went to college?
12      A.   Yes.
13      Q.   What did you do for work while you were in
14  college?
15      A.   I was a waiter, worked at Baskin-Robbins, and
16  I worked at Bed, Bath and Beyond.
17      Q.   Were you ever involved in a situation where
18  you had to use force as a waiter?
19      A.   No.
20      Q.   Were you ever involved in a situation where
21  you had to use force or force was used on you at
22  Baskin-Robbins?
23      A.   No.
24      Q.   And how about at Bed, Bath and Beyond?  Did
25  you ever have to use force or was forced ever used on

Deposition Of Officer Pedro Aguila

```
 1  you at Bed, Bath and Beyond?
 2      A.   No.
 3      Q.   During high school or even before that, had
 4  you ever had any training in self-defense?
 5      A.   No.  Just sports.
 6      Q.   I sense that I may not have been clear as to
 7  what I meant.  It includes martial arts training.  Have
 8  you ever had any martial arts training while you were
 9  in elementary or high school?
10      A.   No.
11      Q.   Or during the years when you were born until
12  18, any martial arts training whatsoever?
13      A.   No.
14      Q.   And then during your college year from 18 to
15  19, any martial arts or self-defense training?
16      A.   No.
17      Q.   And how about weapons training while you were
18  up in time -- excuse me -- from the time you were born
19  until the time you were 18, any training on the safe
20  use of weapons?
21      A.   No.
22      Q.   And from the time of 18 to 19, any training on
23  how to handle or use weapons, including firearms?
24      A.   No.
25      Q.   Had you ever discharged a firearm from the
```

Deposition Of Officer Pedro Aguila

1  time that you were say born to the time that you
2  graduated high school?
3      A.    Possibly.  I believe when I was younger.
4      Q.    Can you tell me more about that?
5      A.    It was, like, within a family setting.  I
6  think I was probably, like, six.
7      Q.    What type of firearm was it?
8      A.    I don't recall.
9      Q.    Was it a rifle?
10     A.    Probably a smaller rifle.
11     Q.    Did you ever discharge a handgun between the
12  time when you were born and the time when you were
13  18 years old?
14     A.    No.
15     Q.    And how about from 18 to 19?  Did you fire a
16  handgun at all?
17     A.    No.
18     Q.    Have you ever held a Taser from the time that
19  you were zero to graduating high school?
20     A.    No.
21     Q.    And how about a Taser from the time that you
22  were 18 to 19?  Did you ever handle or fire one?
23     A.    No.
24     Q.    Other than a waiter, Baskin-Robbins, Bed, Bath
25  and Beyond, from 18 years on, did you hold any other

Deposition Of Officer Pedro Aguila

1  employment?

2      A.   Yes.  After I joined the Air Force Reserves,

3  and then once I came back from schooling I went back to

4  Baskin-Robbins until I was employed with LAPD.

5      Q.   I want to ask you some questions about your

6  training in the Air Force Reserves.  When did you join

7  the Air Force Reserves?

8      A.   Technically in 2015, but I didn't leave to

9  boot camp until 2016.

10     Q.   How old were you when -- what age did you

11 reach in the year 2015?

12     A.   2015 I was 19.

13     Q.   Did you receive any training in the Air Force

14 Reserves?

15     A.   I did.

16     Q.   Please tell me what physical training you

17 received in the Air Force Reserves.

18     A.   Yes.  I did my seven and a half week boot

19 camp.

20     Q.   What sort of physical training did you receive

21 during your seven and a half weeks in boot camp?

22     A.   Various physical training.  It was daily push

23 ups, running, sit ups, obstacle courses.  Just

24 different things.

25     Q.   Did the training in boot camp involve physical

Deposition Of Officer Pedro Aguila

1  confrontations with an adversary?

2      A.    I don't recall there being any.

3      Q.    Did it involve any training regarding how to

4  take somebody into custody?

5      A.    I don't recall there being any.

6      Q.    Did it recall (sic) any training in

7  self-defense?

8      A.    I don't recall there being any.

9      Q.    Did it involve any training in firearms?

10     A.    Yes.

11     Q.    What type of firearms did you receive --

12  excuse me.  What type of firearms training did you

13  receive in boot camp at the Air Force?

14     A.    Yes.  It was pretty much basic safety rules

15  with a -- with a rifle.

16     Q.    Did you receive any type of law enforcement

17  type training within the Air Force?

18     A.    No.

19     Q.    Did you receive any instructions regarding the

20  use of force while in boot camp?

21     A.    I don't recall there being any.

22     Q.    Did you receive any instructions regarding the

23  use of force during the remainder of your time after

24  boot camp while in the Air Force Reserves?

25     A.    I don't recall there being any.

Deposition Of Officer Pedro Aguila

1      Q.   At some point did you apply to an academy to
2  become a law enforcement officer?
3      A.   I did.
4      Q.   When did you apply to an academy to become a
5  law enforcement officer?
6      A.   In 2016.
7      Q.   And where did you -- how many institutions, if
8  you understand my question, did you apply to?
9      A.   Three, I believe.
10     Q.   Excuse me?
11     A.   Three.
12     Q.   And which institutions did you apply to to
13  become a law enforcement officer or to receive training
14  to become a law enforcement officer?
15     A.   I applied to the California Highway Patrol,
16  the L.A. County Sheriff's Department, and then the Los
17  Angeles Police Department.
18     Q.   Were you accepted at the California Highway
19  Patrol?
20          MS. KORNBLAU:  I'll just object to the extent
21  that it calls for law enforcement privacy privilege,
22  but go ahead.
23          THE WITNESS:  I took their written test, and I
24  didn't pass the written test.
25          MR. GRECH:  Q.  Were you accepted at the Los

Deposition Of Officer Pedro Aguila

1    Angeles Police Department -- the LAPD academy?

2        A.   I was --

3             MS. KORNBLAU:  Same objection.  Go ahead.

4             THE WITNESS:  I was.

5             MR. GRECH:  Q.  The answer is yes?

6        A.   Yes.

7        Q.   Okay.  And how about the Los Angeles Sheriff's

8    Department?  Were you accepted there?

9             MS. KORNBLAU:  And same objection, but go

10   ahead.

11            THE WITNESS:  I passed their written test, but

12   I never proceeded.

13            MR. GRECH:  Q.  So there's a written test and

14   there's another test besides that.  Is that right?

15       A.   Yes.  Usually there's a physical test.

16       Q.   Okay.  Which academy -- did you ultimately go

17   to one of those three academies?

18       A.   Yes.

19       Q.   Which academy did you go to?

20       A.   The Los Angeles Police Department's academy.

21       Q.   When did you enter that academy?

22       A.   In March of 2017.

23       Q.   How old were you in March of 2017?

24       A.   I was 21.

25       Q.   And forgive me if I asked this already, but

Deposition Of Officer Pedro Aguila

1  what is your date of birth?

2          MS. KORNBLAU:  I'll object.  Law enforcement

3  privacy privilege.  I will instruct him not to answer

4  that.  He can tell you his age.

5          MR. GRECH:  Q.  How old were you in March of

6  2017?

7      A.   I was 21.

8      Q.   What types of training generally did you

9  receive at the Los Angeles Police Department academy?

10     A.   A variety of training.  Physical training,

11 classroom type setting training involving penal codes

12 interviews.  Just various topics related to law

13 enforcement.

14     Q.   I want to ask you about -- some questions

15 about the classroom training.  Was this training

16 involving the writing of reports?

17     A.   Yes.

18     Q.   Did this training include training on the law?

19     A.   Yes.

20     Q.   I want to ask you some questions about the

21 writing of reports.  Did this training include the

22 questioning of witnesses?

23     A.   Yes.

24     Q.   And did it include the taking of statements

25 given to you by witnesses?

Deposition Of Officer Pedro Aguila

```
 1        A.    Yes.
 2        Q.    Did it include the importance of what
 3   information to include in a police report?
 4        A.    Yes.
 5        Q.    Did it involve documenting situations in which
 6   force was used by a police officer?
 7        A.    Yes.
 8        Q.    Can you tell me what you were taught regarding
 9   the documentation in a report of situations where you
10   observed force used by another police officer?
11            MS. KORNBLAU:  Objection.  Calls for a
12   narrative, but go ahead.
13            THE WITNESS:  In LAPD the officers were
14   supposed to write their own -- document their own force
15   that was used.  I wouldn't document somebody else's
16   force that was used.
17            MR. GRECH:  Q.  Were you told then that when
18   you write reports you should not include whether or not
19   you witnessed a use of force by another officer?
20            MS. KORNBLAU:  Objection.  Misstates
21   testimony, but go ahead.
22            THE WITNESS:  No, I was never told that.
23            MR. GRECH:  Q.  Is it -- what is your
24   understanding, based on your training at the LAPD
25   academy, about your responsibility for recording when
```

Deposition Of Officer Pedro Aguila

1    you witness the use of force by another officer?
2          MS. KORNBLAU:  Objection.  Vague and
3    ambiguous.  Go ahead.
4          THE WITNESS:  Are you asking for the LAPD's
5    policy?
6          MR. GRECH:  Q.  I'm asking about your training
7    at the Los Angeles Police Department regarding writing
8    reports that document the use of force which you
9    witnessed by another officer.  What was your training
10   in that regard?
11       A.   You asked about a report.
12       Q.   When I say recording, sometimes I use that to
13   mean how we write it down in reports and how we
14   memorialize it in words.  Do you have any question
15   about that?
16       A.   Well, you clarified it now.  Thank you.
17       Q.   Okay.  Can you answer the question?
18       A.   Yes.  So in LAPD you can document it if it's
19   going to assist you in your -- document your use of
20   force.  However, if somebody else and you weren't
21   involved, they are going to write it.
22       Q.   After you -- oh, while you were at the Los
23   Angeles Police Department, were you given any training
24   regarding vehicle chases?
25       A.   Yes.

Deposition Of Officer Pedro Aguila

1     Q.    Did that training discuss physical and

2    emotional responses that officers might have during the

3    chase?

4            MS. KORNBLAU:  Objection.  Vague.  Go ahead.

5            THE WITNESS:  Can you clarify?

6            MR. GRECH:  Q.  During the classroom training

7    and during video presentations at the Los Angeles

8    Police Department academy, were you shown videos of

9    vehicle chases?

10    A.    Yes.

11    Q.    Were you told to anticipate changes in

12    respiration in the event that you would one day find

13    yourself in a vehicle chase?

14            MS. KORNBLAU:  Objection.  Vague.  Go ahead.

15            MR. GRECH:  Q.  If you don't understand,

16    please let me know.

17    A.    I don't recall.

18    Q.    Were you told to experience changes in

19    breathing during a vehicle chase?

20    A.    I don't recall.

21    Q.    Were you trained that you might experience

22    changes in heart rate during a vehicle chase?

23    A.    I don't recall.

24    Q.    Were you trained in a classroom setting and

25    with the assistance of videos that you might experience

Deposition Of Officer Pedro Aguila

1    an elevated emotional state during a vehicle chase?

2        A.    I don't recall.

3        Q.    Were you trained and taught that you might

4    experience the effects of adrenalin on the body during

5    a vehicle chase?

6        A.    I don't recall.

7        Q.    Excuse me?

8        A.    I don't recall.

9        Q.    This event that we're talking about occurred

10   in -- on April 29th, 2022.  Had you ever been involved

11   in a vehicle chase as a law enforcement officer prior

12   to April 29th of 2022?

13       A.    Yes.

14       Q.    And during those vehicle chases, did you

15   notice whether or not you had an elevated heart rate?

16       A.    Yes.

17       Q.    That you had -- did you notice whether or not

18   you had increased respiration, that is breathing

19   faster?

20       A.    Yes.

21       Q.    You did, didn't you?  Right?  Is the answer

22   yes?

23       A.    I believe so, yes.

24       Q.    Okay.  Your heart would beat faster and

25   your -- you would breathe faster during a vehicle

Deposition Of Officer Pedro Aguila

1  chase.  That's the nature of vehicle chases, correct?

2         MS. KORNBLAU:  Objection.  Vague.  Go ahead.

3         THE WITNESS:  I believe depending, but I

4  believe in most cases probably.

5         MR. GRECH:  Q.  And although you don't recall

6  training specifically for how you might feel during

7  vehicle chases, it is possible that you did receive

8  that training; you just don't remember it.  Is that a

9  fair statement?

10     A.   I remember them saying that the adrenalin will

11  kick in at certain points.  I don't remember

12  specifically being in pursuits.  I remember them

13  mentioning it.

14     Q.   So you do recall now that there has been

15  discussion in a classroom setting that adrenalin might

16  kick in in your body during the execution of your

17  duties as a police officer, right?

18         MS. KORNBLAU:  Again, objection.  Calls for

19  hypothetical, but go ahead.

20         THE WITNESS:  I don't remember.  Just now you

21  were asking me specifically when it came to vehicle

22  pursuits.

23         MR. GRECH:  Q.  In fact your training involved

24  how to deal with that, correct?  How to anticipate

25  adrenalin and how to deal with it so you could do your

Deposition Of Officer Pedro Aguila

1   job better, fair enough?

2       A.   I think they -- more in a sense this was going

3   to happen, so just mentally prepare for it, but that's

4   it.

5       Q.   The point is to be prepared for a stressful

6   situation, correct?

7       A.   Of course.

8       Q.   That's what your training -- that's one

9   component of the training, correct?

10      A.   Yes.

11      Q.   While you were at the LAPD, did you receive

12  any training in tactics?

13      A.   Yes.

14      Q.   What type of training did you receive

15  regarding tactics?

16      A.   Various tactics on how to approach suspects,

17  building searches, felony stops.  Much more.

18      Q.   Excuse me?

19      A.   Much more.  Every situation is different.

20  It's various situations.  Different approaches.

21      Q.   Did you receive training in how to conduct

22  vehicle stops --

23      A.   Yes.

24      Q.   -- while at the LAPD academy?

25      A.   Yes.

Deposition Of Officer Pedro Aguila

```
1        Q.    Did you receive training on vehicle chases
2   while at the LAPD academy?
3        A.    Yes, we did, pursuits.
4        Q.    What type of training did you receive
5   regarding vehicle chases at the LAPD academy?
6        A.    EVOC training.
7        Q.    Excuse me?
8        A.    EVOC training.
9        Q.    What is that?
10        A.    Like a driving class by the LAPD.
11        Q.    Can you spell the acronym that you just used?
12        A.    E-V-O-C.
13        Q.    Did your training at the LAPD academy involve
14   the use of firearms?
15        A.    Yes.
16        Q.    What firearms were you trained on -- trained
17   to use at the LAPD academy?
18        A.    A Smith and Wesson MNP.
19        Q.    What kind of a weapon is that?
20        A.    A handgun.
21        Q.    And how many millimeters is that handgun, if
22   you know?
23        A.    I don't know.
24        Q.    Can you tell me whether or not that handgun
25   upon which you were trained and for which you don't
```

Deposition Of Officer Pedro Aguila

1  know the millimeters, was that a revolver or a
2  semiautomatic weapon?
3      A.    A semiautomatic.
4      Q.    Were you trained on any other weapon than the
5  semiautomatic Smith and Wesson while at the LAPD
6  academy?
7      A.    We used different -- a variety of different
8  firearms, different semiautomatic handguns during
9  training, but that was primarily my issued gun, so
10  that's the one I used the most.
11      Q.    Were you ever provided ammunition with which
12  to load the weapon, the Smith and Wesson?
13      A.    Yes.
14      Q.    Can you tell me the size of the a ammunition
15  that you would load the Smith and Wesson with?
16      A.    Nine mill.
17      Q.    Does the fact that you would use 9 mm
18  ammunition suggest to that you were trained on a 9 mm
19  Smith and Wesson semiautomatic handgun?
20      A.    I received a lot of training with that one,
21  yes.
22      Q.    Okay.  And is it your best recollection that
23  the Smith and Wesson handgun that you used was a 9 mm?
24      A.    Yes.
25      Q.    Okay.  Were you trained on the use of Tasers

Deposition Of Officer Pedro Aguila

1  at the LAPD academy?

2      A.    Yes.

3      Q.    Tell me what your training consisted of

4  regarding the use of Tasers at the LAPD academy.

5      A.    Just it -- it included the -- us actually

6  deploying the Taser various times and then actually

7  receiving the -- actually getting Tased as well.

8      Q.    Were you provided any instructional materials

9  regarding the use of Tasers; booklets, pamphlets

10 publications, print materials to read?

11     A.    On how to use it or the policy?

12     Q.    Both.

13     A.    Policy, yes.  How to use it, I believe it was

14 the PowerPoint.  Just talked to us.

15     Q.    How many police agencies have you worked for?

16     A.    Two.

17     Q.    Which police agencies have you worked for?

18     A.    The Los Angeles Police Department and the

19 Hemet Police Department.

20     Q.    What years did you work for LAPD?

21     A.    2017 to 2021.

22     Q.    And what years have you worked for Hemet PD?

23     A.    2021 until now.

24     Q.    Have you received any training regarding the

25 use of Tasers from Hemet -- excuse me, from Los Angeles

Deposition Of Officer Pedro Aguila

1  Police Department after you completed your academy
2  training?
3      A.    Sorry, can you repeat the question?
4      Q.    Had you received any training in the use of
5  Tasers after completing the academy and while working
6  at the Los Angeles Police Department?
7      A.    Yes, I believe there was a refresher course.
8      Q.    Were you given any written materials by the
9  Los Angeles Police Department during that refresher
10 course training regarding the use of Tasers?
11     A.    Yes.
12     Q.    Were you provided also with written
13 information regarding LAPD policies regarding the use
14 of Tasers when you had that refresher training?
15     A.    Yes.
16     Q.    How many refresher trainings did you have at
17 the Los Angeles Police Department regarding the use of
18 Tasers after you completed the academy?
19     A.    I believe one.
20     Q.    At the academy were you trained in the writing
21 of reports to include when a Taser was used during an
22 arrest?
23     A.    Yes.
24     Q.    What were you told at the academy as to how
25 you should report the use of a Taser when one is

Deposition Of Officer Pedro Aguila

1  deployed during an arrest that you're involved in?

2      A.    Again, like I previously stated, if you are

3  the one, you are responsible for your own

4  documentation, and the supervisor is responsible to

5  overlook that.  If you just watched the Taser being

6  done by somebody else, you're not going to document it.

7      Q.    Is it fair to say that you're trained not to

8  document when a fellow officer uses a Taser?

9          MS. KORNBLAU:  Objection.  Misstates

10 testimony, but go ahead.

11          THE WITNESS:  I wouldn't say that.

12          MR. GRECH:  Q.  Why not?

13          MS. KORNBLAU:  Objection.  Vague.  Go ahead.

14          THE WITNESS:  It's not told to us specifically

15 to not do it.

16          MR. GRECH:  Q.  Have you ever recorded in your

17 reports the use of a Taser by another officer?

18          MS. KORNBLAU:  Objection.  Vague and

19 ambiguous, but go ahead.

20          THE WITNESS:  I believe so.

21          MR. GRECH:  Q.  I'm not sure I understand your

22 answer.  What is it that you believe?

23      A.    I believe I have.

24      Q.    Why would you record the use or why have you

25 recorded the use of the Taser by other officers in the

Deposition Of Officer Pedro Aguila

1  past when you witnessed it?

2        MS. KORNBLAU:  Objection.  Vague and

3  ambiguous, but go ahead.

4        THE WITNESS:  Because it helps support what

5  I'm trying to write.  My job is not to write what they

6  are doing.  When I write my own statement, if I feel

7  that it's going to support or help give a better

8  glimpse to the reader, then I will include it.

9        MR. GRECH:  Q.  What criteria do you use when

10 deciding whether or not to record in your report the

11 use of a Taser by a fellow officer?

12        MS. KORNBLAU:  Objection.  Asked and answered.

13 Go ahead.

14        THE WITNESS:  Again, if I feel it's going to

15 give a better insight to the reader, then I will

16 include it in mine, but I already know it's being

17 documented by the person who had done it.

18        MR. GRECH:  Q.  Approximately how many times

19 have you witnessed a Taser used by another officer?

20     A.   I don't recall.

21     Q.   Can you give me your best estimate as to how

22 many times you witnessed a Taser being used in the

23 field on a suspect?

24     A.   More than ten.

25     Q.   Possibly more than twenty?

Deposition Of Officer Pedro Aguila

1          MS. KORNBLAU:  Objection.  Asked and answered,
2    but go ahead.
3          THE WITNESS:  I don't recall.
4          MR. GRECH:  Q.  How many times do you think
5    that you've recorded in a police report your witnessing
6    of the use of a Taser on a suspect by another officer?
7      A.   I don't recall.
8      Q.   What is your best estimate, knowing that you
9    won't be exact, as to how many times you've recorded
10   the use of a Taser in the field by a fellow officer?
11         MS. KORNBLAU:  Objection.  Asked and answered,
12   but go ahead.
13         THE WITNESS:  I don't recall.
14         MR. GRECH:  Q.  Take a five-minute break.  I
15   need to use the restroom.  And I'll be back in about
16   five, maybe -- how about ten minutes?
17         MS. KORNBLAU:  Sure.
18              (Brief recess.)
19         MR. GRECH:  Q.  So I want to ask you some
20   questions about your training in the law while at the
21   Los Angeles Police Department, specifically your
22   training on use of force when effecting an arrest.  Do
23   you know what I'm talking about?
24      A.   Yes.
25      Q.   Okay.  Were you given classroom training on

Deposition Of Officer Pedro Aguila

1  the use of force in effecting an arrest?

2      A.   Yes.

3      Q.   Okay.  And that -- would that be in the form

4  of lectures by more experienced officers and

5  instructors?

6      A.   Yes.

7      Q.   And did you have any lawyers train you on the

8  use of force as well?

9      A.   I don't believe so.

10     Q.   Okay.  What were you taught were the

11  guidelines while you were at the academy about how much

12  force could be used to effect an arrest?

13     A.   As it usually goes, I believe it was somewhere

14  in the lines of reasonable force, but the LAPD's

15  policies has changed since the last eight years.

16     Q.   Okay.  Are the policies on the use of force by

17  the Hemet Police Department different than the policies

18  that you were taught at the Los Angeles Police

19  Department?

20     A.   They are not exact.

21     Q.   Okay.  Were you given any training on the use

22  of force at the Hemet Police Department?

23     A.   Yes.

24     Q.   Did that training include any -- a classroom

25  setting?

Deposition Of Officer Pedro Aguila

1       A.    Yes.

2       Q.    Can you tell me where that training occurred?

3       A.    It was in the -- I believe it was like a fire

4    department building.  They have a classroom there and

5    our instructors.

6       Q.    And can you tell me who sponsored that

7    training?

8       A.    It was within the Hemet Police Department.

9       Q.    Can you tell me whether or not the instructors

10   were from the Hemet Police Department, or were they

11   from somewhere else?

12      A.    They were from the Hemet Police Department.

13      Q.    I'm sorry, I spoke over you.  Let me let you

14   answer now.

15      A.    They were from the Hemet Police Department.

16      Q.    And what guidelines were you given at the

17   training at the Hemet Police Department regarding the

18   use of force?

19      A.    Well, they referred me to the policy --

20   referred me to the policy, and gave me a copy.

21      Q.    And what is the policy regarding the use of

22   force to effect arrests at the Hemet Police Department?

23      A.    The exact verbiage, I have to refer to the

24   policy, but it's to use the amount of force that's

25   objectively reasonable given the totality of the

Deposition Of Officer Pedro Aguila

1  circumstances.

2      Q.   Were you told about the amount of force that
3  you could use if there's a threat of death or serious
4  bodily injury that is imminent?

5      A.   Yes.

6      Q.   Were you taught in your Hemet Police
7  Department training that when a threat of death or
8  serious bodily injuries is imminent based on the
9  totality of the circumstances -- based on the totality
10  of the circumstances a reasonable officer in the same
11  situation would believe that a person has the present
12  ability to deliver serious bodily injury; that that was
13  a factor you should consider?

14      MS. KORNBLAU:  Objection.  Lacks foundation,
15  but go ahead.

16      THE WITNESS:  I'm sorry, can you read it one
17  more time?

18      MR. GRECH:  Q.  Sure.  Let me ask a simpler
19  question.  In deciding whether or not to use deadly
20  force or force that would cause serious bodily injury,
21  were you taught to evaluate the present ability of the
22  suspect to hurt you or others?

23      A.   Yes.

24      Q.   What does that mean to you?

25      MS. KORNBLAU:  Objection.  Vague, but go

Deposition Of Officer Pedro Aguila

1  ahead.

2           THE WITNESS:  That means if myself, my

3  partners or anybody else, civilian, are in -- are

4  threatened in the way of just bodily injury or death,

5  then we're allowed to use deadly force.

6           MR. GRECH:  Q.  Does that instruction on

7  present ability ever act as restraint on an officer's

8  lawful authority to use force?

9      A.   To use force or deadly force?

10     Q.   To -- let's start with force.  Does the

11 present ability or inability of a suspect to hurt you

12 affect whether or not you or another officer can use

13 force?

14          MS. KORNBLAU:  Objection.  Calls for a

15 hypothetical, but go ahead.

16          THE WITNESS:  I think the -- yes, the ability

17 of somebody or somebody having the ability to present

18 harm, I think that will be factored into what kind of

19 force is used.

20          MR. GRECH:  Q.  Okay.  Now let's flip that.

21 How about somebody's inability to effect harm?  Does

22 that act or instruct whether or not force should be

23 used?

24     A.   Can you clarify?

25     Q.   Sure.  If a guy's handcuffed and restrained

Deposition Of Officer Pedro Aguila

1    and can't hurt you, does that act as -- does that give
2    you any guidance as to whether or not you can use force
3    on the person?
4            MS. KORNBLAU:  Objection.  Calls for a
5    hypothetical.  Go ahead.
6            THE WITNESS:  Yeah, say that again.  It's a
7    hypothetical.  I mean, I've seen people who are
8    handcuffed and still kick and resist.  Obviously force
9    will still be needed.
10           MR. GRECH:  Q.  Is force needed in all
11   circumstances where a person is physically restrained?
12           MS. KORNBLAU:  Objection.  Vague and
13   ambiguous.  Go ahead.
14           THE WITNESS:  Not all.
15           MR. GRECH:  Q.  Is there a difference in the
16   use of force when the officer's use of force could
17   inflict serious bodily injury on somebody?
18       A.    Can you clarify the question?
19       Q.    Does the policy of the Hemet Police Department
20   allow the use of force that might inflict serious
21   bodily injury?
22       A.    It does if the officers use the amount of
23   force that's objectively reasonable given the totality
24   of the circumstances.
25       Q.    May the officer use force that might inflict

Deposition Of Officer Pedro Aguila

1  serious bodily injury when there's no threat of injury

2  to the officer?

3          MS. KORNBLAU:  Objection.  Calls for a

4  hypothetical, but go ahead.

5          THE WITNESS:  Again, given the totality of the

6  circumstances.  Just because I'm not in the threat of

7  danger, doesn't mean nobody else is.

8          MR. GRECH:  Q.  May the officer use force

9  which would cause serious bodily injury when nobody is

10 threatened with physical injury?

11         MS. KORNBLAU:  Objection.  Calls for

12 speculation.  Calls for a hypothetical, but go ahead.

13         THE WITNESS:  I don't see an officer using

14 that amount of force if nobody is at threat.

15         MR. GRECH:  Q.  Does the Hemet Police

16 Department have a policy regarding the reporting of the

17 use of force by a police officer who witnesses an

18 unlawful use of force by another officer?

19    A.    I would have to refer to the manual.

20    Q.    Is that because you don't know whether or not

21 the Hemet Police Department has a policy regarding the

22 reporting of the use of excessive force by another

23 officer?

24         MS. KORNBLAU:  Objection.  Argumentative, but

25 go ahead.

Deposition Of Officer Pedro Aguila

1          THE WITNESS:  I believe there's a policy.  I
2    just don't know the exact verbiage.
3          MR. GRECH:  Q.  What is your understanding of
4    the Hemet Police Department's policy regarding the duty
5    of a police officer who witnesses excessive force used
6    by another police officer?
7          MS. KORNBLAU:  Objection.  Vague and
8    ambiguous.  Go ahead.
9          THE WITNESS:  Repeat that one more time.
10          MR. GRECH:  Q.  Sure.  What is your
11    understanding of the policy in the Hemet Police
12    Department regarding the duty of an officer who
13    witnesses excessive force being used by another
14    officer?
15          MS. KORNBLAU:  Objection.  Lacks foundation,
16    but go ahead.
17          THE WITNESS:  I believe our duty is to
18    intervene and report it to the supervisor if needed.
19          MR. GRECH:  Q.  Does the Hemet Police
20    Department have a policy that the officer witnessing
21    the use of excessive force by another officer should
22    include that information in a written report?
23          MS. KORNBLAU:  Objection.  Lacks foundation,
24    but you can answer.
25          THE WITNESS:  Can you repeat that one more

Deposition Of Officer Pedro Aguila

1  time?

2          MR. GRECH:  Q.  Does the Hemet Police

3  Department have a policy that an officer witnessing the

4  use of excessive force by another officer, that the

5  witnessing officer should include that information in

6  his report?

7          MS. KORNBLAU:  Objection.  Lacks foundation,

8  but, go ahead.

9          THE WITNESS:  I believe if somebody believes

10  or determines that it's excessive, again their duty is

11  to intervene and report it to the supervisor.

12          MR. GRECH:  Q.  And to be clear, because that

13  didn't exactly answer the question, wouldn't you have a

14  duty to include the use of excessive force in your

15  arrest report if you witnessed another officer doing

16  that?

17          MS. KORNBLAU:  Objection.  Asked and answered.

18  Lacks foundation, but go ahead.

19          THE WITNESS:  Again, my job would be to

20  intervene, to give it to a supervisor.  And I'm sure my

21  statement would be taken by the supervisor, and they

22  would include it in their report.

23          MR. GRECH:  Q.  I'm sorry, can you say the

24  last few words again.

25      A.   That my statement would be taken from a

Deposition Of Officer Pedro Aguila

1  supervisor, and they would have it documented.

2      Q.   Because that still doesn't answer whether or

3  not you believe you have a duty to include that in your

4  report; does the Hemet Police Department have a policy

5  that would require you to report witnessing excessive

6  force by another officer in your own individual report

7  of that arrest?

8          MS. KORNBLAU:  Objection.  Lacks foundation.

9  Asked and answered.  Go ahead.

10         THE WITNESS:  So again, the supervisor of that

11 officer who is using the force, they would document

12 what they did.  At that point it's not for me to

13 determine if it's excessive or not.

14         MR. GRECH:  Q.  I wasn't asking whether or not

15 that was excessive.  I'm asking if you observed what

16 you believed to be excessive force use, you've told me

17 that you have a duty to intervene.  Is that correct?

18     A.   Yes.

19     Q.   You also have a duty to write reports when you

20 participate in an arrest, correct?

21     A.   Yes.

22     Q.   And in that report, does the Hemet Police

23 Department require you to put into your report

24 witnessing the use of excessive force if that's what

25 you believe you've seen?

Deposition Of Officer Pedro Aguila

1            MS. KORNBLAU:  Objection.  Lacks foundation.
2   Vague and ambiguous, but you can answer.
3            THE WITNESS:  Again, my duty would be to
4   intervene and give it to the supervisor, and at that
5   point they can document it.  That officer is going to
6   document what they did in their report, and I usually
7   just put that you can reference the report for further
8   details.
9            MR. GRECH:  Q.  Were you ever given training
10  regarding the government codes requirement that a
11  police officer record in his report when he or she
12  witnesses the use of excessive force by another
13  officer?
14       A.   I don't recall.
15       Q.   Do you know whether the -- whether or not the
16  law requires you to include in your report the
17  witnessing of excessive force by a fellow officer?
18            MS. KORNBLAU:  Objection.  Asked and answered.
19  Go ahead.
20            THE WITNESS:  Again, I believe that the law
21  states that the duty would be to intervene and report
22  it to the supervisor.
23            MR. GRECH:  Q.  Have you ever received any
24  training from the Riverside Sheriff's Department?
25       A.   Yes.

Deposition Of Officer Pedro Aguila

1    Q.    And that -- did that ever involve either

2  vehicle chases, arrests, use of force or training on

3  the law?

4    A.    Training on the law.

5    Q.    And was that at the Ben Clark Academy?

6    A.    Yes.

7    Q.    When did that occur?

8    A.    I just recently went to a class there earlier

9  in 2024.

10    Q.    What did that training include?

11    A.    It included -- it was a class regarding sexual

12  assaults and child abuse.

13    Q.    Did it involve the writing of reports?

14    A.    Yes.

15    Q.    Generally with regard to your training and the

16  writing of reports, is it important that reports be

17  written close in time to when the event occurred?

18    A.    When feasible.

19    Q.    Why is that, as you understand it, that

20  reports should be written close in time to when the

21  events occurred?

22          MS. KORNBLAU:  Objection.  Calls for

23  speculation.  Go ahead.

24          THE WITNESS:  I think it helps give the

25  officer a better account of things, but I think

Deposition Of Officer Pedro Aguila

 1  body-worn cameras definitely help where you -- now you
 2  can have that gap.  Before a lot of people didn't have
 3  that, so --
 4        MR. GRECH:  Q.  When you tell me it helps the
 5  officer give a better account, is that because
 6  recollections, in your experience, tend to deteriorate
 7  over time?
 8        MS. KORNBLAU:  Objection.  Calls for
 9  hypothetical, but go ahead.
10        THE WITNESS:  Definitely I believe over long
11  periods of time you tend to forget unless you're
12  reminded.
13        MR. GRECH:  Q.  Were you taught about how
14  police reports are used by other partners in the
15  criminal justice system?
16     A.   Can you clarify the question?
17     Q.   Once you write a report, is it fair to say
18  your understanding is that it is then given to a
19  supervisor to review?
20     A.   Yes.
21     Q.   And then after that it is forwarded on to
22  other law enforcement agencies.  Is that true?
23     A.   Yes, to the district attorney's office.
24     Q.   Okay.  And is it your understanding that the
25  district attorney's office would then read your report

Deposition Of Officer Pedro Aguila

1  and decide whether or not to file charges?

2      A.    Yes.

3      Q.    And is it your experience that the district

4  attorney's office might then use that information as to

5  whether or not to set bail or to determine whether or

6  not there might be any defenses to the charges?

7           MS. KORNBLAU:  Objection.  Calls for

8  speculation, but go ahead.

9           THE WITNESS:  Yes, I believe that they will

10 determine if they want to file charges based off the

11 report.

12          MR. GRECH:  Q.  My point, I guess, is it true

13 that you were trained that your reports should be

14 reliable so that the district attorney might be able to

15 trust them?

16          MS. KORNBLAU:  Objection.  Calls for a

17 hypothetical.  Vague and ambiguous, but go ahead.

18          THE WITNESS:  Yes, they should be a pretty

19 accurate account of what happened.

20          MR. GRECH:  Q.  When you mean a pretty

21 accurate account, how accurate should they be before

22 they are forwarded to the district attorney's office?

23     A.    I mean, it's -- I think they should be

24 accurate.  Obviously we can't -- statements can't be

25 exact.  That's why we refer to body-worn camera a lot.

Deposition Of Officer Pedro Aguila

1   But yes, actually should be a real good account so this
2   way the DA can figure out what they want to do with the
3   case.
4       Q.   And tell me something, are you expected to
5   write complete reports?  I'm not talking about perfect
6   reports, but complete reports.
7           MS. KORNBLAU:  Objection.  Vague and
8   ambiguous.  Go ahead.
9           THE WITNESS:  Depends what you mean by
10  complete.
11          MR. GRECH:  Q.  What do you understand
12  complete to mean?
13      A.   Well, two sentences can be completed.
14      Q.   Oh, you thought I meant it just was complete
15  sentences?  Let me see if I can redefine that.  Do you
16  think if you're referring a report to the district
17  attorney that your training just required complete
18  sentences?  Is that what you're telling me?
19          MS. KORNBLAU:  Objection.  Misstates
20  testimony, but go ahead.
21          THE WITNESS:  No, that's not what I'm telling
22  you.
23          MR. GRECH:  Q.  Were you trained that your
24  reports should be complete beyond complete sentences?
25          MS. KORNBLAU:  Objection.  Vague and

Deposition Of Officer Pedro Aguila

1   ambiguous, but go ahead.

2          THE WITNESS:  I was trained that the report

3   should be a representation of what happened.

4          MR. GRECH:  Q.  After your graduation from the

5   academy, the LAPD academy, did you have any in-field

6   training at the Los Angeles Police Department regarding

7   the use of force?

8      A.   I believe so.

9      Q.   Can you tell me what that consisted of?

10     A.   Yes.  I can't give you exact dates and times,

11  but there were training days where we went to the

12  academy and conducted scenarios with updated policies.

13     Q.   Did those trainings at the LAPD after the

14  academy include the use of force when taking suspects

15  into custody who were unarmed?

16     A.   I don't know if it's that specific, but taking

17  people into custody or people who are resisting.

18     Q.   And is that specifically at the LAPD that you

19  received use of force training regarding taking people

20  into custody who were resisting arrest?

21     A.   Yes.  You asked me at LAPD, so that was --

22     Q.   Sure.  And how about Hemet PD?  Did you

23  receive training in taking people into custody?

24     A.   Yes.

25     Q.   Did that involve situations -- did the

Deposition Of Officer Pedro Aguila

1    training at Hemet PD involve taking people into custody
2    who were resisting?
3         A.   Yes.
4         Q.   Is it true that your training at the academy
5    and at the LAPD told you that you could use reasonable
6    force?
7         A.   In LAPD?
8         Q.   Yes.
9         A.   Yes.
10        Q.   And is it true that reasonable force at the
11   LAPD was defined for you as the minimal amount of force
12   necessary to achieve compliance?
13             MS. KORNBLAU:  Objection.  Lacks foundation.
14   Go ahead.
15             THE WITNESS:  I believe so.
16             MR. GRECH:  Q.  Is it true that was the same
17   standard you were trained on at the Hemet PD; that
18   reasonable force should be the minimal amount of force
19   necessary to achieve compliance?
20             MS. KORNBLAU:  Objection.  Lacks foundation.
21   Vague and ambiguous.  Go ahead.
22             THE WITNESS:  Yes.  The amount of force in
23   Hemet was the amount objectively reasonable given the
24   circumstances.
25             MR. GRECH:  Q.  Isn't it true that reasonable

Deposition Of Officer Pedro Aguila

1   force was defined for you by the Hemet Police as

2   meaning it should be the minimal amount of force

3   necessary to achieve compliance?

4           MS. KORNBLAU:  Objection.  Lacks foundation.

5   Vague and ambiguous.

6           THE WITNESS:  I believe so.

7           MR. GRECH:  Q.  In other words, is it your

8   understanding that you are permitted or not permitted

9   to use greater force than is necessary to obtain

10  compliance?

11          MS. KORNBLAU:  Objection.  Lacks foundation.

12  Vague and ambiguous.  Asked and answered, but go ahead.

13          THE WITNESS:  Can you repeat the question?

14          MR. GRECH:  Q.  Sure.  Is an officer of the

15  Hemet Police Department permitted to use more force

16  than is necessary to achieve compliance?

17          MS. KORNBLAU:  Objection.  Lacks foundation.

18  Go ahead.

19          THE WITNESS:  I don't believe so.

20          MR. GRECH:  Q.  Are you sure?

21          MS. KORNBLAU:  Objection.  Argumentative.

22  Asked and answered.

23          THE WITNESS:  Again, they are able to use an

24  objectively amount of reasonable force in order to -- I

25  mean given the circumstances.  And so if it's not

Deposition Of Officer Pedro Aguila

1  necessary, I don't see anybody using excessive force.
2          MR. GRECH:  Q.  Thank you.  Counting your time
3  with LAPD, how many years have you been in law
4  enforcement up to today's date?  I'm sorry, did I miss
5  the answer?
6      A.  I'm sorry, I said eight years.
7      Q.  I did miss it.  I apologize.  I've got to get
8  through some basic questions for Trent.  After
9  graduation from the LAPD academy, did you do any field
10  training with the LAPD?
11     A.  I did.
12     Q.  And how long was that for?
13     A.  Six months.
14     Q.  And did you have different field training
15  officers?
16     A.  I did.
17     Q.  Did you then patrol on your own after that?
18  Let me back up.  Were you assigned to patrol at LAPD?
19     A.  Yes.
20     Q.  Were you in a single-man unit or with a
21  partner when you were first assigned to patrol at LAPD?
22     A.  Two-man units.  It was very rare that somebody
23  works one man.  So there could have been time I worked
24  one man by myself, but typically it's two people.
25     Q.  Approximately how many times at the LAPD have

Deposition Of Officer Pedro Aguila

1  you seen a fellow officer used force to take a suspect

2  into custody?

3          MS. KORNBLAU:  Objection.  Vague and

4  ambiguous.  Go ahead.

5          THE WITNESS:  I don't recall.  I mean,

6  numerous.

7          MR. GRECH:  Q.  Can you give your best

8  estimate as to how many times you've seen a fellow

9  officer use force at the LAPD to take somebody into

10 custody?

11         MS. KORNBLAU:  Same objection.

12         THE WITNESS:  Depends what you define as

13 force.  Some people guide people to the car.  That's

14 every day.

15         MR. GRECH:  Q.  What do you define as force

16 to take people into custody?

17         MS. KORNBLAU:  Objection.  Vague and

18 ambiguous.  Go ahead.

19         THE WITNESS:  Well, take into custody or

20 saying use force?  Because you said use force just in

21 general.

22         MR. GRECH:  Q.  Well, the way it works is I

23 ask questions and you answer them.  So what you asked

24 me a question about what I defined as force, and then I

25 asked you a question what you defined as force.  So

Deposition Of Officer Pedro Aguila

1   let's -- let's back up and start all over.

2          At the LAPD, have you ever seen force applied

3   to take somebody into custody that you thought could

4   cause serious bodily injury?

5          MS. KORNBLAU:  Objection.  Vague and

6   ambiguous.  Calls for a hypothetical.  Go ahead.

7          THE WITNESS:  Have I ever seen that?  Yes.

8          MR. GRECH:  Q.  Approximately how many times

9   have you seen an officer take somebody into custody

10  while working at the LAPD where you thought the force

11  used could cause serious bodily injury?

12         MS. KORNBLAU:  Objection.  Vague and

13  ambiguous.  Go ahead.

14         THE WITNESS:  Approximately less than ten.

15         MR. GRECH:  Q.  At the Hemet Police

16  Department, have you ever seen an officer use force to

17  take somebody into custody that you thought could cause

18  serious bodily injury?

19         MS. KORNBLAU:  Objection.  Lacks foundation.

20  Vague and ambiguous.  Go ahead.

21         THE WITNESS:  Yes.  Yes, I have.

22         MR. GRECH:  Q.  Approximately how many

23  occasions have you seen a Hemet police officer take

24  somebody into custody using force that you thought

25  could cause serious bodily injury?

Deposition Of Officer Pedro Aguila

1          MS. KORNBLAU:  Same objections.

2          THE WITNESS:  Probably less than five.

3          MR. GRECH:  Q.  So the no more than ten and no

4    more than five instances in which you have seen force

5    used which could cause serious bodily injury, have you

6    ever reported to a supervisor what you thought to be

7    the unlawful use of force by a police officer?

8          MS. KORNBLAU:  Objection.  Compound.  Vague

9    and ambiguous.  Unintelligible, but go ahead.

10         THE WITNESS:  I never said they were unlawful.

11         MR. GRECH:  Q.  I didn't ask that.  I asked if

12   you ever reported the unlawful use of force by a fellow

13   police officer.

14         MS. KORNBLAU:  Objection.  Vague and

15   ambiguous.  Unintelligible.  Lacks foundation.  Calls

16   for a hypothetical.  Calls for speculation, but go

17   ahead.

18         THE WITNESS:  No, because I've never seen

19   unlawful use of force.

20         MR. GRECH:  Q.  To be fair, are you also

21   saying that you have never reported a fellow officer

22   for using excessive force ever?

23         MS. KORNBLAU:  Again, vague and ambiguous.

24   Unintelligible.  Calls for a hypothetical.

25   Speculation.  Go ahead.  Asked and answered.  Go ahead.

Deposition Of Officer Pedro Aguila

```
 1            THE WITNESS:  Because I have never used an
 2   unlawful amount of force or excessive force, I have
 3   never reported.
 4            MR. GRECH:  Q.  Does the Hemet Police
 5   Department have a manual that contains its policies and
 6   procedures?
 7       A.   Yes.
 8       Q.   Were you provided with a copy of that manual?
 9       A.   It's all electronic.
10       Q.   Were you provided with a copy of the manual
11   electronically?
12       A.   Yes.
13       Q.   And have you read it?
14       A.   I've read through it.
15       Q.   Are you required to read through it?
16       A.   You are required to -- you're required to know
17   your policies.
18       Q.   And to know them you would have to read them.
19   Fair statement?
20       A.   Yes.
21       Q.   And so are you telling me that you have read
22   the manual?
23       A.   I've gone through the manual.
24       Q.   Have you read the whole thing?
25       A.   Front to back, no, but the important policies,
```

Deposition Of Officer Pedro Aguila

1    yes.

2        Q.    Are the policies regarding the use of force

3    policies that you consider important?

4        A.    Yes.

5        Q.    During any of your trainings with the LAPD,

6    the Riverside Sheriff's Department or the Hemet Police

7    Department, were you told that it is the duty of a law

8    enforcement officer to write a report when they witness

9    the use of excessive force by another police officer

10   under Government Code section 7286?  Were you told

11   that?

12            MS. KORNBLAU:  Objection.  Calls for a legal

13   opinion and asked and answered.  Go ahead.

14            THE WITNESS:  Again, my job if I witness

15   excessive force is to intervene and report it to my

16   supervisor.

17            MR. GRECH:  Q.  Because I'm asking you what

18   you have been told by instructors and I'm seeking to

19   know whether or not you have ever been told that, do

20   you know if you have ever been told that Government

21   Code section 7286 requires a police officer to report

22   when they witness another officer using excessive

23   force?

24            MS. KORNBLAU:  Objection.  Calls for a legal

25   opinion with regard to excessive force, but go ahead.

Deposition Of Officer Pedro Aguila

```
 1              THE WITNESS:  Again, I believe the law is to
 2   intervene and to report to my supervisor to take my
 3   statement.  They can document it that way.  Or if they
 4   need me to document it myself, then I can.
 5              MR. GRECH:  Q.  Because I'm unclear as to
 6   whether or not you know if you have a duty to include
 7   that in a report, and I don't believe you've answered
 8   that.  I'll try one more time.  Have you been
 9   instructed as to whether or not you have a duty to
10   include in your report when you witness the use of
11   excessive force specifically under Code section 7286?
12   And if you haven't been instructed, just let me know.
13   And if you have been, let me know.
14              MS. KORNBLAU:  Objection.  Asked and answered
15   numerous times.  Calls for a legal conclusion.  Legal
16   opinion.  But go ahead.
17              THE WITNESS:  Again, I believe my duty under
18   the law is to intervene and to tell my supervisor.  If
19   he wants to document it himself or take my statement,
20   or if he needs me to report, then I can document it
21   myself.
22              MR. GRECH:  Q.  Do you remember in any of your
23   lectures anyone referencing Government Code section
24   7286?
25      A.   Which lectures?
```

```
1      Q.   I want to go now through every single lecture
2  that you've had.  We'll start with those at the LAPD in
3  the POST academy.  Do you remember anyone referencing
4  Government Code section 7286 regarding a duty to report
5  in writing when you have witnessed excessive force used
6  by a fellow officer?
7           MS. KORNBLAU:  Objection.  Calls for a legal
8  opinion.  Vague and ambiguous.  And, Counsel, I'll
9  remind you that we do have another deposition starting
10 at 1:00 p.m. today and cannot change that deposition.
11 So just reminding you.
12          MR. GRECH:  Understood.
13          THE WITNESS:  In LAPD, I don't recall.
14          MR. GRECH:  Q.  And with regard to your
15 training in field, your POST -- after you received your
16 POST certificate while you were at LAPD with regard to
17 the training you received there, did any of that
18 training include specifically a duty imposed by
19 Government Code section 7286 requiring an officer to
20 report when they have observed excessive force used by
21 another officer?
22          MS. KORNBLAU:  Objection.  Calls for a legal
23 conclusion, but you can answer.
24          THE WITNESS:  Again, under the law my belief
25 is that we have to intervene and then report to a
```

Deposition Of Officer Pedro Aguila

1  supervisor.  Not reporting is a punishable offense.
2  But report it.  And then again, if they want me to
3  document or if they want to take my statement, that's
4  up to the supervisor.
5        MR. GRECH:  Q.  Did any of your training at
6  the LAPD instruct you to write in your report, as a
7  duty, if you witness excessive use of force by a fellow
8  officer?
9        MS. KORNBLAU:  Objection.  Asked and answered
10  again numerous times and calls for a legal conclusion.
11  Go ahead.
12        THE WITNESS:  If I observed excessive force,
13  my duty is to intervene and report it to a supervisor.
14        MR. GRECH:  Q.  You understand that there's a
15  difference between reporting to a supervisor and
16  writing an arrest report, correct?  If you don't, let
17  me know.
18     A.   Yes.
19     Q.   What is the difference between writing the
20  report and reporting to a supervisor?  Can you describe
21  to me your understanding of that?
22     A.   One is reporting to a superior and one is
23  documenting it on some sort of paper or computer.
24     Q.   Since you understand the difference between
25  writing a report and reporting to a superior, you

Deposition Of Officer Pedro Aguila

1  understood that my question regarding a duty to write a
2  report did not include a duty to talk to a superior.
3  Did you understand that?
4      A.   Yeah.  It's a duty to tell the supervisor.
5      Q.   And you understand my question called for
6  whether or not there's a duty to write a report.  Did
7  you understand that?
8          MS. KORNBLAU:  Objection.  Vague and
9  ambiguous, but go ahead.
10         THE WITNESS:  My job is to intervene and
11 report to a supervisor, and if they want me to
12 document, I can.  If they want to take my statement,
13 they can.
14         MR. GRECH:  Q.  But you understand that
15 writing a report is different, correct?
16         MS. KORNBLAU:  Objection.  Vague and
17 ambiguous.  Go ahead.
18         MR. GRECH:  Q.  Let me clear that up.  You
19 understand that writing a report is different than
20 reporting to a supervisor, correct?
21         MS. KORNBLAU:  Objection.  Asked and answered.
22 Go ahead.
23         THE WITNESS:  My job would be to intervene and
24 to tell a supervisor.  If the supervisor wants me to
25 document or take my statement, they can.

Deposition Of Officer Pedro Aguila

1          MR. GRECH:  Q.  It's been asked and dodged, so
2    I'll try one more time.  When you write a report, you
3    can write with a pen, correct?  And this is not the
4    last time.  But you can write it with a pen, correct?
5          MS. KORNBLAU:  Objection.  Compound.
6    Mischaracterizes testimony.  Badgering the witness.
7    Harassing.  Asked and answered numerous times.
8    Irrelevant.  Go ahead.
9          MR. GRECH:  Q.  To effect a report one can
10   write with a pen, correct?
11     A.   That is an old style.  I'm sure there's a way
12   to complete a report in pen.
13     Q.   There's also a way to do it by typing.  Isn't
14   that right?
15     A.   Yes, that is the new, modern style.
16     Q.   That's how reports are made, right?
17         MS. KORNBLAU:  Objection.  Vague and
18   ambiguous.  Go ahead.
19         MR. GRECH:  Q.  By typing or writing, fair
20   enough?
21         MS. KORNBLAU:  Objection.  Vague and
22   ambiguous.  Go ahead.
23         THE WITNESS:  That's how reports are written,
24   yes.
25         MR. GRECH:  Q.  The point is you understand

Deposition Of Officer Pedro Aguila

1  how reports can be generated by writing or typing,

2  correct?

3          MS. KORNBLAU:  Objection.  Vague and

4  ambiguous.  Go ahead.

5          THE WITNESS:  That's how they are completed,

6  via typing.

7          MR. GRECH:  Q.  And my question regarding

8  witnessing officers use excessive force to you is; do

9  you have a duty to put that in your report?

10          MS. KORNBLAU:  Objection.  Calls for a legal

11  conclusion.  Asked and answered numerous times.  Vague

12  and ambiguous.  Go ahead.

13          THE WITNESS:  Again, my duty is to intervene

14  and report to the supervisor.  If they want me to

15  document it via pen or typing, I can.  Or they want to

16  take my statement, they can.

17          MR. GRECH:  Q.  I need to move on to the

18  videos and some photographs, but I'm going to need

19  about five minutes to get somebody to set that up.  I'm

20  sorry for the delay.  The rest of this should go

21  quicker.

22      A.    Okay.

23      Q.    Take a ten-minute break?

24          MS. KORNBLAU:  Yes.

25                  (Brief recess.)

Deposition Of Officer Pedro Aguila

```
 1          MR. GRECH:  Q.  Officer, I would like to share
 2  a screen of a video with you and ask if you recognize
 3  it.  What I'm hoping it is is the video of your
 4  body-worn camera from that date.  So please let me know
 5  if this is and if it isn't.  (VIDEO PLAYED) Oh, Miguel,
 6  sound is muted.  (SOUND TURNED ON)
 7          Officer Aguila, have you had an opportunity to
 8  watch the video that was just played for you?
 9      A.   I have.
10      Q.   I ask that it be marked as Exhibit A by the
11  way.
12          [Whereupon, Deposition Exhibit A, a
13          Body-worn video of Officer Aguila, was
14          marked for identification.]
15          And do you recognize that video?
16      A.   I do.
17      Q.   What is it?
18      A.   My body-worn camera.
19      Q.   Does it -- excuse me.
20      A.   It's my body-worn camera video footage.
21      Q.   Does it accurately reflect the events that
22  occurred on April 29th, 2022?
23          MS. KORNBLAU:  Objection.  Vague and
24  ambiguous.  Go ahead.
25          MR. GRECH:  Q.  To the best of your knowledge.
```

Deposition Of Officer Pedro Aguila

1              MS. KORNBLAU:  Same objection.
2              THE WITNESS:  Yes, it appears to be that day.
3              MR. GRECH:  Q.  Okay.  Is it true that this
4    event took place at 354 Gardenia Circle?  Or ended up
5    at 354 Gardenia Circle?
6         A.    Yes.
7         Q.    And is it true that you traveled to 354
8    Gardenia Circle with an Officer Bishop?
9         A.    Yes.
10        Q.    Had you ever worked with Officer Bishop
11   before?
12        A.    Yes.
13        Q.    How often had you worked with Officer Bishop
14   before?
15        A.    We were assigned to the same patrol shift.
16        Q.    And how long had you and Officer Bishop been
17   assigned to the same patrol shift?
18        A.    At that point probably would have been
19   approximately three months.
20        Q.    Had you and Officer Bishop ever socialized
21   outside of work?
22             MS. KORNBLAU:  Objection.  Personal privacy,
23   but go ahead.
24             THE WITNESS:  Leading up to that, I don't
25   believe so.

Deposition Of Officer Pedro Aguila

```
 1           MR. GRECH:  Q.  Were you assigned to a two-man
 2    car that day?
 3        A.   No.
 4        Q.   Had you been assigned to your own vehicle that
 5    day and on that shift?
 6        A.   Yes.
 7        Q.   Can you describe for us how it is that you
 8    came to ride with Officer Bishop to 354 Gardenia?
 9        A.   Yes.  The -- located the car, radioed a felony
10    stop.  As I approached Officer Bishop's vehicle to open
11    the passenger door, that's when Mr. Barnhill decided to
12    drive away from the location, and at that point I
13    didn't feel like I had enough time to go back to my
14    car, so I just went into Officer Bishop's vehicle in
15    the passenger seat.
16        Q.   Officer Bishop was driving, and you were a
17    passenger, and it was sort of an improvised procedure?
18        A.   Yes.
19           MS. KORNBLAU:  Objection.  Vague and
20    ambiguous.  But go ahead.
21           MR. GRECH:  Q.  But nevertheless, the
22    body-worn camera still, to the best of your knowledge,
23    accurately reflects the travel to 354 Gardenia; would
24    you agree?
25           MS. KORNBLAU:  Objection.  Vague and
```

Deposition Of Officer Pedro Aguila

1  ambiguous.  Go ahead.

2        THE WITNESS:  It shows us in the car during

3  the travel, but I mean, you can't see the outside, the

4  streets, the pedestrians as well.

5        MR. GRECH:  Q.  It doesn't appear that the

6  video has been altered, does it?

7        A.    No, just the angle.

8        Q.    I want to show you particular portions of the

9  video and ask you questions about that.  And let me see

10  if I can ask my assistant here to get me to two minutes

11  and 36 seconds.  Actually let's stop at two minutes,

12  33.  Can you get us there.  (VIDEO PLAYED) Leave that

13  right there.  That's 2:35.  Officer Aguila, can you see

14  the screen right now where it shows an arm extended

15  that has a tattoo on it?

16        MS. KORNBLAU:  Objection to the use of still

17  shots, but go ahead.

18        THE WITNESS:  Yes, I can see an arm with a

19  tattoo on it.

20        MR. GRECH:  Q.  Do you recognize whose arm

21  that is?

22        A.    Yes.

23        Q.    Whose arm is that?

24        A.    That's my arm.

25        Q.    Okay.  Is that your left arm or your right

Deposition Of Officer Pedro Aguila

1  arm?

2      A.   The one with the tattoo is my right arm.  My

3  right forearm.

4      Q.   Okay.  Now, can you see Mr. Barnhill's right

5  hand?

6      A.   In the still shot I can see.

7      Q.   Okay.  And is there somebody holding onto Mr.

8  Barnhill's right hand?  And we're at two minutes and

9  35 seconds in.

10         MS. KORNBLAU:  And objection to the use of the

11  still shots may not capture the incident and his

12  perspective, but you can answer.

13         THE WITNESS:  Can you repeat the question?

14         MR. GRECH:  Q.  Does it appear to you as if

15  somebody, particularly a police officer, is holding

16  onto Mr. Barnhill's right hand?

17         MS. KORNBLAU:  Objection.  Vague and

18  ambiguous.  Again, objection to the use of still shots,

19  but go ahead.

20         THE WITNESS:  In the incident, I'm not that

21  officer.  In my case, I was able to grab his right --

22  left wrist.

23         MR. GRECH:  Q.  I understand that you're

24  telling me that you're holding onto Mr. Barnhill's left

25  hand, but I'm asking you if you recognize an officer

Deposition Of Officer Pedro Aguila

1  who is holding onto Mr. Barnhill's right hand.

2       MS. KORNBLAU:  Objection.  Vague and

3  ambiguous.  If you maybe could clarify if he saw this

4  at the time of the incident or if you're asking him to

5  interpret to what we see in this still frame.  But go

6  ahead.

7       MR. GRECH:  Q.  I'm asking if you, looking at

8  this still frame at 2 minutes and 35 seconds, do you

9  recognize another officer besides yourself in that

10 still frame?

11     A.   I do recognize the officer in that still

12 frame.

13     Q.   And I see only one other officer besides you

14 in that still frame.  Would you agree with that?

15     A.   Yes.

16     Q.   Okay.  And that other officer in the still

17 frame appears to be holding onto a different hand than

18 you're holding onto.  Is that right?

19     A.   Again, during the incident I was trying to

20 maintain control of his left arm.  If you want to know

21 if actually Officer Maynard was holding his hand, you

22 would have to ask him.

23     Q.   Does this still frame from this video assist

24 you in recalling the events?  And if it doesn't, just

25 let me know.

Deposition Of Officer Pedro Aguila

1           MS. KORNBLAU:  Objection.  Vague and
2  ambiguous.  Go ahead.
3           THE WITNESS:  It recalls the event -- my
4  memory of what I was doing.
5           MR. GRECH:  Q.  Now, what's the name of the
6  other officer who is depicted here?
7      A.   That is Detective Maynard.
8      Q.   That is Detective Maynard.  And is it true,
9  from your recollection, that Detective Maynard grasped
10 the right hand of Mr. Barnhill?
11          MS. KORNBLAU:  Objection.  Calls for
12 speculation, but go ahead.
13          THE WITNESS:  During the time of the incident,
14 no, I do not recall.
15          MR. GRECH:  Q.  I'm sorry, during the time of
16 the incident what?
17     A.   I don't recall.  I did not see where his hands
18 were, where Officer Maynard's hands were.  You would
19 have to ask him.
20     Q.   Are you -- to be specific, are you denying
21 that Officer Barnhill (sic) had his hands on Mr.
22 Barnhill's right hand?
23     A.   Officer Barnhill?
24     Q.   I'm sorry, I had a feeling I said that.  Are
25 you telling -- are you denying that Officer Maynard

Deposition Of Officer Pedro Aguila

1    grasped Mr. Barnhill's right hand with both his hands?

2            MS. KORNBLAU:  Objection.  Lacks foundation.

3    Vague and ambiguous.  Calls for speculation, but you

4    can answer.

5            THE WITNESS:  I can't tell if he is or not.

6    I'm not denying it.  I'm just saying my focus during

7    this incident was grabbing his left wrist.  I wasn't

8    Detective Maynard, so you would have to ask him.

9            MR. GRECH:  Q.  And to be clear, does this

10   still assist you in recollecting that event?

11           MS. KORNBLAU:  Objection.  Asked and answered.

12           THE WITNESS:  So again, it helps assist me

13   with what my focus was during this incident, which was

14   grabbing is his left wrist.

15           MR. GRECH:  Q.  Showing you -- can you go one

16   second in advance.  We'll stop it here.  Let me ask you

17   a question.  Have you been trained in a technique used

18   as the bent wrist control hold?

19       A.   I don't know if it's necessarily called that.

20   We're trained -- I was trained in the academy on

21   different various control holds, yes.

22       Q.   At the Los Angeles Police Department academy

23   were you ever trained in using a hold where the

24   suspect's wrist is bent?

25       A.   Yes.  Yes.

Deposition Of Officer Pedro Aguila

1      Q.   Why is the suspect's wrist bent, as you were
2  taught at the Los Angeles Police Department academy?
3           MS. KORNBLAU:   Objection.   Vague and
4  ambiguous.   Go ahead.
5           THE WITNESS:   Can you clarify the question?
6           MR. GRECH:   Q.   When you were taught to use
7  the bent wrist technique or taught how it is used, what
8  did they teach was the reason for bending the suspect's
9  wrist?
10           MS. KORNBLAU:   Objection.   Lacks foundation.
11  Misstates testimony, but go ahead.
12           THE WITNESS:   Just gives us better control.
13           MR. GRECH:   Q.   And what does it give you
14  better control of?
15      A.   Again, depending on the circumstances, it
16  could give you better control of the suspect's arms or
17  wrist.
18      Q.   The point is to get control of the suspect's
19  arms and wrist, and the bent wrist does that.   Would
20  you agree?
21      A.   That is the goal.
22      Q.   Okay.   Is there a particular way that that
23  must be done?
24           MS. KORNBLAU:   Objection.   Vague and
25  ambiguous.

Deposition Of Officer Pedro Aguila

1              THE WITNESS:  It all depends on the size of
2    the person, the wrists.  Usually just -- kind of --
3    just kind of depends.
4              MR. GRECH:  Q.  Please explain to me how you
5    were trained to use that hold.
6              MS. KORNBLAU:  Objection.  Vague and
7    ambiguous.  Go ahead.
8              THE WITNESS:  We're trained to kind of push it
9    towards in, so palm -- palm towards facing their --
10   their forearm, I guess.
11             MR. GRECH:  Q.  (VIDEO PLAYED) Stopping at two
12   minutes and 41 seconds.  Is that your arm, your right
13   arm?
14        A.   Yes.
15        Q.   (VIDEO PLAYED) And since you've told us that
16   this video refreshes your recollection, we're now at
17   two minutes and 43 seconds.  Is that still your right
18   arm that we see in the video?
19        A.   Yes.
20        Q.   There's a -- what appears to be a left hand in
21   the left bottom corner of the video.  Is that your left
22   hand?
23        A.   Yes, I believe that's my left hand.
24        Q.   And in between your right hand and your left
25   hand there appears to be another hand.  Do you see

Deposition Of Officer Pedro Aguila

1  that?

2      A.    Yes.

3      Q.    Is that Mr. Barnhill's hand?

4      A.    Yes.

5      Q.    (VIDEO PLAYED) You've described for us a bent

6  wrist hold that you were trained on at the academy.  As

7  we stop now at two minutes and 48 seconds, is that your

8  right arm still that we see?

9      A.    Yes.  The one wearing the watch, that's my

10 arm.

11     Q.    And in the left-hand bottom corner, is that

12 your left hand that we see?

13     A.    Yes.

14     Q.    And in between your left hand and your right

15 hand, is that Mr. Barnhill's hand that we see?

16     A.    Yes.

17     Q.    And what are you doing in this video?

18     A.    I'm trying to maintain control of his left

19 arm -- hand.

20     Q.    What type of a hold are you using to maintain

21 control of Mr. Barnhill?

22     A.    To grasp.

23     Q.    Excuse me?

24     A.    I'm just grasping his hand.

25     Q.    Is Mr. Barnhill's wrist bent during this hold?

Deposition Of Officer Pedro Aguila

1        A.    I can't see.

2        Q.    Is there anything which impairs you from

3   seeing, or is it that you can see the video clearly,

4   but you can't tell?

5        A.    You can't see his wrist.

6        Q.    Would this be a situation that you would

7   expect to use a bent wrist control hold?

8             MS. KORNBLAU:  Objection.  Calls for a

9   hypothetical, but go ahead.

10            THE WITNESS:  Well, I think given the

11  circumstances at that time, my goal at that time is

12  just to maintain control of the left hand or -- yeah,

13  left hand.

14            MR. GRECH:  Q.  And is a bent wrist control

15  hold a technique you were trained on to maintain

16  control of a hand?

17            MS. KORNBLAU:  Objection.  Vague and

18  ambiguous.  Calls for a hypothetical, but go ahead.

19            THE WITNESS:  That is one of the many

20  techniques.

21            MR. GRECH:  Q.  Okay.  (VIDEO PLAYED) Can you

22  see the still at 2 minutes and 56 seconds that's on

23  your screen?

24       A.    Yes.

25       Q.    Okay.  And is that your right hand that we see

Deposition Of Officer Pedro Aguila

```
 1    in the center of the screen?
 2        A.    The one with the tattoo and the watch, yes.
 3        Q.    And it looks as if your right hand is holding
 4    somebody's hand.  Was it indeed holding somebody's
 5    hand?
 6        A.    Yes.  I was holding Mr. Barnhill's left hand.
 7        Q.    And why were you holding Mr. Barnhill's left
 8    hand?
 9            MS. KORNBLAU:  Objection.  Calls for a
10    narrative.
11            THE WITNESS:  Maintain control to place him in
12    handcuffs.
13            MR. GRECH:  Q.  Were you applying -- is there
14    a reason why your thumb is on his palm?
15        A.    Yes.  It's called a grip.
16        Q.    Excuse me?
17        A.    A grip.
18        Q.    And what do you mean by a grip?
19        A.    A grip.  You know, when you grab a cup, you
20    maintain a grip.
21        Q.    All right.  Is the hold that you're using
22    consistent with training that you received at the Los
23    Angeles Police Department academy?
24            MS. KORNBLAU:  Objection.  Vague and
25    ambiguous.  Go ahead.
```

Deposition Of Officer Pedro Aguila

```
 1              THE WITNESS:  It's not a specific technique.
 2  This is merely just grabbing his hand.
 3              MR. GRECH:  Q.  And how about his wrist?  Is
 4  it twisted at this point?
 5     A.   I wouldn't say his wrist is twisted.  His arm
 6  is bent.
 7     Q.   What was that last portion about bent?
 8     A.   His arm is placed behind his back.
 9     Q.   Okay.  You used the phrase bent.  Did you say
10  his arm was bent?
11     A.   I was referring to his arm being placed behind
12  his back; therefore, he would have to bend his arm,
13  yes.
14     Q.   Okay.  Did he bend his arm on his own or did
15  you bend it for him?
16              MS. KORNBLAU:  Objection.  Vague as to time,
17  but go ahead.
18              THE WITNESS:  I assisted him.
19              MR. GRECH:  Q.  Did he ask for your
20  assistance?
21              MS. KORNBLAU:  Objection.  Vague and
22  ambiguous, but go ahead.
23              THE WITNESS:  No.
24              MR. GRECH:  Q.  There appears to be another
25  hand that is being grasped in the photo.  Do you see
```

Deposition Of Officer Pedro Aguila

1  that?

2      A.   Yes.

3      Q.   That hand appears to be complected as if it

4  belongs to an African American.  Would you agree?

5          MS. KORNBLAU:  Objection.  Vague and

6  ambiguous.  Calls for speculation.  Go ahead.

7          THE WITNESS:  Not necessarily.

8          MR. GRECH:  Q.  I didn't ask necessarily.

9  Does it appear to you as if it's an African American?

10          MS. KORNBLAU:  Objection.  Calls for

11  speculation.  Asked and answered.

12          MR. GRECH:  Q.  You can answer.

13      A.   No.

14      Q.   Are you saying that doesn't appear as if

15  that's an African American's hand?

16          MS. KORNBLAU:  Objection.  Asked and answered.

17  Why are you laughing?  I don't understand, Counsel.

18  But go ahead.

19          THE WITNESS:  I mean, depends what you

20  interpret an African American hand should look like.

21          MR. GRECH:  Q.  Going to the top left-hand

22  corner of the video, do you see a hand on what appears

23  to be the head of somebody?

24      A.   Again, during this incident, I -- my focus was

25  on Mr. Barnhill's left hand and placing it and getting

Deposition Of Officer Pedro Aguila

```
 1  the other one together to put him in handcuffs.
 2      Q.    Were you assisted by other officers in taking
 3  Mr. Barnhill into custody?
 4      A.    Yes.
 5      Q.    Who were the other officers who assisted you
 6  in taking Mr. Barnhill into custody?
 7      A.    Detective Maynard, Officer Bishop, and
 8  Corporal Klinzing.
 9      Q.    This is your body-worn camera we're watching;
10  is that right?
11      A.    Yes.
12          MS. KORNBLAU:  Objection.  Asked and answered.
13          THE WITNESS:  Appears so.
14          MR. GRECH:  Q.  Are these your hands on Mr.
15  Barnhill's head?
16          MS. KORNBLAU:  Objection.  Vague and
17  ambiguous.  Go ahead.
18          THE WITNESS:  Yes, my hands are -- during the
19  time of the incident are on Mr. Barnhill's left arm.
20  That was my focus at the time.
21          MR. GRECH:  Q.  What were the other officers
22  doing?
23          MS. KORNBLAU:  Objection.  Vague and
24  ambiguous.  Go ahead.
25          THE WITNESS:  Again, during the incident my
```

Deposition Of Officer Pedro Aguila

1  focus was on Mr. Barnhill's left arm.  You have to ask
2  the other officers what they were doing.
3          MR. GRECH:  Q.  If you recall what the other
4  officers were doing, would you tell me right now?
5          MS. KORNBLAU:  Objection.  Harassing.  But --
6  vague and ambiguous.  Go ahead.
7          THE WITNESS:  If I had witnessed and observed
8  it, yes, I would tell you.
9          MR. GRECH:  Q.  Did you have any impairment of
10 your ability to see what is shown in the body-worn
11 camera?
12         MS. KORNBLAU:  Objection.  Vague and
13 ambiguous.
14         THE WITNESS:  Just because whatever is shown
15 in the body-worn camera doesn't mean what I was looking
16 at it at the time.
17         MR. GRECH:  Q.  Did you think that Mr.
18 Barnhill might have posed a danger to your safety at
19 the time that you were holding his wrist as you're
20 holding it here?
21     A.   Yes.
22     Q.   I'm sorry, I didn't hear if you answered the
23 question.
24     A.   I said yes.
25     Q.   Okay.  As a result of your thought that he

Deposition Of Officer Pedro Aguila

1  might pose a danger to your safety, were you paying

2  attention to more than just his left hand?

3           MS. KORNBLAU:  Objection.  Vague as to time,

4  but go ahead.

5           MR. GRECH:  Q.  At the time we see in this

6  video, 2 minutes -- 2 minutes and 56 seconds in.

7           MS. KORNBLAU:  Objection.  Vague and

8  ambiguous.  Go ahead.

9           THE WITNESS:  Again, my goal was to

10  maintain -- and primary focus was on his left arm.

11  Once -- if his right arm was coming to my view, then of

12  course we put them together and put him in handcuffs.

13           MR. GRECH:  Q.  Why would it be important for

14  you to see his right hand?

15           MS. KORNBLAU:  Objection.  Vague and

16  ambiguous, but go ahead.

17           THE WITNESS:  Can you repeat the question?

18           MR. GRECH:  Q.  Why would it be important for

19  you to see his right hand?

20           MS. KORNBLAU:  Same objection.

21           THE WITNESS:  So we can put them together and

22  put him in handcuffs.

23           MR. GRECH:  Q.  Are there any other reasons

24  why it would be important for you to see his right

25  hand?

Deposition Of Officer Pedro Aguila

```
1              MS. KORNBLAU:  Objection.  Calls for a
2   narrative.  Vague and ambiguous.  Go ahead.
3              THE WITNESS:  It would be important at that
4   point just to know where his hand placement is at.
5              MR. GRECH:  Q.  And why would you think it's
6   important to know where his hand placement is at?
7              MS. KORNBLAU:  Objection.  Vague and
8   ambiguous.  Go ahead.
9              THE WITNESS:  So we can put him in handcuffs.
10             MR. GRECH:  Q.  Does any of your training from
11  the Los Angeles Police Department academy emphasize
12  locating a suspect's hands in connection with officer
13  safety?
14      A.   Can you repeat the question?
15      Q.   Does any -- did any of your training at the
16  Los Angeles Police Department academy emphasize
17  locating a suspect's hands in relation to an officer's
18  safety?
19             MS. KORNBLAU:  Objection.  Vague and
20  ambiguous.
21             THE WITNESS:  Yes.  Generally we would like to
22  see where the suspects hands are.
23             MR. GRECH:  Q.  Are you keeping your hand on
24  Mr. Barnhill's hand, his left hand here, for officer
25  safety purposes?
```

Deposition Of Officer Pedro Aguila

1    A.    Yes, because up to this -- because he
2 continually was actively resisting, so that's why I
3 maintained my grip.
4         MR. GRECH:  Q.  Did you want Mr. Barnhill's
5 right hand to be free and unencumbered during this
6 incident?
7    A.    Can you -- can you clarify the question?
8    Q.    Did you want the other officers to secure his
9 right hand, or did you want the other officers to just
10 let his right hand go?
11        MS. KORNBLAU:  Objection.  Unintelligible.
12 Vague and ambiguous.  Go ahead.
13        THE WITNESS:  Ideally I would like his arms
14 behind his back to be placed in handcuffs.
15        MR. GRECH:  Q.  Would that involve both his
16 hands?
17    A.    Yes, I said hands.
18    Q.    Why did you want both his hands to be secured?
19    A.    The totality of the circumstances.  At that
20 point we believed that he was armed.  We believed that
21 our safety was going to be compromised.  And so at that
22 point, you know, he hadn't been pat down.  He could
23 have been concealing a weapon.  So we wanted his -- we
24 wanted him to be in handcuffs.
25    Q.    And did you believe at that time that it was

Deposition Of Officer Pedro Aguila

1   necessary to have both hands secured for purposes of
2   officer safety?
3           MS. KORNBLAU:  Objection.  Vague and
4   ambiguous.  Go ahead.
5           THE WITNESS:  Given the totality of the
6   circumstances we would like both of his hands to be
7   secured so this way he doesn't reach for any weapons
8   that we believed he was armed with.
9           MR. GRECH:  Q.  And how was securing both of
10  his hands increase officer safety?
11      A.   Because it would -- it would decrease the
12  chance of him reaching for something.
13      Q.   Is there, based on your training and
14  experience, any reason to secure Mr. Barnhill's head?
15          MS. KORNBLAU:  Objection.  Vague and
16  ambiguous.  Unintelligible.  Go ahead.
17          THE WITNESS:  Again, during the time of the
18  incident, my focus was on Mr. Barnhill's left arm.
19          MR. GRECH:  Q.  Do you have any training and
20  experience, whether at the Los Angeles Police
21  Department academy, in-field training or other training
22  you had in connection with law enforcement, that would
23  explain a reason for securing Mr. Barnhill's head?
24          MS. KORNBLAU:  Objection.  Lacks foundation,
25  but go ahead.

Deposition Of Officer Pedro Aguila

```
 1          THE WITNESS:  Well, Mr. Barnhill is a big guy
 2    6, 3, over three hundred pounds.  We're all smaller
 3    guys.  Again, my focus was on the left arm of Mr.
 4    Barnhill and nowhere else, so I didn't see that.
 5          MR. GRECH:  Q.  You described his size as
 6    being a factor in securing his head and that the rest
 7    of the officers were smaller.  Are there any other
 8    reasons that you can think of for securing Mr.
 9    Barnhill's head?
10      A.  I didn't --
11          MS. KORNBLAU:  Again, objection.  Misstates
12    testimony.  Calls for a narrative.  Vague and
13    ambiguous, but go ahead.
14          THE WITNESS:  Again, I didn't say that was the
15    reason why he was doing that.  I was just stating a
16    fact.
17          MR. GRECH:  Q.  I didn't ask if that was the
18    reason why this officer was doing it.  I was asking if
19    this appeared consistent with the training that you had
20    received.  Is it?
21          MS. KORNBLAU:  Objection.  Unintelligible.
22    Lacks foundation.  Vague and ambiguous.  Calls for a
23    hypothetical, but you can answer.
24          THE WITNESS:  Can you clarify the question?
25          MR. GRECH:  Q.  Is the security of Mr.
```

Deposition Of Officer Pedro Aguila

1  Barnhill's head as shown in the top left-hand corner of
2  this photograph consistent with the training that you
3  have received from law enforcement in effecting
4  arrests?
5          MS. KORNBLAU:  Objection.  Lacks foundation.
6  Unintelligible.  Vague and ambiguous.  Calls for
7  speculation.  Calls for a hypothetical, but go ahead.
8          THE WITNESS:  Again, during the time of the
9  incident my focus was on his left arm.  I didn't
10 observe that.
11         MR. GRECH:  Q.  Are those your hands on Mr.
12 Barnhill's head?
13         MS. KORNBLAU:  Objection.  Asked and answered.
14 Go ahead.
15         THE WITNESS:  Again, my arms are on Mr.
16 Barnhill's left arm.
17         MR. GRECH:  Q.  Are both your hands on Mr.
18 Barnhill's left arm?
19         MS. KORNBLAU:  Objection.  Vague as to time.
20 Go ahead.
21         THE WITNESS:  Yes, both my arms are on Mr.
22 Barnhill's left arm.
23         MR. GRECH:  Q.  (VIDEO PLAYED) Showing you
24 this arm on the top left-hand corner of the video, is
25 that your arm?

Deposition Of Officer Pedro Aguila

1      A.   Which one?  Sorry.

2      Q.   I'll replay the sequence. (VIDEO PLAYED)

3  Showing you the arm at three minutes on the left hand

4  of the video, is that your arm?

5      A.   On the top corner of the video?

6      Q.   Yes.

7      A.   No, that doesn't appear to be my arm.  My arms

8  are on Mr. Barnhill's left wrist.

9      Q.   Did you slam Mr. Barnhill's head into the

10 concrete?

11      MS. KORNBLAU:  Objection.  Lacks foundation.

12 Calls for speculation.  Vague and ambiguous.

13 Unintelligible, but you can answer.

14      THE WITNESS:  Again, during the time of the

15 incident my hands are on Mr. Barnhill's left hand.

16 That was my primary focus.

17      MR. GRECH:  Q.  Did you slam Mr. Barnhill's

18 head into the concrete?  Yes or no?

19      MS. KORNBLAU:  Objection.  Lacks foundation.

20 Asked and answered.

21      THE WITNESS:  Again, during the time of the

22 incident my hands were on Mr. Barnhill's left hand, and

23 that was my primary focus.

24      MR. GRECH:  Q.  Did you have a duty to use the

25 minimum force necessary to secure this arrest?

Deposition Of Officer Pedro Aguila

1          MS. KORNBLAU:  Objection.  Vague and
2    ambiguous.  Unintelligible.  Vague as to time.  Go
3    ahead.
4          THE WITNESS:  We had the -- we can use the
5    amount of force that's objectively reasonable given the
6    circumstances.
7          MR. GRECH:  Q.  Did you, sir, have a duty to
8    use the minimal force necessary to effect this arrest?
9          MS. KORNBLAU:  Objection.  Asked and answered.
10          THE WITNESS:  Again, we're allowed to use the
11    amount of force that's objectively reasonable given the
12    totality of the circumstances.
13          MR. GRECH:  Q.  Were you allowed, if you
14    wished to, to slam his head into the concrete, Mr.
15    Barnhill's head?
16          MS. KORNBLAU:  Objection.  Once again, lacks
17    foundation.  Asked and answered.  But go ahead.
18          THE WITNESS:  I would never wish that.
19          MR. GRECH:  Q.  I'm sorry, say that again.
20      A.    I would never wish that on Mr. Barnhill.
21          MR. GRECH:  Thank you.  I have -- may I have
22    five minutes?  I think I'm done.
23          MS. KORNBLAU:  Sure.
24                    (Brief recess.)
25          MR. GRECH:  I have no further questions.  And

Deposition Of Officer Pedro Aguila

```
 1  we can handle this by Code if that's all right with
 2  you.
 3          MS. KORNBLAU:  Yeah.
 4          COURT REPORTER:  And Ms. Kornblau, would you
 5  like a copy of the transcript?
 6          MS. KORNBLAU:  Yes, please.
 7             (Whereupon, at the hour of 12:32 p.m. the
 8  matter was adjourned.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Deposition Of Officer Pedro Aguila

```
1              PENALTY OF PERJURY CERTIFICATE

2

3

4

5

6         I, the undersigned, declare under penalty

7    Of perjury that I have read the foregoing

8    Transcript, and I have made an corrections,

9    Additions or deletions that I was desirous of

10   Making; that the foregoing is a true and correct

11   Transcript of my testimony contained therein.

12              EXECUTED this _____ day of _____,

13   2025, at _____, California.

14

15

16

17

18

19

20

21         _____

22              Officer Pedro Aguila

23

24

25
```

Deposition Of Officer Pedro Aguila

```
 1              CERTIFICATE OF REPORTER

 2

 3         I, ORA KOHN, Certified Shorthand Reporter,

 4  do hereby certify:

 5         That prior to being examined, the witness in the

 6  foregoing proceedings was by me duly sworn to testify

 7  to the truth, the whole truth, and nothing but the

 8  truth.

 9          That said proceedings were taken remotely

10  before me at the time and place therein set forth and

11  were taken down by me in shorthand and thereafter

12  transcribed into typewriting under my direction and

13  supervision.

14           That a review of the transcript was requested.

15           I further certify that I am neither counsel

16  for, nor related to, any parties to said proceedings,

17  nor in any way interested in the outcome thereof.

18                 In witness whereof, I have hereunto

19  subscribed my name.

20

21                  Dated:  February 7, 2025

22

23         _____

24              ORA KOHN, CSR 11933

25
```

Deposition Of Officer Pedro Aguila

```
1   California Deposition Reporters, Inc.

2

3   NAME OF CASE: Henry Barnhill vs City of Hemet, et al.

4   DATE OF DEPOSITION: 01/31/2025

5   NAME OF WITNESS: Officer Pedro Aguila

6   Reason Codes:

7         1. To clarify the record.

8         2. To conform to the facts.

9         3. To correct transcription errors.

10  Page _____ Line _____ Reason _____

11  From _____ to _____

12  Page _____ Line _____ Reason _____

13  From _____ to _____

14  Page _____ Line _____ Reason _____

15  From _____ to _____

16  Page _____ Line _____ Reason _____

17  From _____ to _____

18  Page _____ Line _____ Reason _____

19  From _____ to _____

20  Page _____ Line _____ Reason _____

21  From _____ to _____

22  Page _____ Line _____ Reason _____

23  From _____ to _____

24

25                     _____
```

Deposition Of Officer Pedro Aguila

---

**1**

**11933** 5:5

**12:32** 89:7

**18** 12:16 14:8 15:12,14,19,22 16:13,15,22,25

**19** 14:6,9 15:15, 22 16:15,22 17:12

**1:00** 59:10

---

**2**

**2** 69:8 75:22 81:6

**2014** 12:14 13:21

**2015** 13:21 17:8, 11,12

**2016** 17:9 19:6

**2017** 20:22,23 21:6 30:21

**2021** 30:21,23

**2022** 25:10,12 64:22

**2024** 45:9

**2025** 5:2

**21** 20:24 21:7

**29th** 25:10,12 64:22

**2:35** 67:13

---

**3**

**3** 85:2

---

**31** 5:2

**33** 67:12

**35** 68:9 69:8

**354** 65:4,5,7 66:8,23

**36** 67:11

---

**4**

**41** 73:12

**43** 73:17

**48** 74:7

---

**5**

**56** 75:22 81:6

---

**6**

**6** 85:2

---

**7**

**7286** 57:10,21 58:11,24 59:4, 19

---

**9**

**9** 29:17,18,23

---

**A**

**ability** 37:12,21 38:7,11,16,17 80:10

**abuse** 45:12

**academic** 14:5

---

**academies** 20:17

**academy** 6:2 19:1,4 20:1,16, 19,20,21 21:9 22:25 24:8 27:24 28:2,5,13, 17 29:6 30:1,4 31:1,5,18,20,24 35:11 45:5 49:5, 12,14 50:4 52:9 59:3 71:20,22 72:2 74:6 76:23 82:11,16 84:21

**accepted** 19:18, 25 20:8

**account** 45:25 46:5 47:19,21 48:1

**accurate** 47:19, 21,24

**accurately** 64:21 66:23

**achieve** 50:12, 19 51:3,16

**acronym** 28:11

**act** 38:7,22 39:1

**actively** 83:2

**adjourned** 89:8

**adrenalin** 25:4 26:10,15,25

**advance** 71:16

**adversary** 18:1

**affect** 38:12

**African** 78:4,9, 15,20

**age** 17:10 21:4

---

**agencies** 30:15, 17 46:22

**agree** 66:24 69:14 72:20 78:4

**Aguila** 5:11,12, 13 64:7,13 67:13

**ahead** 7:15 10:16,21 11:2,6, 10,20 19:22 20:3,10 22:12, 21 23:3 24:4,14 26:2,19 32:10, 13,19 33:3,13 34:2,12 37:15 38:1,15 39:5,13 40:4,12,25 41:8, 16 42:8,18 43:9 44:19 45:23 46:9 47:8,17 48:8,20 49:1 50:14,21 51:12, 18 53:4,18 54:6, 13,20 55:9,17, 25 57:13,25 58:16 60:11 61:9,17,22 62:8, 18,22 63:4,12 64:24 65:23 66:20 67:1,17 68:19 69:6 70:2, 12 72:4,11 73:7 75:9,18 76:25 77:17,22 78:6, 18 79:17,24 80:6 81:4,8,16 82:2,8 83:12 84:4,16,25 85:13 86:7,14, 20 88:3,17

**Air** 17:2,6,7,13, 17 18:13,17,24

---

**allowed** 38:5 88:10,13

**altered** 67:6

**ambiguous** 23:3 32:19 33:3 39:13 41:8 44:2 47:17 48:8 49:1 50:21 51:5,12 53:4,18 54:6,13, 20 55:9,15,23 59:8 61:9,17 62:18,22 63:4, 12 64:24 66:20 67:1 68:18 69:3 70:2 71:3 72:4, 25 73:7 75:18 76:25 77:22 78:6 79:17,24 80:6,13 81:8,16 82:2,8,20 83:12 84:4,16 85:13, 22 86:6 87:12 88:2

**American** 78:4, 9,20

**American's** 78:15

**ammunition** 29:11,14,18

**amount** 36:24 37:2 39:22 40:14 50:11,18, 22,23 51:2,24 56:2 88:5,11

**Angeles** 19:17 20:1,7,20 21:9 23:7,23 24:7 30:18,25 31:6,9, 17 34:21 35:18 49:6 71:22 72:2 76:23 82:11,16

---

Deposition Of Officer Pedro Aguila

84:20

**angle** 67:7

**anticipate** 24:11 26:24

**apologize** 52:7

**appeared** 85:19

**appears** 65:2 69:17 73:20,25 77:24 78:3,22 79:13

**applied** 19:15 54:2

**apply** 19:1,4,8, 12

**applying** 76:13

**approach** 27:16

**approached** 66:10

**approaches** 27:20

**approximately** 5:22 33:18 52:25 54:8,14, 22 65:19

**April** 25:10,12 64:22

**Argumentative** 40:24 51:21

**arm** 67:14,18, 20,23,24,25 68:1,2 69:20 73:12,13,18 74:8,10,19 77:5, 8,10,11,12,14 79:19 80:1 81:10,11 84:18 85:3 86:9,16,18, 22,24,25 87:3,4,

7

**armed** 83:20 84:8

**arms** 72:16,19 83:13 86:15,21 87:7

**arrest** 31:22 32:1 34:22 35:1, 12 42:15 43:7, 20 49:20 60:16 87:25 88:8

**arrests** 36:22 45:2 86:4

**arts** 15:7,8,12, 15

**assaults** 45:12

**assigned** 52:18, 21 65:15,17 66:1,4

**assist** 10:12,19 23:19 69:23 71:10,12

**assistance** 24:25 77:20

**assistant** 67:10

**assisted** 77:18 79:2,5

**Associate's** 13:23

**attend** 12:17,20, 24 13:5,20

**attended** 12:5,6, 8,23

**attending** 14:8

**attention** 81:2

**attorney** 6:7 11:22 47:14

48:17

**attorney's** 46:23,25 47:4, 22

**attorney/client** 7:11 10:15 11:1, 19

**audio** 9:23,25 10:1,6

**authority** 38:8

---

**B**

**Bachelor's** 13:23

**back** 17:3 34:15 52:18 54:1 56:25 66:13 77:8,12 83:14

**Badgering** 62:6

**bail** 47:5

**Barnhill** 66:11 70:10,21,23 74:21 79:3,6 80:18 85:1,4 88:20

**Barnhill's** 68:4, 8,16,24 69:1 70:22 71:1 74:3, 15,25 76:6,7 78:25 79:15,19 80:1 82:24 83:4 84:14,18,23 85:9 86:1,12,16, 18,22 87:8,9,15, 17,22 88:15

**based** 22:24 37:8,9 47:10 84:13

**basic** 18:14 52:8

**Baskin-robbins** 14:15,22 16:24 17:4

**Bath** 14:16,24 15:1 16:24

**beat** 25:24

**Bed** 14:16,24 15:1 16:24

**beginning** 13:21

**belief** 59:24

**believed** 43:16 83:20 84:8

**believes** 42:9

**belongs** 78:4

**Ben** 45:5

**bend** 77:12,14, 15

**bending** 72:8

**bent** 71:18,24 72:1,7,19 74:5, 25 75:7,14 77:6, 7,9,10

**big** 85:1

**birth** 21:1

**Bishop** 9:6,18 10:23 11:13 65:8,10,13,16, 20 66:8,16 79:7

**Bishop's** 8:25 9:1 10:2 66:10, 14

**bodily** 37:4,8, 12,20 38:4 39:17,21 40:1,9 54:4,11,18,25

55:5

**body** 25:4 26:16

**body-worn** 9:17 10:5 46:1 47:25 64:4,13,18,20 66:22 79:9 80:10,15

**booklets** 30:9

**boot** 17:9,18,21, 25 18:13,20,24

**born** 15:11,18 16:1,12

**bottom** 73:21 74:11

**break** 7:4,5 34:14 63:23

**breathe** 25:25

**breathing** 24:19 25:18

**Briefly** 8:22

**building** 27:17 36:4

---

**C**

**California** 5:5 12:9 13:1 19:15, 18

**called** 61:5 71:19 76:15

**calls** 7:11 10:14 11:1,19 19:21 22:11 26:18 38:14 39:4 40:3, 11,12 45:22 46:8 47:7,16 54:6 55:15,16, 24 57:12,24

Deposition Of Officer Pedro Aguila

58:15 59:7,22 60:10 63:10 70:11 71:3 75:8,18 76:9 78:6,10 82:1 85:12,22 86:6,7 87:12

**camera** 9:17 47:25 64:4,18,20 66:22 79:9 80:11,15

**cameras** 10:5 46:1

**camp** 17:9,19,21,25 18:13,20,24

**capture** 68:11

**car** 53:13 66:2,9,14 67:2

**case** 8:13,16 10:13 11:14 48:3 68:21

**cases** 26:4

**center** 76:1

**certificate** 59:16

**certified** 5:4,7

**chance** 84:12

**change** 59:10

**changed** 35:15

**charges** 47:1,6,10

**chase** 24:3,13,19,22 25:1,5,11 26:1

**chases** 23:24 24:9 25:14 26:1,7 28:1,5 45:2

**child** 45:12

**Circle** 65:4,5,8

**circumstances** 37:1,9,10 39:11,24 40:6 50:24 51:25 72:15 75:11 83:19 84:6 88:6,12

**civilian** 38:3

**clarified** 23:16

**clarify** 7:1,21 24:5 38:24 39:18 46:16 69:3 72:5 83:7 85:24

**Clark** 45:5

**class** 28:10 45:8,11

**classes** 13:11

**classroom** 6:3 21:11,15 24:6,24 26:15 34:25 35:24 36:4

**clear** 15:6 42:12 61:18 71:9

**close** 5:12 45:17,20

**Code** 57:10,21 58:11,23 59:4,19 89:1

**codes** 21:11 44:10

**college** 12:17,20,25 14:3,8,11,14 15:14

**communications** 7:12 10:15 11:2,19

**complected** 78:3

**complete** 48:5,6,10,12,14,17,24 62:12

**completed** 14:4 31:1,18 48:13 63:5

**completing** 31:5

**compliance** 50:12,19 51:3,10,16

**component** 27:9

**Compound** 55:8 62:5

**compromised** 83:21

**computer** 10:19 60:23

**concealing** 83:23

**conclusion** 58:15 59:23 60:10 63:11

**concrete** 87:10,18 88:14

**conduct** 27:21

**conducted** 49:12

**confrontations** 18:1

**connection** 82:12 84:22

**consisted** 30:3 49:9

**consistent** 76:22 85:19 86:2

**continually** 83:2

**control** 69:20 71:18,21 72:12,14,16,18 74:18,21 75:7,12,14,16 76:11

**copy** 36:20 56:8,10 89:5

**corner** 73:21 74:11 78:22 86:1,24 87:5

**Corporal** 9:19,20 11:9,13 79:8

**Corporal's** 10:3

**correct** 5:11 7:25 8:9,10,11 26:1,24 27:6,9 43:17,20 60:16 61:15,20 62:3,4,10 63:2

**Counsel** 59:8 78:17

**Counting** 52:2

**County** 19:16

**courses** 13:14,17 17:23

**Court** 5:3,4 89:4

**courtroom** 5:18,21 6:6

**credential** 13:22

**criminal** 46:15

**criteria** 33:9

**CSR** 5:5

**cup** 76:19

**custody** 18:4 49:15,17,20,23 50:1 53:2,10,16,19 54:3,9,17,24 79:3,6

## D

**DA** 48:2

**daily** 17:22

**danger** 40:7 80:18 81:1

**date** 21:1 52:4 64:4

**dates** 49:10

**day** 24:12 53:14 65:2 66:2,5

**days** 11:12 49:11

**deadly** 37:19 38:5,9

**deal** 26:24,25

**death** 37:3,7 38:4

**decide** 47:1

**decided** 66:11

**deciding** 33:10 37:19

**decrease** 84:11

**defenses** 47:6

**define** 53:12,15

**defined** 50:11 51:1 53:24,25

**degree** 13:23

Deposition Of Officer Pedro Aguila

delay 63:20

deliver 37:12

denying 70:20, 25 71:6

department 19:16,17 20:1,8 21:9 23:7,23 24:8 30:18,19 31:1,6,9,17 34:21 35:17,19, 22 36:4,8,10,12, 15,17,22 37:7 39:19 40:16,21 41:12,20 42:3 43:4,23 44:24 49:6 51:15 54:16 56:5 57:6, 7 71:22 72:2 76:23 82:11,16 84:21

Department's 20:20 41:4

depending 26:3 72:15

depends 48:9 53:12 73:1,3 78:19

depicted 70:6

deployed 32:1

deploying 30:6

DEPONENT 5:6

deposition 5:15 59:9,10 64:12

describe 60:20 66:7

details 44:8

Detective 9:18 70:7,8,9 71:8

79:7

deteriorate 46:6

determine 43:13 47:5,10

determines 42:10

difference 39:15 60:15,19,24

diploma 12:11 13:23

discharge 16:11

discharged 15:25

discuss 24:1

discussion 26:15

district 46:23,25 47:3,14,22 48:16

document 8:17 22:14,15 23:8, 18,19 32:6,8 43:11 44:5,6 58:3,4,19,20 60:3 61:12,25 63:15

documentation 22:9 32:4

documented 33:17 43:1

documenting 22:5 60:23

documents 7:9, 14,18 8:15 9:4

dodged 62:1

door 66:11

drive 66:12

driving 28:10 66:16

duties 26:17

duty 41:4,12,17 42:10,14 43:3, 17,19 44:3,21 57:7 58:6,9,17 59:4,18 60:7,13 61:1,2,4,6 63:9, 13 87:24 88:7

─────────

**E**

─────────

E-V-O-C 28:12

earlier 45:8

educational 12:5

effect 35:12 36:22 38:21 62:9 88:8

effecting 34:22 35:1 86:3

effects 25:4

electronic 56:9

electronically 56:11

elementary 15:9

elevated 25:1, 15

else's 22:15

emotional 24:2 25:1

emphasis 13:10

emphasize 82:11,16

employed 17:4

employment 14:7 17:1

ended 65:4

enforcement 12:3,22 18:16 19:2,5,13,14,21 21:2,13 25:11 46:22 52:4 57:8 84:22 86:3

enter 20:21

entitled 6:18

estimate 33:21 34:8 53:8

evaluate 37:21

event 24:12 25:9 45:17 65:4 70:3 71:10

events 45:21 64:21 69:24

EVOC 28:6,8

exact 34:9 35:20 36:23 41:2 47:25 49:10

EXAMINATION 5:9

excessive 40:22 41:5,13,21 42:4, 10,14 43:5,13, 15,16,24 44:12, 17 52:1 55:22 56:2 57:9,15,22, 25 58:11 59:5, 20 60:7,12 63:8

excuse 15:18 18:12 19:10 25:7 27:18 28:7 30:25 64:19

74:23 76:16

execution 26:16

**Exhibit** 64:10,12

expect 75:7

expected 48:4

experience 24:18,21,25 25:4 46:6 47:3 84:14,20

experienced 35:4

explain 73:4 84:23

extended 67:14

extent 7:10 10:14 11:1,18 19:20

eyes 7:22

─────────

**F**

─────────

facing 73:9

fact 9:15 26:23 29:17 85:16

factor 37:13 85:6

factored 38:18

fair 6:13 7:2 26:9 27:1 32:7 46:17 55:20 56:19 62:19

familiar 6:13

family 16:5

faster 25:19,24, 25

feasible 45:18

Deposition Of Officer Pedro Aguila

| | | | | |
|---|---|---|---|---|
| **feel** 26:6 33:6,14 66:13 | 14,16,19 23:1,8, 20 34:22 35:1,8, 12,14,16,22 36:18,22,24 37:2,20 38:5,8, 9,10,13,19,22 39:2,8,10,16,20, 23,25 40:8,14, 17,18,22 41:5, 13,21 42:4,14 43:6,11,16,24 44:12,17 45:2 49:7,14,19 50:6, 10,11,18,22 51:1,2,9,15,24 52:1 53:1,9,13, 15,20,24,25 54:2,10,16,24 55:4,7,12,19,22 56:2 57:2,9,15, 23,25 58:11 59:5,20 60:7,12 63:8 87:25 88:5, 8,11 | 86:5 87:11,19 88:17 | **grabbing** 71:7, 14 77:2 | 64:1,25 65:3 66:1,21 67:5,20 68:14,23 69:7 70:5,15 71:9,15 72:6,13 73:4,11 75:14,21 76:13 77:3,19,24 78:8, 12,21 79:14,21 80:3,9,17 81:5, 13,18,23 82:5, 10,23 83:4,15 84:9,19 85:5,17, 25 86:11,17,23 87:17,24 88:7, 13,19,21,25 |
| **feeling** 70:24 | | **four-year** 13:3, 4,5,9,11 | **graduate** 12:10, 13 | |
| **fellow** 32:8 33:11 34:10 44:17 53:1,8 55:12,21 59:6 60:7 | | **frame** 69:5,8,10, 12,14,17,23 | **graduated** 16:2 | |
| | | **free** 83:5 | **graduating** 12:17 16:19 | |
| **felony** 27:17 66:9 | | **FRIDAY** 5:2 | **graduation** 49:4 52:9 | |
| | | **Front** 56:25 | **grasp** 74:22 | **grip** 76:15,17, 18,19,20 83:3 |
| **field** 33:23 34:10 52:9,14 59:15 | | | **grasped** 70:9 71:1 77:25 | |
| | | **G** | **grasping** 74:24 | **group** 11:21 |
| **fifteen** 5:22 | | **gap** 46:2 | **greater** 51:9 | **guess** 47:12 73:10 |
| **figure** 48:2 | | **Gardenia** 65:4, 5,8 66:8,23 | **GRECH** 5:9,10 7:13,17 8:5 10:18,23 11:4,8, 12,23 12:7,24 19:25 20:5,13 21:5 22:17,23 23:6 24:6,15 26:5,23 32:12, 16,21 33:9,18 34:4,14,19 37:18 38:6,20 39:10,15 40:8, 15 41:3,10,19 42:2,12,23 43:14 44:9,23 46:4,13 47:12, 20 48:11,23 49:4 50:16,25 51:7,14,20 52:2 53:7,15,22 54:8, 15,22 55:3,11, 20 56:4 57:17 58:5,22 59:12, 14 60:5,14 61:14,18 62:1,9, 19,25 63:7,17 | **guidance** 39:2 |
| **file** 47:1,10 | | **gave** 36:20 | | **guide** 53:13 |
| **find** 24:12 | | **general** 53:21 | | **guidelines** 35:11 36:16 |
| **fire** 16:15,22 36:3 | | **generally** 21:8 45:15 82:21 | | **gun** 29:9 |
| **firearm** 15:25 16:7 | **forced** 14:25 | **generated** 63:1 | | **guy** 85:1 |
| | **forearm** 68:3 73:10 | **give** 12:4,22 33:7,15,21 39:1 42:20 44:4 45:24 46:5 49:10 53:7 72:13,16 | | **guy's** 38:25 |
| **firearms** 15:23 18:9,11,12 28:14,16 29:8 | | | | **guys** 85:3 |
| **five-minute** 34:14 | **forget** 46:11 | | | |
| | **forgive** 20:25 | **glimpse** 33:8 | | **H** |
| **flip** 38:20 | **form** 35:3 | **goal** 72:21 75:11 81:9 | | **half** 6:5 17:18, 21 |
| **focus** 71:6,13 78:24 79:20 80:1 81:10 84:18 85:3 86:9 87:16,23 | **formal** 6:3 14:2 | | | |
| | **forwarded** 46:21 47:22 | **good** 5:3,10 48:1 | | **hand** 68:5,8,16, 25 69:1,17,21 70:10,22 71:1 73:20,22,23,24, 25 74:3,12,14, 15,19,24 75:12, |
| **footage** 64:20 | **foundation** 37:14 41:15,23 42:7,18 43:8 44:1 50:13,20 51:4,11,17 54:19 55:15 71:2 72:10 84:24 85:22 | **government** 44:10 57:10,20 58:23 59:4,19 | | |
| **force** 14:18,21, 25 17:2,6,7,13, 17 18:13,17,20, 23,24 22:6,10, | | **grab** 68:21 76:19 | | |

Deposition Of Officer Pedro Aguila

13,16,25 76:3,4,
5,6,8 77:2,25
78:3,15,20,22,
25 81:2,14,19,
25 82:4,6,23,24
83:5,9,10 87:3,
15,22

**handcuffed**
38:25 39:8

**handcuffs** 76:12
79:1 81:12,22
82:9 83:14,24

**handgun** 16:11,
16 28:20,21,24
29:19,23

**handguns** 29:8

**handle** 15:23
16:22 89:1

**hands** 70:17,18,
21 71:1 79:14,
18 82:12,17,22
83:16,17,18
84:1,6,10 86:11,
17 87:15,22

**happen** 27:3

**happened** 47:19
49:3

**Harassing** 62:7
80:5

**harm** 38:18,21

**head** 78:23
79:15 84:14,23
85:6,9 86:1,12
87:9,18 88:14,
15

**hear** 80:22

**hearing** 9:5

**heart** 24:22

25:15,24

**held** 16:18

**helps** 33:4
45:24 46:4
71:12

**Hemet** 30:19,22,
25 35:17,22
36:8,10,12,15,
17,22 37:6
39:19 40:15,21
41:4,11,19 42:2
43:4,22 49:22
50:1,17,23 51:1,
15 54:15,23
56:4 57:6

**high** 11:25 12:2,
8,10,11,13,18
15:3,9 16:2,19

**Highway** 19:15,
18

**hold** 14:7 16:25
71:18,23 73:5
74:6,20,25 75:7,
15 76:21

**holding** 68:7,15,
24 69:1,17,18,
21 76:3,4,6,7
80:19,20

**holds** 71:21

**hoping** 64:3

**hour** 89:7

**hundred** 85:2

**hurt** 37:22 38:11
39:1

**hypothetical**
26:19 38:15
39:5,7 40:4,12
46:9 47:17 54:6
55:16,24 75:9,

18 85:23 86:7

---

**I**

---

**Ideally** 83:13

**identification**
64:14

**imminent** 37:4,8

**impairment**
80:9

**impairs** 75:2

**importance**
22:2

**important** 45:16
56:25 57:3
81:13,18,24
82:3,6

**imposed** 59:18

**improvised**
66:17

**in-field** 49:5
84:21

**inability** 38:11,
21

**incident** 8:3
68:11,20 69:4,
19 70:13,16
71:7,13 78:24
79:19,25 83:6
84:18 86:9
87:15,22

**include** 21:18,
21,24 22:2,3,18
31:21 33:8,16
35:24 41:22
42:5,14,22 43:3
44:16 45:10
49:14 58:6,10
59:18 61:2

**included** 30:5
45:11

**includes** 15:7

**including** 15:23

**increase** 84:10

**increased** 25:18

**individual** 43:6

**inflict** 39:17,20,
25

**information**
22:3 31:13
41:22 42:5 47:4

**injuries** 37:8

**injury** 37:4,12,
20 38:4 39:17,
21 40:1,9,10
54:4,11,18,25
55:5

**insight** 33:15

**instances** 55:4

**institution** 13:3,
4,6,9,12,14,17,
20,24 14:1,5

**institutions**
12:5 19:7,12

**instruct** 21:3
38:22 60:6

**instructed** 58:9,
12

**instruction** 38:6

**instructional**
30:8

**instructions**
18:19,22

**instructors** 35:5
36:5,9 57:18

**interpret** 69:5
78:20

**intervene** 41:18
42:11,20 43:17
44:4,21 57:15
58:2,18 59:25
60:13 61:10,23
63:13

**interviews**
21:12

**involve** 17:25
18:3,9 22:5
28:13 45:1,13
49:25 50:1
83:15

**involved** 14:17,
20 23:21 25:10
26:23 32:1

**involving** 21:11,
16

**Irrelevant** 62:8

**issued** 29:9

---

**J**

---

**JANUARY** 5:2

**job** 27:1 33:5
42:19 57:14
61:10,23

**join** 17:6

**joined** 17:2

**justice** 46:15

---

**K**

---

**keeping** 82:23

**kick** 26:11,16
39:8

Deposition Of Officer Pedro Aguila

**kind** 13:22 28:19 38:18 73:2,3,8

**Klinzing** 9:19 79:8

**knowing** 34:8

**knowledge** 64:25 66:22

**Kohn** 5:4

**Kornblau** 7:10, 15 8:2 10:14,21, 25 11:6,10,18 12:3,21 19:20 20:3,9 21:2 22:11,20 23:2 24:4,14 26:2,18 32:9,13,18 33:2, 12 34:1,11,17 37:14,25 38:14 39:4,12 40:3,11, 24 41:7,15,23 42:7,17 43:8 44:1,18 45:22 46:8 47:7,16 48:7,19,25 50:13,20 51:4, 11,17,21 53:3, 11,17 54:5,12, 19 55:1,8,14,23 57:12,24 58:14 59:7,22 60:9 61:8,16,21 62:5, 17,21 63:3,10, 24 64:23 65:1, 22 66:19,25 67:16 68:10,17 69:2 70:1,11 71:2,11 72:3,10, 24 73:6 75:8,17 76:9,24 77:16, 21 78:5,10,16 79:12,16,23

80:5,12 81:3,7, 15,20 82:1,7,19 83:11 84:3,15, 24 85:11,21 86:5,13,19 87:11,19 88:1,9, 16,23 89:3,4,6

---

**L**

**L.A.** 19:16

**lacks** 37:14 41:15,23 42:7, 18 43:8 44:1 50:13,20 51:4, 11,17 54:19 55:15 71:2 72:10 84:24 85:22 86:5 87:11,19 88:16

**LAPD** 6:2 17:4 20:1 22:13,24 23:18 27:11,24 28:2,5,10,13,17 29:5 30:1,4,20 31:13 49:5,13, 18,21 50:5,7,11 52:3,9,10,18,21, 25 53:9 54:2,10 57:5 59:2,13,16 60:6

**LAPD's** 23:4 35:14

**laughing** 78:17

**law** 12:3,21 13:12 18:16 19:2,5,13,14,21 21:2,12,18 25:11 34:20 44:16,20 45:3,4 46:22 52:3 57:7 58:1,18 59:24

**84:22** 86:3

**lawful** 38:8

**lawyers** 35:7

**Leading** 65:24

**leave** 17:8 67:12

**leaving** 14:1

**lecture** 59:1

**lectures** 35:4 58:23,25

**left** 67:25 68:22, 24 69:20 71:7, 14 73:20,21,23, 24 74:12,14,18 75:12,13 76:6,7 78:25 79:19 80:1 81:2,10 82:24 84:18 85:3 86:9,16,18, 22 87:3,8,15,22

**left-hand** 74:11 78:21 86:1,24

**legal** 57:12,24 58:15 59:7,22 60:10 63:10

**lines** 35:14

**load** 29:12,15

**located** 66:9

**locating** 82:12, 17

**location** 66:12

**long** 13:5 46:10 52:12 65:16

**looked** 7:18 9:16,17

**Los** 19:16,25 20:7,20 21:9

**23:7,22 24:7** 30:18,25 31:6,9, 17 34:21 35:18 49:6 71:22 72:2 76:22 82:11,16 84:20

**lot** 29:20 46:2 47:25

---

**M**

**made** 62:16

**maintain** 69:20 74:18,20 75:12, 15 76:11,20 81:10

**maintained** 83:3

**man** 52:23,24

**manual** 40:19 56:5,8,10,22,23

**March** 20:22,23 21:5

**marked** 64:10, 14

**martial** 15:7,8, 12,15

**materials** 30:8, 10 31:8

**Mathematics** 13:10

**matter** 89:8

**Maynard** 9:18 11:5,13 69:21 70:7,8,9,25 71:8 79:7

**Maynard's** 10:2 70:18

**meaning** 51:2

**means** 38:2

**meant** 15:7 48:14

**memorialize** 23:14

**memory** 70:4

**mentally** 27:3

**mentioning** 26:13

**Miguel** 64:5

**mill** 29:16

**millimeters** 28:21 29:1

**mine** 33:16

**minimal** 50:11, 18 51:2 88:8

**minimum** 87:25

**minutes** 34:16 63:19 67:10,11 68:8 69:8 73:12, 17 74:7 75:22 81:6 87:3 88:22

**Mischaracterizes** 62:6

**Misstates** 22:20 32:9 48:19 72:11 85:11

**mm** 29:17,18,23

**MNP** 28:18

**modern** 62:15

**months** 52:13 65:19

**morning** 5:3,10

**move** 63:17

Deposition Of Officer Pedro Aguila

muted 64:6

**N**

narrative 22:12
76:10 82:2
85:12

nature 26:1

necessarily
71:19 78:7,8

needed 39:9,10
41:18

notes 10:12,19

notice 25:15,17

number 5:5

numerous 53:6
58:15 60:10
62:7 63:11

**O**

object 7:10
10:14 19:20
21:2

objection 7:15
10:21,25 11:6,
10,18 12:3,21
20:3,9 22:11,20
23:2 24:4,14
26:2,18 32:9,13,
18 33:2,12 34:1,
11 37:14,25
38:14 39:4,12
40:3,11,24 41:7,
15,23 42:7,17
43:8 44:1,18
45:22 46:8 47:7,
16 48:7,19,25
50:13,20 51:4,
11,17,21 53:3,

11,17 54:5,12,
19 55:8,14
57:12,24 58:14
59:7,22 60:9
61:8,16,21 62:5,
17,21 63:3,10
64:23 65:1,22
66:19,25 67:16
68:10,17,18
69:2 70:1,11
71:2,11 72:3,10,
24 73:6 75:8,17
76:9,24 77:16,
21 78:5,10,16
79:12,16,23
80:5,12 81:3,7,
15,20 82:1,7,19
83:11 84:3,15,
24 85:11,21
86:5,13,19
87:11,19 88:1,9,
16

objections 55:1

objectively
36:25 39:23
50:23 51:24
88:5,11

observe 86:10

observed 22:10
43:15 59:20
60:12 80:7

obstacle 17:23

obtain 51:9

occasions
54:23

occur 45:7

occurred 25:9
36:2 45:17,21
64:22

offense 60:1

office 46:23,25
47:4,22

officer 8:21,25
9:1,6,18 10:2,23
11:4,25 19:2,5,
13,14 22:6,10,
19 23:1,9 25:11
26:17 32:8,17
33:11,19 34:6,
10 37:10 38:12
39:25 40:2,8,13,
17,18,23 41:5,6,
12,14,20,21
42:3,4,5,15
43:6,11 44:5,11,
13,17 45:25
46:5 51:14 53:1,
9 54:9,16,23
55:7,13,21 57:8,
9,21,22 59:6,19,
21 60:8 64:1,7,
13 65:8,10,13,
16,20 66:8,10,
14,16 67:13
68:15,21,25
69:9,11,13,16,
21 70:6,18,21,
23,25 79:7
82:12,24 84:2,
10 85:18

officer's 38:7
39:16 82:17

officers 22:13
24:2 32:25 35:4
39:22 52:15
63:8 79:2,5,21
80:2,4 83:8,9
85:7

officers' 8:23

open 66:10

opinion 57:13,
25 58:16 59:8

opportunity
64:7

Ora 5:3

order 51:24

overlook 32:5

**P**

p.m. 59:10 89:7

palm 73:9 76:14

pamphlets 30:9

paper 7:25 8:12
60:23

papers 8:6

participate
43:20

partner 52:21

partners 38:3
46:14

pass 19:24

passed 20:11

passenger
66:11,15,17

past 11:12 33:1

pat 83:22

patrol 19:15,19
52:17,18,21
65:15,17

paying 81:1

PD 30:22 49:22
50:1,17

pedestrians
67:4

pen 62:3,4,10,
12 63:15

penal 21:11

people 39:7
46:2 49:17,19,
23 50:1 52:24
53:13,16

perfect 48:5

periods 46:11

permitted 51:8,
15

person 33:17
37:11 39:3,11
73:2

Personal 65:22

personally 7:13

perspective
68:12

photo 77:25

photograph
86:2

photographs
9:8 63:18

phrase 77:9

physical 17:16,
20,22,25 20:15
21:10 24:1
40:10

physically
39:11

place 65:4 76:11

placement 82:4,
6

placing 78:25

played 64:5,8
67:12 73:11,15
74:5 75:21
86:23 87:2

point 19:1 27:5 43:12 44:5 47:12 62:25 65:18 66:12 72:18 77:4 82:4 83:20,22

points 26:11

police 11:24 19:17 20:1,20 21:9 22:3,6,10 23:7,23 24:8 26:17 30:15,17, 18,19 31:1,6,9, 17 34:5,21 35:17,18,22 36:8,10,12,15, 17,22 37:6 39:19 40:15,17, 21 41:4,5,6,11, 19 42:2 43:4,22 44:11 46:14 49:6 51:1,15 54:15,23 55:7, 13 56:4 57:6,9, 21 68:15 71:22 72:2 76:23 82:11,16 84:20

policies 31:13 35:15,16,17 49:12 56:5,17, 25 57:2,3

policy 13:15 23:5 30:11,13 36:19,20,21,24 39:19 40:16,21 41:1,4,11,20 42:3 43:4

politics 13:18

portion 77:7

portions 67:8

pose 81:1

posed 80:18

Possibly 16:3 33:25

POST 59:3,15, 16

pounds 85:2

Powerpoint 30:14

practice 6:5

preparation 10:24 11:5,9

prepare 7:14,19 8:16 9:4,8,15,23 10:6,10,12,18 27:3

prepared 7:8 27:5

present 11:22 37:11,21 38:7, 11,17

presentations 24:7

pretty 18:14 47:18,20

previously 32:2

primarily 29:9

primary 81:10 87:16,23

print 30:10

prior 25:11

privacy 12:4,22 19:21 21:3 65:22

privately 11:15, 16

privilege 12:4, 22 19:21 21:3

privileged 7:11 10:15 11:1,19

procedure 66:17

procedures 56:6

proceeded 20:12

process 6:11,13

professional 6:15

pronunciation 5:11

provided 29:11 30:8 31:12 56:8, 10

public 13:15

publications 30:10

punishable 60:1

purposes 82:25 84:1

pursuits 26:12, 22 28:3

push 17:22 73:8

put 6:14 43:23 44:7 63:9 79:1 81:12,21,22 82:9

---

**Q**

qualifications 11:24

quarters 13:7,9

14:5

question 6:21 7:1 14:10 19:8 23:14,17 31:3 37:19 39:18 42:13 46:16 51:13 53:24,25 61:1,5 63:7 68:13 71:17 72:5 80:23 81:17 82:14 83:7 85:24

questioning 21:22

questions 6:8, 10,14,17 7:18 11:24 17:5 21:14,20 34:20 52:8 53:23 67:9 88:25

quicker 63:21

---

**R**

radioed 66:9

rare 52:22

rate 24:22 25:15

reach 17:11 84:7

reaching 84:12

read 30:10 37:16 46:25 56:13,14,15,18, 21,24

reader 33:8,15

real 48:1

reason 72:8 76:14 84:14,23 85:15,18

reasonable 35:14 36:25 37:10 39:23 50:5,10,18,23, 25 51:24 88:5, 11

reasons 81:23 85:8

recall 16:8 18:2, 5,6,8,21,25 24:17,20,23 25:2,6,8 26:5,14 33:20 34:3,7,13 44:14 53:5 59:13 70:14,17 80:3

recalling 69:24

recalls 70:3

receive 12:10 13:22 14:2 17:13,20 18:11, 13,16,19,22 19:13 21:9 26:7 27:11,14,21 28:1,4 49:23

received 5:25 17:17 29:20 30:24 31:4 44:23 49:19 59:15,17 76:22 85:20 86:3

receiving 30:7

recently 45:8

recess 34:18 63:25 88:24

recognize 64:2, 15 67:20 68:25 69:9,11

recollecting 71:10

**recollection** 29:22 70:9 73:16

**recollections** 46:6

**record** 32:24 33:10 44:11

**recorded** 32:16, 25 34:5,9

**recording** 22:25 23:12

**recordings** 9:23

**redefine** 48:15

**refer** 36:23 40:19 47:25

**reference** 44:7

**referencing** 58:23 59:3

**referred** 36:19, 20

**referring** 8:4 48:16 77:11

**reflect** 64:21

**reflects** 66:23

**refresher** 31:7, 9,14,16

**refreshes** 73:16

**regard** 23:10 45:15 57:25 59:14,16

**related** 21:12

**relation** 82:17

**reliable** 47:14

**remainder** 18:23

**remember** 26:8, 10,11,12,20 58:22 59:3

**remind** 59:9

**reminded** 46:12

**reminding** 59:11

**REMOTELY** 5:1

**repeat** 14:10 31:3 41:9,25 51:13 68:13 81:17 82:14

**replay** 87:2

**report** 8:19 9:5, 6 22:3,9 23:11 31:25 33:10 34:5 41:18,22 42:6,11,15,22 43:4,5,6,22,23 44:6,7,11,16,21 46:17,25 47:11 48:16 49:2 57:8, 15,21 58:2,7,10, 20 59:4,20,25 60:2,6,13,16,20, 25 61:2,6,11,15, 19 62:2,9,12 63:9,14

**reported** 5:1 55:6,12,21 56:3

**Reporter** 5:3,4,8 89:4

**reporting** 40:16, 22 60:1,15,20, 22,25 61:20

**reports** 8:20,23 9:1,2 21:16,21 22:18 23:8,13 31:21 32:17 43:19 45:13,16,

20 46:14 47:13 48:5,6,24 62:16, 23 63:1

**representation** 49:3

**require** 43:5,23

**required** 48:17 56:15,16

**requirement** 44:10

**requires** 44:16 57:21

**requiring** 59:19

**Reserves** 17:2, 6,7,14,17 18:24

**resist** 39:8

**resisting** 49:17, 20 50:2 83:2

**respiration** 24:12 25:18

**responses** 24:2

**responsibility** 22:25

**responsible** 32:3,4

**rest** 63:20 85:6

**restrained** 38:25 39:11

**restraint** 38:7

**restroom** 34:15

**result** 80:25

**retired** 9:22 10:3 11:8,13

**review** 8:20 9:2, 4,8,11,23 46:19

**reviewed** 8:16, 17,24,25 9:14 10:6,9

**revolver** 29:1

**ride** 66:8

**rifle** 16:9,10 18:15

**Riverside** 44:24 57:6

**rules** 18:14

**running** 17:23

**S**

**safe** 15:19

**safety** 18:14 80:18 81:1 82:13,18,25 83:21 84:2,10

**scenarios** 49:12

**scholastic** 14:2

**school** 11:25 12:2,8,10,11,13, 18,23 15:3,9 16:2,19

**schooling** 17:3

**screen** 64:2 67:14 75:23 76:1

**searches** 27:17

**seat** 66:15

**seconds** 67:11 68:9 69:8 73:12, 17 74:7 75:22 81:6

**section** 57:10, 21 58:11,23

59:4,19

**secure** 83:8 84:14 87:25

**secured** 83:18 84:1,7

**securing** 84:9, 23 85:6,8

**security** 85:25

**seeking** 57:18

**self-defense** 15:4,15 18:7

**semiautomatic** 29:2,3,5,8,19

**sense** 15:6 27:2

**sentences** 48:13,15,18,24

**sequence** 87:2

**set** 47:5 63:19

**setting** 6:4,15 11:21 16:5 21:11 24:24 26:15 35:25

**sexual** 45:11

**share** 64:1

**Sheriff's** 19:16 20:7 44:24 57:6

**shift** 65:15,17 66:5

**Shorthand** 5:8

**shot** 68:6

**shots** 67:17 68:11,18

**show** 67:8

**Showing** 71:15 86:23 87:3

Deposition Of Officer Pedro Aguila

shown 24:8 80:10,14 86:1

shows 67:2,14

sic 11:16 18:6 70:21

simpler 37:18

single 59:1

single-man 52:20

sir 6:24 7:3,6 88:7

sit 17:23

situation 14:17, 20 27:6,19 37:11 75:6

situations 22:5, 9 27:20 49:25

sixty 11:12

size 29:14 73:1 85:5

slam 87:9,17 88:14

smaller 16:10 85:2,7

Smith 28:18 29:5,12,15,19, 23

socialized 65:20

somebody's 38:21 76:4

sort 17:20 60:23 66:17

sound 64:6

specific 49:16 70:20 77:1

specifically 8:4 26:6,12,21 32:14 34:21 49:18 58:11 59:18

speculation 40:12 45:23 47:8 55:16,25 70:12 71:3 78:6, 11 86:7 87:12

spell 28:11

spoke 36:13

spoken 11:13

sponsored 36:6

sports 15:5

standard 50:17

start 38:10 54:1 59:2

starting 59:9

state 5:4 12:6,7, 23,24 25:1

stated 32:2

statement 26:9 33:6 42:21,25 56:19 58:3,19 60:3 61:12,25 63:16

statements 21:24 47:24

states 44:21

stating 85:15

statistics 13:10

stop 66:10 67:11 71:16 74:7

Stopping 73:11

stops 27:17,22

streets 67:4

stressful 27:5

studied 13:8

style 62:11,15

suggest 29:18

superior 60:22, 25 61:2

supervisor 32:4 41:18 42:11,20, 21 43:1,10 44:4, 22 46:19 55:6 57:16 58:2,18 60:1,4,13,15,20 61:4,11,20,24 63:14

supplemental 8:19

support 33:4,7

supposed 22:14

suspect 33:23 34:6 37:22 38:11 53:1

suspect's 71:24 72:1,8,16,18 82:12,17

suspects 27:16 49:14 82:22

Sworn 5:7

system 46:15

T

tactics 27:12, 15,16

taking 21:24 49:14,16,19,23

50:1 79:2,6

talk 10:23 11:4,8 61:2

talked 30:14

talking 7:20 8:3 25:9 34:23 48:5

Tased 30:7

Taser 16:18,21 30:6 31:21,25 32:5,8,17,25 33:11,19,22 34:6,10

Tasers 29:25 30:4,9,25 31:5, 10,14,18

tattoo 67:15,19 68:2 76:2

taught 22:8 25:3 35:10,18 37:6, 21 46:13 72:2,6, 7

teach 72:8

Technically 17:8

technique 71:17 72:7 75:15 77:1

techniques 75:20

telling 48:18,21 56:21 68:24 70:25

ten 33:24 34:16 54:14 55:3

ten-minute 63:23

tend 46:6,11

test 19:23,24 20:11,13,14,15

testified 5:8,18, 20

testify 5:23 6:1

testimony 7:8, 14,19 9:9,12,15, 24 10:7,10,24 11:5,9 22:21 32:10 48:20 62:6 72:11 85:12

thing 56:24

things 7:22 17:24 45:25

thought 48:14 54:3,10,17,24 55:6 80:25

threat 37:3,7 40:1,6,14

threatened 38:4 40:10

thumb 76:14

time 12:15 15:18,19,22 16:1,12,18,21 18:23 37:17 41:9 42:1 45:17, 20 46:7,11 52:2, 23 58:8 62:2,4 66:13 69:4 70:13,15 75:11 77:16 79:19,20 80:16,19 81:3,5 83:25 84:17 86:8,19 87:14, 21 88:2

times 5:20 30:6 33:18,22 34:4,9 49:10 52:25

Deposition Of Officer Pedro Aguila

53:8 54:8 58:15
60:10 62:7
63:11

**today** 10:24
11:5,9 59:10

**today's** 7:8,14,
19 9:5,9,11,15,
24 10:6,10 52:4

**told** 22:17,22
24:11,18 31:24
32:14 37:2
43:16 50:5 57:7,
10,18,19,20
73:15

**top** 78:21 86:1,
24 87:5

**topics** 21:12

**totality** 36:25
37:9 39:23 40:5
83:19 84:5
88:12

**train** 35:7

**trained** 5:23
24:21,24 25:3
28:16,25 29:4,
18,25 31:20
32:7 47:13
48:23 49:2
50:17 71:17,20,
23 73:5,8 74:6
75:15

**training** 6:1,3
14:2 15:4,7,8,
12,15,17,19,22
17:6,13,16,20,
22,25 18:3,6,9,
12,17 19:13
21:8,10,11,15,
18,21 22:24
23:6,9,23 24:1,6

26:6,8,23 27:8,
9,12,14,21 28:1,
4,6,8,13 29:9,20
30:3,24 31:2,4,
10,14 34:20,22,
25 35:21,24
36:2,7,17 37:7
44:9,24 45:2,4,
10,15 48:17
49:6,11,19,23
50:1,4 52:10,14
59:15,17,18
60:5 76:22
82:10,15 84:13,
19,21 85:19
86:2

**trainings** 31:16
49:13 57:5

**transcript** 89:5

**travel** 66:23
67:3

**traveled** 65:7

**Trent** 52:8

**true** 46:22 47:12
50:4,10,16,25
65:3,7 70:8

**trust** 47:15

**TURNED** 64:6

**twenty** 5:22
33:25

**twisted** 77:4,5

**two-man** 52:22
66:1

**two-year** 13:2

**type** 16:7 18:11,
12,16,17 21:11
27:14 28:4
74:20

**typed** 8:9

**types** 21:8

**typewritten**
10:19

**typically** 52:24

**typing** 62:13,19
63:1,6,15

—

**U**

**ultimately** 20:16

**Um-hm** 7:24 8:7

**unarmed** 49:15

**unclear** 58:5

**understand**
6:18,19,21,22,
25 7:1,4 8:2
19:8 24:15
32:21 45:19
48:11 60:14,24
61:3,5,7,14,19
62:25 68:23
78:17

**understanding**
22:24 41:3,11
46:18,24 51:8
60:21

**understood**
59:12 61:1

**unencumbered**
83:5

**Unintelligible**
55:9,15,24
83:11 84:16
85:21 86:6
87:13 88:2

**unit** 52:20

**units** 52:22

**unlawful** 40:18
55:7,10,12,19
56:2

**updated** 49:12

**ups** 17:23

—

**V**

**vague** 23:2
24:4,14 26:2
32:13,18 33:2
37:25 39:12
41:7 44:2 47:17
48:7,25 50:21
51:5,12 53:3,17
54:5,12,20 55:8,
14,23 59:8 61:8,
16 62:17,21
63:3,11 64:23
66:19,25 68:17
69:2 70:1 71:3
72:3,24 73:6
75:17 76:24
77:16,21 78:5
79:16,23 80:6,
12 81:3,7,15
82:2,7,19 83:12
84:3,15 85:12,
22 86:6,19
87:12 88:1,2

**variety** 21:10
29:7

**vehicle** 23:24
24:9,13,19,22
25:1,5,11,14,25
26:1,7,21 27:22
28:1,5 45:2
66:4,10,14

**verbiage** 36:23
41:2

**video** 9:11,14
10:9 24:7 64:2,
3,5,8,13,15,20
67:6,9,12 69:23
73:11,15,16,18,
21 74:5,17 75:3,
21 78:22 81:6
86:23,24 87:2,4,
5

**videos** 9:16,25
10:1 24:8,25
63:18

**view** 81:11

—

**W**

**waiter** 14:15,18
16:24

**wanted** 83:23,
24

**watch** 64:8 74:9
76:2

**watched** 32:5

**watching** 79:9

**weapon** 28:19
29:2,4,12 83:23

**weapons** 15:17,
20,23 84:7

**wearing** 74:9

**week** 17:18

**weeks** 17:21

**Wesson** 28:18
29:5,12,15,19,
23

**whatsoever**
15:12

**wished** 6:25
88:14

Deposition Of Officer Pedro Aguila

**witnessed**
22:19 23:9 33:1,
19,22 42:15
59:5 80:7

**witnesses**
21:22,25 40:17
41:5,13 44:12

**witnessing** 34:5
41:20 42:3,5
43:5,24 44:17
63:8

**words** 8:6,8,12
23:14 42:24
51:7

**work** 14:11,13
30:20 65:21

**worked** 14:15,
16 30:15,17,22
52:23 65:10,13

**working** 31:5
54:10

**works** 6:11
52:23 53:22

**wrist** 68:22
71:7,14,18,24
72:1,7,9,17,19
74:6,25 75:5,7,
14 77:3,5 80:19
87:8

**wrists** 73:2

**write** 22:14,18
23:13,21 33:5,6
43:19 46:17
48:5 57:8 60:6
61:1,6 62:2,3,4,
10

**writing** 21:16,21
23:7 31:20
45:13,16 59:5
60:16,19,25

61:15,19 62:19
63:1

**written** 8:9
19:23,24 20:11,
13 31:8,12
41:22 45:17,20
62:23

---

Y

---

**year** 15:14
17:11

**years** 14:8
15:11 16:13,25
30:20,22 35:15
52:3,6

**younger** 16:3