**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Tel:   (951) 682-9311

*Attorneys for Plaintiff*, HENRY BARNHILL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY BARNHILL,<br><br>                   Plaintiff,<br><br>        vs.<br><br>CITY OF HEMET; OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; CATHERINE TIPTON; and DOES 1-10, inclusive,<br><br>                   Defendants. | Case No.: **5:23-cv-00589-JGB-SP**<br><br>[*Honorable Jesus G. Bernal*<br>Magistrate Judge Sheri Pym]<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[*Filed concurrently with* Plaintiff's Objections to Defendants' Exhibits; Declaration of Marcel F. Sincich and exhibits thereto; Declaration of Roger Clark; Declaration of Doctor Ryan O'Connor; Plaintiffs' Statement of Genuine Disputes and Additional Material Facts]<br><br>Hearing:      February 9, 2026<br>Time:        10:00 a.m.<br>Crtrm:       1<br><br>Trial Date: April 7, 2026<br>Complaint Filed: April 4, 2023 |

# **<u>TABLE OF CONTENTS</u>**

MEMORANDUM OF POINTS AND AUTHORITIES..............................................1

I.    INTRODUCTION .......................................................................1

II.   STATEMENT OF RELEVANT FACTS ........................................3

III.  LEGAL STANDARD UNDER RULE 56........................................7

IV.  DEFENDANTS USED EXCESSIVE FORCE...............................8

     A.    Nature and Quality of the Intrusion – Unparalleled ...............................9

     B.    Government Interest Factors Confirm Excessive Force.......................11

         1.    No immediate threat of harm or death or serious bodily injury. .......................................................................11

         2.    Barnhill was not actively committing a crime, was not resisting or attempting to flee, while Defendants ignored less-intrusive alternatives and failed to give warnings...............13

     C.    It Was Obviously Clearly Established That Attacking an Unarmed, Non-Resistive, Non-Threatening, Compliant Man, Is Excessive ........................................................................15

V.    PLAINTIFF'S STATE LAW CLAIMS SURVIVE .......................................20

VI.  PLAINTIFF'S *MONELL* CLAIMS SURVIVE ................................20

VII. PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES ............................23

VIII. CONCLUSION ...............................................................23

# TABLE OF AUTHORITIES

Cases

*A.D. v. Cal. Highway Patrol*,
   712 F.3d 446 (9th Cir. 2013)..................................................................8

*A.K.H. ex rel. Landeros v. City of Tustin*,
   837 F.3d 1005 (9th Cir. 2016)..........................................................9, 22

*Adickes v. S.H. Kress & Co.*,
   398 U.S. 144 (1970)..............................................................................7

*Aguirre v. County of Riverside*,
   29 F.4th 624 (9th Cir. 2022)...............................................................18

*Anderson v. Creighton*,
   483 U.S. 635 (1987)..............................................................................7

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..............................................................................7

*Blanford v. Sacramento County*,
   406 F.3d 1110 (9th Cir. 2005)...............................................................9

*Blankenhorn v. City of Orange*,
   485 F.3d 463 (9th Cir. 2007)................................................................9

*Breithaupt v. Abram*,
   352 U.S. 432 (1957)..............................................................................8

*Bryan v. MacPherson*,
   630 F.3d 805 (9th Cir. 2010)....................................................9, 10, 12

*C.V. by & through Villegas v. City of Anaheim*,
   823 F.3d 1252 (9th Cir. 2016).............................................................16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................7

*Chew v. Gates*,
   27 F.3d 1432 (9th Cir. 1994)................................................................9

*Collender v. City of Brea*,
   605 F.App'x 624 (9th Cir. 2015).........................................................17

*Cousins v. Lockyer*,
   568 F.3d 1063 (9th Cir. 2009).............................................................23

*Cruz v. City of Anaheim*,
   765 F.3d 1076 (9th Cir. 2014).............................................................22

*Curnow v. Ridgecrest Police*,
   952 F.2d 321 (9th Cir. 1991)........................................................10, 20

*Davis v. City of Las Vegas*,
   478 F.3d 1048 (9th Cir. 2007).............................................................15

*Deorle v. Rutherford*,
   272 F.3d 1272 (9th Cir. 2001).............................................................15

*Drummond v. City of Anaheim*,
   343 F.3d 1052 (9th Cir. 2003).............................................................10

*Est. of Aguirre v. Cnty. of Riverside*,
    29 F.4th 624 (9th Cir. 2022)...................................................................15

*Garlick v. Cnty. of Kern*,
    167 F. Supp. 3d 1117 (E.D. Cal. 2016).................................................8

*George v. Morris*,
    736 F.3d 829 (9th Cir. 2013).........................................................10, 20

*Glenn v. Washington County*,
    673 F.3d 864 (9th Cir. 2011)...................................................7, 10, 15

*Green v. City and Cty. of San Francisco*,
    751 F.3d 1039 (9th Cir. 2014)...............................................................15

*Harris v. Roderick*,
    126 F.3d 1189 (9th Cir. 1997)..............................................10, 17, 19

*Hayes v. Cnty. of San Diego*,
    736 F.3d 1223 (9th Cir. 2013)................................................................8

*Hayes v. County of San Diego*,
    57 Cal.4th 622 (2013).................................................................17, 23

*Hervey v. Estes*,
    65 F.3d 784 (9th Cir. 1995)..................................................................8

*Hunter v. City of Leeds*,
    941 F.3d 1265 (11th Cir. 2019)............................................................19

*Isayeva v. Sacramento Sheriff's Dep't*,
    872 F.3d 938 (9th Cir. 2017)................................................................10

*Johnson v. Bay Area Rapid Transit Dist.*,
    724 F.3d 1159 (9th Cir. 2013)..............................................................23

*Knapps v. City of Oakland*,
    647 F. Supp. 2d 1129 (N.D. Cal. 2009) ..............................................25

*Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*,
    841 F.2d 872 (9th Cir. 1987)..................................................................7

*Longoria v. Pinal County*,
    873 F.3d 699 (9th Cir. 2017)................................................................21

*Lopez v. Gelhaus*,
    871 F.3d 998 (9th Cir. 2017)......................................................passim

*Lui v. DeJoy*,
    129 F.4th 770 (9th Cir. 2025)..............................................................13

*Medina v. Cram*,
    252 F.3d 1124 (10th Cir. 2001) ..........................................................21

*Megargee v. Wittman*,
    550 F.Supp.2d 1190 (E.D. Cal. 2008)................................................25

*Mullenix v. Luna*,
    577 U.S. __, 136 S. Ct. 305 (2015)......................................................16

*Munoz v. City of Union City*,
    120 Cal.App.4th 1077 (2004).............................................................23

*Nelson v. City of Davis*,
    685 F.3d 867 (9th Cir. 2012)..............................................................10

*Nicholson v. City of Los Angeles*,
    935 F.3d 685 (9th Cir. 2019) ............................................................. 8, 14

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ............................................................................... 16

*Porter v. Osborn*,
    546 F.3d 1131 (9th Cir. 2008) ............................................................... 8

*Roque v. Harvel*,
    993 F.3d 325 (5th Cir. 2021) ................................................................ 17

*S.R. Nehad v. Browder*,
    929 F.3d 1125 (9th Cir. 2019) ......................................................... 7, 10

*Santos v. Gates*,
    287 F.3d 846 (9th Cir. 2002) ................................................................. 9

*Saucier v. Katz*,
    533 U.S. 194 (2001) ............................................................................... 15

*Scott v. Harris*,
    550 U.S. 372 (2007) ............................................................................. 7, 9

*Smith v. City of Hemet*,
    394 F.3d 689 (9th Cir. 2005) ...................................................... 9, 10, 15

*Strickland v. Nevada County*,
    69 F.4th 614 (9th Cir. 2023) ........................................................ 1, 12, 16

*Tabares v. City of Huntington Beach*,
    988 F.3d 1119 (9th Cir. 2021) ...................................................... 10, 23

*Tan Lam v. City of Los Banos*,
    976 F.3d 986 (9th Cir. 2020) ........................................................ 16, 20

*Tennessee v. Garner*,
    471 U.S. 1 (1985) ................................................................................... 10

*Tennison v. City and Cnty. of San Francisco*,
    570 F.3d 1078 (9th Cir. 2009) ............................................................... 8

*Ting v. United States*,
    927 F.2d 1504 (9th Cir. 1991) ............................................................. 19

*Torres v. City of Madera*,
    648 F.3d 1119 (9th Cir. 2011) ...................................................... 11, 14

*Tubar v. Clift*,
    453 F. Supp. 2d 1252 (W.D. Wash. 2006) ......................................... 20

*Velazquez v. City of Long Beach*,
    793 F.3d 1010 (9th Cir. 2015) ............................................................... 9

*Vos v. City of Newport Beach*,
    892 F.3d 1024 (9th Cir. 2018) ............................................................... 7

*Wall v. County of Orange*,
    364 F.3d 1107 (9th Cir. 2004) ............................................................. 21

*Wealot v. Brooks*,
    865 F.3d 1119 (8th Cir. 2017) ............................................................. 14

*Wilkins v. City of Oakland*,
    350 F.3d 949 (9th Cir. 2003) ................................................................. 7

*Wilkinson v. Torres*,
610 F.3d 546 (9th Cir. 2010)..........................................................................7

*Williams v. City of Burlington, Iowa*,
27 F.4th 1346 (8th Cir. 2022)......................................................................14

*Wilson v. City of Des Moines*,
160 F. Supp. 2d 1038 (S.D. Iowa 2001) ....................................................20

*Zion v. County of Orange*,
874 F.3d 1072 (9th Cir. 2017)......................................................8, 10, 18, 23

Statutes

42 U.S.C. § 1983................................................................................................10
CACI No. 1305B................................................................................................24
California Government Code § 815.1................................................................25
California Government Code § 820...................................................................25
California Government Code § 820.2................................................................25
California Penal Code § 835a...........................................................................10
Federal Rules of Civil Procedure, Rule 56 ...............................................2, 6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

This civil rights action arises from the excessive and unreasonable force of Plaintiff Henry Barnhill ("Barnhill") by City of Hemet Police Department Officers Brett Maynard ("Maynard"), Joshua Bishop ("Bishop"), Pedro Aguila ("Aguila"), Douglas Klinzing ("Klinzing"), on April 29, 2022. Viewing the evidence in the light most favorable to Plaintiff, Defendant Officers used force and deadly force against a compliant, non-resistive, non-fleeing, surrendered, unarmed and grounded Barnhill, without warning, while several reasonable alternatives were available, and while Barnhill was not a threat of harm to any officer or person. Evidence of which is obviously shown on multiple body-worn camera videos, and testimony of parties. Defendants' frivolous Motion has no merit and should be denied in full.

After leaving his vehicle, in response to Maynard and Bishop's commands, "Show us your hands," Barnhill complied and put his visibly empty hands in the air. Out of fear of officers chasing him down with guns drawn, Barnhill continued to the door of his house where Barnhill recognized the pursuers as police and froze. Maynard violently tackled Barnhill, pushing him away from the door and onto a patio chair. At that time and thereafter, Barnhill was not attempting to flee, was not resisting, was not aggressive or assaultive at all, but surrendered. While Barnhill sat on the chair with his visibly empty hands in the air in compliance with officers, Bishop told officers to back up so that he can Taser Barnhill. Aguila grabbed Barnhill's left wrist while Maynard held Barnhill's right wrist, then Bishop Tased Barnhill. While under the effects of the Taser causing neuromuscular incapacitation, arms spread and held by the officers, Maynard violently punched Barnhill in the face twice. Still not resisting, the Tasing continued causing Barnhill's body to constrict and slide down to the ground. On the way down, Maynard kneed Barnhill's body.

On the ground, Barnhill pled with the officers, "I'm on the ground, I'm on the ground." But the officers' assault continued. Barnhill rolled to his stomach and

Aguila immediately placed his left hand behind his back without any resistance.
Instead of maneuvering the compliant Barnhill's right hand behind his back, Maynard
kneed Barnhill in the face and grabbed Barnhill's hood and ponytail and slammed his
face against the brick wall. Barnhill continued to plea in response to the violence, "I
didn't do nothing." In the meantime, Bishop stepped back and called for additional
resources while the other two officers easily controlled Barnhill who was laying flat
on the ground chest down. As Maynard grabbed Barnhill's hood again, Barnhill
begged, "I'm not refusing, I'm not refusing, I'm not refusing, I'm not refusing." Then
Bishop re-joined the attack Taser in hand. First Bishop lifted Barnhill's head by his
hood and ponytail before pushing his head to the ground, then uses the Taser in drive-
stun-mode to the back of Barnhill's neck. At this time, Aguila begins to rapidly and
violently deploy eight (8) punches to Barnhill's lower back. During the punches and
thereafter both of Barnhill's hands were behind his back. Unsatisfied with the
damage already done, when Barnhill begged, "They're behind my back, they're
behind my back, they're behind my back, they're behind my back," Bishop used
deadly force striking Barnhill to the back of the head with his Taser so violently that
the Taser broke. *With his hands still behind his back*, Bishop grabbed Barnhill's
ponytail again, lifted his head off the ground, and slammed it into the ground
followed by blood spattering on the ground. Apparently having taken out all their
aggression, the officers put handcuffs on Barnhill without resistance.

Defendants' Motion must fail by their impermissible addition of hindsight
evidence, and unsupported arguments based on self-serving statements that lack
credibility and require jury scrutiny. Further, Defendants' Motion fails because it is
based on their flagrant disregard of Rule 56's requirement that there be no disputed
issues of material fact and that the record must be viewed in the light most favorable
to the nonmoving party. <u>Video evidence directly contradicts Defendants' claim</u>
showing that Barnhill was not resisting, not fleeing, and not assaultive. Thus,
<u>significant material facts are in dispute</u> – requiring denial of summary judgment. A

reasonable jury could find that Barnhill was not a threat of harm to anyone. Based on the video evidence and Plaintiff's fact, the beatdown of Barnhill was obviously unreasonable and violated clearly established law. Defendants' use of force, including deadly force, was excessive and unreasonable, and they are not entitled to summary judgment or qualified immunity.

## II.   STATEMENT OF RELEVANT FACTS

This matter is ripe for trial based on the obvious disputed issues of material fact, Defendant Officers' credibility issues, and the objective video evidence. Defendants' police practices expert agrees that whether force was objectively reasonable is a factual determination. (Plaintiff's Additional Facts ("AF") 87.) This entire incident lasted approximately 3 minutes. (AF 88.) The event from the night before, which was the substance of this call, did not involve a gun; Barnhill did not point a gun or have a physical altercation with anyone. (AF 89.) The allegations required investigation (AF 90) not punishment. Defendants Maynard, Bishop and Aguila responded and saw a car that matched the description given with Barnhill alone inside. (AF 91.) Barnhill merely sat in his car until he saw out of the corner of his eye from the side mirror, someone approaching him with a gun, so he turned the car on and drove home to get somewhere safe out of great fear, not realizing it was the police. (AF 92-93.) Even while driving, Barnhill does not recall knowing it was the police or seeing lights and sirens, he was just afraid of being killed and tried to get away from danger. (AF 94.) The pursuit lasted approximately 2 minutes until the car stopped and Barnhill exited then went towards the house while Maynard, Bishop, and Aguila pursued with guns drawn. (AF 95.) Officers simultaneously gave commands, including, "Show me your hands," to which Barnhill complied by raising his visibly empty hands up. (AF 96.) However, after putting his hands up, Barnhill hurried a short distance to his front door trying to get somewhere safe – there the pursuit ended. (AF 97.) Thereafter, Barnhill did not attempt to flee, did not go into the house, and could was surrounded by walls and the approaching officers. (AF 98.)

Further, during the physical altercation, Barnhill did not resist and did everything he could to obey and comply with commands, trying to do everything he could to show the officers that he was not a threat so that the beating would stop. (AF 99-100.) At the door, Barnhill saw the person running at him, realized it was an officer, and froze "like a deer caught in headlights." (AF 101.) As the Maynard charged towards the frozen Barnhill, he braced for the impact of being tackled. (AF 102.) Seeing only keys in his hands, Maynard immediately closed the distance, tackled and pushed Barnhill away from the door, causing him to stumble backwards and become seated in a patio chair. (AF 103.) Barnhill dropped to the patio chair and immediately raised his hands in surrender as Bishop and Aguila also joined. (AF 104-05.) Maynard holstered his gun, and grabbed Barnhill's right wrist, while Aguila grabbed Barnhill's left wrist. (AF 106.) Bishop drew his Taser and while Maynard and Aguila held Barnhill's hands controlling him, Bishop yelled, "Taser out" to get his partners to move out of the way and deployed the Taser for 5 seconds on Barnhill. (AF 107.) Tasers cause neuromuscular incapacitation ("NMI"), causing the subject to lose control of his muscles and ability to move. (AF 108.) The Taser darts made contact with Barnhill causing him to stiffen up from the shock and NMI. (AF 109.)

While the Taser was being deployed, and while Maynard and Aguila held Barnhill's visibly empty hands stretched out, Maynard violently punched Barnhill in the face twice with a closed fist and a third time with a hammer fist. (AF 110-111.) The Taser continued to cycle, causing Barnhill's body to constrict while Barnhill's visibly empty hands remained in control of the officers. (AF 112.) As Barnhill began to go to the ground, Maynard delivered a knee strike on Barnhill. (AF 113.) Barnhill tried to comply with commands to get on the ground, but he could not voluntarily move while being Tased; still his rigid and locked up body easily slid down to the ground at the control of Maynard and Aguila. (AF 114.) The officers jumped on Barnhill and started pounding him under the observation and supervision of Klinzing. (AF 115.) Klinzing approached and saw Barnhill on the ground and Aguila

immediately placed Barnhill's left hand behind his back without any resistance using a single hand and held it in place controlling Barnhill's left hand and arm. (AF 116.) Aguila maintained control of Barnhill's left hand behind his back with a firm grip while Bishop and Maynard took control of the right hand. (AF 117.) On the ground, Maynard used his right knee to deliver one strike to Barnhill's face. (AF 118.) Bishop also reenergized the Taser and deployed it again for another 5 second cycle. (AF 119.) As he was being Tased, an officer commanded, "Put your hands behind your back," and Barnhill again tried to comply but could not move because he was locked up. (AF 120.) Barnhill was "being hit all over the place by the officers [while] being simultaneously tased." (AF 121.) With the officers on top of him and all the force being deployed, Barnhill felt like he was being Tased the entire time. (AF 122.)

Using his entire body weight to control Barnhill's right hand, Maynard chose to let go and push Barnhill's head and face up against a brick wall. (AF 123-124.) Barnhill pled with the officers, "I didn't do nothing" as Aguila also began to crank Barnhill's left hand high up the center of his back. (AF 125-126.) During the assault, Officers commanded Barnhill to put his hands behind his back, and Barnhill would state that his hands were behind his back, and while Barnhill was complying, Officers would let go and start hitting Barnhill in the face causing him to instinctively react by protecting his face from being hit again. (AF 127.) Being controlled by four Officers, Barnhill said, "My arms are behind my back. My arms are behind my back," and "I'm not resisting," pleading that they did not have to keep hitting him. (AF 128.)

However, Bishop stepped back and called for additional resources while two officers are physically controlling Barnhill, whose legs are flat on the ground and appeared to be making no effort to stand or resist. (AF 129.) Maynard removed his two-handed grip on Barnhill's right hand and grabbed Barnhill's hood again, at which time Barnhill begged, "I'm not refusing. I'm not refusing. I'm not refusing. I'm not refusing." (AF 130.) Even with both hands being held behind his back, officers kept striking Barnhill in the face. (AF 131.) Then, Bishop then joined in

going hands on while still holding his Taser, including grabbing Barnhill's hair and pulling it back. (AF 132-33.) It appears Bishop attempted a Drive-Stun-Mode deployment of the Taser to the back of Barnhill's neck. (AF 134.) Barnhill again begged, "They're behind my back. They're behind my back. They're behind my back. They're behind my back." (AF 135.)

Aguila also deployed six body punches while Maynard was bringing Barnhill's right hand to his back. (AF 136.) Aguila deployed two additional body punches despite Barnhill's right hand being brought to his lower back, including nearly striking Barnhill's right hand because it was at his lower back. (AF 137.) While Barnhill's visibly empty hands were being held behind his back after Aguila repeatedly deployed body strikes on Barnhill, Bishop struck Barnhill to the head with his Taser twice, as an improvised device, with such force that the Taser body broke off from the handle and the Taser flew out of Bishop's hand. (AF 138-140.) The reason Officers could not get Barnhill's hand behind his back was because they were piled on top of each other and had their own legs and arms blocking the path to his lower back. As soon as Klinzing moved his leg, officers easily placed Barnhill's right hand behind his back. (AF 141.) But the assault was over. Bishop grabbed Barnhill's hood with one hand and hair with the other and lifted his head off the ground. (AF 142.) Despite both hands being behind his back, an officer strangely commanded, "Put your f***ing hands behind your back," to which Barnhill immediately replied, "They're behind my back. They're behind my back," then with two hands Bishop excessively slammed Barnhill's face so hard onto the concrete floor that blood immediately spattered on the ground. (AF 143-144.) Barnhill was searched with no weapons found, then rolled Barnhill into a seated position. (AF 145.)

There were reasonable, less-intrusive alternatives taking Barnhill into custody including verbal commands, de-escalation, and control holds, without overreaction and escalating the situation into substantial quality and quantity of force. (AF 146-150.) There was no warning given prior to any force being used. (AF 151-153.)

Barnhill was not in proximity to any weapon. (AF 154-158.) Barnhill never struck an officer and never attempted to strike an officer; Barnhill never punched, kicked, kneed, elbowed, or grabbed an officer and never attempted the same; was not assaultive; never verbally threatened any officer; was not verbally or physically aggressive; and did not express or show any intent to harm any officer. (AF 159-160.) Barnhill could not harm any person while being held chest-down on the ground by Officers who knew nothing about Barnhill's background or history. (AF 161-162.) Nevertheless, Defendants used deadly force against Barnhill despite him never being an immediate threat of death or serious bodily injury. (AF 163-179.)

The City's training and policies are inadequate, including given the officers lack of understanding of training, lack of training, failure to intervene, failure to report, failure to follow training, and lack of situational awareness. (AF 180-97, 206-12.) Further, City ratified the Defendant Officers' uses of excessive force. (198-205.) The Defendant Officers' credibility must be tested by a jury given their statements in contradiction to the video evidence showing their use of unnecessary force causing Barnhill great bodily injury. (AF 213-222.)

## III.    LEGAL STANDARD UNDER RULE 56

Summary judgment is only appropriate when there is no genuine issue as to any material fact, the burden of which lies with the moving party. Fed. R. Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Here, a court's function is not to weigh evidence, make credibility determinations, or determine the truth but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if its proof or disproof is essential to an element of Plaintiff's case. *Celotex Corp.*, 477 U.S. at 322-23. A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Even entirely circumstantial evidence is sufficient to create a triable issue of fact. *Hopkins v. Andaya*, 958 F.2d 881, 888 (9th Cir. 1992). Further, the reasonableness of an officer's belief "is a quintessentially 'fact-specific'

question, not a question that judges should try to answer 'as a matter of law.'" *Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) (Stevens J., dissenting); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003). In ruling here, the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 875 (9th Cir. 1987).

Finally, the record is viewed in light most favorable to the nonmovants, so long as it is not blatantly contradicted by the video evidence. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018); *see also Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Further, a reasonable jury could even draw divergent conclusions from the video evidence. *See S.R. Nehad v. Browder*, 929 F.3d 1125, 1132-39 (9th Cir. 2019); *Glenn v. Washington County*, 673 F.3d 864, 878 (9th Cir. 2011) ("a jury should have the opportunity to assess the reasonableness of the force"). Even where the basic facts are undisputed, if reasonable minds could differ on the inferences to be drawn from those facts, then summary judgment should be denied. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 875 (9th Cir. 1987).

## IV.    DEFENDANTS USED EXCESSIVE FORCE

Defendants' use of excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). Under which, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The *Graham* test applies "the clear principle that the force used to make an arrest must be balanced against the need for force." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1025 (9th Cir. 2015) (*citing Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir. 2007)). It is a careful balance of "the nature of the harm and quality of the intrusion" on Barnhill's

rights "against the countervailing governmental interests at stake." *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010); *see also Scott*, 550 U.S. at 383-84; *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) (excessive Force when greater than reasonable). Taking all reasonable inferences in Plaintiff's favor, a reasonable jury could conclude that the Officers' used excessive force and deadly force.

A.    **Nature and Quality of the Intrusion – Unparalleled**

The inquiry as to whether the use of force was reasonable begins by assessing both the type and amount of force used. *See Bryan*, 630 F.3d at 824; *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (quoting *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994)). Here, videos show the Officers tackled, twice punched, hammer fist, kneed his body, kneed his face, twice Tased in probe mode, drive-stun Tased, pushed Barnhill's head on the ground and brick wall, slammed his head on the ground, punched his back eight times, and struck Barnhill to the back of his head with the Taser as an improvised deadly weapon. *See, e.g., Blanford v. Sacramento County*, 406 F.3d 1110, 1117-19 (9th Cir. 2005). Despite Defendants' argument to the contrary, the Ninth Circuit has long held that less-lethal force must also be necessary, even if there is probable cause to arrest. *See Graham*, 490 U.S. at 396-97; *see Blankenhorn*, 485 F.3d at 479-80 (holding that the takedown, restraint, and punches were not justified); *Headwaters Forest Def. v. Cnty of Humboldt*, 276 F.3d 1125, 1130 (9th Cir. 2002) ("Because the officers had control…it would have been clear to any reasonable officer that it was unnecessary to use pepper spray to bring them under control"). The type and amount of force used must be considered. *See Chinaryan*, 113 F.4th at 907; *Seidner*, 39 F.4th at 596; *Williamson v. City of National City*, 23 F.4th 1146, 1151-52 (9th Cir. 2022) ("The nature and degree of physical contact are relevant to this analysis, as are the 'risk of harm and the actual harm experienced.'" (citations omitted)); *see also Lombardo*, 594 U.S. at 467. Here, Maynard tackled Barnhill to the chair, punched him in the face twice, hammer-fist him to the face, kneed him to the body, kneed him to the face, and pushed him face

into the brick wall; Bishop used the Taser in probe mode twice, drive-stun Tased him to the neck, struck him in the back of the head with the Taser twice, and slammed his head on the ground; and Aguila punched Barnhill in the back eight times.

The amount of force was great and excessive, under the circumstances was egregious, and the type of force was unjustifiable even if considered less-lethal force. However, here, deadly force was also used. "'Deadly force' means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm." Pen. Code §835a(e)(1); *Smith v. City of Hemet*, 394 F.3rd 689, 693 (9th Cir. 2005); *Stephenson v. California*, 761 F.Supp.3d 1242, 1263 (C.D. Cal. 2025). "'Serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; **concussion**; **bone fracture**; **protracted loss of impairment of function** of any bodily member or organ; a wound requiring **extensive suturing**; and serious disfigurement." Pen. Code §417.6(b) (emphasis added); 21 U.S.C §802(25); W.I.C. §15610.67 (including requiring medical intervention including **surgery**). Deadly force is not limited to guns. Defendants' conduct in slamming Plaintiff's face into a brick wall and the ground and smashing a Taser on the back of his head, not only created a substantial risk but indeed caused serious bodily injury. Barnhill suffered an avulsion of left ear – top portion almost entirely cut off and only attacked to ear by a small amount of flesh, closed blow out fracture of orbit, cheek and lip numbness likely due to nerve damage, requiring surgery and reconstruction, and resulting in receiving screws in his face, extensive sutures, and permanent loss of peripheral vision and concussion,. (AF 174-177.) Defendants cannot escape the fact that they used deadly force during this incident. It is well-established that deadly force is "extreme," unmatched, and should only be used in limited circumstances. *Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016). "The use of deadly force implicates the highest level of Fourth Amendment interests both because the suspect has a fundamental interest in his own life and because such force frustrates the

1    interest of the individual, and of society, in judicial determination of guilt and
2    punishment." *Id.* (quotations omitted). The nature and quality of intrusion cannot be
3    understated. Officers used deadly force against the compliant and unarmed Barnhill.
4    The use of deadly force was egregious, however, even if all were categorized as less-
5    lethal force, all the force was still excessive.

6    **B.    Government Interest Factors Confirm Excessive Force**

7    The use of force must be balanced against the purported need for it. *See*
8    *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946-47 (9th Cir. 2017); *see also*
9    *Glenn*, 673 F.3d at 871; *Bryan*, 630 F.3d at 823. The government interest factors
10   include (1) the severity of crime at issue, (2) the immediacy of the specific threat at
11   issue, (3) whether there is active resistance or attempt to evade (*Graham*, 490 U.S. at
12   396), (4) the type and amount of force used (*Chinaryan v. City of Los Angeles*, 113
13   F.4th 888, 907 (9th Cir. 2024)); (5) the availability of alternative methods (*Smith*, 394
14   F.3d at 701), and (6) whether a warning was given (*Nelson v. City of Davis*, 685 F.3d
15   867, 882 (9th Cir. 2012)). <u>The Ninth Circuit has cautioned that summary judgment in</u>
16   <u>excessive force cases should be granted sparingly</u>. *Drummond v. City of Anaheim*,
17   343 F.3d 1052, 1056 (9th Cir. 2003). Further, the Ninth Circuit reaffirmed that
18   "summary judgment is not appropriate in § 1983 deadly force cases that turn on the
19   officer's credibility that is genuinely in doubt." *Nehad*, 929 F.3d at 1133 (noting
20   genuine doubts about officer's credibility regarding his perceptions as compared to
21   other evidence). No government interest supports the use of such extreme force here.

22   *1.    No immediate threat of harm or death or serious bodily injury.*

23   For the most important *Graham* factor, for less-lethal force, the inquiry is
24   whether the subject posed an immediate threat to the safety of others. *Graham*, 490
25   U.S. at 396. But for deadly force, the inquiry is whether the subject was an <u>*immediate*</u>
26   and <u>*significant*</u> threat of death or serious physical injury to others, and that the deadly
27   force was <u>*necessary*</u> to prevent death or serious bodily injury. *Tennessee v. Garner*,
28   471 U.S. 1, 3 (1985); *Smith*, 394 F.3d at 702; *Tabares v. City of Huntington Beach*,

988 F.3d 1119, 1126 (9th Cir. 2021); *Zion*, 874 F.3d at 1076; Cal. Pen. Code § 835a.
The force was excessive whether identified as deadly or not, but the force is even
more egregious because there was deadly force.

      Viewing the facts and all reasonable inferences in the light most favorable to
Plaintiff, Barnhill was not an immediate threat to the safety of the Officers at the
time, he was not assaultive or resistive, but compliant, and certainly did not pose an
immediate threat of death or serious bodily injury. (AF 98-101, 104, 125, 128, 135,
180.) There were no weapons in proximity, Barnhill was unarmed, was not
displaying any assaultive or aggressive behavior, was not resisting, and did not
verbally threaten officers prior to the use of excessive force. Officers had no
information that anyone was harmed; no information that Barnhill ever harmed
anyone; no information that Barnhill was about to harm anyone; Officers never heard
Barnhill verbally threaten anyone; and never saw Barnhill attempt to harm anyone.
Instead, they saw compliance. Ban hill could not even harm anyone because he was
chest-down on the ground unarmed, compliant, with his hands behind his back. (AF
140, 145, 154-162.) *See Lopez v. Gelhaus*, 871 F.3d 998, 1008 (9th Cir. 2017).
Barnhill complied and surrendered with his hands in the air prior to the Officers' use
of excessive force. Then the excessive force continued while Barnhill was chest
down on the ground, still compliant and surrendered pleading with the officers that he
was not resisting so that they would stop beating him. Barnhill was clearly not a
threat to anyone, and certainly not an immediate deadly threat.

      Defendants' contention that they had to use force because the unarmed
Barnhill was not searched yet, despite never seeing weapon, never seeing Barnhill
reach for a weapon, and Barnhill not having a bulge in pocket indicating a weapon,
is contradicted by objective evidence, making their credibility a jury question. Here,
Barnhill had no present ability to immediately cause death or serious bodily injury;
there was no opportunity for a downed, compliant, and unarmed subject to
immediately cause death or serious bodily injury; and Barnhill did not have the

capability to cause death or serious bodily injury. See Pen. Code §835a(e)(2). "A
desire to resolve quickly a potentially dangerous situation is not the type of
governmental interest that, standing alone, justifies the use of force that may cause
serious injury." *Bryan*, 630 F.3d at 826. Barnhill complied, was on the ground
unarmed, and violently beaten anyway. It was incumbent on Officers to control their
emotions and actions and not overreact by using force. Given the video evidence
showing Barnhill's empty hands and showing his compliance, there is no
justification to believe that Barnhill was an immediate threat to anyone at the time.
*See Deorle*, 272 F.3d at 1281 ("a simple statement by an officer that he fears for his
safety or the safety of others is not enough; there must be objective factors to justify
such a concern."). Accepting Plaintiff's version of the facts, as the Court is required
to do on summary judgment, Barnhill complied, did not resist or threaten officers,
was unarmed, face-down on the ground, making him no threat at all. A jury could
easily find that Barnhill was not an immediate threat of harm, and certainly not a
significant and immediate threat of death or serious bodily injury.

  The force here was objectively unnecessary and obviously excessive.
Plaintiff's size played no factor in this matter, the force was used while he was chest
down on the ground and several officers demonstrated their dominance over him
throughout the incident. Just as the Constitution does not tolerate the use of lethal
force to seize an unarmed, nondangerous suspect by shooting him dead (*Torres v.
City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011)), it also does not tolerate lethal
force to seize an unarmed, nondangerous suspect by beating him in the back of the
head and slamming his face into the ground causing serious bodily injury. This
factor weighs heavily in Plaintiff's favor.

     2. *Barnhill was not actively committing a crime, was not resisting
       or attempting to flee, while Defendants ignored less-intrusive
       alternatives and failed to give warnings.*

  Here, Officers were not responding to a violent crime in progress. (See AF 89-

90.) When officers first approached Barnhill, he was not actively committing a crime but merely sitting in his car. (AF 90-93.) Although Barnhill drove away from officers in his vehicle and went to the door to his home out of fear of the officers, after he froze at the door and was tackled to the lawn chair, he surrendered. (AF 98-101.) Thus, this factor weighs in favor of finding that the Officers' use of force and deadly force was excessive. *See. e.g.*, *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001) (govt. interest in using deadly force diminished when person was not committing a serious crime). Next, <u>Barnhill was not actively resisting arrest or attempting to evade arrest by flight at the time of the force</u>. (AF 98-101, 219.) Barnhill stopped at the door and froze as soon as he recognized he was being approached by the police, then after being knocked into the patio chair, he put his hands up in a universal sign of surrender. *See Lopez*, 871 F.3d at 1006-07. The videos evidence supports Barnhill's facts—he was not attempting to fight or flee at the time of the force. This factor also weighs in Plaintiff's favor.

Fourth, <u>Officers ignored numerous less-intrusive alternatives</u>, such as continuing to use verbal commands, de-escalation, control holds and officers controlling their emotions and subjective fears. (AF 218.) *See Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir. 2007) (quoting *Smith*, 394 F.3d at 701) (courts may consider the availability of alternative methods); *Seidner v. de Vries*, 39 F.4th 591, 599 (9th Cir. 2022. No force was necessary to seize the non-resistive Barnhill. (AF 219.) Though no force was necessary at the time, Officers had less-intrusive options available to him. *See Glenn*, 673 F.3d at 872; *Green v. City and Cty. of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014). This factor also weighs heavily in Plaintiff's favor. Finally, before using for and prior to the use of deadly force, law enforcement must issue a "proper warning" when feasible. *Aguirre v. Cnty. of Riverside*, 29 F.4th 624, 628 (9th Cir. 2022); *Seidner*, 39 F.4th at 599 (*quoting Rice v. Morehouse*, 989 F.3d 1112, 1122 (9th Cir. 2021)); *see Nehad*, 929 F.3d at 1137 ("Whether an officer warned a suspect that failure to comply with the officer's

1  commands would result in the use of force is another relevant factor in an excessive

2  force analysis."); *see also Aguirre*, 29 F.4th at 628 ("Before using deadly force, law

3  enforcement must, 'where feasible,' issue a warning." (*quoting Garner*, 471 U.S. at

4  11-12)). Here it is <u>undisputed that no warning was given by any Officer prior to the</u>

5  <u>use of force or deadly force</u> even though it was feasible to do so. (AF 151-153, 219-

6  220.) *See Lopez*, 871 F.3d at 1007. This factor also weighs in Plaintiff's favor.

7      Finally, the "analysis is not static, and the reasonableness of force may change

8  as the circumstances evolve." *Hyde v. City of Willcox*, 23 F.4th 863, 870 (9th Cir.

9  2022); *see also Andrews v. City of Henderson*, 35 F.4th 710, 715 (9th Cir. 2022)

10  ("The detectives' interest in using significant force against Andrews is undermined

11  by their knowledge that he was unarmed; his lack of any aggressive, threatening, or

12  evasive behavior; and the detectives' failure to provide any prior warning or consider

13  less intrusive alternatives before forcibly tackling him to the ground.") Even if

14  Defendants felt Barnhill was a potential threat by entering the house, once he froze at

15  the door the threat was over. All the force here was excessive and unreasonable.

16      **C.    It Was Obviously Clearly Established That Attacking an Unarmed,**

17      **Non-Resistive, Non-Threatening, Compliant Man, Is Excessive**

18      The qualified immunity analysis has two prongs: (1) whether there was a

19  deprivation of a constitutional or statutory right (established above), and (2) whether

20  that constitutional or statutory right was "clearly established" at the time of the

21  incident (established below). *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001);

22  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Although a right is not clearly

23  established where merely defined "at a high level of generality," qualified immunity

24  does not "require a case directly on point." *Kisela v. Hughes*, 138 S.Ct. 1148, 1152

25  (2018) (per curiam). "[T]he focus is on whether the officer had fair notice that [the

26  officer's] conduct was unlawful." *Id.* (quoting *Brosseau*, 543 U.S. at 198). Similar

27  case precedent moves a from hazy to providing an officer notice that certain conduct

28  is excessive, unacceptable, and unlawful. *See Kisela*, 138 S.Ct. at 1153 (quoting

1   *Mullenix v. Luna*, 136 S.Ct. 305, 312 (2015)). Further, the general rules set forth in

2   *Garner* and *Graham* by themselves create clearly established law in the obvious case.

3   *Id.* Plaintiff contends that the right to be free from unreasonable force and deadly

4   force falls among the obvious when an unarmed person complies, surrenders, does

5   and does not resist as officers gratuitously beat him on the ground with his hands

6   behind his back. For the qualified immunity analysis, the following facts must be

7   assumed: officers never saw a weapon; Barnhill was unarmed; did not verbally

8   threaten any officer; stopped fleeing; did not attempt to assault anybody; was not

9   resistive; and complied with commands; while no warning was given prior to the use

10  of force and deadly force even though it was feasible; there were reasonable

11  alternatives to the use of force and deadly force; and Barnhill was not a threat of

12  harm, certainly not an immediate threat of death or serious bodily injury. Based on

13  Plaintiff's facts and all reasonable inferences therefrom, the Officers are obviously

14  not entitled to qualified immunity. *See C.V. v. City of Anaheim*, 823 F.3d 1252, 1256

15  (9th Cir. 2016); *Aguirre*, 29 F.4th at 629 (where the subject posed no immediate

16  threat to the officers or others, the "'general constitutional rule' applies 'with obvious

17  clarity'" rendering the officer's decision to shoot objectively unreasonable);

18  *Strickland*, 69 F.4th at 620 (citing *Tan Lam v. City of Los Banos*, 976 F.3d 986, 1001

19  (9th Cir. 2020)) (it is clearly established that force on a nonthreatening suspect violates

20  constitutional rights); *see Jones*, 837 F.3d at 1131-32; *Glenn*, 673 F.3d at 871-72;

21  *Deorle*, 272 F.3d at 1277; *Bryan*, 630 F.3d at 825; *Lopez*, 871 F.3d at 1006-13 ("On

22  these facts, a reasonable jury could conclude that [Barnhill] did not pose an

23  'immediate threat to the safety of the officers or others'"); *see Harris*, 126 F.3d at

24  1204 (mere possession of a weapon is insufficient to justify deadly force); *Hayes*, 736

25  F.3d at 1227-28 (unreasonable force where officers shot man without warning while

26  holding a weapon in a non-threatening manner); *Collender v. City of Brea*, 605

27  F.App'x 624, 628-29 (9th Cir. 2015) (a jury could find unreasonable deadly force on

28  a suspect who had committed armed robbery was unarmed, despite non-compliance

1    and lowering his arm towards his pocket when officer used force).

2         The general principles in *Graham* and *Garner* are instructive here. Barnhill

3    was unarmed and nondangerous when he lay face down on the ground, surrendered,

4    compliant, not resisting, never attempting to harm anyone, and not verbally

5    threatening any officer. *See Aguirre v. County of Riverside*, 29 F.4th 624, 629 (9th

6    Cir. 2022) (discussing pre-2022 precedent). Nevertheless, on the date of the shooting,

7    Officers had sufficient notice that beating Barnhill was unlawful. Even if officers

8    initially perceive a potential threat when Barnhill was at the door, subsequent force is

9    unconstitutional after the subject no longer poses an immediate threat. *See Zion*, 874

10   F.3d at 1075-76. Still the state of the law made clear that the Officers' force was

11   unlawful. In *Young*, the Ninth Circuit held that officers are not entitled to qualified

12   immunity for pepper spray and impact strikes where the threat of safety to officers

13   was negligible, subject did not pose a threat and was not actively resisting or

14   attempting to flee, the crime was not "severe", and there were feasible less intrusive

15   measures. 655 F.3d at 1166-67 (relying on *Blankenhorn*, 485 F.3d 463 and

16   *Headwaters*, 276 F.3d 1125). Defendants were clearly on notice that every use of

17   force here was unreasonable. "In addition, intentionally pepper-spraying [a subject]

18   for no legitimate law enforcement reason would likely constitute an 'obvious case' of

19   excessive force 'where *Graham* and *Garner* alone offer a basis for decision.'"

20   *Morales*, 873 F.3d at 826.

21        The law gave Defendants fair warning that force is unconstitutional against

22   someone who does not present an immediate threat to the safety of officers or others

23   and certainly cannot use deadly force against a person who is not an immediate

24   danger of death or serious bodily injury. *See Hope v. Pelzer*, 536 U.S. 730, 741

25   (2002). Courts in this Circuit and others routinely deny qualified immunity to officers

26   who fire their weapons in far more stressful situations such as encounters with

27   suspects seen holding a gun. *See Curnow*, 952 F.2d at 324-25 (denying qualified

28   immunity where the suspect had a gun but was not pointing it at the officers); *Ting v.*

1  *United States*, 927 F.2d 1504, 1508-11 (9th Cir. 1991) (denying qualified immunity

2  where a felony suspect dropped his gun); *Harris*, 126 F.3d at 1203 (denying qualified

3  immunity where the suspect had committed a violent crime in the immediate past);

4  *Torres*, 648 F.3d at 1128; *Adams*, 473 F.3d at 994 (denying qualified immunity

5  where suspect's non-dangerousness and officer's failure to warn before shooting

6  placed the case squarely "within the obvious"); *Brosseau*, 543 U.S. at 197-99

7  (reaffirming *Garner* as sufficient "fair warning" in "obvious" cases).

8        Further, disputed issues of material fact also preclude qualified immunity. *See*

9  *Johnson v. Jones*, 515 U.S. 304, 313 (1995); *Glenn*, 673 F.3d at 870, fn. 7 (*citing*

10  *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010)); *Cunningham v.*

11  *City of Wenatchee*, 345 F3d 802, 809 (9th Cir. 2003); *Knox v. Southwest Airlines*,

12  124 F.3d 1103, 1109 (9th Cir. 1997) (no qualified immunity where there are triable

13  issues of fact). Because of the number of disputed facts bearing on reasonableness of

14  the force, granting qualified immunity would violate well-established precedent. *See*

15  *Brosseau*, 543 U.S. at 206 (Stevens, J., dissenting) (The reasonableness of an

16  officer's belief "…is a quintessentially 'fact-specific' question, not a question that

17  judges should try to answer 'as a matter of law…'"); *Anderson*, 483 U.S. at 641. Here,

18  the disputed facts preclude qualified immunity.

19        In *Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007) the officer and the

20  handcuffed suspect (Davis) got into an altercation and the officer slammed Davis

21  head-first against the walls and threw Davis face-down onto the floor. The officer

22  then "punched him in the face". *Id*. at 1052. The court ruled that Davis's Fourth

23  Amendment rights were violated. *Id*. at 1056; *see also Smith v. City of Hemet*, 394

24  F.3d 689 (9th Cir. 2005). In *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir.

25  2007) the court ruled that a reasonable officer would know that punching an arrestee

26  who was not manipulating his arms to avoid being handcuffed violates the Fourth

27  Amendment. Likewise, a prudent officer should be on notice that "gang-tackling

28  without first attempting a less violent means of arresting a relatively calm trespass

1    suspect" is a violation of that person's rights. *See also Hadley v. Gutierrez*, 526 F.3d

2    1324 (11th Cir. 2008) (defendant officer's punching the plaintiff arrestee in the

3    stomach while not resisting violated clearly established Fourth Amendment law.

4    "[G]ratuitous use of force when a criminal suspect is not resisting arrest constitutes

5    excessive force." Id. at 1330). California Penal Code §149 makes it unlawful for any

6    public officer who, under color of authority, without lawful necessity, assaults or

7    beats any person. (See also Penal Code §242). Further, in *Longoria v. Pinal County*,

8    the Court reiterated that "[w]here the facts are disputed, their resolution and

9    determinations of credibility 'are manifestly the province of a jury.'" 873 F.3d 699,

10   710 (9th Cir. 2017) (quoting *Wall v. County of Orange*, 364 F.3d 1107, 1110 (9th Cir.

11   2004)); *see also Lopez*, 871 F.3d at 1018 (denial of qualified immunity where officers

12   gave differing accounts as to whether decedent turned towards them and holding that

13   where the state of the law at the time of the incident provides fair warning, the level

14   of specificity required by recent Supreme Court jurisprudence is satisfied).

15       No reasonable officer would believe it would be constitutional to strike a

16   compliant subject in the head. If a jury finds that one or both officers struck Barnhill

17   on the ground, qualified immunity will not shield them from liability. *See Witt v. City

18   of Pocatello*, No. 4:11-CV-00484-CWD, 2014 WL 1343495 at *12 (D. Idaho, Apr. 3,

19   2014); *see Preston v. Boyer*, No. C16-1106-JCC-MAT, 2018 WL 3118426 at *14

20   (W.D. Wash., May 25, 2018).

21       All the extraneous "facts" that Defendants seek to admit for nothing other than a

22   character assassination are "largely irrelevant" to this Court's analysis, which must

23   focus on whether Plaintiff posed an immediate threat at the time of the force. *Figueroa*,

24   207 F. Supp. 2d at 1093. Barnhill was clearly not an immediate threat. The Officers

25   were on notice that force obviously violated Barnhill's Fourth Amendment right to be

26   free from excessive force. Thus, Defendants' Motion should be denied in full

27   including denying Defendants qualified immunity.

28   / / /

## V.    PLAINTIFF'S STATE LAW CLAIMS SURVIVE

Defendants' arguments related to Plaintiff's state law claims mirror those regarding Plaintiff's excessive force claim. Given that Plaintiff's Fourth Amendment claim survives, Plaintiff's state law claims must survive. Regarding Plaintiff's battery and Bane Act claims, the same facts and law would be considered as with the Fourth Amendment excessive force claim—Defendants showed clear intent to cause serious bodily injury unrelated to any legitimate law enforcement objective. But negligence applies a similar but more forgiving standard. *Hayes v. County of San Diego*, 57 Cal.4th 622, 639 (2013). Even if the Court determined that the force appears justified in isolation, "the totality of the circumstances, including the pre-[force] conduct of the officers, might persuade a jury to find the [force] negligent." *Id.* at 629-30; *see also Tabares*, 988 F.3d at 1125 (officer's pre-force decisions can render his behavior unreasonable). Considering the disputed issues of material facts and the undisputed facts and considering that qualified immunity does not apply to state law claims, Plaintiff is entitled to a jury trial on all state law claims for the reasons discussed above. *See Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1121, fn.6 (2004); *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013); *see also Cousins v. Lockyer*, 568 F.3d 1063, 1072 (9th Cir. 2009). Additionally, the Officers' pre-force negligent tactics and conduct (AF 216-222) can also be taken into consideration for Plaintiff's Battery and Negligence claims (*see* CACI Nos. 440-441, 1305B) precluding summary judgment.

Defendants are not afforded statutory immunity under Govt. Code §820.2. Use of excessive force is not discretionary, nevertheless, "a public employee is liable for injury caused by his act or omission to the same extent as a private person." Govt. Code §820. Thus, Plaintiff's state law claims survive.

## VI.    PLAINTIFF'S *MONELL* CLAIMS SURVIVE

For the same reasons beating a compliant person is obviously excessive—a jury could find that Defendants actions shock the conscience, and acted with malice,

oppression, or reckless disregard (*see*, *supra*, Sections IV)—Plaintiff's *Monell* claims must survive. Furthermore, qualified immunity does not apply to municipal liability. *See Brandon v. Holt*, 469 U.S. 464, 473 (1985); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995). Taking the facts and all reasonable inferences in the light most favorable to Plaintiff, Defendant City is liable for unconstitutional custom, practice, and policy, ratification, and failure to train. Municipal liability is attached by demonstrating that the alleged constitutional violation was caused by a failure to train employees adequately. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989); *Garmon v. City of Los Angeles*, 828 F.3d 837, 846 (9th Cir. 2016); *Merritt v. City of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011). Further, ratification of a subordinate's conduct can also be a policy for purposes of municipal liability under §1983. *See City of St. Lous v. Praprotnik*, 485 U.S. 112, 127 (1988); *Trevino v. Gates*, 99 F.3d 911, 920-21 (9th Cir. 1996); *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992). The Ninth Circuit has "long recognized that a custom or practice can be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Hunter v. City of Sacramento*, 652 F.3d 1225, 1233-34, 1236 (9th Cir. 2011) (uninvestigated and unpunished); *McKay v. City of Hayward*, 949 F. Supp. 2d 971, 986 (N.D. Cal. 2013) ("'[T]he failure of an official to take any remedial steps after the violations' can indicate a deliberate choice and establish a basis for liability") (quoting *Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001)); *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (inaction); *Brown v. Lynch*, 831 F.3d 1146, 1152 (9th Cir. 2016) and *Praprotnik*, 485 U.S. at 127 (same).

Municipal liability may be attached when an official commits a constitutional violation pursuant to a widespread practice or custom including failing to implement procedural safeguards to prevent constitutional violations. *Praprotnik*, 485 U.S. at 127; *Monell v. Dep't Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (2018); *Castro*, 833 F.3d

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1060; *Estate of Osuna v. City of. Stanislaus*, 392 F. Supp. 3d 1162, 1172 (E.D. Cal. 2019) (*quoting Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1143 (9th Cir. 2012)). "It is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see Waggy v. Spokane Cty*., 594 F.3d 707, 713 (9th Cir. 2010) (noting that a policy can be one of action or inaction – through its omissions the municipality is responsible). The City is liable for its several unconstitutional practices and training deficiencies addressed herein. *See Long v. County of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006).

In the present case, Plaintiff has provided sufficient evidence for a jury to find that the City failed to adequately train its officers, then made an affirmative choice to ratify the Defendants' unconstitutional conduct. *See*, *e.g*., *Hernandez v. City of San Jose*, 897 F.3d 1125, 1131 (9th Cir. 2018); AF 181-222. Moreover, a policy of inaction or mere acquiescence in a single instance may be a municipal policy within the meaning of *Monell*. *See Brown*, 831 F.3d at 1152 ; *Gillette*, 979 F.2d at 1348; *Navarro v. Block*, 72 F.3d 712, 714-15 (9th Cir. 1996); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). Defendant City is liable under §1983 pursuant to *Monell* because City made a deliberate choice to follow a course of action in ratifying Defendants' excessive force and not disciplining Defendants despite having the option to make clear to these officers and other department members that this and similar misconduct will not be tolerated. *See Pembaur*, 475 U.S. at 483-84. A jury could find that City rubber stamped this obvious use of unreasonable deadly force, with conscious disregard, causing department members to believe that similar acts of misconduct are permissible and will go unpunished. Despite conducting an investigation, the City ratified the officers' conduct and chose not to discipline or retrain the officers and made no changes to their policies or training. (AF 203-206, 215.) Despite requiring officers to know and comply with City standards and training, the Defendant officers violated several basic officer training standards. (AF 181-199,

207-213.) City training and customs are set up for officers to continue to overreact in using excessive force. For these reasons, a jury can find the City liable for failure to train, inadequate policy, and ratification of Officers' excessive force. (AF 221.)

## VII.  **PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES**

The Defendant officers' conduct throughout this incident, all documented on video, was reckless and/or callous indifference to Barnhill's rights. Punitive damages awards are permitted on "various[] standards of negligence, recklessness, carelessness, or other culpable conduct short of malicious intent." *Smith v. Wade*, 461 U.S. 30, 45 (1983); *see Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir. 1991) (actual intent or malice not required). "[O]ppressive conduct is [also] a proper predicate for punitive damages under §1983." *Dang v. Cross*, 422 F.3d 800, 809, 815 (9th Cir. 2005) (holding that punitive damages could be awarded if the officer's conduct was oppressive). Here, a jury could find that this unjustified corporal punishment satisfies one or more of the various standards for awarding punitive damages. There was no verbal threat, no attempt to harm, no aggression, no weapon, no resistance, no warning yet reasonable alternatives when Defendants repeatedly punched, slammed, Tased, and struck Barnhill in the face and head resulting in serious bodily injury, while he was chest-down on the ground, and including while his hands were behind his back. A reasonable jury could award punitive damages here for the Defendant Officers' egregious conduct and failure to intervene during and report such conduct thereafter.

## VIII.  **CONCLUSION**

Assuming Plaintiff's facts, Barnhill was not a threat to anyone at the time, and the law was obvious that officers may not beat a compliant subject. The disputed issues of material fact make this matter ripe for jury determination. For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion for Summary Judgment in full and deny qualified immunity.

/ / /

1    Respectfully submitted,

2    DATED:  January 19, 2026          **LAW OFFICES OF DALE K. GALIPO**

3                                      By:  _/s/    Marcel F. Sincich_
4                                           Dale K. Galipo, Esq.
                                            Trenton C. Packer, Esq,
5                                           Marcel F. Sincich, Esq.
                                            *Attorney for Plaintiff*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  **CERTIFICATE OF COMPLIANCE PURSUANT TO LOCAL RULE 11-6.2**

2      The undersigned counsel of record for Plaintiff certifies that this brief

3  contains 25 pages, which complies with the page limit set by this Court's Standing

4  Order on August 11, 2023 (Doc. 13).

5

6  DATED:  January 19, 2026        **LAW OFFICES OF DALE K. GALIPO**

7                          By:   _/s/     Marcel F. Sincich_
8                                Dale K. Galipo, Esq.
                                  Trenton C. Packer, Esq,
9                                 Marcel F. Sincich, Esq.
                                  *Attorney for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28