**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Tel:   (951) 682-9311

*Attorneys for Plaintiff*, HENRY BARNHILL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY BARNHILL,<br><br>                 Plaintiff,<br><br>        vs.<br><br>CITY OF HEMET; OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; CATHERINE TIPTON; and DOES 1-10, inclusive,<br><br>                 Defendants. | Case No.: **5:23-cv-00589-JGB-SP**<br><br>[*Honorable Jesus G. Bernal*<br>Magistrate Judge Sheri Pym]<br><br>**PLAINTIFF'S ADDITIONAL MATERIAL FACTS**<br><br>[*Filed concurrently with* Plaintiff's Opposition to Defendants' Motion for Summary Judgment; Memorandum of Points and Authorities in support thereof; Plaintiff's Objections to Evidence Presented in Defendants' Separate Statement; Declaration of Marcel F. Sincich and exhibits thereto; Declaration of Roger Clark; Declaration of Dr. Ryan O'Connor]<br><br>Hearing:    February 9, 2026<br>Time:        10:00 a.m.<br>Crtrm:       1<br><br>Trial Date: April 6, 2026<br>Complaint Filed: April 4, 2023 |

## <u>PLAINTIFF'S ADDITIONAL MATERIAL FACTS</u>

Pursuant to Local Rule 56-2, Plaintiff respectfully submits his Statement of Additional Material Facts. Please be advised that each of Plaintiff's exhibits is numbered and corresponds to the paragraph number of the Declaration of Marcel F. Sincich, filed concurrently herewith.

DATED:  January 19, 2026                **LAW OFFICES OF DALE K. GALIPO**

By: _____/s/____*Marcel F. Sincich*_____
Dale K. Galipo, Esq.
Trenton C. Packer, Esq,
Marcel F. Sincich, Esq.
*Attorney for Plaintiffs*

## PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| **Nature of the Call and Initial Pursuit** ||
| **87.** Defendants' own police practices expert agrees that whether force was objectively reasonable is a factual determination. | **Exh. 6, Sanchez Depo** at 24:3-9. |
| **88.** This entire incident lasted approximately 3 minutes. | **Exh. 2, Bishop Depo** at 58:24-59:2. **Exh. 8, Bishop Video Screenshots** at 1, 37. **Exh. 9, Maynard Video Screenshots** at 1-37. **Exh. 10, Aguila Video Screenshots** at 1-32. **Exh. M, Maynard Video** at 00:33-03:50. **Exh. N, Bishop Video** at 00:33-03:50. **Exh. O, Aguila Video** at 00:10-03:30. |
| **89.** The event from the night before, which was the substance of this call for service, did not involve a gun, Barnhill did not point a gun or have a physical altercation with anyone. | **Exh. 1, Maynard Depo** at 15:13-17, 17:12-21. **Exh. 5, Barnhill Depo** at 46:15-19, 54:12-22. |
| **90.** The allegations on the call required an investigation. | **Exh. 1, Maynard Depo** at 21:25-22:11. |
| **91.** Defendants Maynard, Bishop and Aguila responded and saw a car that matched the description given with Barnhill alone inside. | **Exh. 1, Maynard Depo** at 21:25-22:11, 26:2-3. **Exh. 2, Bishop Depo** at 31:20, 32:5-9. |
| **92.** That morning, Barnhill drove his girlfriend to drop her daughter off at school. | **Exh. 5, Barnhill Depo** at 71:24-72:5, 72:9-11. |
| **93.** While his girlfriend was inside the school, Barnhill merely sat in his car until he saw out of the corner of his eye from the side mirror, someone approaching him with a gun, so he turned the car on and drove home to get | **Exh. 1, Maynard Depo** at 22:20-21. **Exh. 5, Barnhill Depo** at 73:4-74:12, 76:1-12, 78:16-18, 79:24-80:10. **Exh. 9, Maynard Video Screenshots** at 1. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| somewhere safe out of great fear, not realizing it was the police. | **Exh. 10, Aguila Video Screenshots** at 1. |
| **94.** Even while driving, Barnhill does not recall knowing it was the police or seeing lights and sirens, he was just afraid of being killed and tried to get away from danger. | **Exh. 5, Barnhill Depo** at 83:12-21, 85:2-21, 86:10, 94:6-10. |
| **95.** The pursuit lasted approximately 2 minutes until the car stopped in front of the house and Barnhill exited then went towards the house while Maynard, Bishop, and Aguila pursued with guns drawn. | **Exh. 1, Maynard Depo** at 25:16-23, 26:5-15, 38:8.<br>**Exh. 2, Bishop Depo** at 32:21-33:1, 34:5-7.<br>**Exh. 4, Klinzing Depo** at 26:13-20, 29:5-14.<br>**Exh. 5, Barnhill Depo** at 91:13-15.<br>**Exh. 8, Bishop Video Screenshots** at 1-2.<br>**Exh. 9, Maynard Video Screenshots** at 1-2.<br>**Exh. 10, Aguila Video Screenshots** at 1-2.<br>**Exh. M, Maynard Video** at 00:33-02:45.<br>**Exh. N, Bishop Video** at 00:33-02:48.<br>**Exh. O, Aguila Video** at 00:10-02:26. |
| **96.** Officers simultaneously gave commands, including, "Show me your hands," to which Defendants admit Barnhill complied by raising his visibly empty hands up. | **Exh. 1, Maynard Depo** at 27:13-25.<br>**Exh. 2, Bishop Depo** at 34:25-35:9, 35:12-36:23.<br>**Exh. 8, Bishop Video Screenshots** at 3.<br>**Exh. 9, Maynard Video Screenshots** at 3.<br>**Exh. 10, Aguila Video Screenshots** at 3-4.<br>**Exh. M, Maynard Video** at 02:39-02:43.<br>**Exh. N, Bishop Video** at 02:40-02:46.<br>**Exh. O, Aguila Video** at 02:19-02:24. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| **97.** However, after putting his hands up, Barnhill hurried a short distance to his front door trying to get somewhere safe – there the pursuit ended. | **Exh. 1, Maynard Depo** at 27:13-20. **Exh. 2, Bishop Depo** at 37:24-38:2. **Exh. 5, Barnhill Depo** at 43:17-21, 97:20-98:1, 99:6-10. **Exh. 8, Bishop Video Screenshots** at 4. **Exh. 9, Maynard Video Screenshots** at 3-4. **Exh. 10, Aguila Video Screenshots** at 3-4 |
| **At the Door and Thereafter, including during all the force used, Barnhill Was Not Attempting to Flee and Was Not Actively Resisting Arrest, and was Not an Immediate Threat of Harm to the Officers or any Person** | |
| **98.** At the door to the conclusion of the incident, Barnhill did not attempt to flee, did not go into the house and could not flee as he was surrounded by walls and the approaching officers. | **Exh. 2, Bishop Depo** at 41:11. **Exh. M, Maynard Video** at 02:40-03:50. **Exh. N, Bishop Video** at 02:40-03:50. **Exh. O, Aguila Video** at 02:20-03:30. |
| **99.** Further, Barnhill was not resisting, he "was too scared to resist," "the only thing that I ever tried to do was obey their commands," and was trying not to get shot and killed; the only thing on Barnhill's mind was, "Do what they say. Don't get killed." | **Exh. 5, Barnhill Depo** at 102:2-8, 124:24-125:2, 132:10-12. **Exh. M, Maynard Video** at 02:40-03:50. **Exh. N, Bishop Video** at 02:40-03:50. **Exh. O, Aguila Video** at 02:20-03:30. |
| **100.** During the physical altercation Barnhill was trying to comply with everything officers commanded, trying to do everything he could to show the officers that he was not a threat and was willing to comply, just wanting the beating to stop. | **Exh. 5, Barnhill Depo** at 122:6-8, 128:1-16. **Exh. M, Maynard Video** at 02:40-03:50. **Exh. N, Bishop Video** at 02:40-03:50. **Exh. O, Aguila Video** at 02:20-03:30. |
| **101.** At the door, Barnhill saw the person running at him, realized it was an officer, and froze, "like a deer caught in headlights." | **Exh. 5, Barnhill Depo** at 43:10-14, 105:21-24, 109:19-21. **Exh. 8, Bishop Video Screenshots** at 6. **Exh. 9, Maynard Video Screenshots** at 4-7. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| | **Exh. M, Maynard Video** at 02:46. |
| **102.** As the Maynard charged towards the frozen Barnhill, he braced for the impact of being tackled. | **Exh. 5, Barnhill Depo** at 110:23-111:3. |
| **103.** Seeing only keys in his hands, Maynard immediately closed the distance, tackled and pushed Barnhill away from the door, causing him to stumble backwards and become seated in a patio chair. | **Exh. 1, Maynard Depo** at 31:16-32:8, 37:13-16, 39:13-25. **Exh. 2, Bishop Depo** at 39:1-11, 40:9-11. **Exh. 8, Bishop Video Screenshots** at 7. **Exh. 9, Maynard Video Screenshots** at 8-10. **Exh. M, Maynard Video** at 02:46-02:50. **Exh. N, Bishop Video** at 02:47-02:53. **Exh. O, Aguila Video** at 02:25-02:30. |
| **104.** Barnhill dropped to the patio chair and immediately raised his hands in the air in surrender. | **Exh. 5, Barnhill Depo** at 111:6-10. **Exh. 8, Bishop Video Screenshots** at 8. |
| **105.** Bishop and Aguila immediately joined. | **Exh. 2, Bishop Depo** at 38:14-16, 40:9-15. **Exh. 8, Bishop Video Screenshots** at 9. |
| **106.** Maynard holstered his gun, and grabbed Barnhill's right wrist, while Aguila grabbed Barnhill's left wrist. | **Exh. 1, Maynard Depo** at 39:18-22, 43:5-8, 47:15-17. **Exh. 9, Maynard Video Screenshots** at 10-12. **Exh. M, Maynard Video** at 02:52-02:53. |
| **107.** Bishop drew his Taser and while Maynard and Aguila held Barnhill's hands controlling him, Bishop yelled, "Taser out" to get his partners to move out of the way and deployed the Taser for 5 seconds on Barnhill. | **Exh. 2, Bishop Depo** at 44:2-23, 46:4-47:1, 67:21-25. **Exh. 8, Bishop Video Screenshots** at 9-12. **Exh. 10, Aguila Video Screenshots** at 5-6 |

PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| | **Exh. M, Maynard Video** at 02:50-02:56.<br>**Exh. N, Bishop Video** at 02:50-03:00. |
| **108.** Tasers are designed to cause neuromuscular incapacitation ("NMI"), causing the subject to lose control of his muscles and ability to move. | **Exh. 2, Bishop Depo** at 47:7-10.<br>**Exh. M, Maynard Video** at 02:50-02:56.<br>**Exh. N, Bishop Video** at 02:50-03:00. |
| **109.** The Taser darts made contact with Barnhill causing him to stiffen up from the shock and NMI. | **Exh. 1, Maynard Depo** at 49:10-11.<br>**Exh. 5, Barnhill Depo** at 111:18-112:17.<br>**Exh. 8, Bishop Video Screenshots** at 13-16.<br>**Exh. 9, Maynard Video Screenshots** at 13.<br>**Exh. 10, Aguila Video Screenshots** at 5-9. |
| **110.** While the Taser was being deployed, and while Maynard and Aguila held Barnhill's visibly empty hands stretched out, Maynard punched Barnhill in the face twice with a closed fist. | **Exh. 1, Maynard Depo** at 39:18-22, 43:5-8, 47:15-17.<br>**Exh. 5, Barnhill Depo** at 111:11-14, 120:21-25.<br>**Exh. 9, Maynard Video Screenshots** at 11-20.<br>**Exh. 10, Aguila Video Screenshots** at 5.<br>**Exh. M, Maynard Video** at 02:50-02:53. |
| **111.** Maynard then struck Barnhill in the face another time with a hammer fist. | **Exh. 9, Maynard Video Screenshots** at 20.<br>**Exh. M, Maynard Video** at 02:50-02:53. |
| **112.** The Taser continued to cycle, causing Barnhill's body to constrict while Barnhill's visibly empty hands remained in control of the officers. | **Exh. M, Maynard Video** at 02:50-02:56.<br>**Exh. N, Bishop Video** at 02:50-03:00. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| **113.** As Barnhill began to go to the ground, Maynard delivered a knee strike on Barnhill. | **Exh. 2, Bishop Depo** at 40:16-20.<br>**Exh. 8, Bishop Video Screenshots** at 16.<br>**Exh. 10, Aguila Video Screenshots** at 7-9.<br>**Exh. M, Maynard Video** at 02:58-03:01.<br>**Exh. N, Bishop Video** at 02:58-03:01. |
| **114.** Barnhill tried to comply with commands to get on the ground, but he could not voluntarily move while being Tased; still his rigid and locked up body easily slid down to the ground at the control of Maynard and Aguila. | **Exh. 2, Bishop Depo** at 40:21-25.<br>**Exh. 5, Barnhill Depo** at 113:21-114:1, 116:13-20.<br>**Exh. 9, Maynard Video Screenshots** at 21-25.<br>**Exh. 10, Aguila Video Screenshots** at 7-9.<br>**Exh. M, Maynard Video** at 02:50-02:56.<br>**Exh. N, Bishop Video** at 02:50-03:00. |
| **115.** Once on the ground, the officers jumped on Barnhill and started pounding him under the observation and supervision of Klinzing. | **Exh. 4, Klinzing Depo** at 32:6-11.<br>**Exh. 5, Barnhill Depo** at 117:5-9, 121:4-6.<br>**Exh. 10, Aguila Video Screenshots** at 10-26. |
| **116.** As Klinzing approached, he saw Barnhill on the ground and Aguila immediately placed Barnhill's left hand behind his back without any resistance using a single hand and held it in place controlling Barnhill's left hand and arm. | **Exh. 4, Klinzing Depo** at 31:20-32:2.<br>**Exh. 10, Aguila Video Screenshots** at 9-10.<br>**Exh. O, Aguila Video** at 02:34-02:40. |
| **117.** The entire time, Aguila did not struggle; he maintained control of Barnhill's left hand behind his back with a firm grip while Bishop and Maynard took control of Barnhill's right hand. | **Exh. 3, Aguila Depo** at 69:19-20, 86:17-22.<br>**Exh. 4, Klinzing Depo** at 31:20-32:2, 33:3-8, 33:20-34:12.<br>**Exh. 10, Aguila Video Screenshots** at 9-13.<br>**Exh. O, Aguila Video** at 02:35-03:21. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| **118.** Still on the ground, Maynard used his right knee to deliver one strike to Barnhill's face. | **Exh. 1, Maynard Depo** at 50:11-14, 51:16-17.<br>**Exh. 6, Sanchez Depo** at 32:15-19. |
| **119.** Bishop also reenergized the Taser and deployed it again for another 5 second cycle. | **Exh. 2, Bishop Depo** at 47:16-24, 68:1-3.<br>**Exh. 8, Bishop Video Screenshots** at 11. |
| **120.** As he was being Tased, an officer commanded, "Put your hands behind your back," and Barnhill again tried to comply but could not move because he was locked up. | **Exh. 5, Barnhill Depo** at 114:4-8, 115:21-25.<br>**Exh. M, Maynard Video** at 02:50-03:00.<br>**Exh. N, Bishop Video** at 02:50-03:05. |
| **121.** Barnhill was "being hit all over the place by the officers [while] being simultaneously tased." | **Exh. 5, Barnhill Depo** at 116:8-9. |
| **122.** With the officers on top of him and all the force being deployed, Barnhill felt like he was being Tased the entire time. | **Exh. 5, Barnhill Depo** at 114:15-17.<br>**Exh. 8, Bishop Video Screenshots** at 18-36. |
| **123.** Maynard also used his entire body weight to control Barnhill's right hand. | **Exh. 1, Maynard Depo** at 52:11-14.<br>**Exh. 8, Bishop Video Screenshots** at 18-36.<br>**Exh. 9, Maynard Video Screenshots** at 26-37. |
| **124.** At the time Maynard had control of Barnhill's right hand and could have controlled it better with a two-hand grip as trained but chose to let go and push Barnhill's head and face up against a brick wall. | **Exh. M, Maynard Video** at 02:55-03:00.<br>**Exh. O, Aguila Video** at 02:38-02:40.<br>**Exh. 8, Bishop Video Screenshots** at 18, 19. 24.<br>**Exh. 9, Maynard Video Screenshots** at 22-31.<br>**Exh. 10, Aguila Video Screenshots** at 10-11. |
| **125.** Barnhill pled with the officers, "I didn't do nothing." | **Exh. M, Maynard Video** at 02:57-03:00. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| **126.** Then Aguila began to crank Barnhill's left hand high up the center of his back. | **Exh. 8, Bishop Video Screenshots** at 24. <br> **Exh. 9, Maynard Video Screenshots** at 33. <br> **Exh. 10, Aguila Video Screenshots** at 12-14. <br> **Exh. O, Aguila Video** at 02:43-02:45. |
| **127.** During the assault, Officers would command Barnhill to put his hands behind his back, and Barnhill would state that his hands were behind his back, but while Barnhill was complying, the officers would let go and start hitting Barnhill in the face causing instinctively react by protecting his face from being hit again. | **Exh. 2, Bishop Depo** at 57:19-24, 58:2-5. <br> **Exh. 5, Barnhill Depo** at 122:10-24, 123:5-16, 124:9-20, 127:16-128:1 ("at all times I'm trying to do everything that the officers are telling me to do.") <br> **Exh. 8, Bishop Video Screenshots** at 18-36. <br> **Exh. 10, Aguila Video Screenshots** at 10-24. |
| **128.** When Barnhill told the four controlling Officers, "My arms are behind my back. My arms are behind my back," and "I'm not resisting," he clearly pleading that they did not have to keep hitting him. | **Exh. 4, Klinzing Depo** at 35:11-18. <br> **Exh. 5, Barnhill Depo** at 130:7-11. |
| **129.** Bishop stepped back and called for additional resources while two officers are physically controlling Barnhill, whose legs are flat on the ground and appeared to be making no effort to stand or resist. | **Exh. N, Bishop Video** at 03:05-03:09. <br> **Exh. 8, Bishop Video Screenshots** at 21. |
| **130.** Maynard removed his two-handed grip on Barnhill's right hand and grabbed Barnhill's hood again, at which time Barnhill begged, "I'm not refusing. I'm not refusing. I'm not refusing. I'm not refusing." | **Exh. 9, Maynard Video Screenshots** at 9-36. <br> **Exh. O, Aguila Video** at 02:46-02:50. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| **131.** Even with both hands being held behind his back, officers kept striking Barnhill in the face. | **Exh. 5, Barnhill Depo** at 131:6-10. **Exh. 8, Bishop Video Screenshots** at 26-36. **Exh. 9, Maynard Video Screenshots** at 35. |
| **132.** Bishop then joined in going hands on while still holding his Taser. | **Exh. 2, Bishop Depo** at 72:19-20, 75:7-14. **Exh. 8, Bishop Video Screenshots** at 24-26. **Exh. N, Bishop Video** at 03:10-03:15. **Exh. O, Aguila Video** at 02:59. |
| **133.** Bishop grabbed Barnhill's hair and pulling it back. | **Exh. 1, Maynard Depo** at 76:4-11. **Exh. 8, Bishop Video Screenshots** at 27-28. **Exh. 10, Aguila Video Screenshots** at 15. **Exh. O, Aguila Video** at 02:49-02:51. |
| **134.** It appears Bishop attempted a Drive-Stun-Mode deployment of the Taser to the back of Barnhill's neck. | **Exh. 8, Bishop Video Screenshots** at 25-26. **Exh. N, Bishop Video** at 03:12-03:15. |
| **135.** Barnhill again begged, "They're behind my back. They're behind my back. They're behind my back. They're behind my back." | **Exh. 8, Bishop Video Screenshots** at 25-26. **Exh. N, Bishop Video** at 03:12-03:15. |
| **136.** Aguila also deployed six body punches while Maynard is bringing Barnhill's right hand around and to his back. | **Exh. 10, Aguila Video Screenshots** at 16-21. **Exh. O, Aguila Video** at 02:51-02:54. |
| **137.** Aguila deploys two additional body punches despite Barnhill's right hand being brought to his lower back, including nearly striking Barnhill's right hand because it was at his lower back. | **Exh. 10, Aguila Video Screenshots** at 22-23. **Exh. O, Aguila Video** at 02:54-02:55. |
| **138.** While Maynard was placing Barnhill's right hand behind his back, | **Exh. 9, Maynard Video Screenshots** at 35-36. |

Case No. 5:23-cv-00589-JGB-SP

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| and while Officer Aguila repeatedly deployed body strikes on Barnhill, Bishop struck Barnhill to the head with his Taser. | **Exh. M, Maynard Video** at 03:09-03:11. |
| **139.** Nevertheless, Bishop struck Barnhill to the left side of his head twice with his Taser as an improvised device, with such force that the Taser body appeared to break off or separate from the handle of the Taser and the Taser flew out of Bishop's hand. | **Exh. 2, Bishop Depo** at 45:13-15, 53:20-25, 68:6-8. **Exh. 8, Bishop Video Screenshots** at 28-31. **Exh. 9, Maynard Video Screenshots** at 35. **Exh. N, Bishop Video** at 03:14. |
| **140.** At this approximate time, Barnhill's visibly empty hands are being held behind his back by officers. | **Exh. O, Aguila Video** at 02:54-02:56. |
| **141.** The reason previously Officers could not get Barnhill's hand behind his back was because they were piled on top of each other and had their own legs and arms blocking the path to his lower back. As soon as Klinzing moved his leg, officers easily placed Barnhill's right hand behind his back. | **Exh. O, Aguila Video** at 02:49-02:59. |
| **142.** Bishop then grabs Barnhill's hood with one hand and ponytail with the other, and lifts Barnhill's head off the ground. | **Exh. 2, Bishop Depo** at 60:17-19, 62:6-9, 63:6-7. **Exh. 8, Bishop Video Screenshots** at 31-33. **Exh. N, Bishop Video** at 03:20-03:25. |
| **143.** Despite both hands being behind his back, an officer commanded, "Put your fucking hands behind your back," to which Barnhill immediately replied, "They're behind my back. They're behind my back," with two hands Bishop slammed Barnhill's face so hard | **Exh. 8, Bishop Video Screenshots** at 32-33. **Exh. N, Bishop Video** at 03:20-03:25. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| onto the concrete floor that blood immediately spattered on the ground. | |
| **144.** Aguila would never wish that Barnhill's head be slammed into the concrete. | **Exh. 3, Aguila Depo** at 88:13-18.<br>**Exh. 8, Bishop Video Screenshots** at 34. |
| **145.** The Officers handcuffed and searched Barnhill, finding no weapons, then rolled Barnhill into a seated position. | **Exh. 1, Maynard Depo** at 54:14-18, 67:5-10.<br>**Exh. 10, Aguila Video Screenshots** at 30-32.<br>**Exh. O, Aguila Video** at 03:12-03:15.<br>**Exh. N, Bishop Video** at 03:18-03:21. |
| **There were Reasonable Alternatives** ||
| **146.** One factor to consider in determining the reasonableness of force under the policy is the degree to which the subject is restrained. | **Exh. 2, Bishop Depo** at 17:19-18:11. |
| **147.** Bishop's understanding of "effectively restrained" is that "a subject is no long able to physically resist officer, is no longer able to pull away from officers. And [ability to] stand[] up is another factor," any one of which, if accomplished constitutes effective restraint. | **Exh. 2, Bishop Depo** at 19:17-24, 20:5-9, 20:24-21:13. |
| **148.** Another consideration is the number of officers that are effectuating the arrest. | **Exh. 2, Bishop Depo** at 22:15-24. |
| **149.** Bishop made a call for further assistance/additional resources and was also equipped with pepper spray. | **Exh. 2, Bishop Depo** at 26:2-7, 41:19-42:1. |
| **150.** The Officers had several reasonable alternatives including verbal commands, de-escalation, and control holds, without have to overreact and | **Clark Decl** ¶¶9-13. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| escalate the situation into substantial quality and quantity of force. | |
| **No Warning was Given** | |
| **151.**  No warning was given by Defendant Officer Maynard at any point prior to (i) tackling Barnhill down, (ii) kneeing Barnhill to the body, (iii) punching and hammer-fist striking Barnhill to the face, (iv) kneeing Barnhill to the head, or (v) pushing Barnhill's face into the concrete wall. | Clark Decl ¶9. **Exh. M, Maynard Video** at 02:40-03:50. **Exh. N, Bishop Video** at 02:40-03:50. **Exh. O, Aguila Video** at 02:20-03:30. |
| **152.**  No warning was given by Defendant Officer Bishop at any point prior to (i) Tasing Barnhill while in the chair, (ii) Tasing Barnhill while he was chest down on the ground, (iii) pulling and pushing on Barnhill's hood, (iv) possible drive-stun deployment of the Taser, (v) striking Barnhill with the Taser two times in the head as an improvised deadly weapon, or (vi) slamming Barnhill's face into the ground. | Clark Decl ¶9. **Exh. M, Maynard Video** at 02:40-03:50. **Exh. N, Bishop Video** at 02:40-03:50. **Exh. O, Aguila Video** at 02:20-03:30. |
| **153.**  No warning was given by Defendant Officer Aguila at any point prior to (1) securing Barnhill's left hand so of far behind his back that his rotator cuff tore, or (2) full force strikes. | Clark Decl ¶9. **Exh. M, Maynard Video** at 02:40-03:50. **Exh. N, Bishop Video** at 02:40-03:50. **Exh. O, Aguila Video** at 02:20-03:30. |
| **Barnhill Was Not an Immediate Threat of Harm** | |
| **154.**  When deciding whether to use force that could cause serious bodily injury and the kind of force that could be used, officers were trained to evaluate the subject's present ability to harm others and proximity of weapons. | **Exh. 2, Bishop Depo** at 23:2-8. **Exh. 3, Aguila Depo** at 37:18-23, 38:10-19. **Exh. 8, Bishop Video Screenshots** at 7-36. **Exh. 9, Maynard Video Screenshots** at 7-37. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| **155.** The incident happened outside the residence with the door closed and with no weapons of any kind on the porch. | **Exh. 2, Bishop Depo** at 76:22-77:19.<br>**Exh. 8, Bishop Video Screenshots** at 7-36.<br>**Exh. 9, Maynard Video Screenshots** at 7-37. |
| **156.** Barnhill did not have a gun or knife on his person, and the officers did not see any weapons on or near him. | **Exh. 1, Maynard Depo** at 35:20-36:4, 45:7-10.<br>**Exh. 2, Bishop Depo** at 30:18-25, 31:2-4, 42:14-18, 71:16-22, 76:7-13.<br>**Exh. 4, Klinzing Depo** at 28:24-29:1, 44:22-13.<br>**Exh. 6, Sanchez Depo** at 26:11-24, 27:2-8.<br>**Exh. 8, Bishop Video Screenshots** at 7-36.<br>**Exh. 9, Maynard Video Screenshots** at 7-37.<br>**Exh. M, Maynard Video** at 02:40-03:50.<br>**Exh. N, Bishop Video** at 02:40-03:50.<br>**Exh. O, Aguila Video** at 02:20-03:30. |
| **157.** Barnhill was wearing a sweatshirt and basketball shorts that did not show any sign of having a weapon. | **Exh. 4, Klinzing Depo** at 30:9-14.<br>**Exh. M, Maynard Video** at 02:40-03:50.<br>**Exh. N, Bishop Video** at 02:40-03:50.<br>**Exh. O, Aguila Video** at 02:20-03:30. |
| **158.** Barnhill also never reached for the Taser or any weapon. | **Exh. 2, Bishop Depo** at 55:9-11.<br>**Exh. M, Maynard Video** at 02:40-03:50.<br>**Exh. N, Bishop Video** at 02:40-03:50.<br>**Exh. O, Aguila Video** at 02:20-03:30. |
| **159.** Another factor to consider in determining the reasonableness of force under the policy is "Whether the conduct of the individual being confronted no longer reasonably appears | **Exh. 2, Bishop Depo** at 21:15-23. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| to pose an imminent threat to the officers or others." | |
| **160.** Barnhill never struck an officer and never attempted to strike an officer; Barnhill never punched, kicked, kneed, elbowed, or grabbed an officer and never attempted the same; was not assaultive; never verbally threatened any officer; was not aggressive either verbally or physically; and did not express or show any intent to harm any officer. | **Clark Decl** ¶8.<br>**Exh. 2, Bishop Depo** at 78:7-11.<br>**Exh. 8, Bishop Video Screenshots** at 7-36.<br>**Exh. M, Maynard Video** at 02:40-03:50.<br>**Exh. N, Bishop Video** at 02:40-03:50.<br>**Exh. O, Aguila Video** at 02:20-03:30. |
| **161.** Barnhill was not capable of harming any person or officer while being held chest-down on the ground by Officers. | **Exh. M, Maynard Video** at 02:40-03:50.<br>**Exh. N, Bishop Video** at 02:40-03:50.<br>**Exh. O, Aguila Video** at 02:20-03:30. |
| **162.** Officer did not have any information about Barnhill's background or history. | **Exh. 1, Maynard Depo** at 19:16-18, 20:19-25, 21:22-23.<br>**Exh. 2, Bishop Depo** at 31:9-16. |
| **Deadly Force Was Used** | |
| **163.** Defendants admit that deadly force is the application of an event, technique or device that is likely to cause death or serious bodily injury. | **Exh. 4, Klinzing Depo** at 20:12-18.<br>**Exh. 6, Sanchez De po** at 14:16-21. |
| **164.** Any force likely to produce serious bodily injury is deadly force. | **Exh. 4, Klinzing Depo** at 21:15-24. |
| **165.** Pursuant to the policy and PC 243(f)(4), "serious or great bodily injury" includes unconsciousness, brain injury, severe injury, fracture, and injury causing extensive suturing, among other things. | **Exh. 2, Bishop Depo** at 14:1-17.<br>**Exh. 6, Sanchez Depo** at 14:22-15:10. |
| **166.** According to Defendants' police practices expert, "strikes to the head should be considered with respect to injuries that [] can occur." | **Exh. 6, Sanchez Depo** at 15:11-22. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| **167.** If the subject is not threatening someone with death or serious bodily injury, officers are not allowed to use deadly force on the subject. | **Exh. 3, Aguila Depo** at 37:24-38:5. |
| **168.** Officers are trained that "During a confrontation, peace officers need to be aware of those areas of the body which require maximum protection during an attack," including the head. | **Exh. 6, Sanchez Depo** at 15:23-16:9, 17:16-18:6. |
| **169.** Defendants' expert even agrees, under the totality of the circumstances, the use of a Taser as an improvised device to strike someone in the head could qualify as deadly force. | **Exh. 6, Sanchez Depo** at 20:21-21:12, 22:8:17. |
| **170.** Use of a device or tool as a weapon for a head strike is more likely to cause and increases the likelihood of causing death or serious bodily injury than an open-hand strike. | **Exh. 6, Sanchez Depo** at 18:17-19:4, 20:2-14. |
| **171.** Blows to the head constitute deadly force, depending in part on the degree of causing serious bodily injury. | **Exh. 6, Sanchez Depo** at 18:7-15. |
| **172.** Defendants' beating of Barnhill was so severe that Barnhill feared thinking, "I hope they don't kill me." | **Exh. 5, Barnhill Depo** at 8:15-16, 14:3-7. |
| **173.** Every time Barnhill was hit everything went black. | **Exh. 5, Barnhill Depo** at 15:19-25. |
| **174.** Defendants' conduct in slamming Plaintiff's face into a brick wall, slamming his head into the ground, and smashing a Taser on the back of his head, created a substantial risk of causing serious bodily injury. | **Dr. O'Connor Decl** ¶3. |
| **175.** Now, as a result of Defendants' use of excessive force, Barnhill's serious bodily injury includes seizures, cartilage separating from his ear that | **Exh. 5, Barnhill Depo** at 8:12-16, 9:4-6, 137:17-138:2, 138:5-6, 138:10-12, 138:21-140:23, 142:2, 142:18-24, 145:3-6, 149:4-5. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| will not heal, causing his ear to droop, discoloration, and loss of sensation; completely blown orbital fracture requiring surgery and titanium screws, causing loss of muscle strength, nerve damage, and sunken in eye; seizures; and torn rotator cuff. | **Dr. O'Connor Decl ¶**4. |
| **176.** Barnhill's visible serious bodily injury was obvious even to the lay Officers, reporting that Barnhill suffered a torn ear, fracture, "abrasion/laceration" and "obvious disfigurement." | **Exh. 2, Bishop Depo** at 50:2-8, 51:1-21.<br>**Exh. 4, Klinzing Depo** at 52:3-11.<br>**Exh. 6, Sanchez Depo** at 40:8-21. |
| **177.** The force used against Barnhill so obviously meets the definition of serious bodily injury that Defendants' police practices expert merely testified that "the statute speaks for itself." | **Exh. 6, Sanchez Depo** at 40:8-21. |
| **178.** Pursuant to Policy 300.4(A), "An officer may [only] use deadly force to protect him or herself or others from what he or she reasonably believes is an imminent threat of death or serious bodily injury to the officer or another person." | **Exh. 2, Bishop Depo** at 13:8, 13:19-25.<br>**Clark Decl ¶**8. |
| **179.** In other words, deadly force is only permitted in "Immediate Defense of Life" as trained. | **Exh. 4, Klinzing Depo** at 22:3-7.<br>**Clark Decl ¶**8. |
| **180.** Barnhill was never an immediate that of death or serious bodily injury. | **Clark Decl ¶**8.<br>**Exh. M, Maynard Video** at 02:40-03:50.<br>**Exh. N, Bishop Video** at 02:40-03:50.<br>**Exh. O, Aguila Video** at 02:20-03:30. |
| **Defendants Inadequate Training and Policies** ||
| **181.** The standards for determining whether the use of force is objectively | **Exh. 6, Sanchez Depo** at 12:17-23, 13:2-20. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| reasonable include POST, City policy, and PC 835a. | |
| **182.** The City policy specifically related to the use of an impact device is against targeting the head. | **Exh. 6, Sanchez Depo** at 23:6-25. |
| **183.** Bishop claims to have taken 6 to 7 classes on the Taser, yet no POST training and no City policy addresses the Taser as an impact device. | **Exh. 2, Bishop Depo** at 11:18-23. **Exh. 6, Sanchez Depo** at 21:13-16, 21:21-22:4. |
| **184.** City policy vaguely, overbroadly, deficiently, merely states that an object can be used as an improvised tool without any specific additional guidance. | **Exh. 6, Sanchez Depo** at 22:1-7 (by reasonable inference given that "It doesn't speak to Taser, specifically.") |
| **185.** City policy vaguely, overbroadly, deficiently, merely states certain areas should be avoided. | **Exh. 6, Sanchez Depo** at 22:19-24 (by reasonable inference "in that there are certain areas an officer should try to avoid.") |
| **186.** Bishop had never used the Taser as an improvised weapon before and was not specifically trained to use the Taser as an improvised weapon. | **Exh. 2, Bishop Depo** at 52:11-13, 54:20-23. |
| **187.** As a Corporal, field supervisor, and senior officer on scene, Klinzing did not intervene to stop Defendant Officers from continually beating Barnhill while he was chest-down on the ground, including with both hands behind his back, including while obvious deadly force was used on an unarmed non-resistive man. | **Exh. 4, Klinzing Depo** at 19:14-18, 24:2-10. **Exh. M, Maynard Video** at 02:40-03:50. **Exh. N, Bishop Video** at 02:40-03:50. **Exh. O, Aguila Video** at 02:20-03:30. |
| **188.** Despite acknowledging the specific duty for officer to intervene and report to a supervisor, Aguila does not know the requirements on an officer to report the unlawful or excessive use of force used by another officer and does not know of the government code | **Exh. 3, Aguila Depo** at 40.15-41:2, 41:10-19, 43:16-18, 44:9-14. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| requirement for a police officer to record in his report when he or she witnesses the use of excessive force by another officer. | |
| **189.** Officers have a specific duty to write accurate and reliable reports when they participate in an arrest, close in time to the event if feasible because memory fade, so that the supervisor can review the report and send it to the district attorney's office for review to determine whether to file criminal charges, determining bail amount, and whether there might be any defenses to the charges. | **Exh. 3, Aguila Depo** at 43:19-21, 45:15-46:12, 46:16-47:19. |
| **190.** As a field supervisor, Klinzing was responsible for ensuring Barnhill received medical treatment, gathering statements from the officers involved, and obtaining a statement from Barnhill; yet Klinzing did not write a report. | **Exh. 4, Klinzing Depo** at 49:24-50:10. |
| **191.** Klinzing was never trained on the definition of serious bodily injury from the California Government Code. | **Exh. 4, Klinzing Depo** at 20:25-21:3. |
| **192.** Bishop is not familiar with Govt. Code §12525.2 defining serious bodily injury. | **Exh. 2, Bishop Depo** at 15:20-22. |
| **193.** When Klinzing joined Hemet Police Department, he was only trained on the use of force "to an extent." | **Exh. 4, Klinzing Depo** at 19:19-21. |
| **194.** Officers were trained that the bent wrist technique provides better control. | **Exh. 3, Aguila Depo** at 72:6-21. |
| **195.** Officers are trained to have situational awareness and to minimize confusion by having only one officer, the contact officer, provide commands. | **Clark Decl** ¶9. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| **196.** Here, Officers were simultaneously giving commands. | **Exh. 1, Maynard Depo** at 27:23-25. |
| **197.** Because officers were shouting a lot of things, Bishop does not recall hearing "I got his hands." | **Exh. 2, Bishop Depo** at 71:8-10. |
| **198.** Klinzing claims that he did not see Barnhill get struck with the Taser and claims he only saw Aguila strike Barnhill two times. | **Exh. 4, Klinzing Depo** at 32:13-24. |
| **199.** Klinzing was previously named in a lawsuit alleging use of excessive force close in time to this incident. | **Exh. 4, Klinzing Depo** at 25:14-25. |
| **200.** City knew or should have known that Klinzing was named in a lawsuit with a different department prior to joining HPD. | **Exh. 4, Klinzing Depo** at 26:2-5. |
| **201.** City Officers are trained to fear possible future harm, including by having them watch thousands of videos of incidents an officer may never experience in his entire time in law enforcement. | **Exh. 1, Maynard Depo** at 33:1-13. |
| **202.** As shown here, by Klinzing believing that Barnhill was an immediate threat of life (i.e., a deadly threat whereby deadly force would be authorized) when he first arrived, merely because Klinzing believed Barnhill may potentially be armed, based solely on the broadcast alleging he had a gun the previous day so he may still have a gun. | **Exh. 4, Klinzing Depo** at 28:7-20, 47:9-22. |
| **203.** The City admits that no officer was disciplined as a result of their conduct during this incident. | **Exh. 11, City RFA** No. 6 at 8:6-21. |
| **204.** The City admits that no officer was required to repeat any prior training | **Exh. 11, City RFA** No. 7 at 8:22-9:9. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| as a result of their conduct during this incident. | |
| **205.** The City admits that no officer was required to undergo any additional training as a result of their conduct during this incident. | **Exh. 11, City RFA** No. 8 at 9:10-25. |
| **206.** The City admits to ratifying the use of force by its officers against Barnhill finding it within policy. | **Exh. 11, City RFA** No. 9 at 9:26-10:13. |
| **207.** The City denies that Officers were trained that the authority to use force, conferred on peace officers, is a serious responsibility that shall be exercised judiciously and with respect for human rights and dignity and for the sanctity of every human life. | **Exh. 11, City RFA** No. 29 at 21:15-22:4. |
| **208.** The City denies that Officers were trained that peace officers can only use deadly force according to the California Penal Code when necessary, in defense of life. | **Exh. 11, City RFA** No. 30 at 22:5-21. |
| **209.** The City denies that Officers were trained that the decision to use deadly force cannot be based on their subjective fear alone but must be objectively reasonable. | **Exh. 11, City RFA** No. 36 at 25:19-26:7. |
| **210.** The City denies that Officers were trained that whenever possible, peace officers should attempt to generate voluntary compliance without resorting to physical force. | **Exh. 11, City RFA** No. 45 at 30:27-31:15. |
| **211.** The City denies that Officers were trained that deadly force means any force that creates a substantial risk of causing death or serious bodily injury. | **Exh. 11, City RFA** No. 50 at 33:24-34:13. |
| **212.** The City denies that Officers were trained that a threat of death or serious | **Exh. 11, City RFA** No. 52 at 35:2-20. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| bodily injury is "imminent" when, based on the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. | |
| **213.** The City denies that Officers were trained that imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed. | **Exh. 11, City RFA** No. 53 at 35:21-36:10. |
| **214.** Defendant Officers credibility must be tested by a jury given that they do no admit that they used force against Barnhill; deny that Barnhill was injured or harmed. | **Exh. 12, Maynard RFA** No. 1 at 5:10-24, No. 5 at 7:15-8:1, No. 6 at 8:2-16.<br>**Exh. 13, Aguila RFA** No. 1 at 5:10-24, No. 5 at 7:15-8:1, No. 6 at 8:2-16.<br>**Exh. 14, Bishop RFA** No. 1 at 5:10-24, No. 5 at 7:15-8:1, No. 6 at 8:2-16. |
| **215.** By reasonable inference, Defendant Officers admit to wrongdoing by admitting to being disciplined and retrained as a result of their conduct during the incident, and that the City found their use of force violated policy. | **Exh. 12, Maynard RFA** Nos. 9-12 at 9:20-11:27.<br>**Exh. 13, Aguila RFA** Nos. 11-14 at 10:24-13:4.<br>**Exh. 14, Bishop RFA** Nos. 11-14 at 10:24-13:4. |
| **216.** The use of force inflicted on Barnhill was inconsistent with basic law enforcement training and violated basic POST standards and the standard of care pursuant to POST and officer training. The Officers in this case utterly failed to follow these standards and their training in this incident. Had they done so, Barnhill would not have sustained irreversible injuries to his head and face. | **Clark Decl** ¶7. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| **217.** The Defendant Officers used deadly force against Barnhill by violently striking him to the face and head several times. Barnhill was not an immediate threat of death or serious bodily injury to anyone at the time of the Officers' use of deadly force. | **Clark Decl** ¶8. |
| **218.** There were fundamental tactical errors in this incident including the Defendant Officers failure to attempt to de-escalate the situation, to employ proper control hold-techniques, to give Barnhill a warning prior to using such extreme force, and to control their emotions and fears, which resulted in their overreactions and unnecessary uses of force. | **Clark Decl** ¶9. |
| **219.** After being apprehended at the door to his home and during the Officer assault thereafter, Barnhill did not attempt to flee, was not resistive, was not assaultive, was willing to communicate and conveyed compliance to the Defendant Officers. No force beyond that which is trained and reasonable for a compliant subject was necessary or permitted (as trained). | **Clark Decl** ¶10. |
| **220.** Competent training for officers must include their duty to intervene if fellow Officer(s) apply excessive force, particularly if that excessive force could lead to extreme pain, serious injury or death. Defendant Officers failed to uphold their duty to intervene when they did not stop their partner Officers from continuing to violently assault the compliant Barnhill. | **Clark Decl** ¶11. |

| Plaintiff's Additional Material Facts | Plaintiff's Supporting Evidence |
|---|---|
| **221.**   The Officers exhibited a gross departure from nationally accepted required tactics to minimize the use of force including lethal force, which reflects their lack of adequate training, and a direct reflection of HPD's inadequate supervision, and training policies. The HPD longstanding failure to adequately train their officers, also demonstrated by its officers' prior use of unreasonable force against the citizens of Hemet, has and will continue to place the community at risk of serious injury and/or death by other officers in the department, who have been or are now, similarly trained and/or supervised. | **Clark Decl** ¶12. |
| **222.**   The Defendants Officers did not adequately attempt to de-escalate the situation as trained but instead escalated the situation. | **Clark Decl** ¶13. |