"EXHIBIT 3"

Deposition Of Officer Pedro Aguila

1                    UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3

4    HENRY BARNHILL,                      )
                                          )
5                      Plaintiff,         )
                                          )
6         vs.                             )CASE NO.
                                          )5:23-CV-00589-JGB-SP
7    CITY OF HEMET; OFFICER BRETT         )
     MAYNARD; OFFICER JOSHUA BISHOP;      )
8    OFFICER PEDRO AGUILA; CORPORAL       )
     DOUGLAS KLINZING; CATHERINE          )
9    TIPTON; AND DOES 1-10, INCLUSIVE,    )
                                          )
10                                        )
                       Defendants.        )
11                                        )
                                          )
12

13

14   DEPOSITION OF : OFFICER PEDRO AGUILA
     Taken By      : PAUL GRECH, ESQ.
15   Commencing    : 10:01 a.m.
     Location      : Zoom Remote Proceeding
16   Day, Date     : FRIDAY, JANUARY 31, 2025
     Reported by   : Ora Kohn, CSR No. 11933
17   Pursuant to   : Notice
     Original to   : PAUL GRECH, ESQ.

18

19

20

21

22

23

24   Pages 1-91

25   JOB NO. 238692

Deposition Of Officer Pedro Aguila

```
 1                    REPORTED REMOTELY

 2                 FRIDAY, JANUARY 31, 2025

 3           COURT REPORTER: Good morning.  My name is Ora

 4   Kohn.  I'm a certified Court Reporter with the State of

 5   California.  My CSR number is 11933.

 6                      DEPONENT,

 7           Sworn as a witness by the Certified

 8        Shorthand Reporter, testified as follows:

 9                EXAMINATION BY MR. GRECH

10           MR. GRECH:  Q.  Okay, good morning, Mr.

11   Aguila.  Is that the correct pronunciation?

12       A.   That's close.  It's Aguila.

13       Q.   Aguila?

14       A.   Yes.

15       Q.   Okay.  Have you ever had your deposition taken

16   before?

17       A.   No.

18       Q.   Have you ever testified in a courtroom before?

19       A.   I have.

20       Q.   About how many times have you testified in a

21   courtroom?

22       A.   Approximately fifteen to twenty.

23       Q.   Have you been trained in how to testify?

24       A.   Yes.

25       Q.   And can you tell me where you received the
```

Deposition Of Officer Pedro Aguila

```
 1   Angeles Police Department -- the LAPD academy?
 2        A.   I was --
 3             MS. KORNBLAU:  Same objection.  Go ahead.
 4             THE WITNESS:  I was.
 5             MR. GRECH:  Q.  The answer is yes?
 6        A.   Yes.
 7        Q.   Okay.  And how about the Los Angeles Sheriff's
 8   Department?  Were you accepted there?
 9             MS. KORNBLAU:  And same objection, but go
10   ahead.
11             THE WITNESS:  I passed their written test, but
12   I never proceeded.
13             MR. GRECH:  Q.  So there's a written test and
14   there's another test besides that.  Is that right?
15        A.   Yes.  Usually there's a physical test.
16        Q.   Okay.  Which academy -- did you ultimately go
17   to one of those three academies?
18        A.   Yes.
19        Q.   Which academy did you go to?
20        A.   The Los Angeles Police Department's academy.
21        Q.   When did you enter that academy?
22        A.   In March of 2017.
23        Q.   How old were you in March of 2017?
24        A.   I was 21.
25        Q.   And forgive me if I asked this already, but
```

Deposition Of Officer Pedro Aguila

```
 1  circumstances.
 2      Q.   Were you told about the amount of force that
 3  you could use if there's a threat of death or serious
 4  bodily injury that is imminent?
 5      A.   Yes.
 6      Q.   Were you taught in your Hemet Police
 7  Department training that when a threat of death or
 8  serious bodily injuries is imminent based on the
 9  totality of the circumstances -- based on the totality
10  of the circumstances a reasonable officer in the same
11  situation would believe that a person has the present
12  ability to deliver serious bodily injury; that that was
13  a factor you should consider?
14          MS. KORNBLAU:  Objection.  Lacks foundation,
15  but go ahead.
16          THE WITNESS:  I'm sorry, can you read it one
17  more time?
18          MR. GRECH:  Q.  Sure.  Let me ask a simpler
19  question.  In deciding whether or not to use deadly
20  force or force that would cause serious bodily injury,
21  were you taught to evaluate the present ability of the
22  suspect to hurt you or others?
23      A.   Yes.
24      Q.   What does that mean to you?
25          MS. KORNBLAU:  Objection.  Vague, but go
```

Deposition Of Officer Pedro Aguila

1  ahead.

2          THE WITNESS:  That means if myself, my

3  partners or anybody else, civilian, are in -- are

4  threatened in the way of just bodily injury or death,

5  then we're allowed to use deadly force.

6          MR. GRECH:  Q.  Does that instruction on

7  present ability ever act as restraint on an officer's

8  lawful authority to use force?

9      A.  To use force or deadly force?

10     Q.   To -- let's start with force.  Does the

11 present ability or inability of a suspect to hurt you

12 affect whether or not you or another officer can use

13 force?

14         MS. KORNBLAU:  Objection.  Calls for a

15 hypothetical, but go ahead.

16         THE WITNESS:  I think the -- yes, the ability

17 of somebody or somebody having the ability to present

18 harm, I think that will be factored into what kind of

19 force is used.

20         MR. GRECH:  Q.  Okay.  Now let's flip that.

21 How about somebody's inability to effect harm?  Does

22 that act or instruct whether or not force should be

23 used?

24     A.  Can you clarify?

25     Q.  Sure.  If a guy's handcuffed and restrained

Deposition Of Officer Pedro Aguila

1  and can't hurt you, does that act as -- does that give

2  you any guidance as to whether or not you can use force

3  on the person?

4        MS. KORNBLAU:  Objection.  Calls for a

5  hypothetical.  Go ahead.

6        THE WITNESS:  Yeah, say that again.  It's a

7  hypothetical.  I mean, I've seen people who are

8  handcuffed and still kick and resist.  Obviously force

9  will still be needed.

10        MR. GRECH:  Q.  Is force needed in all

11  circumstances where a person is physically restrained?

12        MS. KORNBLAU:  Objection.  Vague and

13  ambiguous.  Go ahead.

14        THE WITNESS:  Not all.

15        MR. GRECH:  Q.  Is there a difference in the

16  use of force when the officer's use of force could

17  inflict serious bodily injury on somebody?

18        A.  Can you clarify the question?

19        Q.  Does the policy of the Hemet Police Department

20  allow the use of force that might inflict serious

21  bodily injury?

22        A.  It does if the officers use the amount of

23  force that's objectively reasonable given the totality

24  of the circumstances.

25        Q.  May the officer use force that might inflict

Deposition Of Officer Pedro Aguila

1  serious bodily injury when there's no threat of injury
2  to the officer?
3          MS. KORNBLAU:  Objection.  Calls for a
4  hypothetical, but go ahead.
5          THE WITNESS:  Again, given the totality of the
6  circumstances.  Just because I'm not in the threat of
7  danger, doesn't mean nobody else is.
8          MR. GRECH:  Q.  May the officer use force
9  which would cause serious bodily injury when nobody is
10  threatened with physical injury?
11          MS. KORNBLAU:  Objection.  Calls for
12  speculation.  Calls for a hypothetical, but go ahead.
13          THE WITNESS:  I don't see an officer using
14  that amount of force if nobody is at threat.
15          MR. GRECH:  Q.  Does the Hemet Police
16  Department have a policy regarding the reporting of the
17  use of force by a police officer who witnesses an
18  unlawful use of force by another officer?
19          A.  I would have to refer to the manual.
20          Q.  Is that because you don't know whether or not
21  the Hemet Police Department has a policy regarding the
22  reporting of the use of excessive force by another
23  officer?
24          MS. KORNBLAU:  Objection.  Argumentative, but
25  go ahead.

Deposition Of Officer Pedro Aguila

```
 1            THE WITNESS:  I believe there's a policy.  I
 2   just don't know the exact verbiage.
 3            MR. GRECH:  Q.  What is your understanding of
 4   the Hemet Police Department's policy regarding the duty
 5   of a police officer who witnesses excessive force used
 6   by another police officer?
 7            MS. KORNBLAU:  Objection.  Vague and
 8   ambiguous.  Go ahead.
 9            THE WITNESS:  Repeat that one more time.
10            MR. GRECH:  Q.  Sure.  What is your
11   understanding of the policy in the Hemet Police
12   Department regarding the duty of an officer who
13   witnesses excessive force being used by another
14   officer?
15            MS. KORNBLAU:  Objection.  Lacks foundation,
16   but go ahead.
17            THE WITNESS:  I believe our duty is to
18   intervene and report it to the supervisor if needed.
19            MR. GRECH:  Q.  Does the Hemet Police
20   Department have a policy that the officer witnessing
21   the use of excessive force by another officer should
22   include that information in a written report?
23            MS. KORNBLAU:  Objection.  Lacks foundation,
24   but you can answer.
25            THE WITNESS:  Can you repeat that one more
```

Deposition Of Officer Pedro Aguila

1   time?

2          MR. GRECH:  Q.  Does the Hemet Police

3   Department have a policy that an officer witnessing the

4   use of excessive force by another officer, that the

5   witnessing officer should include that information in

6   his report?

7          MS. KORNBLAU:  Objection.  Lacks foundation,

8   but, go ahead.

9          THE WITNESS:  I believe if somebody believes

10  or determines that it's excessive, again their duty is

11  to intervene and report it to the supervisor.

12         MR. GRECH:  Q.  And to be clear, because that

13  didn't exactly answer the question, wouldn't you have a

14  duty to include the use of excessive force in your

15  arrest report if you witnessed another officer doing

16  that?

17         MS. KORNBLAU:  Objection.  Asked and answered.

18  Lacks foundation, but go ahead.

19         THE WITNESS:  Again, my job would be to

20  intervene, to give it to a supervisor.  And I'm sure my

21  statement would be taken by the supervisor, and they

22  would include it in their report.

23         MR. GRECH:  Q.  I'm sorry, can you say the

24  last few words again.

25     A.    That my statement would be taken from a

Deposition Of Officer Pedro Aguila

1  supervisor, and they would have it documented.

2      Q.   Because that still doesn't answer whether or

3  not you believe you have a duty to include that in your

4  report; does the Hemet Police Department have a policy

5  that would require you to report witnessing excessive

6  force by another officer in your own individual report

7  of that arrest?

8          MS. KORNBLAU:  Objection.  Lacks foundation.

9  Asked and answered.  Go ahead.

10         THE WITNESS:  So again, the supervisor of that

11 officer who is using the force, they would document

12 what they did.  At that point it's not for me to

13 determine if it's excessive or not.

14         MR. GRECH:  Q.  I wasn't asking whether or not

15 that was excessive.  I'm asking if you observed what

16 you believed to be excessive force use, you've told me

17 that you have a duty to intervene.  Is that correct?

18     A.   Yes.

19     Q.   You also have a duty to write reports when you

20 participate in an arrest, correct?

21     A.   Yes.

22     Q.   And in that report, does the Hemet Police

23 Department require you to put into your report

24 witnessing the use of excessive force if that's what

25 you believe you've seen?

Deposition Of Officer Pedro Aguila

1          MS. KORNBLAU:  Objection.  Lacks foundation.

2     Vague and ambiguous, but you can answer.

3          THE WITNESS:  Again, my duty would be to

4     intervene and give it to the supervisor, and at that

5     point they can document it.  That officer is going to

6     document what they did in their report, and I usually

7     just put that you can reference the report for further

8     details.

9          MR. GRECH:  Q.  Were you ever given training

10    regarding the government codes requirement that a

11    police officer record in his report when he or she

12    witnesses the use of excessive force by another

13    officer?

14         A.   I don't recall.

15         Q.   Do you know whether the -- whether or not the

16    law requires you to include in your report the

17    witnessing of excessive force by a fellow officer?

18         MS. KORNBLAU:  Objection.  Asked and answered.

19    Go ahead.

20         THE WITNESS:  Again, I believe that the law

21    states that the duty would be to intervene and report

22    it to the supervisor.

23         MR. GRECH:  Q.  Have you ever received any

24    training from the Riverside Sheriff's Department?

25         A.   Yes.

Deposition Of Officer Pedro Aguila

```
 1      Q.   And that -- did that ever involve either
 2   vehicle chases, arrests, use of force or training on
 3   the law?
 4      A.   Training on the law.
 5      Q.   And was that at the Ben Clark Academy?
 6      A.   Yes.
 7      Q.   When did that occur?
 8      A.   I just recently went to a class there earlier
 9   in 2024.
10      Q.   What did that training include?
11      A.   It included -- it was a class regarding sexual
12   assaults and child abuse.
13      Q.   Did it involve the writing of reports?
14      A.   Yes.
15      Q.   Generally with regard to your training and the
16   writing of reports, is it important that reports be
17   written close in time to when the event occurred?
18      A.   When feasible.
19      Q.   Why is that, as you understand it, that
20   reports should be written close in time to when the
21   events occurred?
22           MS. KORNBLAU:  Objection.  Calls for
23   speculation.  Go ahead.
24           THE WITNESS:  I think it helps give the
25   officer a better account of things, but I think
```

Deposition Of Officer Pedro Aguila

1    body-worn cameras definitely help where you -- now you

2    can have that gap.  Before a lot of people didn't have

3    that, so --

4              MR. GRECH:  Q.  When you tell me it helps the

5    officer give a better account, is that because

6    recollections, in your experience, tend to deteriorate

7    over time?

8              MS. KORNBLAU:  Objection.  Calls for

9    hypothetical, but go ahead.

10             THE WITNESS:  Definitely I believe over long

11   periods of time you tend to forget unless you're

12   reminded.

13             MR. GRECH:  Q.  Were you taught about how

14   police reports are used by other partners in the

15   criminal justice system?

16        A.   Can you clarify the question?

17        Q.   Once you write a report, is it fair to say

18   your understanding is that it is then given to a

19   supervisor to review?

20        A.   Yes.

21        Q.   And then after that it is forwarded on to

22   other law enforcement agencies.  Is that true?

23        A.   Yes, to the district attorney's office.

24        Q.   Okay.  And is it your understanding that the

25   district attorney's office would then read your report

Deposition Of Officer Pedro Aguila

1  and decide whether or not to file charges?

2      A.    Yes.

3      Q.    And is it your experience that the district

4  attorney's office might then use that information as to

5  whether or not to set bail or to determine whether or

6  not there might be any defenses to the charges?

7          MS. KORNBLAU:  Objection.  Calls for

8  speculation, but go ahead.

9          THE WITNESS:  Yes, I believe that they will

10  determine if they want to file charges based off the

11  report.

12          MR. GRECH:  Q.  My point, I guess, is it true

13  that you were trained that your reports should be

14  reliable so that the district attorney might be able to

15  trust them?

16          MS. KORNBLAU:  Objection.  Calls for a

17  hypothetical.  Vague and ambiguous, but go ahead.

18          THE WITNESS:  Yes, they should be a pretty

19  accurate account of what happened.

20          MR. GRECH:  Q.  When you mean a pretty

21  accurate account, how accurate should they be before

22  they are forwarded to the district attorney's office?

23      A.    I mean, it's -- I think they should be

24  accurate.  Obviously we can't -- statements can't be

25  exact.  That's why we refer to body-worn camera a lot.

Deposition Of Officer Pedro Aguila

```
 1   who is holding onto Mr. Barnhill's right hand.
 2         MS. KORNBLAU:  Objection.  Vague and
 3   ambiguous.  If you maybe could clarify if he saw this
 4   at the time of the incident or if you're asking him to
 5   interpret to what we see in this still frame.  But go
 6   ahead.
 7         MR. GRECH:  Q.  I'm asking if you, looking at
 8   this still frame at 2 minutes and 35 seconds, do you
 9   recognize another officer besides yourself in that
10   still frame?
11      A.   I do recognize the officer in that still
12   frame.
13      Q.   And I see only one other officer besides you
14   in that still frame.  Would you agree with that?
15      A.   Yes.
16      Q.   Okay.  And that other officer in the still
17   frame appears to be holding onto a different hand than
18   you're holding onto.  Is that right?
19      A.   Again, during the incident I was trying to
20   maintain control of his left arm.  If you want to know
21   if actually Officer Maynard was holding his hand, you
22   would have to ask him.
23      Q.   Does this still frame from this video assist
24   you in recalling the events?  And if it doesn't, just
25   let me know.
```

Deposition Of Officer Pedro Aguila

```
 1           MS. KORNBLAU:  Objection.  Vague and
 2    ambiguous.  Go ahead.
 3           THE WITNESS:  It recalls the event -- my
 4    memory of what I was doing.
 5           MR. GRECH:  Q.  Now, what's the name of the
 6    other officer who is depicted here?
 7      A.   That is Detective Maynard.
 8      Q.   That is Detective Maynard.  And is it true,
 9    from your recollection, that Detective Maynard grasped
10    the right hand of Mr. Barnhill?
11           MS. KORNBLAU:  Objection.  Calls for
12    speculation, but go ahead.
13           THE WITNESS:  During the time of the incident,
14    no, I do not recall.
15           MR. GRECH:  Q.  I'm sorry, during the time of
16    the incident what?
17      A.   I don't recall.  I did not see where his hands
18    were, where Officer Maynard's hands were.  You would
19    have to ask him.
20      Q.   Are you -- to be specific, are you denying
21    that Officer Barnhill (sic) had his hands on Mr.
22    Barnhill's right hand?
23      A.   Officer Barnhill?
24      Q.   I'm sorry, I had a feeling I said that.  Are
25    you telling -- are you denying that Officer Maynard
```

Deposition Of Officer Pedro Aguila

1  grasped Mr. Barnhill's right hand with both his hands?

2         MS. KORNBLAU:  Objection.  Lacks foundation.

3  Vague and ambiguous.  Calls for speculation, but you

4  can answer.

5         THE WITNESS:  I can't tell if he is or not.

6  I'm not denying it.  I'm just saying my focus during

7  this incident was grabbing his left wrist.  I wasn't

8  Detective Maynard, so you would have to ask him.

9         MR. GRECH:  Q.  And to be clear, does this

10 still assist you in recollecting that event?

11        MS. KORNBLAU:  Objection.  Asked and answered.

12        THE WITNESS:  So again, it helps assist me

13 with what my focus was during this incident, which was

14 grabbing is his left wrist.

15        MR. GRECH:  Q.  Showing you -- can you go one

16 second in advance.  We'll stop it here.  Let me ask you

17 a question.  Have you been trained in a technique used

18 as the bent wrist control hold?

19     A.  I don't know if it's necessarily called that.

20 We're trained -- I was trained in the academy on

21 different various control holds, yes.

22     Q.  At the Los Angeles Police Department academy

23 were you ever trained in using a hold where the

24 suspect's wrist is bent?

25     A.  Yes.  Yes.

Deposition Of Officer Pedro Aguila

```
 1        Q.    Why is the suspect's wrist bent, as you were
 2   taught at the Los Angeles Police Department academy?
 3             MS. KORNBLAU:  Objection.  Vague and
 4   ambiguous.  Go ahead.
 5             THE WITNESS:  Can you clarify the question?
 6             MR. GRECH:  Q.  When you were taught to use
 7   the bent wrist technique or taught how it is used, what
 8   did they teach was the reason for bending the suspect's
 9   wrist?
10             MS. KORNBLAU:  Objection.  Lacks foundation.
11   Misstates testimony, but go ahead.
12             THE WITNESS:  Just gives us better control.
13             MR. GRECH:  Q.  And what does it give you
14   better control of?
15        A.    Again, depending on the circumstances, it
16   could give you better control of the suspect's arms or
17   wrist.
18        Q.    The point is to get control of the suspect's
19   arms and wrist, and the bent wrist does that.  Would
20   you agree?
21        A.    That is the goal.
22        Q.    Okay.  Is there a particular way that that
23   must be done?
24             MS. KORNBLAU:  Objection.  Vague and
25   ambiguous.
```

Deposition Of Officer Pedro Aguila

1  Barnhill's head as shown in the top left-hand corner of
2  this photograph consistent with the training that you
3  have received from law enforcement in effecting
4  arrests?
5          MS. KORNBLAU:  Objection.  Lacks foundation.
6  Unintelligible.  Vague and ambiguous.  Calls for
7  speculation.  Calls for a hypothetical, but go ahead.
8          THE WITNESS:  Again, during the time of the
9  incident my focus was on his left arm.  I didn't
10 observe that.
11         MR. GRECH:  Q.  Are those your hands on Mr.
12 Barnhill's head?
13         MS. KORNBLAU:  Objection.  Asked and answered.
14 Go ahead.
15         THE WITNESS:  Again, my arms are on Mr.
16 Barnhill's left arm.
17         MR. GRECH:  Q.  Are both your hands on Mr.
18 Barnhill's left arm?
19         MS. KORNBLAU:  Objection.  Vague as to time.
20 Go ahead.
21         THE WITNESS:  Yes, both my arms are on Mr.
22 Barnhill's left arm.
23         MR. GRECH:  Q.  (VIDEO PLAYED) Showing you
24 this arm on the top left-hand corner of the video, is
25 that your arm?

Deposition Of Officer Pedro Aguila

1          MS. KORNBLAU:  Objection.  Vague and
2    ambiguous.  Unintelligible.  Vague as to time.  Go
3    ahead.
4          THE WITNESS:  We had the -- we can use the
5    amount of force that's objectively reasonable given the
6    circumstances.
7          MR. GRECH:  Q.  Did you, sir, have a duty to
8    use the minimal force necessary to effect this arrest?
9          MS. KORNBLAU:  Objection.  Asked and answered.
10         THE WITNESS:  Again, we're allowed to use the
11   amount of force that's objectively reasonable given the
12   totality of the circumstances.
13         MR. GRECH:  Q.  Were you allowed, if you
14   wished to, to slam his head into the concrete, Mr.
15   Barnhill's head?
16         MS. KORNBLAU:  Objection.  Once again, lacks
17   foundation.  Asked and answered.  But go ahead.
18         THE WITNESS:  I would never wish that.
19         MR. GRECH:  Q.  I'm sorry, say that again.
20     A.   I would never wish that on Mr. Barnhill.
21         MR. GRECH:  Thank you.  I have -- may I have
22   five minutes?  I think I'm done.
23         MS. KORNBLAU:  Sure.
24              (Brief recess.)
25         MR. GRECH:  I have no further questions.  And

Deposition Of Officer Pedro Aguila

1  we can handle this by Code if that's all right with

2  you.

3        MS. KORNBLAU:  Yeah.

4        COURT REPORTER:  And Ms. Kornblau, would you

5  like a copy of the transcript?

6        MS. KORNBLAU:  Yes, please.

7            (Whereupon, at the hour of 12:32 p.m. the

8  matter was adjourned.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Deposition Of Officer Pedro Aguila

```
1                    PENALTY OF PERJURY CERTIFICATE
2
3
4
5
6          I, the undersigned, declare under penalty
7     Of perjury that I have read the foregoing
8     Transcript, and I have made an corrections,
9     Additions or deletions that I was desirous of
10    Making; that the foregoing is a true and correct
11    Transcript of my testimony contained therein.
12              EXECUTED this _____ day of _____,
13    2025, at _____, California.
14
15
16
17
18
19
20
21         _____
22                    Officer Pedro Aguila
23
24
25
```

Deposition Of Officer Pedro Aguila

```
 1              CERTIFICATE OF REPORTER

 2

 3          I, ORA KOHN, Certified Shorthand Reporter,

 4  do hereby certify:

 5       That prior to being examined, the witness in the

 6  foregoing proceedings was by me duly sworn to testify

 7  to the truth, the whole truth, and nothing but the

 8  truth.

 9          That said proceedings were taken remotely

10  before me at the time and place therein set forth and

11  were taken down by me in shorthand and thereafter

12  transcribed into typewriting under my direction and

13  supervision.

14           That a review of the transcript was requested.

15          I further certify that I am neither counsel

16  for, nor related to, any parties to said proceedings,

17  nor in any way interested in the outcome thereof.

18              In witness whereof, I have hereunto

19  subscribed my name.

20

21                    Dated:  February 7, 2025

22

23          _____

24          ORA KOHN, CSR 11933

25
```