Eugene P. Ramirez (State Bar No. 134865)
  eugene.ramirez@manningkass.com
Andrea Kornblau (State Bar No. 291613)
  andrea.kornblau@manningkass.com
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| HENRY BARNHILL,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF HEMET, OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; CATHERINE TIPTON; and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 5:23-cv-00589 JGB(SPx)<br>District Judge: Jesus G. Bernal<br>Magistrate Judge: Sheri Pym<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>*Filed concurrently with Objection to Evidence; Reply to Statement of Genuine Disputes; Reply to Statement of Additional Material Facts*<br><br>Date: 2/9/2026<br>Time: 9 a.m.<br>Crtrm.: 1 (2nd Floor)<br><br>*Action Filed:*    04/12/2024 |

///

///

1

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**


## **TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................5
II. ARGUMENT .........................................................................................................5
   A. Plaintiff's Separate Statement Should Be Rejected ..........................................5
   B. Plaintiff Fails To Set Forth A Cognizable Claim Against Klinzing ...............6
   C. Plaintiff's Excessive Force Claim Fails Under *Graham* ...............................6
      1. Officers' Force Was Proportionate To Plaintiff's Threat Level..................7
      2. Officers' Force Was Proportionate To Plaintiff's Resistance And Flight...8
   D. Plaintiffs' Remaining Force-Based Fifth Sixth, and Seventh Claims Fail With His First Claim For Fourth Amendment Violation ........................................9
   E. Plaintiff Fails to Identify a Clearly Established Right .................................10
   F. Plaintiffs' Monell Claims Are Unsupportable ...............................................13
   G. Plaintiffs' Remaining Force-Based Fifth Sixth, and Seventh Claims Based On Vicarious Liability Also Fail ........................................................................16
   H. Plaintiff's Claim for Punitive Damages Fails ...............................................16
III. CONCLUSION ....................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Speers*,
  473 F.3d 989 (9th Cir. 2007) .................................................................................. 12

*Barnes v. Felix*
  605 U.S. 73 (2025) ................................................................................................... 8

*Blankenhorn v. City of Orange*
  485 F.3d 463 (9th Cir. 2007) .................................................................................. 12

*Brosseau v. Haugen*
  543 U.S. 194 (2004) .......................................................................................... 11, 13

*City of Canton v. Harris*
  489 U.S. 378 (1989) ................................................................................................ 14

*Clairmont v. Sound Mental Health*
  632 F.3d 1091 (9th Cir. 2011) ................................................................................ 10

*Clouthier v. Cnty. of Contra Costa*
  591 F.3d 1232 (9th Cir. 2010) ................................................................................ 15

*Connick v. Thompson*
  563 U.S. 51 (2011) .................................................................................................. 15

*Curnow By & Through Curnow v. Ridgecrest Police*
  952 F.2d 321 (9th Cir. 1991) .................................................................................. 11

*Davis v. City of Las Vegas*
  478 F.3d 1048 (9th Cir. 2007) ................................................................................ 12

*Deorle v. Rutherford*
  272 F.3d 1272 (9th Cir. 2001) .................................................................................. 7

*Estate of Strickland v. Nevada County*.
  69 F.4th 614 (9th Cir. 2023) ................................................................................ 7, 8

*Garner v. Tennessee*
  471 U.S. 1 (1985) .............................................................................................. 11, 13

*Gillette v. Delmore*
  979 F.2d 1342 (9th Cir. 1992) ................................................................................ 14

*Graham v. Connor*
  490 U.S. 386 (1989) ............................................................................ 6, 7, 12, 13

*Hayes v. County of San Diego*
  57 Cal. 4th 622 (2013) ............................................................................................. 9

*Hope v. Pelzer*
  536 U.S. 730 (2002) ................................................................................................ 11

*Longoria v. Pinal Cnty.*
    873 F.3d 699 (9th Cir. 2017) ................................................................................ 13

*Martinez v. County of Los Angeles*
    47 Cal. App. 4th 334 (1996) ................................................................................... 9

*Mullenix v. Luna*
    577 U.S. 7 (2015) .................................................................................................. 11

*Saucier v. Katz*
    533 U.S. 194 (2001) .............................................................................................. 10

*Scott v. Harris*
    550 U.S. 372 (2007) ................................................................................................ 6

*Sheehan v. City & Cnty. of San Francisco*
    743 F.3d 1211 (9th Cir. 2014) .............................................................................. 15

*Smith v. Wade*
    461 U.S. 30 (1983) ................................................................................................ 16

*Torres v. City of Madera*
    648 F.3d 1119 (9th Cir. 2011) .............................................................................. 12

*White v. Pauly*
    137 S. Ct. 548 (2017) ............................................................................................ 10

*Wilkinson v. Torres*
    610 F.3d 546 (9th Cir. 2010) .................................................................................. 7

**Statutes**

Cal. Civ. Code
    § 52.1 ..................................................................................................................... 16

## I. INTRODUCTION

In Opposition ("Opposition"), Plaintiff does not genuinely dispute any of the material facts set forth by Defendants in their Summary Judgment Motion ("Motion"). Plaintiff's "disputes" are readily seen to be false and contradictory—including the notions that Plaintiff was not fleeing or that Plaintiff never hit or struck Officers.

Plaintiff argues the existence of deadly force, a lack of resistance or in flight, and a requirement for Defendants to only use the least intrusive means to apprehend Plaintiff. These arguments are factually and legally unsupported. Plaintiff contends the Court must accept these fictions. This is **not** true. The Court should employ the appropriate standard on summary judgment and not adopt Plaintiff's fictions but rather view the evidence favorably towards him. Plaintiff's arguments for excessive force, and his *Monell* and state law claims lack merit and are void of caselaw support.

Officers are entitled to qualified immunity, a question which, even on excessive force cases, must be resolved early on and is properly before the court by way of Defendants' Motion. The uncontroverted material show Plaintiff—a man of over 200 pounds—being the subject of police investigation per a 911 call as a possibly armed and violent suspect; the material shows Plaintiff fleeing, resisting, and being apprehended. On this evidence, Defendants cannot be said to have violated Plaintiff's constitutional rights and are entitled to qualified immunity in this instance.

## II. ARGUMENT

### A. Plaintiff's Separate Statement Should Be Rejected

As a preliminary matter, Plaintiff's Separate Statement of support blatantly disregards this Court's Standing Orders and the Local Rules. Far from even attempting to comply, Plaintiff submits an ill-formatted Separate Statement that is full of legal conclusions, rhetorical arguments, and erroneous reliance on an expert. As shown in the accompanying Responses, *Daubert* Motions, and Objections, Plaintiff has few meritorious additional facts and no meritorious disputes. Further, Plaintiff's appeal to his expert ipse dixit does not defeat summary judgment.

## B. Plaintiff Fails To Set Forth A Cognizable Claim Against Klinzing

Defendant Corporal Douglas Klinzing ("KLINZING") arrived at the tail end of the encounter and only assisted in placing handcuffs on Plaintiff. There is nothing excessive or violative about assisting fellow officers to place handcuffs on a suspect. Instead, Plaintiff argues for the first time that the other named Officers were acting "under the observation and supervision of KLINZING." (*See* Plaintiff's AUF, 115) This new argument is not found in any discovery or in the complaint. In any case, it is not supported by any evidence. Even if it were true, it does not negate the video evidence which clearly depicts KLINZING arriving well at the end and performing the de minimis actions of producing handcuffs to link around Plaintiff's wrists and thereby no excessive force can be found. Without said force, Plaintiff has no claim against KLINZING and cannot now without any supportive evidence or legal framework attribute liability to KLINZING by way of his "supervision."

## C. Plaintiff's Excessive Force Claim Fails Under *Graham*

First set forth in *Graham v. Connor*, 490 U.S. 386 (1989), courts test whether or not an officer's use of force was excessive by balancing the nature of the intrusion against the government interest. *Graham v. Connor*, 490 U.S. 386, 397 (1989). For the first time, Plaintiff claims the intrusion was "deadly." Opposition, 10:4 – 11:5. There is no law that renders force deadly or lethal simply because the suspect requires medical[1]. The force that occurred is a far cry from the gratuitous depiction laid out by Plaintiff. The uncontroverted evidence does not show officers ever push Plaintiff's face into a brick wall, nor does it show a successful taser stun on Plaintiff, let alone to the neck. Plaintiff's evidence-less contrary assertions are not to be taken as true; nor do they create disputes of fact. (*Scott v. Harris*, 550 U.S. 372, 379–80 (2007) (The

---

[1] It is important to note that almost none of the bolded "injuries" highlighted by Plaintiff are present in this case or cause by the encounter. See Defendants' Objection to Plaintiff's Evidence and Daubert Motion Re: Dr. O'Connor.

6
**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Supreme Court overturned finding of a genuine factual dispute because "the videotape [told] quite a different story." "Where the record…could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.")

The government interest in apprehending Plaintiff was great given the severe nature of his suspected crime and due to his flight. Because of this severe crime and Plaintiff's flight, Plaintiff forgoes arguing the crime was not severe and instead focuses solely on the remaining *Graham* factors, including: the issue of threat and active resistance. *Graham*, 490 U.S. at 396. Plaintiff goes on to argue for additional factors regarding the type and amount of force used, availability of alternative methods, and presence of a warning. Opposition, 11:6 – 21. Each of these factors, under the uncontroverted evidence in this case, weigh in favor of Defendants.

### 1. Officers' Force Was Proportionate To Plaintiff's Threat Level

Plaintiff again confuses the standard of viewing the facts favorably to him with adopting his facts wholesale. Defendants reiterate for the third and final time that the Court need **not** accept Plaintiff's version of events, only view all non-false evidence favorably towards Plaintiff who is the nonmoving party here. *See Wilkinson v. Torres*, 610 F.3d 546, 551 (9th Cir. 2010).

Plaintiff's argument is that his threat level was low because he was in fact unarmed during the encounter, allegedly "not resistant," and had been brought to the ground before the final uses of force. Opposition, 12:4 – 21. That Plaintiff was unarmed in fact is not negating to Officers' understanding that he was possibly armed. All Officers understood that the gun had been in use and was outstanding. This reasonable belief that Plaintiff could be armed increased Plaintiff's threat level. *See Estate of Strickland v. Nevada County.*, 69 F.4th 614, 620 (9th Cir. 2023). Plaintiff's attempt to diminish Officers' concern for safety with respect to his possibly having his gun on him with comparisons to *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). Far from a "simple statement by an officer that he fears for his safety,"

Officers here were chasing a suspect who fled the scene where the victim was holed inside a school afraid to come out; officers knew this information. MAYNARD has information that Plaintiff was a felon who was in fact armed. *Strickland* therefore controls.

Moreover, Plaintiff's assessment of threat level is flawed and at odds with precedent by focusing solely on the moment when the use of force took place to determine the totality of Plaintiff's threat level. This "moment-of-threat" analysis has been summarily rejected by the Supreme Court. *See Barnes v. Felix*, 605 U.S. 73 (2025) (condemning a focus only on the moment when force was used to the exclusion or nonattention of things that had happened in the preceding period and how these things would inform a reasonable officer of how to handle a situation). An officer's reasonability needs a lengthier time-frame than simply at the time when a chase comes to a standstill or a weapon is drawn. *Id.* at 81. Plaintiff's emphasis on where and when the actual chase "stopped" shows a moment-of-threat analysis; Plaintiff's failure to account for his severe crime, the fact that he fled, and other factors such as his stature and resistance—even despite subjective intentions—within the argument regarding the force used fails to argue the totality of the circumstances.

2. **Officers' Force Was Proportionate To Plaintiff's Resistance And Flight**

Plaintiff's additional claims that he was not resisting and was compliant cannot be adopted when viewing the evidence, even in a light favorable to him. Plaintiff reached for his waistband. Even if Plaintiff was not "reach[ing] for a weapon" because there was none, this gesture is a furtive one under the plain meaning of *Strickland* and Plaintiff's attempts to argue semantics on that point is inconsequential to the objective assessment in the context of Plaintiff possibly being armed. Plaintiff also kneed MAYNARD in the chest and, when being detained, it is shown that Officers have to exert a great deal of effort to move Plaintiff because he was not, as argued, liquidly compliant. The video evidence supports Officers' statements that Plaintiff was

8
**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

resisting their attempts to manipulate his body, even wrenching his arm away on more than one occasion. Even if Plaintiff internally wanted to comply, Plaintiff did not outwardly and objectively comply. Plaintiff's attempts in the Separate Statement and at deposition to excuse his lack of compliance are either not in alignment with the video evidence—such as Plaintiff being immobilized by the taser—or are not controlling—such as Plaintiff's internal desire to comply. Officers had only Plaintiff's actions to go on and Plaintiff's actions were to resist.

In addition, it is undisputable that Plaintiff led officers on a car chase to a residence. Unable to support the notion that Plaintiff was not in flight, Plaintiff tries to argue that once the force was employed, he was no longer fleeing. Opposition 14:1 – 14. This argument makes no sense. Plaintiff fled all the way up to his front door and was prevented in being successful in this flight by Officer MAYNARD. Plaintiff's new argument that he was not stopped from fleeing but froze himself is not supported by the video evidence, his own testimony, or indeed the testimony of Officers. To stop his flight, MAYNARD must have tackled Plaintiff from the door. Following this, in order to apprehend Plaintiff successfully, Officers went on to move Plaintiff to a seat, to the floor, and then into handcuffs—struggling and fighting against a resisting and flailing Plaintiff all the while.

### D. **Plaintiffs' Remaining Force-Based Fifth Sixth, and Seventh Claims Fail With His First Claim For Fourth Amendment Violation**

When a claim for excessive force fails, so too do the claims for negligence, battery, or civil code section 52.1 fail. *See Hayes v. County of San Diego*, 57 Cal. 4th 622, 637-39 (2013); *see also Martinez v. County of Los Angeles*, 47 Cal. App. 4th 334, 349-50 (1996) (holding that where officers used reasonable force under the Fourth Amendment standards, there could be no liability under comparable state-law torts).

For his Fifth Claim for negligence, Plaintiff argues that the pre-force conduct of the officers could "persuade a jury to find the [force] negligent." *Hayes*, 57 Cal.

4th 622, at 629-30. Plaintiff's reliance on *Hayes* is unhelpful to him. The Plaintiff in the *Hayes* alleged losses stemming only from the injuries occurring during and stemming from the alleged use of force against her father. Id. at 305. The court specifically stated that the allegations involved only "a single indivisible cause of action, seeking recovery for a single wrong—the shooting itself," and reasoned that because no injury from the pre-shooting conduct was alleged, she had no additional claim for pre-shooting conduct. *Id.*, at 305 – 306. Similarly in this case, Plaintiff does not have a negligence claim based on pre-force contact; Plaintiff's claims are couched in the use of force, training that resulted in the alleged "excessive" use of force, and discipline that was not done in response to the alleged "excessive." (Ex. B ¶¶ 101 – 107.) Plaintiff cannot bring to the jury a cause of action that was not brought against Defendants prior.

### E.     <u>Plaintiff Fails to Identify a Clearly Established Right</u>

As a preliminary matter, in Opposition Section C, Plaintiff argues there was a clearly established right in this case but does not provide precedent to so establish and this is **not** an obvious case as Plaintiff claims. Plaintiff argues at length against shooting-specific uses of force that are not present in this case and appears to argue a shooting took place. Opposition, 16:6 – 9. None of Plaintiff's arguments have merit.

Plaintiff fails to showcase a clearly established right. *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001) (Qualified immunity is awarded unless a plaintiff can show (1) a deprivation of a constitutional or statutory right and (2) that the constitutional or statutory right was "clearly established" at the time of the incident). When determining whether a right was clearly established at the time of the incident, it is not required that a case be directly "on point," however, "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). It is the plaintiff's "burden to show that the contours of the right were clearly established" at the time of the alleged misconduct. *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1109 (9th Cir. 2011).

Here, Plaintiff appeals to generalities, stating that "the general rules set forth in Garner and Graham by themselves create clearly established law in the obvious case." Opposition 16:1 – 3. Appealing to generalities and appealing specifically to the "obvious rights" set out in "*Garner v. Tennessee*, 471 U.S. 1 (1985)" is insufficient and in so appealing Plaintiff utterly fails to show a clearly established right. The Supreme Court has already rejected this analysis in *Mullenix v. Luna*, 577 U.S. 7 (2015). *Mullenix* held the formulation of "officers may not use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others" for qualified immunity purposes is insufficient. *Id.*, at 12-13. Further, use of *Garner's* "general" test for excessive force is "mistaken" and the correct inquiry is whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the situation [she] confronted. *Id.* (*citing Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)) The cases Plaintiff cites are dropped in without a clear indication of how they established a right and many support qualified immunity here. Defendants analyze several of the ones specifically noted[2]:

*Hope v. Pelzer*, 536 U.S. 730 (2002) involves an inmate who alleged to be tied to a hitching post by his guards and left there for hours without water or bathroom breaks as a form of punishment. Plaintiff was not in custody by Officers and was not subject to any discipline. This case in inapposite and only serves to clarify that the earlier precedent support a clearly established right need not be materially similar when dealing with novel factual circumstances. *Id.* at 741.

*Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991) involves an officer involved shooting wherein the armed suspect was shot in the back. *Id.* at 325. There is no shooting in this case and the fact that the gun was

---

[2] Plaintiff claims the court must assume that he "stopped fleeing," "did not attempt to assault anyone," "was not resistive," "complied with commands," that Plaintiff was not a threat and Officers used deadly force. The Court need not and should not accept these contentions if they are unsupportable by the uncontroverted evidence.

1  visible in Curnow is not the fact on which the court's determination was made.

2  *Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011) involves the accidental and fatal shooting of a suspect who was in handcuffs and was kicking and yelling to be let out of the back of a police car. *Id.*, at 1121. In this case, Officers did not shoot Plaintiff, did not mistake their gun for a taser, and used force before getting Plaintiff into handcuffs. *Torres* is entirely distinguishable.

*Adams v. Speers*, 473 F.3d 989 (9th Cir. 2007) is a use of deadly force case wherein California Highway Patrol fatally shot and killed an 18 year old suspect. *Id.* at 994. The *Adams* plaintiff drove leisurely, failed to respond to police lights, and was shot without warning. Plaintiff was a suspected violent felon who sped away from police to evade them; Officers did not employ their guns. The *Adams* court looked to the Supreme Court's holding that obvious cases could exist in order to allow for finding clearly established rights for situations as crystal clear as the one before it where an 18 year old squeaky clean child ran stop signs and was shot and killed by police without warning. *Id*. There is nothing so clear in this case where Plaintiff was a suspect of a felony who led Officers on a chase. The suspect in *Adams* had no chance to resist. Plaintiff had several chances to resist and took them.

*Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007) involves officers who fractured a suspect's neck after he was in handcuffs when suspect tried to shift away from him to prevent the officer from taking his wallet. *Id*. at 1052. Defendants here were still trying to get Plaintiff into handcuffs and subdued and did not perform any of the alleged force after officers were able to handcuff him.

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) involves the use of force against a suspect where the court looked to *Graham* to decide justifiability of the force therein when there was no need to use the force. *Id*. at 481. The plaintiff in *Blankenhorn* was rude to officers without more. Here, Plaintiff fled from police, tried to barricade himself in his house, and resisted Officers putting him in handcuffs at all.

1  Each party's account—though Plaintiff's is admittedly unreliable—reflects this fact;
2  as does the video evidence.
3      *Longoria v. Pinal Cnty.*, 873 F.3d 699 (9th Cir. 2017) is a use of deadly force
4  case wherein officers chased down the suspect who was behaving erratically, drew
5  guns on him, tased him, and as he was jerking and making to his hands behind his
6  head, an officer shot him in the back. *Id.* at 699. This case is immediately
7  distinguishable, as Plaintiff was not subjected to a gunshot or deadly force and he was
8  unsuccessfully tased and was not subjected to greater force thereafter.
9      *Brosseau v. Haugen*, 543 U.S. 194 (2004) is a use of deadly force case wherein
10 an officer shot a fleeing suspect in the back as he attempted to flee. The Supreme
11 Court reversed the court of appeals, finding qualified immunity for lack of a clearly
12 established law. *Id.*, at 199. Plaintiff misrepresents the court's holding as reaffirming
13 *Garner* as sufficient "fair warning" in "obvious" cases. Opposition, 18:1 – 7. The
14 *Brosseau* court admonished "find[ing] fair warning" in the general tests set out in
15 *Graham* and *Garner* and reaffirmed that *Garner*, *Graham*, and the Fourth amendment
16 are cast at a high level of generality. *Id.* at 199. That the court affirmed the existence
17 of "obvious cases" that did not require a body of caselaw is inapplicable here because
18 this is not an obvious case and the "obvious" case is atypical.
19     In all the cases cited, Plaintiff provides no case aligned, similar to, or reflecting
20 the circumstances of this case that would indicate to Officers that they were violating
21 the law in their attempts to get Plaintiff secured into custody. Nor does Plaintiff make
22 a compelling argument that a case like this would fit into the needle-thin "obvious"
23 category of cases for the purposes of qualified immunity.
24     **F.**     <u>**Plaintiffs' Monell Claims Are Unsupportable**</u>
25     Municipal liability arises only when the plaintiff shows: (1) deprivation of a
26 constitutional right; (2) the municipality has a policy; (3) the policy amounts to
27 deliberate indifference to plaintiff's constitutional rights; and (4) the policy is the
28 moving force behind the constitutional violation. *City of Canton v. Harris*, 489 U.S.

378, 389 (1989). To meet this standard, Plaintiff must plead and prove at least one of the following: (1) that a government employee "committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" (2) that the "individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy;" or (3) "that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

It is well established that Plaintiff cannot maintain a "custom, pattern, or practice" theory of Monell on a single instance of unconstitutional conduct. Plaintiff says but does not show how he has pointed to any pattern. Instead, Plaintiff argues that "for the same reasons beating a compliant person is obviously excessive—a jury could find that Defendants actions shock the conscience, and acted with malice." Opposition, 20:27 – 21:3. This is far from satisfactory. Plaintiff does not point to a formal governmental policy or a longstanding practice or custom of HEMET or that employed by GONZALEZ or TIPTON. On the contrary, Plaintiff himself claims that Officers are required to know and comply with standards and training set forth by the city but the officers did not. Opposition, 22:25 – 23:1. Plaintiff contends that, although there was an investigation, "City training and customs are set up for officers to continue to overreact in using excessive force." Opposition, 23:1 – 2. Plaintiff's personally held belief that the investigation results and lack of discipline was an incorrect choice cannot serve as the basis for a finding that the CITY had a custom or practice "set up for officers" to use excessive force. This speculative leap cannot stand on Plaintiff's spurious allegations alone.

Plaintiff's claims that he has presented evidence "that the City failed to adequately train its officers, then made affirmative choices to ratify the unconstitutional conduct" are similarly unfounded. First, the failure to train and

ratification must be specific and meet the deliberate indifference standard. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For failure to train, a plaintiff must demonstrate "[a] pattern of similar constitutional violations by untrained employees." *Id*. Plaintiff fails to show any such pattern. Plaintiff has not otherwise met the burden to put this instance into the category of the much more rare and stringent 'single incident liability' situations. *Id*. Neither in discovery nor in Opposition does Plaintiff point to a gap in training or show that training would have prevented a harm that he suffered. Instead, he contends that Officers went against expectation and training in their behavior and largely relies on the opinion of his expert to do so. *See* Declaration of Roger Clark. However, this opinion is limited to those areas that the expert can speak on—such as general police practices—and must be based on adequate foundation and methodology which Plaintiff's expert's opinion is not. *See* Defendants' Daubert Motion Re: Clark.

Plaintiff's ratification argument is immediately dismissible. Plaintiff conflates failure to discipline with ratification but these are two separate theories. Further, Plaintiff argues a jury could find the City to have rubber stamped Officers' "obvious use of unreasonable deadly force" and ratification by way of not disciplining or retraining Officers or otherwise changing policy. (AF 203-206, 215.)" Courts have rejected this argument before. Ratification requires more than acquiescence. The mere failure to discipline an Officer does not amount to ratification of their allegedly unconstitutional actions. *See Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253–54 (9th Cir.2010) (holding that the failure to discipline employees, without more, was insufficient to establish ratification); *see also Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014) (reversed in part on other grounds). Because Plaintiff has argued for ratification outside of this condemned legal theory, this Court should reject Plaintiff's argument.

15
**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

### G. **Plaintiffs' Remaining Force-Based Fifth Sixth, and Seventh Claims Based On Vicarious Liability Also Fail**

Plaintiff's Opposition does not address Defendants' arguments as to individually named defendants Jamie Gonzalez ("GONZALEZ") or Catherine Tipton ("TIPTON"). Plaintiff does not demonstrate pre-contact injuries to give rise to claims under battery, negligence, or Cal. Civ. Code § 52.1 (Bane Act). Defendants' arguments stand. Stemming from Plaintiff's interaction with Officers, his First Claim for excessive force fails and his battery, negligence, and Bane Act claims are similarly deficient vicariously. Plaintiff has also failed to plead the additional elements of the Bane Act and has set forth no other actions constituting negligence.

### H. **Plaintiff's Claim for Punitive Damages Fails**

Plaintiff's Opposition bases the recovery of punitive damages on a finding that Officers were reckless or deliberately indifferent to Plaintiff's rights and that a jury could find the behavior warranting punitive damages under "one or more of the various standards." That a phantom jury at some point could possibly decide something is not the standard. Plaintiff must have proved evil intent, maliciousness, or otherwise oppressive behavior which disregarded his rights. He has not. *See Smith v. Wade*, 461 U.S. 30, 51 (1983). Because Plaintiff failed to meet his burden to show Officers, or any other named Defendant, acted with intent that would give rise to punitive damages, his claim of entitlement to them remains insufficient and insupportable.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

### III. CONCLUSION

For all of the foregoing reasons, and for those set forth in the accompanying documents and Defendants' motion for summary judgment, Defendants' request this court grant its Motion in full.

DATED: January 26, 2026            Respectfully submitted,

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**


By:  ___/s/ Andrea Kornblau___
Eugene P. Ramirez
Andrea Kornblau
Attorneys for Defendants CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**