Eugene P. Ramirez (State Bar No. 134865)
 *eugene.ramirez@manningkass.com*
Andrea Kornblau (State Bar No. 291613)
 *andrea.kornblau@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants, , CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HENRY BARNHILL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF HEMET, OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; CATHERINE TIPTON; and DOES 1-10, inclusive,<br><br>　　　　　Defendants. | Case No. 5:23-cv-00589 JGB(SPx)<br>District Judge: Jesus G. Bernal<br>Magistrate Judge: Sheri Pym<br><br>**NOTICE OF MOTION AND MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT RYAN O'CONNOR; MEMORANDUM OF POINTS & AUTHORITIES; DECLARATION OF ANDREA KORNBLAU**<br><br>Judge: Hon. Jesus G. Bernal<br>Date:　2/9/2026<br>Time:　9 a.m.<br>Crtrm　1 (2nd Floor) |

**TO THE HONORABLE COURT, PLAINTIFF, AND HIS COUNSEL OF RECORD, PLEASE TAKE NOTICE:**

On February 9, 2026, at 9 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Jesus G. Bernal, located in the United States District Court Central District Courthouse at 3470 Twelfth Street, Riverside, CA 92501, Defendants OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP,

1



OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING, CITY OF HEMET, JAMIE GONZALEZ, and CATHERINE TIPTON (collectively "Defendants") will and hereby do move this Court for an order to exclude, for purposes of Defendants' filed Motion for Summary Judgment in this matter, any and all evidence, documents, records, recordings, testimony, and statements from admission into evidence, of opinions or testimony by Plaintiff's expert Ryan O'Connor.

This motion is made on the grounds that Ryan O'Connor lacks the requisite training and qualifications to opine on the topics and subject matters of his designation, his opinions lack adequate evidentiary support pursuant to *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993), and his expert report and opinions offered at deposition fail to meet the requirements of Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Evid. 702.

This motion is made in concurrence with Defendants' Summary Judgment and served as an addition to the Objections to evidence set forth by Plaintiff in Opposition to Defendants' Motion.

This motion is based on the attached memorandum of points and authorities, the declaration of Andrea Kornblau, supporting exhibits, and upon such further oral and documentary evidence as may be presented at the hearing on this motion.

DATED: January 26, 2026  **MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: ___*/s/ Andrea Kornblau*___
Eugene P. Ramirez
Andrea Kornblau
Attorneys for Defendants CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON

**DEFENDANTS' DAUBERT MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF EXPERT RYAN O'CONNOR**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 4
II. A DAUBERT MOTION MAY BE FILED IN CONJUNCTION WITH A MOTION FOR SUMMARY JUDGMENT ................................................................ 4
III. RELEVANT EXPERT OPINIONS OF RYAN DONNOR ............................ 5
IV. THE COURT SHOULD EXCLUDE DR. DONNOR'S OPINIONS .............. 7
   A. The Daubert Threshold for Expert Opinion Evidence .................................... 7
   B. O'Connor Lacks Qualifications To Opine On Plaintiff's Injuries ................. 8
   C. Donnor's Opinions Lack Evidentiary Support And Foundation ................... 9
V. CONCLUSION ................................................................................................. 11

**DEFENDANTS' DAUBERT MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF EXPERT RYAN O'CONNOR**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants respectfully request that the Honorable Court exclude from evidence regarding Defendants' Motion for Summary Judgment any and all expert opinion testimony, reports, and records from Dr. Ryan O'Connor ("O'Connor") that the cause of Plaintiff's past and present injuries were the conduct of any Defendant and by what mechanism—including but not limited to any expert opinion that officer strikes or use of a taser caused Plaintiff's head and facial injuries and any present day complaints, including those not alleged within the Complaint. O'Connor lacks the requisite background, qualifications, and expertise to offer opinions regarding neurological damage, complex ENT injuries, or complex ophthalmological injuries. Nor does O'Connor have the adequate evidentiary support to maintain his conclusions, which are based on speculation. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). Further, Defendants seek exclusion of Dr. O'Connor's opinions and reports on the grounds that his expert report and opinions offered at deposition were woefully deficient pursuant to the applicable standards of Fed. R. Civ. P. 26(a)(2)(B) and Fed. R. Evid. 702. As such, his opinions are inadmissible and should be excluded from evidence regarding Defendants' Motion for Summary Judgment.

## II. A DAUBERT MOTION MAY BE FILED IN CONJUNCTION WITH A MOTION FOR SUMMARY JUDGMENT

A "Daubert motion connected to a pending summary judgment motion may be effectively dispositive of a motion for summary judgment." *In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation v. Allinaz Life Insurance Company of North America*, 686 F.3d 1115, 1119 (9th Cir. 2010) (citing *Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F. 3d 594, 597 (9th Cir. 1996)) (holding that although a Daubert motion was dispositive, the abuse of discretion standard still applies). Before making a ruling on summary judgment, it is the duty of the trial judge to "ensure that any and all scientific testimony or evidence admitted is … reliable."

*In re Live Concert Antitrust Litigation*, 863 F. Supp. 2d 966, 971 (C.D. Cal. 2012) (parentheticals omitted) (*citing Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994)).

Defendants seek to exclude Donnor's opinions and testimony because he does not possess adequate qualifications to render an opinion on the cause of Plaintiff's injuries at the time of the incident (namely orbital fracture, ear contusion/avulsion, and occipital hematoma) or the cause or mechanism of any of Plaintiff's current maladies because he lacks the qualifications to render opinions on neurological damage, complex ENT injuries, or ophthalmology. O'Connor also lacks evidentiary factual support for his opinions—relying nigh solely on written accounts, time-limited medical records, and speculation to support his findings of the cause of Plaintiff's injuries in this case. In addition, O'Connor lacks adequate evidentiary support for his extraneous opinions as to the cause and mechanisms of Plaintiff's complaints not at the heart of the lawsuit—such as headache, migraine, seizure, or concussion.

For these reasons, Defendants seek to exclude O'Connor's opinions and reports for the purpose of Defendants' Motion for Summary Judgment as they are unreliable.

## III. RELEVANT EXPERT OPINIONS OF RYAN DONNOR

In his Declaration, O'Connor opined:

1. Defendants' conduct in slamming Plaintiff's face into the ground and smashing a Taser on the back of his head, created substantial risk of causing serious bodily injury

2. Defendants' conduct did in fact create great bodily injury. Plaintiff suffered the following serious bodily injuries: an avulsion to the left ear meaning the top portion of the ear was almost entirely detached; a closed blow out fracture to the orbit that required surgery and reconstruction and resulted in Plaintiff receiving screws in his face, extensive suturing; permanent loss of peripheral vision; and check and lip numbness likely due to nerve damage.

In his May 4, 2024 Expert report used as Exhibit A to support this opinon, Dr. O'Connor offered the following observations and opinions:

1. Barnhill has a large abrasion with superficial skin avulsion and significant surrounding swelling to the left upper-rear [i.e.: parieto-occipital] portion of his head. It is my professional medical opinion that this injury was caused by his head forcibly contacting the concrete ground. In a Hemet Police Department Use of Force report, officer Joshua Bishop describes that he "grasped Barnhill's ponytail style hair and slammed his face/head into the ground" [000063] consistent with my opinion;

2. Barnhill has a large partial avulsion injury to the top portion of his left ear. Underlaying this linear through-and-through laceration of the ear is a corresponding linear abrasion to his scalp. It is my professional medical opinion that these paired injuries were caused by forcible blunt force trauma by an object with a blunt edge such as Taser. In a Hemet Police Department Use of Force report, officer Joshua Bishop describes that he "struck him 2 times on the left side of his face/head with my CEW" [000063] (i.e.: conducted energy weapon) consistent with my opinion;

3. Barnhill has significant swelling and bruising around his right eye (and an underlying orbital floor fracture) without associated abrasions. It is my professional medical opinion that this injury was caused by blunt force trauma;

4. Barnhill was diagnosed with a concussion in the Emergency Department on the day of the incident. He sustained multiple significant concussive injuries to his head and face and complained of multiple symptoms associated with this head trauma. These facts are supportive of this diagnosis. Persistent and refractory headaches that begin after sustaining significant head trauma are consistent with traumatic brain injury and post-concussion syndrome. Post-concussion syndrome occurs when symptoms of a concussion persist for an extended period of time, typically longer than three months. Due to the extended duration of Mr. Barnhill's post-concussion

1 symptoms and the fact that they have been refractory to treatment raises concern that his symptoms will be chronic and persistently difficult to treat. [page 4 – 5]. It is my professional medical opinion, based on the medical records provided to me, that none of these injuries nor associated symptoms were present in Mr. Barnhill prior to his violent arrest by police officers. The injuries sustained by Mr. Barnhill and the persistent symptoms caused by them are the direct result of violent force inflicted upon Dr. Barnhill by the arresting officers.

[Docket No. 52-18, O'Connor Declaration, Exhibit A at pp 8 – 9.]

## IV. THE COURT SHOULD EXCLUDE DR. DONNOR'S OPINIONS

### A. The Daubert Threshold for Expert Opinion Evidence

Fed. R. Evid. Rule 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid, Rule 702 also provides that a witness may be qualified as an expert if "the testimony is based on sufficient facts or data." "Where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question…, the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). If the testimonial evidence fails in this regard, the expert opinion is inadmissible. *Id*.

In applying Rule 702, the Court functions as a gatekeeper, determining whether proffered expert testimony meets the requirements of Rule 702 by a preponderance of the evidence." *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 984 F.Supp.2d 1021,1026 (C.D. Cal. 2013); (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993)). The offering party must prove admissibility. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The offering party must show by a preponderance of the evidence that (1) the expert is qualified to render the

opinion; and (2) the opinion offered has adequate factual and scientific support for that opinion. *Daubert*, 509 U.S. at 592-93.

### B. <u>O'Connor Lacks Qualifications To Opine On Plaintiff's Injuries</u>

Expert opinions are properly excluded if the *Daubert* standard is not met. *See Lash v. Hollis*, 2007 U.S. Dist. LEXIS 3633, *12 (E.D. Mo. 2007) (plaintiff's expert opinion on the effects of TASER ECD deployments was excluded under *Daubert* because the court found plaintiff was not qualified to testify as an expert due to his lack of familiarity with TASER devices and his reliance on only one scholarly article on the effects of TASER ECD deployments). Here, O'Connor fails to satisfy the first prong of the admissibility analysis. He is not qualified to render the opinions on two of the three major injuries alleged by Plaintiff: orbital fracture and ear contusion/avulsion. O'Connor is not an expert on the medical specialties of either ENT and ophthalmology—categories that two of Plaintiff's claimed injuries fall into. At deposition, O'Connor admits that as an ER doctor, he is not only **not** specialized in these fields and did not consult with specialists before making his report. [Exhibit A, O'Connor Deposition at 6:7 – 13:7; 26:4 – 27:20] O'Connor sets forth his decades'-old medical school and residency education and experience as his primary background for analyzing these issues. [*Id.*] At deposition, O'Connor demonstrated and affirmed that his understanding of these types of injuries is limited to treating acute issues for referral to more specialized hands. [Exhibit B, O'Connor Deposition at 6:24 – 7:20; 8:10 – 8:15; 8:24 – 13:7] O'Connor's stated background is not satisfactory to opine on what he himself characterizes as "complex" injuries or those requiring surgeries falling within these specialties he does not have. [Docket No. 52-18, Ex. A at pp 5; Exhibit A, O'Connor Deposition at 10:12 – 12:4; 12:14 – 13:7.] An expert must stay "within the reasonable confines of his subject area." *Avila v. Willits Envtl. Remediation Tr.*, 633 F.3d 828, 839 (9th Cir. 2011) (quoting Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969–70 (10th Cir. 2001)). "[M]erely possessing a medical degree is not sufficient to permit a physician to testify

concerning any medical-related issue." *Ralston*, 275 F.3d at 970 (internal citations omitted).

### C. **Donnor's Opinions Lack Evidentiary Support And Foundation**

"Rule 702 requires that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs." *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001); *see Daubert*, 509 U.S. at 590. "In the context of a motion for summary judgment, an expert must back up his opinion with specific facts." *Guidroz*, 254 F.3d at 831*; U.S. v. Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981).

In rendering his improper causation and mechanism opinions in this matter, O'Connor admitted that he relied chiefly—demonstratively exclusively—on the statements made by the officers in their police reports. [Exhibit A, O'Connor Deposition at 17:25 – 19:10, 27:2 – 27:9; 28:18 – 29:8; 29:17 – 30:15] Although O'Connor's Report references that he considered the video evidence as well, when asked about his inclusion of video evidence, O'Connor stated that video was chaotic, and that when determining mechanism he relied on the officer's statements in the reports. [*Id.*] This is wholly insufficient, especially when video evidence paints a clearer or more exact picture of events than officer reports. For example, Defendant Officers report tackling Plaintiff away from the door. However, video evidence—and later deposition tesitmony which O'Connor did not review—showcases that an attempt to tackle a fleeing Plaintiff was unsuccessful. Simply put, without giving more than a seemingly cursory review of the video evidence and no review of reporting officer testimony, O'Connor does not have the evidence and foundation necessary to support his opinions.

This is most egregious when applied to Plaintiff's alleged hematoma. O'Connor concludes that the occipital hematoma was directly caused by the violent force inflicted upon [Plaintiff] by the arresting officers and Plaintiff's head "forcibly contacting concrete ground." [Docket No. 52-18, Ex. A at pp 8] However, O'Connor

1  bases this finding upon Joshua Bishop's use of force report describing the officer
2  grasping Plaintiff's ponytail style hair and slamming his face/head to the ground.
3  [Exhibit A, O'Connor Deposition at 17:25 – 19:10] O'Connor reading this description
4  and concluding that such an action would cause an injury to the back of the head is
5  not only nonsensical but is not supported by the video evidence which O'Connor does
6  not mention or reference in this finding. [Docket No. 52-18, Ex. A at pp 8]
7  O'Connor's conclusions are spurious and speculative and lack appropriate
8  foundation. Indeed, at deposition, O'Connor specifically states not weighing the video
9  evidence on this issue, instead going by his interpretation of the officer's wording.
10 [Exhibit A, O'Connor Deposition at 17:25 – 19:10]
11      O'Connor's report is similarly deficient for his lack of consideration or
12 apparent incorporation of the full data within the medical records. For example,
13 O'Connor states that the ENT doctor who evaluated Plaintiff opined that his "cheek
14 and lip numbness is likely due to the nerve damage due to injury." [Docket No. 52-
15 18, Ex. A at pp 6.] This quote misstates the medical report. Instead, the ENT doctor
16 opined on May 17, 2022 that Plaintiff's complaint of cheek and lip numbness is
17 "likely due to nerve damage due to injury and surgery and need to monitor for
18 improvement with time." [Exhibit B, RUHS Medical Records at pp 38] O'Connor's
19 blatant disregard for the full medical statement necessary negates the veracity of his
20 opinion.
21      Not only does O'Connor lack support for his opinions on the injuries alleged,
22 O'Connor provides an erroneous opinion with respect to Plaintiff's other maladies.
23 O'Connor opines that Plaintiff suffered a concussion but makes this conclusion while
24 admitting that Plaintiff never received treatment for a "concussion" after an initial
25 tentative diagnosis of having been concussed. [Docket No. 52-18, Ex. A at pp 7 – 8;
26 Exhibit A, O'Connor Deposition at 26:4 – 26:21] Nevertheless, O'Connor opines that
27 Plaintiff suffered one based on Plaintiff's "migraines and headaches" which
28 O'Connor characterizes as "post-concussion" symptoms and attributes to Plaintiff's

10
**DEFENDANTS' DAUBERT MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF EXPERT RYAN O'CONNOR**

interaction with officers. [*Id.*] This attribution is made without making any mention of the in-jail, post-arrest incident Plaintiff suffered, which were within the documents available to O'Connor. [Docket No. 52-18, Ex. A at pp 4]

O'Connor also gives an opinion with respect to the cause and mechanism of extraneous maladies affecting Plaintiff such as his neurological facial issues, any seizures, headaches, and migraines, which O'Connor relates to Plaintiff's interaction with police. However, O'Connor admitted that he did not review any of Plaintiff's medical records prior to the police interaction and did not account for preexisting medical conditions or occurrences. [Exhibit A, O'Connor Deposition at 27:10 – 27:20] He also failed to make note of or relate the post-arrest in-jail medical injuries Plaintiff sustained within months of the police interaction. [Exhibit C, CHC Medical Records, at pp 1 – 11]

Apart from being unqualified to give expert opinions as to the cause of Plaintiff's ophthalmological and ENT injuries, O'Connor also failed to consider pertinent factual evidence and failed to accurately review the evidence available to him when rendering his opinion on Plaintiff's alleged injuries and various other maladies not being alleged in this lawsuit.

## V.   CONCLUSION

Based on the foregoing, Defendants request that this Honorable Court exclude the opinions of Ryan O'Connor the cause and mechanisms behind Plaintiff's injuries after his arrest—namely orbital fracture, ear contusion/avulsion, and occipital hematoma; and O'Connor's opinions as to the cause of any of Plaintiff's current maladies such as neurological facial issues, headache, or migraine. and all other

///
///
///
///
///

associated opinions rendered in his Expert Report and at deposition in conjunction with Defendants' Motion for Summary Judgment.

DATED: January 26, 2025

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: */s/ Andrea Kornblau*
Eugene P. Ramirez
Andrea Kornblau
Attorneys for Defendants, CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON

# DECLARATION OF ANDREA KORNBLAU

I, Andrea Kornblau, declare as follows:

1. I am a Partner with Manning & Kass, Ellrod, Ramirez, Trester LLP, attorneys of record for Defendants, CITY OF HEMET, OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; and CATHERINE TIPTON. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto

2. Attached hereto as **Exhibit A** is a true and correct copy of relevant excerpts of Dr. Ryan O'Connor's Deposition dated November 13, 2025;

3. Attached hereto as **Exhibit B** is a true and correct copy of relevant excerpts of excerpts of Riverside University Health System's Medical Records concerning Plaintiff Henry Barnhill provided to and relied upon by Dr. Ryan O'Connor for the purposes of making his Expert Report;

4. Attached hereto as **Exhibit C** is a true and correct copy of relevant excerpts of excerpts of County of Riverside Health Care Records concerning Plaintiff Henry Barnhill provided to and relied upon by Dr. Ryan O'Connor for the purposes of making his Expert Report.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of January, 2026, at Los Angeles, California.

　　　　　　　　　　　　　　　　　　　　 */s/ Andrea Kornblau*
　　　　　　　　　　　　　　　　　　　　 Andrea Kornblau

**DEFENDANTS' DAUBERT MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF EXPERT RYAN O'CONNOR**