Eugene P. Ramirez (State Bar No. 134865)
 *eugene.ramirez@manningkass.com*
Andrea Kornblau (State Bar No. 291613)
 *andrea.kornblau@manningkass.com*
Khouloud Pearson (State Bar No. 323108)
 *Khouloud.Pearson@manningkass.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
801 S. Figueroa St, 15th Floor
Los Angeles, California 90017-3012
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| HENRY BARNHILL,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF HEMET, OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; CATHERINE TIPTON; and DOES 1-10, inclusive,<br><br>    Defendants. | Case No. 5:23-cv-00589 JGB(SPx)<br>District Judge: Jesus G. Bernal<br>Magistrate Judge: Sheri Pym<br><br>**NOTICE OF MOTION AND MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT ROGER A. CLARK; MEMORANDUM OF POINTS & AUTHORITIES; DECLARATION OF ANDREA KORNBLAU**<br><br>Judge: Hon. Jesus G. Bernal<br>Date: 2/9/2026<br>Time: 9 a.m.<br>Crtrm 1 (2nd Floor) |

**TO THE HONORABLE COURT, PLAINTIFF, AND HIS COUNSEL OF RECORD, PLEASE TAKE NOTICE:**

On February 9, 2026, at 9 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Jesus G. Bernal, located in the United States

1

**DEFENDANTS' DAUBERT MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF EXPERT ROGER CLARK**

1  District Court Central District Courthouse at 3470 Twelfth Street, Riverside, CA 92501, Defendants OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING, CITY OF HEMET, JAMIE GONZALEZ, and CATHERINE TIPTON (collectively "Defendants") will and hereby do move this Court for an order to exclude, for purposes of Defendants' filed Motion for Summary Judgment in this matter, any and all evidence, documents, records, recordings, testimony, statements from admission into evidence, of opinions or testimony by Plaintiff's expert Roger A. Clark on use-of-force/police practices.

This motion is made on the grounds that Clark is not qualified to testify as an expert witness on several topics and in several ways. Clark has and uses his antiquated knowledge of police policies and techniques. Clark's knowledge of the facts of this case is objectively inadequate – and/or contradicted by the evidence upon which he claims to rely – as to demonstrate that his opinions are unreliable and thus inadmissible. Plaintiff is not an expert on video interpretation and his opinions about what the videos show are therefore inadequate. Clark also uses language denoting Officer intent and feelings but is not an expert on psychology, physiology, or any other medical understanding of human behavior rendering his opinions thereabout insufficient by *Daubert* standards. Clark is impermissibly intertwined with Plaintiff's Counsel rendering his opinions unreliable and biased. Clark's methodology seems to rely chiefly on still-shots rather than the actual video evidence which necessarily informs his largely hindsight-based and focused analysis which is inconsistent with the standard for the matters on which he opines (Officer behavior and response to rapidly evolving situations for fourth and fourteenth amendment purposes). Clark offers multiple legal conclusions, improperly usurping the role of the judge or jury.

This motion is made in concurrence with Defendants' Summary Judgment and served as an addition to the Objections to evidence set forth by Plaintiff in Opposition to Defendants' Motion.

This motion is based on the attached memorandum of points and authorities, the declaration of Andrea Kornblau, supporting exhibits, and upon such further oral and documentary evidence as may be presented at the hearing on this motion.

DATED:  January 26, 2026          **MANNING & KASS**
                                  **ELLROD, RAMIREZ, TRESTER LLP**


By: */s/ Andrea Kornblau*
Eugene P. Ramirez
Andrea Kornblau
Attorneys for Defendants CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................... 7
II. A DAUBERT MOTION MAY BE FILED IN SUPPORT OF A MOTION FOR SUMMARY JUDGMENT ..................................................................... 7
III. RELEVANT EXPERT OPINIONS OF ROGER CLARK ............................. 8
IV. THE COURT SHOULD EXCLUDE CLARK'S OPINIONS ...................... 14
   A. The Daubert Threshold for Expert Opinion Evidence ................................ 14
   B. Clark Is Not Qualified To Opine On Intentions, Plaintiff's Injuries, And Video Evidence ............................................................................................. 14
   C. Clark's Opinions Rely On Flawed Methodology ........................................ 16
   D. Clark's Opinions Invade The Domain Of The Judge And Jury ................... 18
V. CONCLUSION ............................................................................................. 18

# TABLE OF AUTHORITIES



**Cases**

*A.B. v. Cty. of San Diego*
  No. 18CV1541-MMA-LL
  2020 WL 4430971 (S.D. Cal. July 31, 2020) ...................................................... 18

*Aguilar v. Int'l Longshoremen's Union Local No. 10*
  966 F.2d 443 (9th Cir. 1992) ............................................................................... 18

*Claar v. Burlington N.R.R.*
  29 F.3d 499 (9th Cir. 1994) ................................................................................... 8

*Daubert v. Merrell Dow Pharms.*
  509 U.S. 579 (1993) .............................................................................. 7, 14, 16

*Est. of Stanley v. City of San Jose*
  No. 22-CV-03000-VKD
  2024 WL 218124 (N.D. Cal. Jan. 20, 2024) ...................................................... 15

*Godinez v. Huerta*
  No. 16-CV-0236
  2018 WL 2018048 ............................................................................................... 18

*Guidroz-Brault v. Missouri Pacific R.R. Co.*
  254 F.3d 825 (9th Cir. 2001) .............................................................................. 16

*In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*
  984 F.Supp.2d 1021 (C.D. Cal. 2013) ................................................................ 14

*In re Live Concert Antitrust Litigation*
  863 F. Supp. 2d 966 (C.D. Cal. 2012) .................................................................. 8

*In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation v. Allinaz Life Insurance Company of North America*
  686 F.3d 1115 (9th Cir. 2010) .............................................................................. 7

*Johnson v. City of San Jose*
  No. 5:21-cv-01849-BLF
  2023 WL 8852 ..................................................................................................... 15

*Kumho Tire Co. v. Carmichael*
  526 U.S. 137 (1999) ............................................................................................ 14

*Lajoie v. Thompson*
  217 F.3d 663 (9th Cir. 1999) .............................................................................. 16

*Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*
  89 F. 3d 594 (9th Cir. 1996) .......................................................................... 7, 14

*Mesfun v. Hagos*
  No. CV 03-02182
  2005 WL 5956612 ............................................................................................... 15

*Pursley v. City of Rockford*
No. 3:18-CV-50040
2024 WL 1050242 (N.D. Ill. Mar. 11, 2024) ........................................................17

*U.S. v. Various Slot Machines on Guam*
658 F.2d 697 (9th Cir. 1981) ...............................................................................16

**Statutes**

Fed. R. Evid.
§ 702...........................................................................................................7, 14, 17

Fed. R. Evid.
§ 703......................................................................................................................7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants respectfully request that the Honorable Court exclude from evidence regarding Defendants' Motion for Summary Judgment any and all expert opinion testimony, reports, and records from Roger A. Clark ("Clark") that as to the conclusions of law regarding the use of force by Officers, standards within the City of Hemet and Hemet Police Department, Officers' mental and emotional states and intentions, determinations of what the videos taken from Officer body cameras, and all other conclusions and opinions because of Clark's flawed methodology that leaves out important information found in the footage and is admittedly impermissibly intertwined with Plaintiff's Counsel's opinions.

Clark's failure to provide an objective report free from comingling with Plaintiff's desired outcome and his lack of expertise do not satisfy the standards of admissibility. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993). Further, Clark's opinions that are conclusory, legal conclusions, conclusions as to policies of certain police departments that he did not work or consult for, and his opinions regarding what is depicted within the video evidence are inadmissible as violative of several rules of evidence as they are improper or foray into areas of law which Clark is unequipped to testify about. Fed. R. Evid. §§ 702, 703. As such, his opinions are inadmissible and should be excluded from evidence regarding Defendants' Motion for Summary Judgment.

## II. A DAUBERT MOTION MAY BE FILED IN SUPPORT OF A MOTION FOR SUMMARY JUDGMENT

A "Daubert motion connected to a pending summary judgment motion may be effectively dispositive of a motion for summary judgment." *In Re Midland National Life Insurance Co. Annuity Sales Practices Litigation v. Allinaz Life Insurance Company of North America*, 686 F.3d 1115, 1119 (9th Cir. 2010) (citing *Lust ex rel. Lust v. Merrell Dow Pharm., Inc.*, 89 F. 3d 594, 597 (9th Cir. 1996)) (holding that

although a Daubert motion was dispositive, the abuse of discretion standard still applies). Before making a ruling on summary judgment, it is the duty of the trial judge to "ensure that any and all scientific testimony or evidence admitted is … reliable." *In re Live Concert Antitrust Litigation*, 863 F. Supp. 2d 966, 971 (C.D. Cal. 2012) (parentheticals omitted) (*citing Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994)).

## III. RELEVANT EXPERT OPINIONS OF ROGER CLARK

In his Declaration, Clark opined:

1. From my review of the materials provided, the use of force inflicted on Mr. Barnhill by the Defendants was inconsistent with basic law enforcement training and violated basic POST standards and the standard of care pursuant to POST and officer training - in other words, was excessive and unreasonable as defined by POST. Across the nation, for decades, law enforcement agencies have been training their personnel in proper tactical responses, use of force options, and restraint techniques for individuals taken into custody. The aim of this training is to prevent injuries, such as the ones that occurred in this case (including blowout fracture to his orbital floor, an ear avulsion, and a large parieto-occipital hematoma). These methods are well-known and proven effective for the safety and welfare of both officers and the public. The Officers in this case utterly failed to follow these standards and their training in this incident. Had they done so, Mr. Barnhill would not have sustained irreversible injuries to his head and face.

2. The Defendant Officers used deadly force against Mr. Barnhill by violently striking him to the face and head several times. Mr. Barnhill was not an immediate threat of death or serious bodily injury to anyone at the time of the Officers' use of deadly force.

3. The Defendant Officers had Mr. Barnhill contained; had no information that Mr. Barnhill had ever physically injured anybody; never saw Mr. Barnhill physically injure anybody; and never heard Mr. Barnhill verbally threaten anybody.

1 Mr. Barnhill did not attempt to use a weapon against officers; never attempted to
2 punch, kick, or grab any officer; and never ran or lunged towards any officer. Mr.
3 Barnhill was sitting on a chair and chest-down on the ground when the applications
4 of force were used against him

5     4.    It is my opinion, based on review of the Defendant Officers' testimonies
6 and video evidence, that at the time of their use of force, Mr. Barnhill did not have
7 the apparent intent, opportunity or present ability to immediately causing death or
8 serious bodily injury. Further, Mr. Barnhill showed several acts of compliance, was
9 not resisting, and was not assaultive. Mr. Barnhill was not an immediate threat of
10 harm to any officer, and therefore certainly was not an immediate threat of death or
11 serious bodily injury. In the porch area of the incident, Mr. Barnhill's apparent intent
12 appeared to be to comply with officer commands and comply based on officer
13 presence alone.

14     5.    In my opinion, there were fundamental tactical errors in this incident.
15 Based on the nature of the call, and under these circumstances, in accordance with
16 basic officer training, the Defendant Officers failed to attempt to de-escalate the
17 situation, failed to employ proper control hold-techniques, failed to have situational
18 awareness, failed to give Mr. Barnhill a warning prior to using such extreme force,
19 and failed to control their emotions and fears, which resulted in their overreactions
20 and unnecessary uses of force.

21     6.    After being apprehended at the door to his home and during the Officer
22 assault thereafter, Mr. Barnhill did not attempt to flee, was not resistive, was not
23 assaultive, was willing to communicate and conveyed compliance to the Defendant
24 Officers. It is my opinion that no force beyond that which is trained and reasonable
25 for a compliant subject was necessary or permitted (as trained).

26     7.    One of an Officer's overarching duties is to protect lives of those they
27 come in contact with and protect and provide for their safety. Competent training for
28 officers must include their duty to intervene if fellow Officer(s) apply excessive force,

9
**DEFENDANTS' DAUBERT MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF EXPERT ROGER CLARK**

particularly if that excessive force could lead to extreme pain, serious injury or death. Officers Maynard, Bishop and Aguila and Corporal Klinzing failed to uphold their duty to intervene when they did not stop their partner Officers from continuing to violently assault the compliant Mr. Barnhill.

8. In my opinion, the Officers exhibited a gross departure from nationally accepted required tactics to minimize the use of force including lethal force. Trained and experienced officers know that failure to follow them violates professional standards and training. Based on my review of the record, the Officers violated POST standards, which reflects their lack of adequate training, and a direct reflection of HPD's inadequate supervision, and training policies. The Officers' use of force including deadly force against Mr. Barnhill, especially when Mr. Barnhill was chest down on the ground, unarmed, not resisting, not attempting to flee, and with at least one hand behind his back, have not harmed any officer nor verbally threatened any officer, but instead told Officers that he was not resisting, demonstrates the Defendant Officers complete lack of situational awareness, lack of control over their emotions and fears, and their inadequate training and understanding of basic use of force and de-escalation principles. The HPD longstanding failure to adequately train their officers, also demonstrated by its officers' prior use of unreasonable force against the citizens of Hemet, has and will continue to place the community at risk of serious injury and/or death by other officers in the department, who have been or are now, similarly trained and/or supervised.

9. The Defendants Officers did not adequately attempt to de-escalate the situation as trained but instead escalated the situation. It appears from the record that the Defendant Officers did not follow the decision-making model, did not attempt to reduce the intensity of the situation, and did not employ tactics that would have provided greater voluntary compliance. The Defendant Officers did not adequately communicate with each other, did not control their emotions, and overreacted in their techniques and in their use of force.

In his October 10, 2025 Expert report in this matter, Clark offered the following observations and opinions:

1.  At the outset, I want to be clear that I am not critical of the Defendant Officer's duty to respond to domestic violence claims, nor do I minimize the seriousness of such claims. Law enforcement officers must take these allegations seriously. Additionally, due to the emotionally driven nature of such claims, law enforcement officers must control their emotions when responding to a domestic violence call, as trained. If peace officers allow emotions to affect their judgment, as we see in this matter, they may lose control and overreact resulting in unnecessary use of force. An overreaction to the situation when using force is an unreasonable use of force, as trained;

2.  A significant collective infliction of force occurred before Mr. Barnhill was handcuffed. It included a use of a Taser (and resultant apparent incapacitation) in dart mode, closed-fist punches to his head, knee and punches to the body, blows to his head by the Taser, and blows to his head into the cement structure of the house and ground;

3.  During the encounter, Mr. Barnhill was unarmed, was not attempting to resist detention or arrest, was not assaultive, had stopped his flight from apprehension, and did not verbally threaten any Officer. Mr. Barnhill was mostly chest-down on the ground during the group assault by Officers, including with one hand behind his back and with both hands behind his back. Accordingly, while at the door and thereafter, Mr. Barnhill was not a credible threat to the Officers, or any other person, worthy of the extreme force inflicted;

4.  Mr. Barnhill was subjected to unreasonable and excessive force (as defined by basic officer training), inflicted when he was tackled, punched, kneed, Tased, had his face slammed into the ground while subdued, struck in the head with the Taser as an improvised weapon twice, and repeatedly punched in the lower back;

5. As a result of the excessive and unreasonable force, Mr. Barnhill suffered serious bodily injury to his head and face resulting from the force inflicted - a blowout fracture to his orbital floor, an ear avulsion, and a large parieto-occipital hematoma (from the record). Mr. Barnhill's injuries required emergency surgical intervention. Mr. Barnhill continues to suffer pain to this day.

6. From my review of the materials provided, the use of force inflicted on Mr. Barnhill by the Defendants was inconsistent with basic law enforcement training and violated basic POST standards and the standard of care pursuant to POST and officer training - in other words, was excessive and unreasonable as defined by POST. Across the nation, for decades, law enforcement agencies have been training their personnel in proper tactical responses, use of force options, and restraint techniques for individuals taken into custody. The aim of this training is to prevent injuries, such as the ones that occurred in this case (including blowout fracture to his orbital floor, an ear avulsion, and a large parieto-occipital hematoma). These methods are well-known and proven effective for the safety and welfare of both officers and the public. The Officers in this case utterly failed to follow these standards and their training in this incident. Had they done so, Mr. Barnhill would not have sustained irreversible injuries to his head and face.

7. 2.The Defendant Officers used deadly force against Mr. Barnhill by violently striking him to the face and head several times. Mr. Barnhill was not an immediate threat of death or serious bodily injury to anyone at the time of the Officers' use of deadly force.

8. 3. In my opinion, there were fundamental tactical errors in this incident. Based on the nature of the call, and under these circumstances, in accordance with basic officer training, the Defendant Officers failed to attempt to de-escalate the situation, failed to employ proper control hold-techniques, failed to give Mr. Barnhill a warning prior to using such extreme force, and failed to control their emotions and fears, which resulted in their overreactions and unnecessary uses of force.

9. 4. After being apprehended at the door to his home and during the Officer assault thereafter, Mr. Barnhill did not attempt to flee, was not resistive, was not assaultive, was willing to communicate and conveyed compliance to the Defendant Officers. It is my opinion that no force beyond that which is trained and reasonable for a compliant subject was necessary or permitted (as trained).

10. 5. One of an Officer's overarching duties is to protect lives of those they come in contact with and protect and provide for their safety. Competent training for officers must include their duty to intervene if fellow Officer(s) apply excessive force, particularly if that excessive force could lead to extreme pain, serious injury or death. Officers Maynard, Bishop and Aguila and Corporal Klinzing failed to uphold their duty to intervene when they did not stop their partner Officers from continuing to violently assault the compliant Mr. Barnhill.

11. 6. In my opinion, the Officers exhibited a gross departure from nationally accepted required tactics to minimize the use of force including lethal force. Trained and experienced officers know that failure to follow them violates professional standards and training. Based on my review of the record, the Officers violated POST standards, which reflects their lack of adequate training, and a direct reflection of HPD's inadequate supervision, and training policies. The Officers' use of force including deadly force against Mr. Barnhill, especially when Mr. Barnhill was chest down on the ground, unarmed, not resisting, not attempting to flee, and with at least one hand behind his back, have not harmed any officer nor verbally threatened any officer, but instead told Officers that he was not resisting, demonstrates the Defendant Officers complete lack of situational awareness, lack of control over their emotions and fears, and their inadequate training and understanding of basic use of force and de-escalation principles. The HPD longstanding failure to adequately train their officers, also demonstrated by its officers' prior use of unreasonable force against the citizens of Hemet, has and will continue to place the community at risk of serious injury and/or death by other officers in the department, who have been or are now,

1 similarly trained and/or supervised.

2 [Docket No. 52-19, Clark Declaration, at pp 4 – 8, 14 – 17, 32 – 34.]

## IV. THE COURT SHOULD EXCLUDE CLARK'S OPINIONS

### A. The Daubert Threshold for Expert Opinion Evidence

Fed. R. Evid. Rule 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid, Rule 702 also provides that a witness may be qualified as an expert if "the testimony is based on sufficient facts or data." "Where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question…, the trial judge must determine whether the testimony has a 'reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). If the testimonial evidence fails in this regard, the expert opinion is inadmissible. *Id*.

In applying Rule 702, the Court functions as a gatekeeper, determining whether proffered expert testimony meets the requirements of Rule 702 by a preponderance of the evidence. *In re Countrywide Fin. Corp. Mortgage-Backed Sec. Litig.*, 984 F.Supp.2d 1021,1026 (C.D. Cal. 2013); (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). The offering party must prove admissibility. *Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The offering party must show by a preponderance of the evidence that (1) the expert is qualified to render the opinion; and (2) the opinion offered has adequate factual and scientific support for that opinion. *Daubert*, 509 U.S. at 592-93.

### B. Clark Is Not Qualified To Opine On Intentions, Plaintiff's Injuries, And Video Evidence

Expert opinions are properly excluded if the *Daubert* standard is not met. In this case, Clark fails to satisfy the first prong of the admissibility analysis for his opinions that go towards Plaintiff's intention and feelings, Officers' intent and

14

feelings, Plaintiff's injuries, and the video evidence. Clark sets forth expertise that is firmly rooted in his practice as a sheriff's department deputy with Los Angeles Sheriff's Department and time spent training staff at LASD as well as his time post-retirement consulting as an expert on law enforcement shooting and police practices.

**Intent and Emotion**: None of Clark's expertise establishes his ability to opine about Plaintiff or Officers' mental or emotional states of being. In fact, Clark has been prevented from so opining in the recent past. *See Est. of Stanley v. City of San Jose*, No. 22-CV-03000-VKD, 2024 WL 218124 (N.D. Cal. Jan. 20, 2024); *See also Johnson v. City of San Jose*, No. 5:21-cv-01849-BLF, 2023 WL 8852489, at *3 (N.D. Cal. Dec. 21, 2023) ("Mr. Clark's opinions on the credibility, intentions, or state of mind of Officer Adgar or another individual, ... are likewise inadmissible, as Mr. Clark is not offered as a witness with relevant expertise to make such determinations and those opinions are pure speculation."). Clark's testimony about Plaintiff's emotional state and intentions and Officers' emotional state and intentions—including their "failure to control their emotions" must be excluded. [Docket No.52-19, Clark Declaration, at pp 4 – 8, 12, 27, 33 – 34]

**Video Evidence**: Clark has been similarly barred from opining about the contents of the video evidence. *See Johnson v. City of San Jose*, No. 21-CV-01849-BLF, 2023 WL 8852489 (N.D. Cal. Dec. 21, 2023). Because Clark has no expertise, training, or education on video interpretation, his opinions as to what the videos show—including that Plaintiff is "clearly" being tased—run afoul of the rules of evidence. Fed. R. Evid. 702. Without this establishment, the court should exclude all opinions set forth by Clark as an expert about the events depicted in the video evidence. *See Mesfun v. Hagos*, No. CV 03-02182, 2005 WL 5956612, at *11 (C.D. Cal. Feb. 16, 2005) ("Moreover, [the expert's] testimony would not assist the trier of fact, as jurors are more than capable of drawing their own conclusions about the evidence presented without the benefit of [the expert's] personal interpretation of it."). Clark opines as to the "apparent uncontested facts" based on his interpretation of the

1  video evidence; this testimony must be excluded. [Docket No.52-19, Clark
2  Declaration, at pp 12 – 13] Clark's entire report of still-shots and his descriptions of
3  what is happening are also his interpretation of what is happening in the videos. Thus,
4  these portions must too be excluded. [Docket No.52-19, Clark Declaration, at pp 43
5  – 65]

6  **Plaintiff's Injuries**: It is undeniable that Clark is not a medical expert.
7  Therefore, his conclusions as to the extent, severity, or medical cause of Plaintiff's
8  injuries do not satisfy *Daubert* and should be excluded. Medical expert testimony
9  regarding causation or medical diagnoses must be set forth by a medical expert and
10 stated to a reasonable degree of medical certainty. *See Lajoie v. Thompson*, 217 F.3d
11 663, 667. fn. 4 (9th Cir. 1999). Clark is not a medical expert and he cannot opine with
12 any degree of medical certainty as to the cause or severity of Plaintiff's injuries and
13 cannot opine therefore about them. Therefore, the instances where he does so—such
14 opining about the cause and effect linking Plaintiff's alleged injuries to Officer
15 behavior must be excluded. [Docket No.52-19, Clark Declaration, at pp 4 – 8, 17, 25,
16 - 26, 32]

17 **C.    Clark's Opinions Rely On Flawed Methodology**

18 "Rule 702 requires that expert testimony relate to scientific, technical, or other
19 specialized knowledge, which does not include unsupported speculation and
20 subjective beliefs." *Guidroz-Brault v. Missouri Pacific R.R. Co.*, 254 F.3d 825, 829
21 (9th Cir. 2001). "In the context of a motion for summary judgment, an expert must
22 back up his opinion with specific facts." *U.S. v. Various Slot Machines on Guam*, 658
23 F.2d 697, 700 (9th Cir. 1981). The chief error with Clark's methodology is its
24 guidance by Plaintiff's Counsel. From this error flows oversights, failures to include
25 pertinent evidence, and characterizations that are very one-sided.

26 Here, when asked at deposition how he prepared his report, Clark gave a
27 damning testimony that warrants exclusion of his report in full. Clark stated that he
28 worked together with Plaintiff's Counsel to create his report, including the

1. screenshots which Plaintiff heavily relies on in Opposition, and when identifying the frames, he took credit but "certainly understood he and [Clark] were of one mind" and went on to explain he and Plaintiff's Counsel together located what would become the still-shots "to illustrate -- and there were 45 of them -- the sequence of events to illustrate the point of the use of force inflicted." [Exhibit A, Clark Depo at 10:11 – 12:3] This type of intermixing is extremely prejudicial in that the "objective" determinations of Clark are not in fact objective at all but moved by the not-so-invisible hand of Plaintiff's Counsel.

This also impacts the methodology whereby Plaintiff's Counsel has been allowed to dictate what content informs the report to be used as a part of the opinion. In picking and choosing from the video, Plaintiff's Counsel and Clark together are slanting the portions of the video that Clark and Plaintiff's Counsel collectively find relevant or worth opining on and how to so opine. So guided, Clark at times does not even account for or acknowledge other portions of the video in his opinion, such as when Plaintiff unambiguously knees an Officer. [Docket No.52-19, Clark Declaration, at pp 45 – 47.]

This view is not limited to the video evidence. In another instance, Clark fails to mention that Officers were investigating Plaintiff for felony assault and were told that Plaintiff may be armed; Maynard specifically was told that Plaintiff was armed. Nor does Clark mention the content of the alleged victim of Plaintiff's 911 call—content which was relayed to Officers. [Docket No. 52-19, Clark Declaration at pp 12 – 15]

Essentially, the melding of Clark with Plaintiff's Counsel and clear gaps in the narrative and understanding as a result showcase that Clark is being used to tell Plaintiff's story "through the mouth of a police-officer-turned-expert." This is not the first time Clark has been used in this way. *See Pursley v. City of Rockford*, No. 3:18-CV-50040, 2024 WL 1050242 (N.D. Ill. Mar. 11, 2024). Clark can only testify to opinions, not factual testimony. *See* Fed. R. Evid. 702. Here, his declaration opines

as to the existence of obvious or indisputable facts and, coupled with his tone and word choice, operates as a testimony to one version of facts which is improper and impermissible.

### D. Clark's Opinions Invade The Domain Of The Judge And Jury

Clark opines that Officers' force was excessive or unreasonable and he even claims HPD too failed to train Officers in this case. Clark also opines about Plaintiff's ultimate threat level and classifies Officers' force was "deadly." This type of testimony ventures inarguably into the territory of legal conclusions. *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992). This is not the first time Clark has done so warranting exclusion. *See A.B. v. Cty. of San Diego*, No. 18CV1541-MMA-LL, 2020 WL 4430971 (S.D. Cal. July 31, 2020) (Court agreed that Clark's opinions crossed the line into impermissible legal conclusions when Clark opined that "it was excessive and unreasonable for the deputies to apply maximum restraints") *See also Godinez v. Huerta*, No. 16-CV-0236, 2018 WL 2018048, at *6 (S.D. Cal. May 1, 2018) (excluding Clark's opinions including "judicially defined or legally specialized terms" but allowing Clark to testify about whether a deputy's conduct comported with applicable procedures and policies).

Here too, though admitting that he is not and has never been a lawyer or practiced law, Clark attempts to insert these impermissible legal opinions. Clark's determinations of excessive force, reasonability under the circumstances that faced Officers, failures to train, policies and practices' constitutionality, legal categorization of the force Officers' used, and determinations as to alternative methods Officers could use for Graham factor determinations should be excluded. [Docket No. 52-19, Clark Declaration, at pp 4 – 6, 16 – 17, 33 – 34]

## V. CONCLUSION

Based on the foregoing, Defendants request that this Honorable Court exclude the opinions of Clark in full.

Otherwise, Defendants request the Court exclude Clark's testimony as to all of the following: opinions on Plaintiff or Officers' states of mind or emotions; opinions as to what the video evidence depicts; opinions as to the cause and extent of Plaintiff's injuries; opinions as to the legal classifications and determinations as to Officer's performing excessive force, lacking training, reasonableness of Officer actions, and reasonable beliefs of Officers regarding Plaintiff's threat level.

DATED: January 26, 2026

**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**

By: _____*/s/ Andrea Kornblau*_____
Eugene P. Ramirez
Andrea Kornblau
Attorneys for Defendants CITY OF HEMET, OFFICER BRETT MAYNARD, OFFICER JOSHUA BISHOP, OFFICER PEDRO AGUILA, CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ and CATHERINE TIPTON

**DEFENDANTS' DAUBERT MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF EXPERT ROGER CLARK**

# DECLARATION OF ANDREA KORNBLAU

I, Andrea Kornblau, declare as follows:

1. I am a Partner with Manning & Kass, Ellrod, Ramirez, Trester LLP, attorneys of record for Defendants, CITY OF HEMET, OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; and CATHERINE TIPTON. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto

2. Attached hereto as **Exhibit A** is a true and correct copy of relevant excerpts of Roger A. Clark's Deposition dated November 12, 2025

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of January, 2026, at Los Angeles, California.

　　　　　　　　　　　　　　　　　　 */s/ Andrea Kornblau*
　　　　　　　　　　　　　　　　　　Andrea Kornblau

---

1
**DEFENDANTS' DAUBERT MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF EXPERT ROGER CLARK**