In the Matter of:

# HENRY BARNHILL

vs

# CITY OF HEMET, ET AL.

---

## ROGER CLARK

November 12, 2025

---



HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                                          11/12/2025

```
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

 3                      ---o0o---

 4   HENRY BARNHILL,              )        CERTIFIED
                                  )       TRANSCRIPT
 5              Plaintiff,        )
                                  )
 6        vs.                     ) Case No. 5:23-cv-00589 JGB(SPx)
                                  )
 7   CITY OF HEMET, OFFICER       )
     BRETT MAYNARD; OFFICER       )
 8   JOSHUA BISHOP; OFFICER PEDRO )
     AGUILA; CORPORAL DOUGLAS     )
 9   KLINZING; JAMIE GONZALEZ;    )
     CATHERINE TIPTON; and DOES   )
10   1-10, inclusive,            )
                                  )
11              Defendants.       )
     _____)

12

13

14

15

16                    DEPOSITION OF

17                     ROGER CLARK

18            VIA REMOTE VIDEOCONFERENCE

19          WEDNESDAY,  NOVEMBER 12, 2025

20            10:05 A.M. - 12:52 P.M.

21

22

23

24   Reported By: Stephani French, CSR No. 14240

25            Certified Shorthand Reporter
```

1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3                      ---o0o---

4   HENRY BARNHILL,              )
                                 )
5                Plaintiff,      )
                                 )
6           vs.                  ) Case No. 5:23-cv-00589 JGB(SPx)
                                 )
7   CITY OF HEMET, OFFICER       )
    BRETT MAYNARD; OFFICER       )
8   JOSHUA BISHOP; OFFICER PEDRO )
    AGUILA; CORPORAL DOUGLAS     )
9   KLINZING; JAMIE GONZALEZ;    )
    CATHERINE TIPTON; and DOES   )
10  1-10, inclusive,             )
                                 )
11               Defendants.     )
    _____ )

12

13

14

15

16

17

18                 DEPOSITION OF ROGER CLARK,

19  taken by the attorney for the Defendants, commencing at

20  the hour of 10:05 a.m. and concluding at 12:52 p.m., on

21  Wednesday, November 12, 2025, via remote

22  videoconference, before Stephani French, Certified

23  Shorthand Reporter No. 14240, in and for the State of

24  California.

25                      ---o0o---

```
 1                    A P P E A R A N C E S

 2    For the Plaintiff:

 3    The Law Offices of Dale K. Galipo
      21800 Burbank Boulevard, Suite 310
 4    Woodland Hills, California 91367-6479
      By:  MARCEL SINCICH (ZOOM)
 5    Attorney at Law

 6
      For the Defendant:
 7
      Manning & Kass, Ellrod, Ramirez, Trester
 8    801 S. Figueroa Street, 15th Floor
      Los Angeles, California 90017-3012
 9    By:  ANDREA KORNBLAU (ZOOM)
      Attorney at Law

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                                    11/12/2025                                    Page 4

```
 1              I N D E X   O F   E X H I B I T S

 2    EXHIBIT                 DESCRIPTION                    PAGE

 3

 4    A              Report of Roger Clark                    96

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                                    11/12/2025                                    Page 5

```
 1                E X A M I N A T I O N S

 2      WITNESS:   ROGER CLARK

 3      EXAMINATION BY:                                PAGE

 4      MS. KORNBLAU                                       6
        MR. SINCICH                                       95
 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                    WEDNESDAY, NOVEMBER 12, 2025

2                    VIA REMOTE VIDEOCONFERENCE

3

4          THE REPORTER:  Good morning.  My name is

5    Stephani French.  I'm a California Certified Shorthand

6    Reporter, and my license number is 14240.

7

8                        ROGER CLARK,

9            having been first duly sworn, was

10           examined and testified as follows:

11

12                        EXAMINATION

13   BY MS. KORNBLAU:

14      Q.   Good morning, Mr. Clark.  My name is

15   Andrea Kornblau.  I will be deposing you today on behalf

16   of the City of Hemet.  I have deposed you in other

17   police use of force cases -- I don't know if you recall

18   those -- but you have given your deposition on numerous

19   occasions regarding use of force.

20           Is that correct?

21      A.   Yes.

22      Q.   So can I dispense with the usual admonitions

23   for expert witnesses?

24      A.   Yes.

25      Q.   To quickly pass through the preliminaries, you
```

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                                11/12/2025                                Page 7

1   were asked to provide expert testimony at the time of

2   trial on behalf of the plaintiff in this case as an

3   expert in police practices; is that correct?

4       A.   Yes.

5       Q.   Are you giving opinions on any other area as an

6   expert witness other than police practices?

7       A.   Well, I will answer any question I'm allowed to

8   answer, but my anticipation is police practices.

9       Q.   Any other topical areas that you've been

10  designated to testify as an expert in this case?

11      A.   There are none other.

12      Q.   Who first contacted you regarding this case?

13      A.   Mr. Packer.

14      Q.   When did he contact you?

15      A.   First week of July of 2024.

16      Q.   When you were contacted for the purposes of

17  being retained by Plaintiff as an expert in this matter,

18  was that by phone or written communication?

19      A.   By phone.

20      Q.   At some point after your retention, you were

21  notified that you were required to appear at this

22  deposition, correct?

23      A.   Yes.

24      Q.   When?

25      A.   When I got the subpoena.  April 29.

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                                    11/12/2025                                    Page 8

```
 1              No, no, excuse me.  I'm sorry.  I got it wrong.
 2    There's a subpoena, I responded to it.
 3              Do you want me to try to find it?
 4        Q.   Were you asked to bring documents?
 5        A.   I consulted with counsel on -- to meet the need
 6    of the -- of the deposition today --
 7        Q.   And --
 8        A.   -- and my understanding was that, yeah,
 9    everything has been provided.
10        Q.   -- how often have you consulted with Counsel --
11    I'm assuming Plaintiff's counsel -- regarding this case?
12        A.   That would be Mr. Sincich.
13              Is that what you're talking about?
14              Because it's the legal firm that's -- the
15    subpoena I was given to.  And I -- so it's been with
16    that firm four times, three to four times.
17        Q.   And when you said that you've communicated with
18    Galipo's firm three to four times, was that during the
19    time you were preparing your expert report?
20        A.   No.
21        Q.   Was it before or after?
22        A.   After.
23        Q.   At any time while you were preparing your
24    expert report, did you communicate with any attorneys in
25    this case?
```

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                    11/12/2025                    Page 9

1     A.    Preparing?  Yes, of course I did.

2     Q.    On how many occasions?

3     A.    As I recall, at least four -- four times while

4  I was preparing the report.

5     Q.    Did you communicate with Mr. Packer or with

6  Galipo's office?

7     A.    Mr. Packer's office.

8     Q.    Did you prepare the expert report dated

9  October 10, 2025?

10    A.    I did.

11    Q.    Did you have any assistance with preparing that

12 report?

13    A.    No.

14    Q.    And, also, I'll ask you about the exhibits.

15          Did you prepare all of the exhibits?

16    A.    I collaborated on the preparation of the

17 exhibits, the 45 screenshots, with Counsel.

18    Q.    When you say you collaborated with Counsel,

19 which counsel?

20    A.    Mr. Sincich.

21    Q.    And how did you collaborate on the exhibits for

22 your report?

23    A.    I collaborated by pointing out the screenshots

24 that were given to me and reviewing the video and that

25 it would be -- I'm not very techy, that was the issue --

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                    11/12/2025                    Page 10

1    to create a sequence that illustrated the use of force

2    at the door when he was apprehended.

3         Q.    So you said that you "pointed out" screenshots

4    that were given to you; what does that mean?

5         A.    Well, you can see in the -- my -- in the

6    report -- let me point it out to you -- the screenshots

7    all come from the Axon, A-X-O-N, video recordings.  And

8    you'll see Item No. 3 on Page 2.  So I -- and I have all

9    the recordings from the three -- from the officers.  So

10   the sequence to put together the exhibit was discussed.

11        Q.    So the screenshots, the still photographs that

12   are an exhibit to your report, were created by Counsel,

13   Mr. Sincich; is that correct?

14        A.    No, it's not correct.  It's a collaborated --

15   it's collaboration.

16        Q.    Okay.  How did --

17        A.    And --

18        Q.    -- how did you collaborate?

19        A.    -- should I go back to the answer, or --

20        Q.    Yes, please.

21        A.    -- should I just stop --

22        Q.    No, please --

23        A.    -- and then answer the next one?

24        Q.    No, no, just explain how you collaborated on

25   the photographs.

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                           11/12/2025                         Page 11

1      A.    Well, that's what I'm trying to do.

2            So we worked together via computer and brought

3      up the videos and identified the proper screenshots in

4      sequence, and it turned out to be 45.

5      Q.    So take me through that process of identifying

6      the photographs.

7            Who identified each still frame?

8      A.    Well, I'm going to claim the credit for that,

9      but I certainly understood he and I were one mind.

10     Q.    Who is one mind?

11     A.    Mr. Sincich.

12     Q.    Mr. Sincich and you are one mind?

13     A.    Counsel, please.

14     Q.    I'm just using your words.

15     A.    I was using -- I was using it as an

16     illustrative method of explanation.

17           First, for the record, we're -- I think I can

18     say with confidence we are -- really agree on the

19     sequence of events and the issues involved in this case.

20           Two, second point is:  Because he has, in my

21     opinion, a better understanding of how to put together

22     a -- or harvest out of the screenshots the videos, which

23     are sequential, he does a better job of that.  But I

24     know how to do it with my computer as well.  And,

25     together, we identified the sequence of events to

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                           11/12/2025                        Page 12

1    illustrate -- and there were 45 of them -- the sequence
2    of events to illustrate the point of the use of force
3    inflicted.

4         Q.   Okay.  But, earlier, I asked if anyone assisted
5    you when creating your report, your Rule 26 report, and
6    your response was no; do you remember that?

7         A.   So, yes, I remember it.  And I thought we were
8    talking about the text of -- not the exhibit attached
9    thereto.  But you are correct.  Now I've been more
10   clear.  Every word of the text is all mine.  Complete.
11   The exhibit to the 45 screenshots we worked together on.

12        Q.   Which exhibit contains the 45 screenshots?

13        A.   I have it in hand.  It's -- it's Exhibit D, I
14   believe.

15        Q.   How is a screenshot created?

16        A.   Well, from my computer, it is -- I freeze
17   the -- the frame on the video, I stop the video.  Then I
18   hit the control alt key with shift, and it freezes and
19   copies that screenshot.  It's a screenshot process.
20   Then I take the screenshot and I move it to WordPerfect
21   and push control V, which pastes the -- on a WordPerfect
22   document.  And then I take those series, when I do it,
23   and I scan them to a scanning program.  And that puts it
24   into a PDF format.  It's pretty awkward.

25        Q.   What program was used with the creation of the

```
 1    still shots at Exhibit D?

 2        A.   I use -- it's a player.  I can't remember the

 3    name of it.  But it's -- it's identified with a -- like,

 4    a road cone, orange and white.

 5        Q.   You said Mr. Sincich created the still shots at

 6    Exhibit D; what program did he use?

 7        A.   I -- no, I did not say that.

 8             But, nonetheless, I have no clue what he used.

 9    I pointed out what I had, and together -- I don't know

10    the exact program he uses.

11        Q.   Did you create the still shots at Exhibit D?

12        A.   I created the still shots.  And then through

13    a -- by Zoom, we worked together, and I pointed these

14    out.  He -- he did the creation of the exhibit in terms

15    of putting the screenshots on whatever format he used.

16    Let's say it that way.

17        Q.   Okay.  Who entered the text underneath each

18    still shot at Exhibit D?

19        A.   So the text is mine.

20        Q.   What program did you use?

21        A.   WordPerfect.  Sort of old, but it's what I do.

22        Q.   Were you typing, physically, the text under

23    each still shot, or was that Mr. Sincich?

24        A.   I don't remember exactly how that was done, but

25    I did the typing.
```

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                          11/12/2025                          Page 14

1      Q.    Did anyone other than Mr. Sincich assist you
2   with creating your report?
3      A.    No one else.
4      Q.    Did you consider the still shots when forming
5   your opinions in this case?
6      A.    Well, of course I did.  They're part of the
7   exhibits.  And they -- they support the opinions.
8      Q.    Do you have a fee that you charge to Plaintiffs
9   for your services in this case?
10     A.    Yes.
11     Q.    What is it?
12     A.    It's $4,000.  And it was the Packer firm.
13     Q.    What is your hourly fee for giving deposition
14  testimony?
15     A.    It's $350 an hour.
16     Q.    What is your current profession?
17     A.    I'm a police procedures consultant.
18     Q.    And with regard to your CV that is attached as
19  an exhibit to your report, is that the most current
20  document summarizing your education, training,
21  background, and experience?
22     A.    It combines, with the statement in the report,
23  my qualifications.  And you're correct.  So, in that
24  regard, it's correct.
25     Q.    Does your CV specify all of the licenses,

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                                    11/12/2025                                    Page 15

1  certifications, and professional association

2  memberships, if any, that you hold?

3       A.   I don't think it cites the memberships.  If

4  I -- but it recites the education and experience on the

5  department, active experience.

6       Q.   Does your CV specify all the publications that

7  you have authored that are in any way related to the

8  subject of your anticipated testimony in this case?

9       A.   You're correct, and there are none.

10      Q.   Other than what is specified on your CV, do you

11 have any other training, education, background, or

12 experience that you believe qualifies you to render the

13 opinions you have been retained to render in this case?

14      A.   That would be the combined statement, my

15 qualifications, and the report.

16      Q.   Other than what has been produced pursuant to

17 our document demands or what has been attached as an

18 exhibit to this deposition, have you prepared any

19 reports, summaries, notes, or comparable writings by you

20 in relation to this case?

21      A.   No.

22      Q.   Are you a lawyer?

23      A.   No.

24      Q.   Do you have any --

25      A.   As I -- as I stated in the first page of my

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                          11/12/2025                          Page 16

1    report.

2         Q.    Yes.    The last paragraph, it says, "It is

3    necessary to state that I'm not a lawyer nor a public

4    official who hears and decides cases brought in court."

5              Do you have any degrees in psychology?

6         A.    No.

7         Q.    Do you have a bachelor's degree?

8         A.    No.

9         Q.    Are you a medical doctor?

10        A.    No.

11        Q.    Are you a biomechanical engineer?

12        A.    I'm not a certified, but I was a

13   trained detective.    Otherwise, no.

14              〔Reporter clarification.〕

15              THE WITNESS:    Trained detective.

16   BY MS. KORNBLAU:

17        Q.    So a detective is a biomechanical engineer?

18        A.    We have to have a very significant working

19   understanding in order to be a detective.

20        Q.    And the significant understanding would be in

21   biomechanical engineering?

22        A.    Well, of course it would; that and other areas.

23        Q.    Did you receive any licenses or certifications

24   as a biomechanical engineer?

25        A.    I think I answered the question.    I said I'm

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                  11/12/2025                    Page 17

1   not -- I don't have a degree or certified in that
2   regard -- certification.
3       Q.   Are you an expert in forensic pathology?
4       A.   I would -- no, I would -- only as a detective
5   in certain areas.
6       Q.   Are you an expert in medical causation?
7       A.   No.
8       Q.   Are you an expert in toxicology medicine?
9       A.   No.
10      Q.   Are you qualified to render testimony on
11  medical issues such as the subjects range of motion,
12  mobility, or physical limits?
13          MR. SINCICH:  Overbroad.
14          THE WITNESS:  Well, I'm going to --
15          Did -- was there something?
16          MR. SINCICH:  You can answer.
17          THE WITNESS:  Oh, I've been allowed to testify
18  on numerous occasions on -- in those areas, as I
19  understand it.
20  BY MS. KORNBLAU:
21      Q.   And what is your understanding regarding
22  testifying on medical issues, specifically range of
23  motion, mobility, and physical limits?
24      A.   As I discussed with -- in trial, the
25  observations are the same in the indications of how it

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                          11/12/2025                          Page 18

1    occurred, when it occurred, and to whom it occurred.

2        Q.   But my question is about medical issues.

3    Specifically, range of motion, mobility, and physical

4    limits.

5            MR. SINCICH:  Overbroad.

6            THE WITNESS:  Yeah, I don't know what you mean

7    by "medical issues," but -- other than commentary on the

8    human condition and the -- and human bodies and how --

9    how they would perform under certain circumstances, as a

10   detective.

11   BY MS. KORNBLAU:

12       Q.   What qualifies you to do that?

13       A.   Well, I always took it in my training and

14   experience.

15       Q.   Are you an expert on the medical effects of a

16   Taser device on a human being?

17       A.   I have been certified by the courts on general

18   use and deployment of the Taser.

19       Q.   Okay.  My question is:  Are you an expert on

20   the medical effects of a Taser device on a human being?

21           MR. SINCICH:  Vague.

22           THE WITNESS:  Well, it --

23           Can I go?

24           MR. SINCICH:  Yes.

25           THE WITNESS:  The -- the Taser is a instrument

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                          11/12/2025                          Page 19

1   and weapon that influences the human body.  So I have

2   been certified and have given testimony both in state

3   and federal courts on the general use and deployment of

4   the Taser, which includes the effects it produces when

5   used.

6   BY MS. KORNBLAU:

7       Q.   Okay.  And, again, my question is:  Are you an

8   expert on the medical effects of a Taser device on a

9   human being?

10      A.   Overbroad.  Vague.  Asked and answered.

11           THE WITNESS:  I don't know how to answer that,

12  other than that I have been allowed to comment on how

13  the Taser influences the body, and I consider that a

14  medical issue, as trained.  So -- both in state and

15  federal courts.

16  BY MS. KORNBLAU:

17      Q.   Have you ever been excluded from giving

18  testimony regarding the use of a Taser device?

19      A.   There have been motions in limine.

20      Q.   Okay.  So my question is:  Have you been

21  excluded from giving testimony regarding the use of a

22  Taser device?

23      A.   And I think I answered it correctly.  There

24  have been motions in limine about certain aspects of the

25  Taser on -- in certain cases.

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                    11/12/2025                    Page 20

1       Q.   And what were the results on the motions

2    in limine?

3       A.   Well, I -- as an example, the -- in one case,

4    the burn marks and the development of burn marks from

5    contact tasing as a medical issue.

6       Q.   Okay.  I'm asking specifically if you've ever

7    been excluded as an expert from giving testimony

8    regarding the use of a Taser device.

9       A.   Overbroad.

10           THE WITNESS:  I don't -- I just don't know

11   how -- I think I've answered it repeatedly.

12           Of course there -- there are -- motions

13   in limine are common, and so it depends on the case.

14   And I said, yes, there have been motions in limine.

15   BY MS. KORNBLAU:

16      Q.   Okay.  So, yes, you have been excluded from

17   giving testimony regarding the use of a Taser device; is

18   that correct?

19      A.   Only in certain aspects.  That would be the

20   proper answer to your question.

21      Q.   Okay.  What aspects?

22      A.   I think I gave you -- the only one example, as

23   I sit here, that comes to mind, is how the burn marks

24   develop from infliction to healing from drive

25   stunning -- that's D-R-I-V-E -- stunning an individual

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                    11/12/2025                    Page 21

```
 1    with a Taser.  Not the burn marks themselves.  So that
 2    would be the only example I could think of right now.
 3         Q.    And, again, though, my question was whether you
 4    have been excluded entirely as an expert regarding the
 5    use of a Taser device.
 6         A.    No.
 7         Q.    So you've only had your testimony narrowed; is
 8    that your testimony?
 9         A.    That's my testimony and that's my memory.
10              And, incidentally, there are -- there's a
11    section on my Taser testimony in my qualifications
12    statement, with case citations.
13         Q.    The term "ECD," what does that stand for?
14         A.    Electronic control device.
15         Q.    And what is an electronic control device?
16         A.    It's a weapon that influences nerves and muscle
17    with electrical energy and is a common reference to the
18    Taser itself, which is a unique model.
19         Q.    Okay.  So what is the difference --
20         A.    Let me correct that:  A unique manufacture.
21         Q.    What is the difference between an ECD and a
22    Taser?
23         A.    Well, I can't think of any.  A Taser is an ECD.
24         Q.    Okay.
25         A.    But an ECD might be a cattle prod, but a Taser
```

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                                        11/12/2025                                        Page 22

1    is not a cattle prod.

2                    〔Reporter clarification.〕

3                    THE WITNESS:  Cattle prod; P-R-O-D, prod.

4    BY MS. KORNBLAU:

5        Q.    Isn't it true that, in 2010, a federal court

6    ruled that you, quote, "lack an adequate foundation to

7    opine as to the physiological effects of the application

8    of an ECD either as a matter of medical expertise or

9    through observations or experiences as a law enforcement

10   officer"?

11                  MR. SINCICH:  Calls for speculation.  Lacks

12   foundation.

13                  THE WITNESS:  Is that a question?  I don't

14   recall the case.

15   BY MS. KORNBLAU:

16       Q.    So what's -- your answer is yes or no?

17       A.    Well, I don't -- how do I know what you're

18   quoting from?  I don't -- if it's published or a matter

19   of record, I don't argue with that.

20       Q.    Have you ever been asked that question before?

21       A.    No, I have not.

22       Q.    Okay.  So the Gaston case doesn't ring a bell

23   for you?

24       A.    No, it doesn't.

25       Q.    And the federal court also ruled that you were

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                    11/12/2025                    Page 23

1    not an expert on the physical effects of a Taser device

2    on a person; do you recall that?

3        A.    No.

4        Q.    Do you ever recall being asked that question

5    before?

6        A.    Oh, I've been asked that question many times,

7    and I gave you citations and my qualifications.  The

8    last one -- significant one was the -- a case in

9    San Diego, federal court.

10       Q.    Okay.  So did a court rule that you were not an

11   expert on the physical effects of a Taser device on a

12   person?

13       A.    Not that I recall.

14       Q.    Despite your lack of medical expertise, when it

15   comes to Taser devices, you have still offered your

16   opinion as an expert that Taser or ECD devices can cause

17   fatal injury to people; is that true?

18            MR. SINCICH:  Argumentative.  Calls for

19   speculation.

20            THE WITNESS:  Well, I think it's a bit

21   interesting you put "despite," because there are cases

22   that have been cited and published, my comment on the

23   Taser.

24            And what I'll offer is the influence I think my

25   testimony has had on restricting aspects of the Taser so

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                          11/12/2025                          Page 24

```
 1   that -- such as heart attacks, burns, cycling more often
 2   than necessary, those things.  So that's the best answer
 3   I think I could offer.
 4   BY MS. KORNBLAU:
 5        Q.   And I've already asked you if you're a medical
 6   doctor; your response was no.
 7             Is that correct?
 8        A.   Counsel, I think I said a couple times.  But,
 9   if we can close that issue:  I'm not a doctor.
10        Q.   Okay.  And I can ask you questions.  This is my
11   deposition.  So if you're going to be evasive in
12   responding to my questions, then I will just request to
13   bring you back for another deposition.
14             Do you understand?
15        A.   Yes, I understand.
16             MR. SINCICH:  Argumentative.  Lacks foundation.
17             THE WITNESS:  I understand.
18   BY MS. KORNBLAU:
19        Q.   Okay.  Thank you.
20             In your expert report in this case, you
21   declared under oath that you are an expert in the
22   features of a Taser device; is that correct?
23        A.   Yes.
24        Q.   Where did you say that in your report?
25        A.   In my qualifications statement.
```

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                    11/12/2025                    Page 25

1      Q.   On what page?

2      A.   Well, let's take a look.  Page 33.

3      Q.   Anywhere else?

4      A.   I thought that was sufficient.

5           No, there's nothing else on the -- in my

6  report, other than Page 33.

7      Q.   Are you certified by Taser International as a

8  Taser device user?

9      A.   No.

10     Q.   Are you certified by anyone as a Taser device

11 user?

12     A.   No.

13     Q.   Are you a certified instructor for Taser

14 devices?

15     A.   Not by Taser, no.

16     Q.   Isn't it true that you have never deployed a

17 Taser device as a peace officer in the field?

18     A.   Yes.

19     Q.   When you were a peace officer, were you ever

20 personally trained by the LA Sheriff's Department or by

21 Taser International in how to use a Taser device?

22     A.   Not while on active duty.

23     Q.   Were you ever personally trained by the

24 sheriff's department in use of force tactics regarding

25 Taser devices in the field?

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                            11/12/2025                            Page 26

1      A.   No.
2      Q.   When you were serving as a peace officer, did
3  you ever personally carry a department-issued Taser
4  device?
5      A.   No.
6      Q.   Isn't it true that, despite the fact that
7  you've never used a Taser in the field as a peace
8  officer, have never been trained by the sheriff's
9  department in Taser tactics, and are not a certified
10 Taser instructor, you have still offered testimony as an
11 expert witness on issues involving police deployment of
12 Taser devices?
13     A.   I have.
14     Q.   When you were a peace officer, did you ever
15 receive any training on the MP5 firearm?
16     A.   No.
17     Q.   Have you ever fired one?
18     A.   Yes.
19     Q.   On May 2013, a case against Culver City, you
20 offered expert witness testimony at trial on issues
21 involving the function and proper usage of the MP5
22 firearm; is that true?
23     A.   I don't recall the case.
24     Q.   In forming your opinions on this case, you
25 relied on the California Commission on Peace Officer

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                          11/12/2025                          Page 27

```
 1   Standards and Training -- or POST -- learning domains,
 2   true?
 3        A.   I did.  I cited a number of them.
 4        Q.   And on what page of your report did you cite?
 5        A.   My goodness.  It's -- begins on Page 2 and
 6   continues to Page 3.
 7        Q.   Do you have an executive certificate from POST?
 8        A.   No.
 9        Q.   Have you ever been employed by POST?
10        A.   No.
11        Q.   Have you ever served as a POST staff member in
12   any seminars?
13        A.   No.
14        Q.   Have you ever been a consultant for POST?
15        A.   Yes.
16        Q.   When?
17        A.   It was during a special assignment from 1984 to
18   1987 while on the department.
19        Q.   And what was the nature of your consulting
20   between 1984 and 1987 for POST?
21        A.   Had to do with the recertification of reserves
22   and their training modules.
23        Q.   Any reason why, in previous depositions, your
24   response has been "no"?
25             MR. SINCICH:  Lacks foundation.
```

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                    11/12/2025                    Page 28

1          THE WITNESS:  I've always been truthful in my

2    testimony.  I don't know what you're talking about.

3    BY MS. KORNBLAU:

4        Q.    Okay.  At any time up to the present, have you

5    ever been certified by POST as the use of force

6    instructor?

7        A.    I was certified by POST as an instructor on

8    every issue of training while I was on the department.

9        Q.    When was that?

10       A.    From the time I lectured at the academy, for

11   the 15 and a half years I was a lieutenant.

12       Q.    Have you ever drafted any of POST's specific

13   learning domains?

14       A.    Not the text.

15       Q.    When was the first time that you were certified

16   by POST?  As a use of force instructor?

17       A.    From the very first lecture I gave at the

18   academy.

19            I think that you are referring to a

20   certification that came into existence after I retired.

21   So -- and that was the certification for POST training.

22   That did not exist while I was on the department.

23       Q.    Okay, so I don't understand your response,

24   then.

25            If I'm asking whether you've been certified by

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                    11/12/2025                    Page 29

1  POST as a use of force instructor, is your response yes
2  or no?
3      A.   My response is yes, that I was certified by
4  POST on every case, every lecture I gave, in the
5  learning domains, while I was on the department.  There
6  was no such thing, while I was on the department, as a
7  certified POST instructor.
8      Q.   So then how can you say yes to that, if there
9  was no such thing, it wasn't even in existence?
10     A.   Well, that's the -- that's what I was trying to
11 clarify with you.  Since it didn't exist, and I was
12 certified by POST and the lectures that I gave, and the
13 students or the cadets that received those lectures were
14 certified as -- for that lecture in the POST basic -- so
15 I don't know how else to answer it.
16     Q.   Okay.  I'll reserve my right to bring you back
17 for a further deposition to respond.
18     A.   Well --
19     Q.   Have you ever drafted any --
20     A.   -- I'd like to clear it up for the record.
21 So -- because I think that was sort of threatening.
22          So the issue is:  I retired out in 1993.  After
23 I retired out, POST created a classification, which was
24 certified instructor, which was required for the POST
25 basic curriculum from that point on.

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                    11/12/2025                    Page 30

```
 1          But that did not exist during my time on the
 2   department or anybody else's time with any other
 3   department or in any other academy.  So POST vetted me
 4   and certified me so that I -- every lecture I gave in
 5   the POST basic curriculum was certified.
 6       Q.   When were you certified by POST?
 7       A.   From the first lecture I gave, which was when I
 8   was in the Reserve Forces Bureau working with POST,
 9   working on the curriculum, and they certified me as
10   competent in the lectures I gave.  And not only for
11   reserves, but for regulars -- regulars on the
12   department.
13       Q.   Can you give me a year when you were certified
14   by POST?
15       A.   So that agreement for that understanding or
16   that certification was started in 1980 -- excuse me --
17   in 1984, when I had that assignment, as I testified
18   earlier, to work with POST for this special project.
19       Q.   Okay.  So you were certified by POST as a use
20   of force instructor in 1984, correct?
21       A.   Well --
22            MR. SINCICH:  Vague and ambiguous as to time.
23            THE WITNESS:  -- as I have explained, yes.
24   BY MS. KORNBLAU:
25       Q.   And you said, though, that the POST
```

1    certification did not exist in 1984, correct?

2            MR. SINCICH:  Vague and ambiguous.

3            THE WITNESS:  As I -- as I took your question,

4    the POST certification -- that POST category did not

5    exist.

6    BY MS. KORNBLAU:

7        Q.    When did POST certification exist -- begin to

8    exist?

9            MR. SINCICH:  Vague and ambiguous.

10           THE WITNESS:  Well, I don't know.  After I

11   retired, they had a -- they had a curriculum -- a course

12   required for instructors.  Once they completed it, they

13   were given that classification.  That was never offered

14   or never even existed while I was on the department.

15   BY MS. KORNBLAU:

16       Q.    Certification for POST did not exist while you

17   were with the department, correct?

18       A.    As I have explained.

19       Q.    So that's a yes, correct?

20       A.    I take it as a yes.

21       Q.    During your service as a peace officer with the

22   LA Sheriff's Department, you were never designated as a

23   POST subject matter expert on the use of force, correct?

24       A.    Well, there, again, I was a -- I gave lectures

25   on the use of force, as I've testified with you and

1  others, and so I was certified for the teaching and

2  training on the use of force.

3      Q.   Okay.  And my question was whether you were

4  designated as a POST subject matter expert.

5      A.   The designation did not exist at -- in the time

6  I was lecturing at the academy.  That designation did

7  not exist.

8      Q.   So I'm going to ask you the question again:

9  During your service as a peace officer with the LA

10  Sheriff's Department, you were never designated as a

11  POST subject matter expert on the use of force, correct?

12          MR. SINCICH:  Asked and answered.  Vague and

13  ambiguous.

14          THE WITNESS:  I was not -- the designation

15  didn't exist.  The lectures did, and I was certified to

16  give the lecture.

17  BY MS. KORNBLAU:

18      Q.   I'll, again, reserve my right to bring you back

19  for a further deposition regarding this question.

20          MR. SINCICH:  We would object to that.

21  BY MS. KORNBLAU:

22      Q.   During your service as a peace officer with the

23  LA Sheriff's Department, were you ever designated as a

24  POST subject matter expert on any subject?

25      A.   The designation did not exist, so I was not

1    designated, because the designation didn't exist.  The

2    lectures were all certified.

3         Q.    Have you ever trained to be a member of any

4    special weapons assault team, or SWAT team?

5         A.    I trained on the department and co-trained with

6    SWAT, my -- my unit N.O.R.S.A.T.

7         Q.    When was that?

8         A.    From 1987 to 1993.

9         Q.    Have you ever worked as a SWAT team member?

10        A.    No.

11        Q.    Have you ever been a firearms instructor at the

12   range?

13        A.    Not the sheriff's range.

14        Q.    Any other range?

15        A.    Boy Scouts of America.  Summer camp.

16   Fourteen years.

17        Q.    Your only SWAT experience is as an

18   administrator; is that correct?

19        A.    Would you repeat that, please?

20        Q.    Your only SWAT experience is as an

21   administrator; is that correct?

22        A.    Well, I was commander and trained with all my

23   personnel and did the same type of training they did.

24   But I was the commander.

25        Q.    Have you ever worked for the homicide bureau?

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                          11/12/2025                          Page 34

1        A.    I was never assigned to homicide.

2        Q.    Have you ever worked any police assignment as a

3   homicide investigator in the field?

4        A.    I worked frequently with homicide detectives on

5   cases and had them assigned to my unit for -- for their

6   cases.

7        Q.    Have you ever worked any police assignment as a

8   homicide investigator in the field?

9        A.    I was not a homicide detective in the field, as

10  I understand your question.

11       Q.    Okay.  And I'm asking if you were an

12  investigator.

13       A.    That's exactly the way I took it, and that's

14  the way I understood it, and that's why I answered it.

15       Q.    Okay.  And have you ever taught a course in

16  homicide investigations?

17       A.    No.

18       Q.    Did you ever go to any school for training on

19  the conduct of an investigation into an officer-involved

20  shooting?

21       A.    No courses.

22       Q.    You are designated by Plaintiffs as their

23  expert on police practices, procedures, tactics, and use

24  of force; is that correct?

25       A.    Yes.

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                          11/12/2025                          Page 35

1    Q.   Your current profession is as a police

2    procedures consultant, correct?

3    A.   Yes, I think I answered that one.

4    Q.   How many times have you testified as an expert

5    witness in depositions or trials?

6    A.   Probably around 1500 times.

7    Q.   Does that include in criminal cases?

8    A.   Yes.

9    Q.   For all the criminal cases where you've

10   testified as an expert, you've only testified on behalf

11   of those committing a crime; is that true?

12   A.   Accused of committing a crime.  But, as I

13   recall -- yes, as I sit here, that's my memory.

14   Q.   Except for one case involving the Harris County

15   district attorney, you've never been retained by the

16   prosecution in a criminal proceeding; is that accurate?

17   A.   No.

18   Q.   Okay.  In what other cases were you retained by

19   the prosecution?

20   A.   I have a current case pending with the

21   district -- LA County district attorney.  I have

22   completed a case with the US attorney, criminal.

23   Q.   The names of those cases?

24   A.   The name of the US Attorney is Kirk.

25   Q.   Can you spell that?

1  reflects back to Opinion 2 about the use of force; the

2  blows that were being inflicted on his head, in

3  particular, and the force, generally.  And that --

4  seeing that there were blows being inflicted to his

5  head, his head being hit with a Taser, et cetera, that

6  would be an intervention by one of the officers at

7  least:  Stop, stop doing this, don't do this anymore.

8  That type of thing.

9      Q.   Okay.  You're saying, though, that it's a duty

10  of an officer to -- to do these things.

11        What -- where is the duty cited?  What's your

12  source?

13      A.   Oh, my goodness.  It's in -- in particular,

14  it's in the Use of Force 20, and it's cited as a federal

15  requirement.

16      Q.   Where?

17      A.   Well, I have to bring it up to give you the

18  page and line.  It's the duty to intervene.  And the

19  intervention techniques are commented on in 1, 2, and 3.

20      Q.   No, I don't think you understand --

21      A.   Do you want the page number, et cetera, or no?

22      Q.   I don't think you understand my question.  I'm

23  just asking you about Opinion No. 5, the one sentence,

24  where it says, "One of an officer's overarching duties

25  is to protect lives of those they come in contact with

1    Q.   Does POST Learning Domain 20 or the Penal Code

2  give an exhaustive list of every circumstance where a

3  use of force could be deadly force?

4    A.   No.

5    Q.   In your opinion, was slamming Mr. Barnhill's

6  head on the ground and striking him in the head with a

7  Taser as an improvised weapon -- as an improvised weapon

8  a use of deadly force?

9          MS. KORNBLAU:  Objection.  Argumentative.

10 Lacks foundation.

11         THE WITNESS:  Yes.

12         MR. SINCICH:  Okay.  I have no further

13 questions at this time.  Thank you.

14         MS. KORNBLAU:  All right.  Thank you.

15         THE REPORTER:  Counsel, would you like an

16 electronic copy?

17         MS. KORNBLAU:  Yes, fine for me.

18         MR. SINCICH:  For me to make it available for

19 Mr. Clark?

20         Is that what you're --

21             (Reporter clarification.)

22         MR. SINCICH:  Oh, let me -- not at this time.

23 Let me get back to you on that.

24                 (Off the record.)

25           (Defendant's Exhibit A was marked.)

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                          11/12/2025                          Page 97

1              **(Deposition concluded at 12:52 p.m.)**

2                          **---o0o---**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                          11/12/2025                          Page 98

```
1              DECLARATION UNDER PENALTY OF PERJURY

2

3              I, ROGER CLARK, do hereby certify under

4    penalty of perjury that I have reviewed the foregoing

5    transcript of my deposition taken on Wednesday, November

6    12, 2025; that I have made such corrections as appear

7    noted herein in ink; that my testimony as contained

8    herein, as corrected, is true and correct.

9

10             DATED this _____ day of _____

11        2025, at _____, California.

12

13

14

15             _____

16                          ROGER CLARK

17

18

19

20

21

22

23

24

25
```

```
1                    WITNESS'S CHANGES OR CORRECTIONS

2     Deponent: ROGER CLARK

3     NOTE: If you are adding to your testimony, print the
      exact words you want to add.  If you are deleting words
4     from your testimony, print the exact words you want to
      delete.  Specify with "Add" or "Delete" and sign below.
5     Page    Line            Change/Add/Delete

6

7     _____   _____    _____

8     _____   _____    _____

9     _____   _____    _____

10    _____   _____    _____

11    _____   _____    _____

12    _____   _____    _____

13    _____   _____    _____

14    _____   _____    _____

15    _____   _____    _____

16    _____   _____    _____

17    _____   _____    _____

18    _____   _____    _____

19            Pursuant to Section 2025.520 of the Code of
      Civil Procedure of the State of California, I hereby
20    certify that I have read my Statement Under Oath
      transcript, made those changes and corrections that I
21    deem necessary, and approve the same as now true.

22    Date: _____  Signature: _____

23

24

25
```

HENRY BARNHILL vs CITY OF HEMET, ET AL.
ROGER CLARK                    11/12/2025                    Page 100

```
 1              REPORTER'S CERTIFICATION

 2         I, Stephani French, Certified Shorthand

 3    Reporter in and for the State of California, do hereby

 4    certify:

 5              That the foregoing witness was by me duly

 6    sworn; that the deposition was then taken before me at

 7    the time and place herein set forth; that the testimony

 8    and proceedings were reported stenographically by me

 9    and later transcribed into typewriting under my

10    direction; that the foregoing is a true record of the

11    testimony and proceedings taken at that time; that I am

12    neither financially interested in the action nor a

13    relative or employee of any attorney or any of the

14    parties.

15              IN WITNESS WHEREOF, I have subscribed my name

16    on this date:

17

18

19

20    _____

21         Stephani French, CSR No. 14240

22

23

24

25
```