**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Tel:   (951) 682-9311

*Attorneys for Plaintiff*, HENRY BARNHILL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY BARNHILL,<br><br>              Plaintiff,<br><br>       vs.<br><br>CITY OF HEMET; OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; CATHERINE TIPTON; and DOES 1-10, inclusive,<br><br>              Defendants. | Case No.: **5:23-cv-00589-JGB-SP**<br><br>[*Honorable Jesus G. Bernal*<br>Magistrate Judge Sheri Pym]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT ROGER CLARK**<br><br>Hearing:    February 9, 2026<br>Time:       9:00 a.m.<br>Crtrm:      1 (2nd Floor)<br><br>Trial Date: April 7, 2026<br>Complaint Filed: April 4, 2023 |

## I.    INTRODUCTION

This is a federal civil rights action where Plaintiff was brutally beaten by multiple officers. There are multiple videos documenting the attack. Defendants now attempt to include, as part of their dispositive motion, a boilerplate motion to exclude Plaintiff's highly qualified police practices expert, Roger Clark's Report and testimony. Defendants' motion merely laid out a series of potential lines of cross examination, but not a basis to exclude Mr. Clark's testimony. Mr. Clark's opinions are relevant and reliable, based on a reliable methodology and sufficient facts and data. Thus, Plaintiff respectfully requests that the motion be denied in full.

Further, in filing their motion, Defendants exceed the page limitation for a reply brief, fail to follow the format defined by this Court's Standing Order for objections to evidence regarding motions for summary judgment, and violate the Local Rules. Even if the present Motion is considered a separate motion *in limine*, Defendants have used two of the five limited to each side and violated the Court's Standing Order on page limitation for motions *in limine*. In addition, Defendants filed the instant motion without making any effort to meet and confer with Plaintiff's counsel notwithstanding that the expert report was disclosed on October 10, 2025, and Mr. Clark's deposition took place on November 12, 2025, over two months prior to the filing of the instant motion. Defendants offer no excuse for their failure to meet and confer, and the motion should be denied on that basis alone.

## II.    LEGAL STANDARD

Under Federal Rule of Evidence 702, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data;(c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The trial court

determining the admissibility of an expert's opinion must assess the "reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). As the gatekeeper, the trial court assures the expert testimony both rests on a reliable foundation and is relevant to the task at hand. *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir.2010) (citation and quotation marks omitted).

Reliability is established "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). The test "is not the correctness of the expert's conclusions but the soundness of his methodology." *City of Pomona v. SQM North America Corp.* 750 F.3d 1036, 1043-44 (9th Cir. 2014). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted); *Alaska Rent-A-Car*, 738 F.3d at 969 (screen for reliability not impeachability). In conducting its inquiry, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969-70. "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano*, 598 F.3d at 564-65.

## III.    ARGUMENT

### A.    Mr. Clark's Testimony is Relevant and Reliable

Defendants designated their own police practice expert to opine on the tactics and force used in this case, which on its own establishes the relevance of Mr. Clark's testimony regarding police policies and techniques, the video evidence, and the Officers' demonstrated intent as established by the circumstantial evidence. Defendants' conduct as depicted in video evidence and its relationship to established police practices is undeniably relevant to whether the Officers' conduct in viciously

beating Barnhill and using deadly force in the process was objectively reasonable. There is no issue as to relevance.  The only remaining issue under *Daubert* is whether the evidence is reliable, that is whether it comes from a reliable basis of knowledge and experience of the relevant discipline, not whether the conclusions are subjectively correct. *See Primiano*, 598 F.3d at 565 and *SQM North America Corp.*, 750 F.3d at 1043-44. It is well established that Mr. Clark is qualified as an expert by knowledge, skill, experience, training, or education as a twenty-seven-year veteran of the Los Angeles County Sheriff's Department reaching the rank of Lieutenant. Mr. Clark holds a California Peace Officer Standards and Training ("POST") Advanced Certificate, is a graduate of the POST Command College, and has extensive experience in force cases. Mr. Clark has testified as an expert on the use of force and tactics in several jurisdictions around the country, and in both state and federal courts. Mr. Clark has been recognized as an expert in use of force and police practices on numerous occasions. Further, Mr. Clark's opinions are based on his study of POST. All of which are cited in his Rule 26 Report. (Doc. 52-19, Clark Declaration with Attachment A, Rule 26 Report ("Clark Decl."), at 2-3, 34-42.)

Roger Clark has the experience and training to opine in this matter regarding the known and trained standards for the use of force, tactics, training, and supervision of officers. All these topics, as outlined in Mr. Clark's report, are covered by POST, and reliably based on sufficient facts and data from the materials reviewed, including interviews of officers and witnesses, depositions, City policies and training, photographs of the scene, body-worn camera videos of the incident, discovery documents, and pertinent POST Learning Domains. (Clark Decl. at 3:22-24; 11-14). Mr. Clark's reliable methodology based on his field of expertise includes (1) review of relevant material involved to determine a factual understanding of the circumstances; (2) review of relevant POST Learning Domains, publications, case-law on point, training bulletins, and manuals to ensure that he applies the most modern and accurate law enforcement standards; (3) reliance on decades of

experience, training, and knowledge when analyzing how the law enforcement training will be applied to real-world scenarios along with the risks involved; and (4) application of the facts to the standards to opine on what the Officers did and/or should have done. (*Id*. at 4:1-10).

Furthermore, Mr. Clark has been recognized as an expert in police practices and cited approvingly in judicial decisions on numerous occasions. *See*, *e.g.*, *V.V. v. City of Los Angeles*, No. 2:21-cv-01889-MCS-PD, 2022 WL 3598167, at *4 (C.D. Cal. July 6, 2022) (permitting opinions from Mr. Clark as to whether officer's conduct comports with police training and police practices); *Est. of Elkins v. Pelayo*, No. 1:13-cv-1483 AWI SAB, 2022 WL 1123117, at *3 (E.D. Cal. Apr. 14, 2022) (finding Mr. Clark to be a qualified police practices expert that may testify about appropriate weapons, tactics, force options and strategies, and offer opinions about whether the force comported with or deviated from applicable police standards and practices); *Bermudez v. Cnty. of San Bernardino*, No. ED-cv-20438 JGB SHKx, 2021 WL 6618857, at *7 (C.D. Cal. Dec. 6, 2021) ("Mr. Clark's resumé and report clearly establish his expertise in police procedures."); *Barillas v. City of Los Angeles*, No. cv-1808740 CJC ASx, 2021 WL 4434977, at *11 (C.D. Cal. Apr. 12, 2021) (Mr. Clark's testimony is admissible as a qualified police-practices expert regarding whether officers acted in conformity with POST); *Magana v. City of Los Angeles*, No. 2:19-cv-03631 CAS AGRx, 2021 WL 809402, at *3 (C.D. Cal. Mar. 1, 2021) ("Clark may opine as to POST standards and whether [officer] actions comported with those standards."); *see also Lopez v. Chula Vista Police Dept.*, 2010 WL 685014, at *5 (S.D. Cal. Feb. 28, 2010) ("the Court concludes that Clark's opinions are sufficiently relevant and reliable to meet the standard of Rule 702.").

The Ninth Circuit has also recognized Mr. Clark as an expert on police practices and use of force. *See Landeros v. City of Tustin*, 837 F.3d 1005, 1012 (9th Cir. 2016); *Blankenhorn v. City of Orange*, 485 F.3d 463, 485 (9th Cir. 2007) (Mr. Clark's expert report quoted approvingly as an expert in use of force where the

Court noted Mr. Clark is a former sergeant and lieutenant with 27-years of experience in the Los Angeles County Sheriff's Department).

Mr. Clark's opinions regarding proper police training on use of force and tactics are well within his area of expertise. Courts have routinely rejected similar challenges to testimony by Mr. Clark. *See*, *e.g.*, *Shelton v. Brandon*, No. 4:19-cv-23, 2022 WL 1811389, at *2 (E.D. Tenn. Mar. 22, 2022) ("Neither party disputes that Clark is qualified to opine on police practices"); *Olson as Next Friend of H.J. v. City of Burnet*, Texas, No. A-20-cv-00162-JRN, 2021 WL 1289376, at *2 (W.D. Tex. Feb. 26, 2021) ("The Court agrees with Plaintiffs that, in general, Clark is qualified to testify as an expert. Clark's three decades in and around the field of law enforcement qualifies him by "knowledge, skill, experience, training, or education" to testify about police practices and procedures in general."); *Godinez v. Huerta*, No. 16-cv-0236-BAS-NLS, 2018 WL 2018048, at *3 (S.D. Cal. May 1, 2018) ("Mr. Clark's experience as a police officer and with police practices and training qualifies him as an expert"); *Conan v. City of Fontana*, No. ED-cv-16-1261-KK, 2017 WL 8941499, at *10 (C.D. Cal. Oct. 6, 2017) (denying defendants' motions in limine to exclude Roger Clark); *Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1196-97 (C.D. Cal. 2015) ("reading Clark's opinion in context, it is clear that Clark is not attempting to state the law, correctly or otherwise; rather, Clark is opining that, in light of the training the defendant officers received, 'decedent's behavior did not justify any use of physical force.'"); *Giles v. Ludwig*, No. 12-cv-6746, 2014 WL 12775459, at *2 (N.D. Ill. Aug. 29, 2014) ("This Court finds that Clark is qualified and his opinions are sufficiently reliable under *Daubert* to be presented at trial.").

Defendants' next reliability argument, that because Mr. Clark "worked together with Plaintiff's Counsel to create his report" should not be considered. First, Defendants cite Mr. Clark's testimony, where he stated that "screenshots." which were an attachment to his report, were a collaboration for which Mr. Clark takes credit. (Doc. 56-1, Clark Depo at 10:11-12:3.) Federal Rule of Evidence

26(a)(2)(B) requires that an expert report be "prepared and signed by the expert."

Courts have interpreted this rule as follows:

> An expert report must be prepared by the expert. See Fed. R. Civ. P.
> 26(a)(2)(B) (requiring an expert report to be prepared and signed by the
> expert witness). "Preparation implies involvement other than perusing a
> report drafted by someone else and signing one's name at the bottom to
> signify agreement." But counsel is permitted to provide substantial
> assistance to an expert witness in drafting their report, and the expert need
> not be the person "who actually puts pen to paper (or fingers to keyboard)."

*Avila v. Ford Motor Co.*, 796 F.Supp.3d 593, 597 (N.D. Cal. August 22, 2025)

(citations omitted). Even under Defendants' skewed recitation of Mr. Clark's

participation in the report, Mr. Clark plainly "participated" in the preparation of that

report as courts have interpreted the Federal Rules. Indeed, Defendants do not cite a

single case that stands for the proposition that Mr. Clark's collaboration with

counsel in preparing his report, much less the harvesting of screenshots for an

attachment to the report, was improper or led to a "flawed methodology." The rules

and jurisprudence are contrary. In fact, as prescribed by Rule 26(a)(2)(B)(iii), his

report includes an exhibit that summarizes and supports his opinions. Mr. Clark's

opinions and testimony are reliable. Thus, Defendants' Motions should be denied.

### B.     Mr. Clark's Opinions and Testimony Will be Helpful to the Jury

Defendants cannot dispute that Mr. Clark's opinions are based on review of

objective video evidence that clearly shows Barnhill chest down on the ground

while Defendants are striking him in the face, head, and back, including with an

improvised weapon, and shows an officer slam Barnhill's face into concrete. Mr.

Clark's opinions are based on the deposition testimonies of the parties, including the

Plaintiff who stated that during the force, he was not attempting to flee, he did not

resist, and was trying to comply, and the testimonies of Defendant Officers on scene

who admit to using force against Barnhill while he was on the ground. Defendants'

assertion that Mr. Clark's opinions are a one-sided characterization of facts or with

gaps in the narrative is incredulous. Mr. Clark specifically gave an analysis of his

1    opinions after quoting the Officers' version of the events. The "Narrative" in Mr.

2    Clark's Rule 26 Report is quoted from the Officers' incident reports. (Clark Decl. at

3    17-23.) From Defendants he learned that "Barnhill complied by lifting his hands

4    up"; Maynard only saw "keys in his right hand"; Maynard "tacked him"; Maynard

5    "punched him in the front of his face with a closed right fist"; Bishop deployed his

6    Taser; officers pulled Barnhill to the ground; Maynard "forcefully shove[d] his (sp)

7    face down"; Maynard "was using all of [his] body weight and momentum to try to

8    force Barnhill to the ground"; Maynard "struck him in the right side of his face with

9    my right knee"; Barnhill's left hand was controlled; Aguila "punched Barnhill eight

10   times to the right side of his rib cage"; Bishop activated his Taser twice; Bishop

11   "struck him 2 times on the left side of his face/head with my CEW"; and Bishop

12   "grasped Barnhill's ponytail style hair and slammed his face/head into the ground."

13        It is helpful for the jury to learn, based on all of Mr. Clark's training and

14   experience, that the Defendants' force was in violation of basic officer training and

15   POST. It is helpful to the jury to hear testimony that pursuant to basic officer

16   training, the force applied in this matter created a substantial likelihood of causing

17   serious bodily injury, that the Officers used deadly force as defined in the training,

18   and understand that there is a different standard for the use of deadly force. Even in

19   the Defendants' version of events, Barnhill was not an immediate risk of harm to

20   any person and certainly was not an immediate threat of death or serious bodily

21   injury. Therefore, the use of force was inappropriate and unnecessary. Further, Mr.

22   Clark is undisputedly correct as part of the basis for his opinions that Barnhill was

23   unarmed; no weapon was seen on his person; he was on the ground and was not

24   resisting; no warning was given; Barnhill never threatened nor physically harmed

25   any officer; Barnhill was not attempting to flee during the physical encounter and

26   showed several acts of compliance; and Barnhill was seriously injured by multiple

27   officers of superior training and experience. (Clark Decl. at 12-14.) All based on

28   objective video evidence and Officer admissions.

"Expert testimony on police practices and the use of force has generally been found to be admissible in cases involving allegations of police misconduct." *Lopez*, 2010 WL 685014, at \*1; *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) ("Discussing whether the officers' conduct comported with law enforcement standards, the expert relied upon California's Peace Officer Standards and Training…. A rational jury could rely upon such evidence in assessing whether the officers' use of force was unreasonable."); *Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir. 1991) (finding that testimony of "an expert on proper police procedures and policies" was relevant and admissible); *Davis v. Mason County*, 927 F.2d 1473, 1484-85 (9th Cir. 1991) (testimony of plaintiffs' police practices expert that officers violated law enforcement standards properly received).

Mr. Clark's opinions on these matters are based on review of sufficient facts and data, relying on his decades of training and experience, that will assist the jury in determining the issues in this matter. Any concern Defendants have about Mr. Clark's opinions or testimony can be addressed using hypothetical questions based on fact patterns with an evidentiary basis. *See Godinez v. Huerta*, 2018 WL 2018048, at \*6 & n.3 (S.D. Cal. May 1, 2018). In other words, cross examination.

### C.  Mr. Clark is Qualified to Offer His Opinions and Testimony

Notwithstanding Mr. Clark's qualification, reliability and helpfulness, Defendants attack his credibility and claim (1) "Clark is not qualified to opine on intentions, Plaintiff's injuries, and video evidence," and (2) Clark's opinions rely on flawed methodology." With respect to the officers' "intentions," Mr. Clark's reference to the "failure to control their emotions and fears" appears in the context of his opinion that the officers' conduct did not comply with standards and represented a tactical error. He makes no opinions regarding intentions. It is not a stand-alone opinion, and it is based on his review of the body-worn camera videos, deposition transcripts of Defendants, investigative records, and POST learning domains. (Clark Decl. at 3:22-24.) Review of materials, combined with decades of

1    experience, makes his opinions regarding one of many failures of the Defendants

2    reliable and admissible. Mr. Clark's opinions and testimony reflect an understanding

3    as a police practices expert, who must rely on appropriately trained standards in

4    rendering opinions: (i) that POST requires officers to evaluate and control their

5    subjective fears; (ii) that officers may not use force based on subjective fears alone;

6    (iii) that imminent harm is not merely a fear of future harm, no matter how great the

7    fear; (iv) that the totality of the circumstances includes the officers conduct leading

8    up to the force; and (v) that the potential imminence of harm is based on whether a

9    reasonable officer would believe a person has the "apparent intent" to cause harm to

10    another. Mr. Clark, therefore, under the objectively reasonable officer standard, can

11    assist the jury in understanding what a reasonable officer in the same situation

12    _would believe_ Barnhill's _apparent_ intent is given his verbal and physical compliance

13    all documented by the objective video evidence.

14        Next, Mr. Clark makes no opinions based on credibility, intentions, or state of

15    mind, just evidence. Mr. Clark does, as a former leader and trainer of police officers,

16    opine that based on the video evidence and specific training from POST, the

17    Officers displayed a lack of emotional control resulting in overreaction and

18    evidencing a lack of adequate training. As to the injuries, testimony regarding the

19    mechanism of injury based on a review of the case materials does not require

20    medical expertise, particularly where the injuries do not involve obscure medical

21    factors. _See_, _e.g._, _Rascon v. Brookins_, No. cv-14-00749-PHX-JJT, 2018 WL

22    783675, at *6 (D. Ariz., Feb. 8, 2018). Adequately trained officers logically and

23    necessarily must understand what serious bodily injury is to follow the training that

24    defines deadly force as substantially likely to result in serious bodily injury. It would

25    have to be an incompetent officer, like Defendants have proved to be, who are

26    equipped with the means to use deadly force and in a situation where some force

27    may be an option, and yet lack the training, education, and experience to understand

28    that the force they may be thinking to use is deadly force and refrain from the urge.

Mr. Clark's testimony is necessary to educate the jury that a reasonable and adequately trained officer would have recognized the type of force the Officers used on a chest-down, unarmed, and compliant subject, and would not have used such force, including deadly force and intervened to prevent partners from using the same. The Ninth Circuit instructs juries, from the objectively reasonable officer perspective, to consider the extent of the Plaintiff's injury. Ninth Cir. Model Jury Inst. 9.25 (factor 6). Mr. Clark never makes a medical diagnosis; he merely relied on record. Likewise, Mr. Clark does not form any legal conclusions. Instead, Mr. Clark bases his opinions on evidence, training, education, and experience.

Finally, Defendants erroneously claim that Mr. Clark opines on the content of the video evidence. This is not the case. Mr. Clark <u>relied</u> on the video evidence to form his opinions. Mr. Clark's opinions are reliable, with a reliable methodology, because he reviewed and based his opinions on objective evidence. Physical evidence is neutral, does not lose its memory, and does not lie. The Officers' conduct is recorded on their BWC's, which is physical evidence that may be assumed to be accurate evidence of the incident. (See Clark Decl. at 17.) Defendants argue without binding authority that it is somehow improper to use screenshots to summarize and support his opinions. Yet there is nothing improper whatsoever about Mr. Clark relying on video evidence to analyze the Defendants' conduct and isolate the moment of a particular event to show when it occurred and in what context it occurred as explanation for his ultimate opinions. Indeed, the videos offer a more objective view than the Defendants' self-serving deposition testimony that contradicts not only the videos, but the Defendants' own prior statements.

## IV.    CONCLUSION

Mr. Clark's opinions opinions relevant and unreliable under *Daubert*. Mr. Clark's opinions are admissible and Defendants' motion should be denied in full.

/ / /

1  Respectfully Submitted,

2

3  DATED: February 2, 2026    **LAW OFFICES OF DALE K. GALIPO**
                              **GRECH, PACKER & HANKS**
4

5                            By:   /s/ Marcel F. Sincich
                             Dale K. Galipo, Esq.
6                            Trenton C. Packer, Esq.
                             Marcel F. Sincich, Esq.
7                            *Attorneys for Plaintiff*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11                          Case No. 5:23-cv-00589-JGB-SP

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE ROGER CLARK