**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Tel:  (951) 682-9311

*Attorneys for Plaintiff*, HENRY BARNHILL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY BARNHILL,<br><br>  Plaintiff,<br><br>  vs.<br><br>CITY OF HEMET; OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; CATHERINE TIPTON; and DOES 1-10, inclusive,<br><br>  Defendants. | Case No.: **5:23-cv-00589-JGB-SP**<br><br>[*Honorable Jesus G. Bernal*<br>Magistrate Judge Sheri Pym]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF PLAINTIFF'S EXPERT RYAN O'CONNOR**<br><br>Hearing:  February 9, 2026<br>Time:  9:00 a.m.<br>Crtrm:  1 (2nd Floor)<br><br>Trial Date: April 7, 2026<br>Complaint Filed: April 4, 2023 |

## I. INTRODUCTION

This is a federal civil rights action where Plaintiff was brutally beaten by multiple officers, causing a severe ear avulsion, a concussion, and an orbital fracture that has led to Plaintiff progressively losing his eyesight. Plaintiff's designated expert Dr. Ryan O'Connor, a 20-year attending emergency room physician, has opined that (1) Barnhill's injuries did not pre-exist this incident; (2) his head injury was caused by his head being slammed into the ground; (3) his left ear avulsion was caused by blunt force trauma by an object with a blunt edge; (4) his orbital fracture was caused by blunt force trauma; (5) slamming Barnhill's face on the ground and smashing a Taser on the back of his head, created a substantial risk of causing serious bodily injury; and (6) he suffered serious bodily injury. (Doc. 52-18, Dr. Ryan O'Connor Declaration and Attached Rule 26 Report ("Dr. O'Connor Decl"), at 2, 8-9.) These opinions are consistent with Defendants' statements and the video evidence depicting the force that was used, photographs of Barnhill's injuries, and his medical records. Dr. O'Connor's opinions are highly relevant to Barnhill's proof of Officer liability as they show (1) the nature and extent of Barnhill injuries suffered when he was brutally beaten by Defendants, (2) the Officers caused serious bodily injury, and (3) the type of trauma Barnhill suffered posed a substantial risk of causing serious bodily injury. Dr. O'Connor's opinions are also highly relevant to Barnhill's claim for damages. Dr. O'Connor's opinions are based on reliable methods, namely Dr. O'Connor's vast experience in diagnosing and treating trauma and his reliance on voluminous records and video evidence. That is the end of the *Daubert* inquiry.

Perhaps to mask the fact that Defendants never bothered to designate an expert until they designated a largely irrelevant neurologist in rebuttal, they now seek to exclude the highly relevant and reliable testimony of Dr. O'Connor on the grounds that he "is not qualified to render the opinions on two of the three major injuries alleged by Plaintiff: orbital fracture and ear contusion/avulsion." (Mot.,

Doc. 55 at 8:10-12.) It is preposterous to suggest that a 20-year attending emergency room physician is not qualified to discuss a fracture and a traumatic tear that appears in a photograph taken by a Defendant and documented in the medical records, and a concussion supported by photographic and video evidence, and documented in Barnhill's medical records. Defendants may not like the fact that their brutal attack caused serious bodily injuries, classifying their attack as deadly force, but that dislike is not a basis for disqualifying Dr. O'Connor's relevant and reliable testimony. Defendants deposed Dr. O'Connor for less than an hour (Doc. 55-1, Dr. O'Connor Depo at 3 and 32) and now challenge his opinions months later, not because of his qualifications but because his mechanism of injury provides evidence that the Defendant Officers used excessive and unreasonable force. Therefore, Defendants' motion should be denied in full.

Additionally, Defendants' boilerplate motion, apparently referencing "Donnor," exceeds the page limit for a reply brief, fails to follow this Court's Standing Order format for objections to evidence regarding motions for summary judgment, and violates the Local Rules. Defendants filed the instant motion without making any effort to meet and confer with Plaintiff's counsel notwithstanding that the expert report was disclosed on October 10, 2025, and Dr. O'Connor's deposition took place on November 13, 2025, over two months prior to the filing of the instant motion. There is no basis for excusing Defendants' failure to meet and confer, and the motion should be denied on that basis alone. Further, this Motion was filed on January 26, 2026 and noticed for hearing two weeks later, February 9, 2026, in violation of the Court's Standing Order requiring compliance with Local Rule 6-1 (requiring motions to be filed no later than 28 days before the hearing).

## II. RELEVANT FACTS

Plaintiff was not injured prior to being beaten by the Defendant Officers. There were no fractures, no blood, no contusion, no laceration, and no disfigurement on Barnhill's face and head—no serious bodily injury—prior to the use of excessive

and unreasonable force. However, as a direct result of being struck in the face by fists, kneed in the body, kneed in the face, Tased, struck to the back of the head with the Taser, punched in the ribs, and face slammed into the concrete ground, Barnhill suffered a separated ear, cartilage that will never heal; and ear droop, discoloration, and loss of sensation; blown orbital fracture; surgery requiring titanium screws and mesh; loss of orbital muscular strength; sunken in right eye; nerve damage to the lip; trigeminal neuralgia; jolting from eye to tooth; seizures; torn rotator cuff; nightmares; and severe migraines (Exh. C, Barnhill Depo at 137:13-143:19, 150:23-151:8, to Sincich Decl. ¶3); large parieto-occipital hematoma, periorbital swelling, avulsion of ear, pain, headaches, sensitivity to light, concussion, laceration, exposed cartilage, orbital floor fracture, surgical reconstruction, visual disturbance, nerve damage, migraines, and blurry vision (Doc. 52-18, Dr. O'Connor Decl. at 5-8).

To explain his damages and injuries, Plaintiff designated two medical experts to discuss his serious bodily injuries: Dr. Ryan O'Connor, an emergency physician; and Dr. Dana Taenenbaum, a board-certified ophthalmologist. (Exh. A at 2, Barnhill's Initial Rule 26 Expert Designation, to Sincich Decl. ¶1.) Dr. O'Connor's opinions are based on his more than 20 years as an attending emergency room physician. (Exh. B, Dr. O'Connor CV, to Sincich Decl. ¶2.) He reviewed Plaintiff's medical records, Dr. Tanenbaum's report, video of Plaintiff's arrest, photographs of Plaintiff's injuries, and reports of the incident. (Dr. O'Connor Decl. at 2, 4.)

In a fully compliant Rule 26 expert report, Dr. O'Connor presented opinions including: (1) Barnhill "sustained multiple significant concussive injuries to his head and face and complained of multiple symptoms associated with this head trauma"; (2) "Persistent and refractory headaches that begin after sustaining significant head trauma are consistent with traumatic brain injury and post-concussion syndrome"; (3) "Due to the extended duration of Mr. Barnhill's post-concussion symptoms and the fact that they have been refractory to treatment raises concern that his symptoms will be chronic and persistently difficult to treat"; (4) Barnhill's injuries did not pre-

exist the use of force incident; (5) Barnhill's head injury was caused by violent force inflicted by the Defendant Officers, including causing Barnhill's head to be slammed into the ground; (6) Barnhill's left ear avulsion (detachment) was caused by blunt force trauma by an object with a blunt edge; and (7) Mr. Barnhill's orbital fracture was caused by blunt force trauma. (Doc. 52-18, Dr. O'Connor Decl. at 5-9.)

## III.  LEGAL STANDARD

Under Federal Rule of Evidence 702, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The trial court determining the admissibility of an expert's opinion must assess the "reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." The trial court "must assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted).

A party proffering an expert establishes the relevance of an expert's opinion "if the knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano*, 598 F.3d at 565. Reliability is established "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and internal quotation marks omitted). The test "is not the correctness of the expert's conclusions but the soundness of his methodology." *City of Pomona v. SQM North America Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014).

"Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. In conducting its inquiry, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969-70. "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano*, 598 F.3d at 564-65.

IV.   ARGUMENT

   A.   Dr. O'Connor is a Highly Qualified Medical Professional

Dr. O'Connor is qualified to provide all his opinions on this matter. Dr. O'Connor is "board-certified, licensed, and practicing as an emergency physician." Part of Dr. O'Connor's education includes courses in anatomy, physiology, and **neurology**. Dr. O'Connor completed clinical rotations in **neurology**, **ophthalmology**, radiology, medical research, emergency medicine, **biomechanics**, surgical specialties, **general surgery**, medical and surgical critical care, and **traumatic medicine**. Dr. O'Connor earned a Master of Science in criminalistics with education in crime scene reconstruction. Dr. O'Connor has been an attending physician in emergency medicine for 20 years, while he has also been a medical consultant and instructor in emergency medicine. Dr. O'Connor has lectured over a dozen times on soft tissue injuries including contusions, abrasions, and lacerations and six times on **fractures**, **concussions**, and loss of consciousness. Dr. O'Connor is an American College of Emergency Physicians Associate Member, American Academy of Forensic Sciences Professional Affiliate, and California Association of Criminalists Associate Member. (Exh. B, Dr. O'Connor CV at 1-8; Doc. 55-1, Deposition transcript of Dr. Ryan O'Connor ("Dr. O'Connor Depo"), at 6:16-22,

8:10-15.) Dr. O'Connor "is qualified as an expert by knowledge, skill, experience, training, [and] education [to] testify in the form of an opinion" in this matter (see Fed. R. Evid. 702) related to Barnhill's suffered traumatic injuries to his eye, face, and head, including the mechanism of injury, their classification as serious, and whether that mechanism includes a substantial risk of causing serious bodily injury.

As an emergency room physician, Dr. O'Connor is the head of a team of medical professionals who work together to "treat [and] diagnose any and all patients who present to the emergency room and disposition them accordingly." (Doc. 55-1, Dr. O'Connor Depo at 6:24-7:5.) Dispositioning the patient occurs every time—"no one stays in the emergency room," they are either admitted, transferred or discharged—the emergency room physician, like Dr. O'Connor, makes that decision. (*Id.* at 7:6-11.) Emergency medicine includes "identifying and treating acute issues or acute complications related to chronic problem and disposition and treating accordingly." (*Id.* at 7:13-20.)

Based on Dr. O'Connor's 20-years' experience, "Head trauma is a very common complaint in the emergency room." Dr. O'Connor sees head trauma patients nearly every time he is working and has extensive education in head trauma making him qualified to opine on the matter. (*Id.* at 8:16-23.) Dr. O'Connor can also opine in ophthalmology as it relates to emergency medicine. Dr. O'Connor received an education in ophthalmology in medical school and a rotation in his residency. Emergency physicians must "be aware of ophthalmologic issues in the emergency room, specifically identifying emergency issues and making the diagnosis to be able to refer a patient to an ophthalmologist for treatment." (*Id.* at 8:24-10:3.) Dr. O'Connor demonstrated his knowledge and experience in eye trauma and orbital fractures in his deposition testimony including when an orbital fracture requires emergency repair and treatment in the emergency room as opposed to an ophthalmologist referral. (*Id.* at 10:12-12:4.) Likewise, as Dr. O'Connor testified at deposition regarding ear, nose, and throat ("ENT"), it is also taught in medical

school and a rotation in residency to care for certain ENT issues and identify when there is an ENT emergency and where a specific ENT physician is needed to provide care. (*Id*. at 12:5-13.) Dr. O'Connor further explained that certain "[t]rauma to the ear itself…can be handled by the emergency room doctor" and that an ear avulsion "technically, is in the realm of emergency medicine." (*Id*. at 12:25-13:5.)

### B. Dr. O'Connor's Testimony is Based on Sufficient Facts and Data and a Reliable Methodology

Dr. O'Connor reviewed medical records from Riverside University Health Systems (67-199) including months of treatment; Salinas Valley State Prison Health Care records (901-1495); County of Riverside Health Care records (200-895); Sani Eye Center medical records (1497-1524); American Eye Associates records (1568-1572); State of California Health Care records (1526-1536); body-worn camera videos of the incident; photographs of Barnhill's injuries; Hemet Police Department reports describing the incident; the report of Dr. Tannenbaum; report of Rosabel Young; and the deposition of Barnhill. (Doc. 55-1, Dr. O'Connor Depo at 13:24-14:9, 15:4-12; Doc. 52-18, Dr. O'Connor Decl. at 2, 4.)

Dr. O'Connor's reliable methodology that was reliably applied to this matter includes, "review the entirety of the medical records, making notes on the way for anything that stands out…, and after getting an initial overview of the entirety of the medical records, I'll generally go back and review certain key sections to reinforce my opinions and develop them from there." (Dr. O'Connor Depo at 15:16-16:2.) Here, Barnhill did not have any related pre-existing injuries. (*Id*. at 27:15-20.) In this matter, Barnhill "has a single incident where he received multiple blunt force trauma to the head, so [Dr. O'Connor] was reviewing, initially, the emergency room records for descriptions of the acute events related to that physical assault and then follow-up records, looking for lingering complications related to the initial diagnosis. He's had persistent complaints of headaches and vision issues, for example." (*Id*. at 16:20-17:5.) Further, Barnhill's post-concussion syndrome

developed after he suffered a concussion (*Id*. at 23:20-25:13, 26:1-10.) Dr. O'Connor also reviewed the videos to help establish mechanism of injury and photographs that provided visual reference for the description of the injuries that were detailed in the emergency room records. (*Id.* at 17:16-24.) Regarding mechanism of injury, Dr. O'Connor reviewed and compared the description of the injuries from the medical records to officer admission of force in their reports for medical consistency and expectation of injury; explaining that the officer's own words and description of force, where it exists, is easier and more specific then search for the same in a video which could be argued is up to interpretation. (*Id*. at 17:25-18:14, 19:2-10, 29:2-8, 29:18-30:2.) For instance, the Taser impact to Barnhill's head is clearly the cause of Barnhill's ear avulsion whereas the scalp hematoma is from Barnhill's head hitting the ground. (*Id*. at 20:4-21:22, 22:9-19, 23:1-18.) Dr. O'Connor continued that "objective evidence to support" his analysis is "the videos themselves show a very violent and aggressive takedown of Mr. Barnhill. There's plenty of instances of head trauma going on so I would refer to the video itself. It speaks for itself." (*Id*. at 19:11-22.)

   Dr. O'Connor "analyzed the mechanism of injury as described by the police officers in their own words, as well as the video of the arrest, the description of the injuries that he sustained, most described in detail in the emergency room records and substantiated by the accompanying photographs to stablish diagnoses." (*Id*. at 28:6-12.) Further, Dr. O'Connor found that "[t]here is agreement and consistency between the injury mechanism and the resulting diagnoses; and then the complaint that persist the years after are consistent with the initial injuries, which are consistent with the mechanism of injury." (*Id*. at 28:12-17.) As to Barnhill's head injury, Dr. O'Connor testified, "there's a description in the medical records of a large hematoma to the parietal occipital area, the back side of his head; and there's a description in the Hemet Police Department's use-of-force report. Officer Joshua Bishop grasped Barnhill's pony-hairstyle hair and slammed his face, slash, head into

8     Case No. 5:23-cv-00589-JGB-SP
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE DR. O'CONNOR

the ground, which -- that mechanism is very consistent with causing an area of swelling and hematoma to someone's head, so it's consistent and expected." (Dr. O'Connor Depo at 18:4-14.) Dr. O'Connor's opinions are clearly based on sufficient facts and data having employed a reliable methodology.

### C. Dr. O'Connor's Testimony is Relevant and Reliable

Defendants cannot argue the relevancy of opinion evidence regarding Mr. Barnhill's serious bodily injuries; they designated a rebuttal expert to opine as to Plaintiff's injuries and have filed the instant motion seeking to prevent Plaintiff from offering opposing opinion evidence. Defendants' expert offered this opinion notwithstanding an expertise in neurology, not ophthalmology. Moreover, the type and extent of Plaintiff's injuries are undeniably relevant to the issues of the quantum of force, whether such force is indicative of deadly force, and Plaintiff's damages. The opinion evidence is plainly relevant.

The only remaining issue under *Daubert* is whether the evidence is reliable. As set forth above, reliability is established "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. The test "is not the correctness of the expert's conclusions but the soundness of his methodology." *SQM North America Corp.*, 750 F.3d at 1043-44. Dr. O'Connor's credentials as an emergency room doctor are unimpeachable. He has worked for over 20 years as an attending emergency room physician throughout the country. As Dr. O'Connor testified at deposition, an ear avulsion is technically in the realm of emergency medicine. He further testified that an orbital floor fracture with entrapment may require emergency intervention in the emergency room rather than referral to an ophthalmologist. And as to Mr. Barnhill's head injury, Dr. O'Connor testified that the description in the medical records of a large hematoma to the parietal occipital area, the back side of his head, and the description in the Officers' use-of-force reports indicate that Officer Bishop grasped Barnhill's pony-hairstyle hair and slammed his face, slash, head into the ground, which is the

mechanism very consistent with and expected to cause the head injury. The knowledge underlying Plaintiff's head, ear, and eye injuries has a reasonable basis in the knowledge and experience of a 20-year emergency room physician and is well within Dr. O'Connor's knowledge and experience. Dr. O'Connor testified to that effect at depsition. His opinions are reliable and should be admitted.

Notwithstanding the plain relevance and reliability of Dr. O'Connor's opinions, Defendants argue that his opinions are speculative. There is nothing speculative about Dr. O'Connor testifying regarding injuries depicted in photographic and video evidence and documented in voluminous medical records that were all initially evaluated, diagnosed and treated by emergency room physicians like Dr. O'Connor. Nor is it speculation that Dr. O'Connor opined that the injuries are consistent with what the Defendant officers described in their reports and what the video shows. Indeed, it appears Defendants wish to disclaim what they wrote in their reports in favor of their deposition testimony which was given after the lawsuit was filed and an incentive to deflect arose. Reliance on the videos, photos, and Officers initial statements as opposed to the Officers' differing deposition can be taken up on cross examination, but it is not a basis for exclusion. *See Alaska Rent-A-Car*, 738 F.3d at 969.

## V. CONCLUSION

The highly qualified Dr. O'Connor's opinions and testimony are supported by the objective evidence and his 20-years of experience in emergency medicine. Dr. O'Connor's opinions are relevant, reliable, helpful, based on suffienit facts and data, and a reliable methodology. Thus, Defendants' motion should be denied in full.

Respectfully submitted,

DATED: February 2, 2026

**LAW OFFICES OF DALE K. GALIPO**
**GRECH, PACKER & HANKS**

By: /s/ Marcel F. Sincich
Dale K. Galipo, Esq.
Trenton C. Packer, Esq.
Marcel F. Sincich, Esq., *Attorneys for Plaintiff*

# DECLARATION OF MARCEL F. SINCICH

I, Marcel F. Sincich, hereby declare as follows:

I am an attorney duly licensed to practice law in the State of California and the United States District Court for the Central District of California. I am one of the attorneys of record for the Plaintiff. I make this declaration in support of Plaintiff's Opposition to Defendants' Motion to Exclude Dr. Ryan O'Connor. I have personal knowledge of the facts contained herein and could testify competently thereto if called.

1. Attached hereto as "**Exhibit A**" is a true and correct copy of Plaintiff's October 10, 2025, Initial Rule 26 Expert Designation ("**Exh. A, Barnhill Initial Expert Designation**").

2. Attached hereto as "**Exhibit B**" is a true and correct copy of Dr. Ryan O'Connor's Curriculum Vitae, served with his Rule 26 Expert Report ("**Exh. B, Dr. O'Connor CV**").

3. Attached hereto as "**Exhibit C**" is a true and correct copy of the relevant portions of the September 10, 2025, Deposition Transcript of Plaintiff Henry Barnhill ("**Exh. C, Barnhill Depo**").

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 2nd day of February, 2026.

_____
Marcel F. Sincich