**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo, Esq. (SBN 144074)
dalekgalipo@yahoo.com
Marcel F. Sincich, Esq. (SBN 319508)
msincich@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333
Fax: (818) 347-4118

**GRECH, PACKER, & HANKS**
Trenton C. Packer (SBN 241057)
tpacker@grechpackerlaw.com
7095 Indiana Ave Ste 200
Riverside, CA 92506
Tel:   (951) 682-9311

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HENRY BARNHILL,<br><br>             Plaintiff,<br><br>      vs.<br><br>CITY OF HEMET; OFFICER BRETT MAYNARD; OFFICER JOSHUA BISHOP; OFFICER PEDRO AGUILA; CORPORAL DOUGLAS KLINZING; JAMIE GONZALEZ; CATHERINE TIPTON; and DOES 1-10, inclusive,<br><br>             Defendants. | Case No. 5:23-cv-00589-JGB-SP<br><br>[*Honorable Jesus G. Bernal*<br>Magistrate Judge Sheri Pym]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE* NO. 4 TO PRECLUDE USE OF THE TERM DEADLY FORCE [DOC. 66]**<br><br>**FPTC/Hearing on Motions *in Limine*:**<br>Date:   March 16, 2026<br>Time:   2:00 p.m.<br>**Jury Trial**<br>Date:   April 7, 2026<br>Time:   09:00 a.m.<br>Courtroom 1, 3470 Twelfth Street, 2nd Floor, Riverside, California |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This civil rights and state tort lawsuit arises out of the use of excessive and unreasonable force against Plaintiff Henry Barnhill by the Defendant officers. Mr. Barnhill hereby opposes Defendants' Motion *in Limine* No. 4, which seeks to preclude use of the term "deadly force." (Doc. 66.) Defendants' Motion fails because the officers used deadly force, according to their own policy and training, which makes the force used obviously excessive and unreasonable, evidencing the City's unconstitutional customs and ratification of this excessive force, the Officers inadequate training, the Officers carelessness and malicious intent, and intent to deprive Barnhill of his rights.

Plaintiff contends that the Defendant Officers used deadly force against him when Maynard violently kneed Barnhill in the face while Barnhill was unarmed and on the ground; when Bishop struck Barnhill to the back of the head with his Taser twice with such force that the Taser broke; and when Bishop grabbed Barnhill's ponytail, lifted his head off the ground, and slammed it into the ground while the unarmed Barnhill was chest down on the ground with his hands behind his back. There is no dispute that Barnhill suffered serious and permanent bodily injury. At all times relevant, Barnhill was not an immediate threat of death or serious bodily injury, there were reasonable less-intrusive alternatives available, no warning was given, and Mr. Barnhill was not attempting to evade detention. Any reasonable officer would know that striking a chest-down subject to the face and head with their knee, with an improvised weapon, and by lifting and slamming the face and head into the ground creates a substantial risk of causing death or serious bodily injury; and this force in fact caused serious bodily injury.

## II. ARGUMENT

Defendants argue that any use of the term "deadly force" in this case is highly inflammatory, a legal conclusion, and mischaracterizes the actions in

question. However, the Defendant officers did in fact use deadly force against Mr. Barnhill. "'Deadly force' means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm." Pen. Code. §835a(e)(1); *Smith v. City of Hemet*, 394 F. 3d 689, 693 (9th Cir. 2005); *Stephenson v. California*, 761 F.Supp.3d 1242, 1263 (C.D. Cal. 2025). "'Serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; **concussion; bone fracture; protracted loss of impairment of function** of any bodily member or organ; a wound requiring **extensive suturing**; and serious disfigurement." Pen. Code §417.6(b) (emphasis added); 21 U.S.C. §892(25); W.I.C. §15619.67 (including requiring medical intervention including surgery).

Deadly force is not limited to guns. Defendants' conduct in repeatedly beating on Plaintiff's face and head including slamming his head into the ground and smashing a Taser on the back of his head not only created a substantial risk, but indeed caused serious bodily injury. Barnhill suffered an avulsion of left ear – top portion almost entirely cut off and only attached to the ear by a small amount of flesh, closed blow out fracture of orbit, cheek and lip numbness likely due to nerve damage, requiring surgery and reconstruction, and resulting in receiving screws in his face, extensive sutures, and permanent loss of peripheral vision and concussion. Defendants cannot escape the fact they used deadly force during this incident. Deadly force does not become less-lethal force simply because Plaintiff survived or because Defendants did not use a gun.

If Defendant Officers saw a man slamming a chest-down officer's head into the ground and using an improvised weapon to repeatedly strike the back of dead, there is no doubt the Defendant officers would shoot the man dead in defense of the chest-down officer.

In addition, the most important *Graham* factor that the jury will consider is the immediacy of the threat at issue. For less-lethal force, the inquiry is whether

1  the subject posed an immediate threat to the safety of others. *Graham*, 490 U.S. at
2  396. Here, Barnhill did not pose an immediate threat to officers or others. But for
3  deadly force, the inquiry is whether the subject was an immediate and significant
4  threat of death or serious physical injuries to others, and that the deadly force was
5  necessary to prevent death or serious bodily injury. *Tennessee v. Garner*, 471 U.S.
6  1, 3 (1985); *Smith*; 394 F.3d at 702; *Tabares v. City of Huntington Beach*, 988
7  F.3d 1119, 1126 (9th Cir. 2021); *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1076
8  (9th Cir. 2017); Cal. Pen. Code § 835a. Defendants attempt to preclude the use of
9  the term "deadly force" is a clear attempt to avoid having the more strict "deadly
10 force" standard applied in this case.

11      Defendants' alternative request for the use of neutral language is no more
12 than a last attempt to prevent the jury from being instructed on the proper
13 applicable law. While it is Plaintiff's position that no force was necessary,
14 whether it was less-lethal or deadly force, deadly force was clearly used in this
15 case, and the jury is entitled to be instructed as to the relevant law.

### III.  CONCLUSION

    For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion *in Limine* to preclude use of the term "deadly force."

Respectfully Submitted,

DATED:  February 23, 2026        **LAW OFFICES OF DALE K. GALIPO**
                                 **GRECH, PACKER, & HANKS**

                                 By: /s/ *Marcel F. Sincich*
                                     Dale K. Galipo, Esq.
                                     Trenton C. Packer, Esq.
                                     Marcel F. Sincich, Esq.
                                     *Attorneys for Plaintiff*