# "EXHIBIT 1"

# Roger A. Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  rclark9314@aol.com

October 10, 2025

Trenton C. Packer, Esq.
Law offices of Grech & Packer
7095 Indiana Ave Ste 200
Riverside, CA 92506

**Regarding:** **Henry Barnhill, vs. City of Hemet; Officer Brett Maynard; Officer
Joshua Bishop; Officer Pedro Aguila; Corporal Douglas Klinzing; Jamie
Gonzalez; Catherine Tipton, et al., Case No.: 5:23-CV-00589-JGB-SB.**

Dear Mr. Packer:

Thank you for retaining me to analyze and render opinions regarding the April 29, 2022,
use of force (including blows to the head and taser) inflicted on Mr. Henry Barnhill (Mr.
Barnhill) during his apprehension by Hemet Police Department (HPD) Officers Brett
Maynard (Officer Maynard), Joshua Bishop (Officer Bishop), Pedro Aguila (Officer
Aguila), Douglas Klinzing (Corporal Klinzing), Jamie Gonzalez (Officer Gonzalez), and
Catherine Tipton (Officer Tipton).  Pursuant to the requirement of Rule 26, I have
reviewed the HPD reports, video/audio recordings, HPD policies, POST training,
deposition transcripts, and other materials (as listed below) regarding this case provided
to me thus far.  Please be advised that if/when any additional information is submitted,
additional opinions may be required.

It is also necessary to state at the beginning of this report that I do not make credibility
determinations in expressing my opinions.  That is, where there are differences in the
events proffered by Mr. Barnhill, and others, versus those proffered by the Defendants,
and/or others, I do not opine for the trier of fact regarding who are the more believable
witnesses.  I consider that the resolution of any such conflicts is within the purview of a
jury to decide. Relevant to my analysis in this matter is what was known to the Defendant
Officers at the time they used force.

Additionally, it is necessary to state that I am not a lawyer nor a public official who hears
and decides cases brought in court.  My opinions rest on the training given to every POST
certified California Law Enforcement Officer and the reasonable professional standard of
care as expressed and required pursuant to the training provided to every California
certified Law Enforcement Officer.

**Materials Provided and Reviewed Thus Far:**

1.  Pleadings:
    a.  Plaintiff's Complaint for Damages.
    b.  Protective Order Re Confidential Documents.

2.  Criminal Case Documents:
    a.  Criminal Compliant, the People of the State of California, V. Henry Michael Barnhill Aka: Henry Michael Barnhill Dob: 06/09/1978 Booking#: 202216744.
    b.  Hemet Police Department Booking Record (Incident Report(s)).
    c.  DR # 2022-2719 -Supplement-1 Report Hemet Police Department.

3.  Body Worn Camera Recordings and screenshots:
    a.  Officer Maynard.
    b.  Officer Bishop.
    c.  Officer Aguila.

4.  Deposition Transcripts and Exhibits:
    a.  Defendant Officer Joshua Bishop, January 30, 2025.
    b.  Defendant Officer Pedro Aguila, January 31, 2025.
    c.  Defendant Corporal Douglas Klinzing, January 31, 2025.
    d.  Defendant Officer Brett Maynard, April 15, 2025.
    e.  Plaintiff Henry Barnhill, September 10, 2025.

5.  Photographs of Mr. Barnhill's Head Injuries–taken at the Hospital.

6.  2011 Electronic Control Weapon Guidelines.  U.S. Department of Justice Office of Community Oriented Policing Services and Police Executive Research Forum (PERF), Washington, D.C., March, 2011.

7.  TASER International Training Materials and Product Warnings.

8.  City of Hemet Police Department Policy Manual.

9.  POST Basic Learning Domains:
    a.  #00: "Becoming an Exemplary Peace Officer." Version 1.2
    b.  #01. "Leadership, Professionalism and Ethics." Version 5.6
    c.  #02: "Criminal Justice System." Version 6.4
    d.  #03: "Principled Policing in the Community." Version 5.1
    e.  #05: "Introduction to Criminal Law." Version 5.6
    f.  #15: "Laws of Arrest." Version 4.16
    g.  #16: "Search and Seizure." Version 4.8

  h. #20: "Use of Force/Deescalation." Version 5.4
  i. #21: "Patrol Techniques." Version 5.0
  j. #23: "Crimes in Progress." Version 4.1
  k. #30: "Crime Scene, Evidence, and Forensics." Version 5.0
  l. #33: "Arrest and Control." Version 5.1
  m. #34: "First Aid, CPR and AED." Version 6.1

10. Overview of the incident scene via the internet.

**Apparent Uncontested Facts:**

It is important to note at the outset of this report that there are a number of apparent uncontested facts relating to the reasonableness of the force inflicted on Mr. Barnhill by the Defendants based on my review of the video evidence in conjunction with my training, and experience reviewing use of force matters.  They include:

1. Mr. Barnhill never had a weapon in his hands, or on his person during this apprehension.

2. Based on video evidence, Officers Bishop, Aguila and Maynard could, or should have been able to, see that Mr. Barnhill had no weapon in hand.

3. Mr. Barnhill never attempted to reach for a weapon or improvised weapon during the encounter.

4. Mr. Barnhill never produced a weapon during the encounter.

5. Based on video evidence, Mr. Barnhill's clothing showed no bulge, weight distribution, or indication that he was armed with a firearm during the physical encounter.

6. During the use of force inflicted, Mr. Barnhill expressed that he was not a threat, a willingness to surrender and follow instructions – for example, "I am on the ground!," and "I am not refusing (resisting)!"

7. The Defendant Officers did not give a warning prior to using force.

8. Officer Maynard appeared to deliberately tackle Mr. Barnhill causing him to fall into a seated position on a patio chair.

9. Officer Maynard struck Mr. Barnhill to the face twice with his fist.

10.     Officer Maynard struck Mr. Barnhill to the body with his knee.

11.     Officer Maynard pushed Mr. Barnhill's head and face up against the wall.

12.     Officer Bishop Tased Mr. Barnhill in probe mode twice.

13.     Officer Bishop struck Mr. Barnhill to the head with his Taser with such force that the Taser broke off and/or flew out of his hand.

14.     Officer Bishop struck Mr. Barnhill to the face by slamming his head on the ground with such force that blood immediately spattered over the ground.

15.     Officer Aguila struck Mr. Barnhill eight times with his closed fist on Mr. Barnhill's right lower-back.

16.     Mr. Barnhill did not verbally threaten any Officer during the encounter.

17.     Mr. Barnhill did not appear to attempt to strike (i.e., punch or kick) any officer during the encounter.

18.     Mr. Barnhill did not appear to attempt to grab any officer during the encounter.

19.     Mr. Barnhill did not appear to be assaultive throughout the encounter.

20.     Mr. Barnhill did not physically harm any officer.

21.     Mr. Barnhill did not appear to attempt to get up after being taken down during the encounter.

22.     Mr. Barnhill did not appear to flee immediately prior to and during the physical encounter.

23.     Mr. Barnhill did not appear to be resisting throughout the physical encounter.

24.     Mr. Barnhill conveyed pain several times throughout the encounter.

25.     Mr. Barnhill conveyed compliance several times, stating that he is not refusing commands, that he is on the ground, and that his hands

are behind his back as well as stating that he was not doing anything
wrong.

26.    Mr. Barnhill showed several acts of compliance including raising his
hands when first exiting the vehicle, putting his hands up on the
patio chair, going to the ground, going to his stomach, immediately
allowing his left arm to be placed behind his back, and allowing his
right arm to be placed behind his back once there was room to do so.

27.    Mr. Barnhill did not appear to be an immediate threat of death or
serious bodily injury at any time throughout the physical
engagement.

28.    The Defendant Officers were trained that an impact weapon to the
face/head can cause serious injury.

29.    Mr. Barnhill suffered serious injury.

30.    Mr. Barnhill was alone and outnumbered by the Officers, 4 to 1.

31.    The Defendant Officers had superior training and experience.

32.    Mr. Barnhill's height and weight were to no advantage given the
number of officers and his position chest down on the ground.

33.    All the above force occurred within approximately 50 seconds.

34.    Force was applied on Mr. Barnhill by Officers while he was sitting
on a chair, while he was on the ground, and while both hands were
behind his back.

**Brief Overview of Events and Commentary**:

On April 28, 2022, Mr. Barnhill and Ms. Rachel Amanda Warren ("Ms. Warren") resided
together at 354 Gardenia Circle, Hemet, California. During that evening, they became
involved in domestic dispute. According to Ms. Warren, as their argument progressed,
and Mr. Barnhill produced a handgun and pointed it at her. Ms. Warren did not sustain
any physical injuries and did not call 9-1-1.

At the outset, I want to be clear that I am not critical of the Defendant
Officer's duty to respond to domestic violence claims, nor do I minimize the
seriousness of such claims. Law enforcement officers must take these
allegations seriously. Additionally, due to the emotionally driven nature of

such claims, law enforcement officers must control their emotions when
responding to a domestic violence call, as trained. If peace officers allow
emotions to affect their judgment, as we see in this matter, they may lose
control and overreact resulting in unnecessary use of force. An overreaction
to the situation when using force is an unreasonable use of force, as trained.

The next morning, on April 29, 2022, Mr. Barnhill drove Ms. Warren, and her daughter,
to McSweeny Elementary School, located in Hemet, California. During the drive, Ms.
Warren and Mr. Barnhill were not engaged in any physical or verbal dispute and no
weapons were present.

Unbeknownst to Mr. Barnhill, after Ms. Warren walked her daughter to the entry of the
school, she entered the school and called 9-1-1. Ms. Warren's call was related to the prior
night, but she did not say that Mr. Barnhill was presently armed or had committed any
assault on her during the previous night's argument.

> Q.    Okay. But you were not specifically told it [handgun] was on his
>       person?
> MS. KORNBLAU: Objection. Vague and ambiguous. But go ahead.
> A.    Not specifically, no. (Officer Bishop deposition, Page 30)

As Mr. Barnhill awaited Ms. Warren's return, Officers Aguila, Bishop and Maynard
arrived in response to Ms. Warren's call. They parked and exited their patrol cars; each
drew their firearms and pointed them at Mr. Barnhill as he sat in his vehicle. Mr. Barnhill
observed the obvious display of firearms and the risk they posed to his life. Mr. Barnhill
expressed fear several times as it relates to this incident. Officers Bishop, Aguila and
Maynard pursued in their police vehicles when he fled. In the record, the entire pursuit
was brief and only spanned approximately 1.4 miles in approximately 2 minutes and 5
seconds (42 mph average) as Mr. Barnhill drove to his residence. Then Mr. Barnhill
stopped his vehicle in front of his residence and made his way to the front door and
attempted to enter his house.

Mr. Barnhill's hands were visible and empty as he attempted to open his front door and
had no apparent weapons of any kind in his hands or within his reach. For example,
Officer Bishop (the Officer who would thereafter fire his Taser into Mr. Barnhill), has
testified that he observed that Mr. Barnhill's hands were empty.

> Q.    Okay. So then we'll drill down on that a little bit based on that
>       objection. You didn't see a firearm in that right hand; right?
> A.    No.
> Q.    You didn't see a knife in that right hand?

A.    No.
Q.    You saw an empty hand; right?
A.    I saw an open hand that was empty.
Q.    Okay. So you saw an open and empty right hand; right?
A.    Yes.
Q.    With respect to the left hand, you didn't see any firearm in the left
      hand; correct?
A.    No.
Q.    No knife in the left hand; right?
A.    No.
Q.    So you also saw an empty and open left hand; is that right?
A.    Yes.
Q.    And again, to clarify, that was at the point when he initially complied
      with your directive to show you his hands; is that right?
A.    Yes. (Officer Bishop deposition, Pages 35-36)

As Mr. Barnhill ran from his car to his front door, the Officers followed close behind.  At
the front door Mr. Barnhill was immediately tackled and pushed into the wall and into a
seated position on the patio chair on the front porch by Officer Maynard and then
pummeled/piled upon by the other officers. During the encounter, Mr. Barnhill is
recorded as shouting, "I'm on the ground!" and "I'm not refusing (resisting)!".  (A clear
expression of surrender).

A significant collective infliction of force occurred before Mr. Barnhill was handcuffed.
It included a use of a Taser (and resultant apparent incapacitation) in dart mode, closed-
fist punches to his head, knee and punches to the body, blows to his head by the Taser,
and blows to his head into the cement structure of the house and ground.

During the encounter, Mr. Barnhill was unarmed, was not attempting to resist detention
or arrest, was not assaultive, had stopped his flight from apprehension, and did not
verbally threaten any Officer. Mr. Barnhill was mostly chest-down on the ground during
the group assault by Officers, including with one hand behind his back and with both
hands behind his back. Accordingly, while at the door and thereafter, Mr. Barnhill was
not a credible threat to the Officers, or any other person, worthy of the extreme force
inflicted.

Mr. Barnhill was subjected to unreasonable and excessive force (as defined by basic
officer training), inflicted when he was tackled, punched, kneed, Tased, had his face
slammed into the ground while subdued, struck in the head with the Taser as an
improvised weapon twice, and repeatedly punched in the lower back.

As a result of the excessive and unreasonable force, Mr. Barnhill suffered serious bodily injury to his head and face resulting from the force inflicted - a blowout fracture to his orbital floor, an ear avulsion, and a large parieto-occipital hematoma (from the record). Mr. Barnhill's injuries required emergency surgical intervention. Mr. Barnhill continues to suffer pain to this day.

In investigations, physical evidence looms large.  Physical evidence is considered as naturel (taking no side), does not lose its memory, and tells the truth.  The use of force by the Defendant Officers was recorded by the individual officer's BWC's (as listed above). I consider them to be accurate and apparent uncontested physical evidence of the incident, and in harmony with Mr. Barnhill's allegations. Accordingly, the BWC videos are the primary source of evidence in my evaluation of this matter.

Nevertheless, the Defendant Officers' statements provide useful context in this regard:

**<u>Officer Maynard Crime Incident Report Narrative:</u>**

"<u>Origin</u>:"

"On 04/29/2022, at approximately 0735 hours, I responded to the McSweeny Elementary School located at 451 W. Chambers Ave. (City of Hemet, County of Riverside) reference an assault with a deadly weapon. The victim, who will be identified in this report as V1, told Hemet Police Dispatch that her boyfriend, Henry Barnhill, had pointed a firearm at her face the evening prior, and said Barnhill was waiting for her outside the school in a vehicle. The victim told Police dispatch she had been able to distance herself from Barnhill after they drove her child to school."

"At approximately 0742 hours, Cpl. Reynoso (#10550) arrived in the area and located the victim inside the school. The victim told Cpl. Reynoso that Barnhill was in a black Dodge Challenger outside the school and Cpl. Reynoso broadcasted that information over the radio."

"I arrived in the area at approximately 0745 hours in a marked Hemet Police vehicle, and l was wearing a full Hemet Police Officer uniform (Class D) which included a black outer vest with clothe badge, and "POLICE" patches on front and back. Additionally, I had Hemet Police Department patches on both shoulders and a duty belt with attached equipment around my waist."

"Within seconds of my arrival on scene I saw a black 2019 Dodge

Challenger bearing a plate of 8RUU690 parked on the north side of Chambers Avenue near the intersection with South Gilbert St. I saw that was the only black Dodge Challenger on the street, and I broadcasted the vehicle's license plate information. Assisting uniformed Hemet Police officers Aguila (#10832) and Bishop(#10803) arrived on scene within seconds and parked behind it."

"The two officers attempted a felony traffic stop using marked Hemet Police Department vehicles and forward facing solid red lamps. I parked behind the other officers and exited my vehicle to assist in the stop after activating my own forward facing solid red lamp. I watched as the vehicle started and fled from the stop at a high rate of speed. I broadcasted over my police radio that the vehicle was "taking off"."

"Based on the available information at that time, Barnhill was suspected to be in a vehicle matching the color, make, and model of the one fleeing from the traffic stop. Barnhill was suspected of assaulting his girlfriend by pointing a firearm at her face, which would be a violation of California Penal codes 273.5(a), 245(a)(2), and 417. In the moment, Barnhill was believed to be a violent fleeing felon. Hemet Police officers Bishop and Aguila gave chase in the same marked police vehicle, and I gave chase behind them in my marked police vehicle."

"Barnhill evaded both marked Hemet Police vehicles using forward facing red lamps and audible sirens for a total of approximately 1.4 miles throughout the City of Hemet. Barnhill's driving actions were reckless and he drove with wanton disregard for the safety of the public. During the pursuit, Cpl. Reynoso broadcast over the radio that Barnhill was believed to have access to a semi-automatic firearm and was a violent felon. Please see Officer Aguila's and officer Bishop's supplemental reports regarding Barnhill's driving actions and actions taken at the termination point of the pursuit."

"Barnhill stopped the vehicle in the area of Gardenia Circle and Magnolia Circle (City of Hemet, County of Riverside) and fled from the vehicle on foot as officers stopped their vehicles close behind him. I could see Barnhill was wearing an oversized, dark hooded sweatshirt which concealed his waistband. I exited my vehicle and watched as Barnhill turned away from officers as he ran and reached both of his hands towards the front of his waistband. Based on my training and experience, I know it is common for persons to conceal deadly weapons such as firearms in or near their

waistband. As I watched Barnhill reach for his waistband I was fearful that he was attempting to produce a firearm."

"I chased Barnhill on foot and gave commands to Barnhill to "show us your hands! Do it now, show us your fucking hands !" as he ran onto the property of the residence located at 354 Gardenia Circle. (City of Hemet, County of Riverside). Barnhill complied by lifting his hands up to his chest height, but was still running away from me and towards the front door of the residence.

At that moment, I did not know whom the residence belonged to, and was unaware the residence was actually the registered address of the victim."

"As I ran towards him, l saw Barnhill had a bunch of keys in his right hand, and was reaching for the front door handle. Based on my training and experience, I know it is common for violent fleeing felons to store deadly weapons including firearms inside residences. I also know it is common for fleeing felons to barricade themselves inside residences to prolong or attempt to prevent capture, or possibly take another person as a hostage. Based on those reasons, I was intent on preventing Barnhill from entering the residence and I tackled him away from the front door before he could open it. As I tackled him, I ordered him to, "get the fuck on the ground" multiple times."

"I tried to grab Barnhill's right wrist with my left hand, but he pulled it away from me and towards his body. At the same time, Barnhill struck me in the chest with his left knee, in violation of 69 PC. I then regarded Barnhill not only as a violent fleeing felon, but also an assaultive and resisting violent fleeing felon. Again, I believed Barnhill was trying to retrieve a firearm from within his clothing, so I punched him in the front of his face with a closed right fist in an effort to distract him from reaching towards his clothing. This was effective, as Barnhill brought his hands up near his face as I said, "get on the ground" an additional time. Barnhill continued to resist my efforts to grab his right arm by flailing his arms around in the air, and I saw him pull his left arm away from Officer Aguila's grasp as well."

"I heard Officer Bishop shout a warning, "taser , taser!" and I heard the audible noise of the taser being deployed in probe mode. I saw the taser was ineffective, as Barnhill was still able to manipulate his limbs and push against my chest with his left hand. Officer Aguila and I pulled Barnhill towards the ground and had to forcefully shove him face down into a

semi-prone position. It should be noted, Barnhill was approximately 5'03" tall and weighed in excess of 250lbs. At the time, I stood 5' 08" and weighed just under 160lbs. I was using all of my body weight and momentum to try to force Barnhill to the ground, and I saw Officer Aguila was heavily involved in doing the same. Even with our efforts, Barnhill was able to pull his hand underneath his body and place them approximately shoulder width apart in a "push-up" position. I felt Barnhill was tensing the muscles in his arms and shoulders as we continued to try to grab his arms while telling him to put his hands behind his back. Barnhill was shouting, "I'm on the ground, I'm not refusing" but even while saying that he was still tensing his muscles and pulling his hand away from me. The actions by Barnhill continued to show he was actively resisting my efforts to take him into custody and was not trying to surrender to me."

"At one point, Barnhill shook my hands off of his right hand and I lost control of that limb. Barnhill pulled his right hand close to his body and reached towards the right front side of his waistband. In fear Barnhill was still trying to arm himself with a deadly weapon, I struck him in the right side of his face with my right knee one (1) time. This was effective, as Barnhill immediately brought his right hand up by his face in order to prevent me from striking his face again. I was able to pull Barnhill's right away from his face with both of my hands, and started to pull it behind his back, but he flexed the arm straight down by his side and near the front of his waistband again. Again, I feared Barnhill was reaching for a deadly weapon, and the firearm said to have been used in the crime against the victim was unaccounted for. It wis at this point I saw Officer Bishop grab Barnhill by the hair as I used my full body weight to pry Barnhill's right arm and hand away from his waistband using my right elbow as a fulcrum against his right elbow. At that time, Cpl. Klinzing (#10345) ran up to the front door and used his right hand to assist me in pulling Barnhill's hands towards the center of his back. At that time I yelled, "got his hands!" and I was able to secure Barnhill in handcuffs without further use of force. I did not see any further use of force against Barnhill by any officer present after I shouted that his hands were secured."

"Again, please see Officer Bishop's and Officer Aguila's supplemental reports for additional information regarding the apprehension of Barnhill and each officer's actions taken during the process." (Officer Maynard Narrative, Pages 1 of 33 through 3 of 33).

Officer Maynard tackled Mr. Barnhill, forcing him into the wall and to fall into a seated

position on the nearby patio chair, then went hands on using force against Mr. Barnhill to take him into custody. Officer Maynard kneed Mr. Barhill to the body, fist-punched him to the face, hammer-fisted him to the face, pushed his head against the wall, and contributed to securing Mr. Barnhill's right arm.

## Summary of Officer Aguila's involvement:

"I immediately exited Officer Bishop's police vehicle and gave chase after Barnhill. I commanded Barnhill to place his hands in the air, where Officer's could see them. Barnhill attempted to open the front door of the location but was tackled into a patio chair by Officer Maynard. I arrived and grabbed Barnhill's left wrist. After Barnhill was taken to the ground, I placed his left arm behind his back … I punched Barnhill eight times to the right side of his rib cage." (Officer Aguilla Supplemental Report Narrative)

Officer Aguila had approximately five years of experience in law enforcement at the time of the incident. Officer Aguila went hands on with Mr. Barnhill and used force to secure his left hand and arm. Officer Aguila struck Mr. Barnhill with his fist eight times to Mr. Barnhill's right lower back area.

## Summary of Officer Bishop's involvement:

"As Barnhill ran, I gave him several commands to put his hands behind his back and for him to show officers his hands. Barnhill initially complied by placing both his hands/arms in the air, but continued running toward the front gate entrance … Barnhill attempted to unlock the front door of the residence, but was contacted by officers prior to Barnhill being able to unlock the front security door."

"Officer Maynard was able to assist Barnhill onto a patio chair, which was located near the front security door. Officers gave Barnhill commands to get down on the ground as he was in a seated position on the patio chair … Officer Aguila was able to gain control of Barnhill's left arm/hand ..."

"…I told officers to move out of my way. I drew my Conducted Electrical Weapon (CEW) and pointed it at Barnhill. I deployed my CEW and both probes struck Barnhill. One of the probes struck him in the abdomen region and the other in the left thigh area."
…

"Barnhill was then placed onto his buttocks by officers and ordered to get down on the ground. Officers were able to roll Barnhill over onto his

stomach … I then re-energized my CEW for another 5 second cycle …"

"Officer Aguila was able to place Barnhill's left arm/hand behind his back …"

"… I struck him 2 times on left side of his face/head with my CEW …"

"ln an an attempt to immobilize Barnhill, so officers could place Barnhill into handcuffs, I grasped Barnhill's ponytail style hair and slammed his face/head into the ground …"  (Officer Bishop Use of Force Report Narrative).

Officer Bishop was equipped with his body-worn camera, pepper spray, a Taser, and his firearm. Officer Bishop had approximately four years of law enforcement experience at the time. Officer Bishop did not have any specific information that Mr. Barnhill was armed with a firearm during the incident. Officer Bishop had no knowledge of Mr. Barnhill from prior contacts.

According to Officer Bishop, as Mr. Barnhill was running away from officers, Officer Bishop commanded Mr. Barnhill to show his hands, to which Officer Bishop admits that Mr. Barnhill initially complied. Officer Bishop saw both of Mr. Barnhill's hands and saw that he was unarmed. The foot pursuit ended at the front door of the house where Officer Maynard pushed Mr. Barnhill away from the front door and into a patio chair. Multiple Officers went hands-on with Mr. Barnhill and took him to the ground. During the process, Officer Bishop deployed his Taser in probe move for a 5-second cycle on Mr. Barnhill. Officer Bishop broadcasted their location and requested assistance (more resources). Officer Bishop never saw any weapons in Mr. Barnhill's hands or on his person.

Once on the ground, Officer Bishop recharged the Taser and deployed second 5-second cycle on Mr. Barnhill. While Mr. Barnhill was chest down on the ground, which one officer controlling his left arm behind his back and with other officers working on moving his right arm behind his back, Officer Bishop struck the left side of Mr. Barnhill's head with his Taser two times. Officer Bishop used such force that the Taser broke off and/or flew out of his hand after the second head strike. Officer Bishop was not specifically trained to use the Taser as an improvised weapon. After the Taser flew out of his hands, Officer Bishop engaged hands-on with Mr. Barnhill.

Officer Bishop grabbed the back of Mr. Barnhill's hood/head including his ponytail and slammed his face and head to the ground then pushed Mr. Barnhill's head to the ground.

The door to the house was closed throughout the entire incident. Officer Bishop

recognized that as a result of the force used against Mr. Barnhill, he suffered "abrasion/laceration" and "obvious disfigurement."

As noted above, Officer Bishop used his Taser on Mr. Barnhill despite having not seen any weapon in Mr. Barnhill's hands and seeing at the time that Mr. Barnhill was not standing or aggressing. As recorded, he pointed his Taser at Mr. Barnhill, announced, "taser, taser, taser" and fired his Taser into Mr. Barnhill. Officer Bishop allowed the Taser to run one cycle (five seconds) and held his finger on the trigger, so the Taser would cycle for another five seconds.

> Q.   Okay. So you actually deployed the probes one time for five seconds; right?
> A.   Yes.
> Q.   And then recharged the Taser for another five seconds; right?
> A.   Yes. (Bishop, Pages 47 - 48)

Officer Bishop deployed his Taser on Mr. Barnhill in probe-mode twice, each a five-second cycle designed to cause neuromuscular incapacitation. Officer Bishop went hands on and use force to take Mr. Barnhill into custody, including by pulling on his hood, using the Taser twice as an improvised weapon to strike Mr. Barnhill's head, and slamming Mr. Barnhill's head on the ground.

**<u>Summary of Corporal Klinzing's involvement:</u>**

Corporal Klinzing was a field supervisor with HPD and had over 20 years of experience in law enforcement at the time. Corporal Klinzing saw the vehicle stop and saw Officers Aguila, Bishop and Maynard foot-chase the subject toward the front of the house. Corporal Klinzing joined the officers' engagement with Mr. Barnhill. According to Corporal Klinzing, Officer Aguila was controlling Mr. Barnhill's left hand while the other two officers were in the process of getting Mr. Barnhill's right hand behind his back. Corporal Klinzing joined in that effort. During that time, officers were striking Mr. Barnhill. During this encounter, Corporal Klinzing heard Mr. Barnhill say something to the effect of, "My hands are behind by back" and "I'm not resisting." Additionally, Corporal Klinzing did not see a firearm or knife on Mr. Barnhill.

**<u>POST Training Regarding Force Options</u>**

Law Enforcement Officers are trained by POST and department policy that a subjects' resistance/actions to an arrest will determine the type of force used by peace officers. The following chart illustrates how a subject's resistance/actions can correlate to the force applied by an officer:

| Subject's Actions | Description | Possible Force Option |
|---|---|---|
| Compliant | Subject offers no resistance | - Mere professional appearance<br>- Nonverbal actions<br>- Verbal requests and commands<br>- Handcuffing and control holds |
| Passive non-compliant | Does not respond to verbal commands but also offers no physical form of resistance | - Officer's strength to take physical control, including lifting/carrying<br>- Pain compliance control holds, takedowns and techniques to direct movement or immobilize a subject |
| Actively resistant | Physically evasive movements to defeat an officer's attempt at control, including bracing, tensing, running away, or verbally or physically signaling an intention to avoid or prevent being taken into or retained in custody | - Control holds and techniques to control the subject and situation<br>- Use of personal body weapons to gain advantage over the subject |
| Assaultive | Aggressive or combative; attempting to assault the officer or another person, verbally or physically displays an intention to assault the officer or another person | - Use of devices and/or techniques to secure compliance and ultimately gain control of the situation<br>- Use of personal body weapons in self-defense and to gain advantage over the subject |
| Life-threatening | Any action likely to result in serious bodily injury or death of the officer or others | - Utilizing firearms or any other available weapon or action in defense of self and others to stop the threat |

NOTE:    Officers must consider the *totality of the circumstances* when selecting a force option. It is not the intent of this chart to imply that an officer's force options are limited based on any single factor. A key principle in maintaining public trust and respect is ensuring that any use of force is reasonable.

(LD 20: Chapter 3 – Force Options, pages 3-6 & 3-7)

Additionally, an entire chapter in POST Learning Domain #20 is devoted to the consequences of using unreasonable force "Peace Officer and Agency Liability." Cruelty and malicious assaults are absolutely forbidden:

| | |
|---|---|
| **Unreasonable force** | An officer will be found to have used unreasonable force when the type, degree, or duration of the force which was used is found to have been greater than that which was objectively reasonable under the totality of the circumstances confronting the officer at the time that the force was used. The objective reasonableness analytical process was explained in previous chapters. |
| **Consequences of unreasonable force** | An officer who uses more force than is objectively reasonable faces the possibility of criminal prosecution, civil liability, and/or agency administrative sanctions. |

(LD 20: Chapter 7 – Peace Officer and Agency Liability, page 7-5)

Officers are also trained that although Penal Code Section 834a states that the person being arrested must submit to an arrest, if unlawful or unreasonable force is used to effect the arrest, the person being arrested may lawfully resist to overcome that force. The penal code sections include: Section 692 (Lawful resistance to the commission of a public offense may be made by the party about to be injured or by other parties); Section 693 (Resistance sufficient to prevent the offense may be made by the party about to be injured to prevent an offense against his person, or his family or some member thereof. To prevent an illegal attempt by force to take or injure property in his lawful possession; and Section 694 (Any other person, in aid or defense of the person about to be injured, may make resistance sufficient to prevent the offense)." As stated above, the necessity for a direct intervention by officers occurs in the context of the "totality of circumstances."

Under the facts cited above, once Mr. Barnhill sat down and gave up, he was nothing more than "compliant" (had not been issued any warnings or orders) and thereafter did not display "assaultive," "combative," or "life-threatening" behavior. Accordingly, considering the totality of this incident, nothing more than officer presence, verbal skills, firm grip, and/or grappling to handcuff would be justified, as trained.

## Consequences of Blows/Kicks/Punches to the Vulnerable Parts of the Body:

It is also important to note that Mr. Barnhill sustained injuries that appear consistent blows to his head (blowout fracture to his orbital floor, an ear avulsion, and a large parieto-occipital hematoma). Officers are trained that blows to the head can result in

serious injury and death, and are not to use blows to the head absent the protection of life. In my opinion, no Officer's life was in danger; therefore, any blows to Mr. Barnhill's head violate basic officer training.

> "Punches to the head or face can cause severe injuries to the individual, and additionally carry a high risk of injury to the deputy using such force. Deputies should only use this extremely dangerous level of force where lower force levels are not available or are ineffective, especially when the individual is already handcuffed and less severe use of force alternatives are available. See Graham, 490 U.S. at 396. LASD's Deputy Field Operations Manual and Defensive Tactics Manual state that "personnel are discouraged from striking an attacker's head with a fist," and encourages deputies "to use an open hand palm heel strike to lessen the potential of cutting injuries." LASD policy prescribing situational uses of force essentially ranks head strikes as akin to deadly force, stating they are appropriate only when a subject's behavior is "likely to result in serious injury or possibly in the death of a person." Punches to the face, as opposed to the head, are not considered deadly force, but this poor tactic can result in more injury to a subject and a deputy. The pattern of head and face strikes against handcuffed individuals we observed in LASD appears unreasonable under the Fourth Amendment." (DOJ Correspondence: "Investigation of Los Angeles County Sheriffs Department Stations in Antelope Valley," June 28, 2013, Page 32.)

Accordingly, I am very concerned at the significant number of injurious blows inflected on Mr. Barnhill (blowout fracture to his orbital floor, an ear avulsion, and a large parieto-occipital hematoma). As stated above, any use of force must be considered by the "objectively reasonable" standard (as taught by POST). In this regard, it is necessary to include the POST training given to all officers to consider the very serious consequences - including death – violent blows to specific parts of the body and that any intentional strikes to these areas (such as occurred here) must be "objectively reasonable." They are listed as (LD #33: "Arrest and Control," Use of Impact Weapons, page 6-7.):

- Face,
- Throat,
- Heart,
- Groin,
- Head,
- Neck,
- Spine and
- Kidneys.

**Professional Standards and Considerations Regarding the Use of Deadly Force:**

Law enforcement officers in California are trained that:

- The use of deadly force is the most serious decision a peace officer may ever have to make. Such a decision should be guided by the reverence for all human life (including the officer's life and others that may be in imminent danger) and, used only when other means of control are unreasonable or have been exhausted. (POST Learning Domain #20: "Use of Force.")
- Deadly force applied by a peace officer is force that creates a substantial risk of causing death or serious bodily injury. (POST Learning Domain #20: "Use of Force.")
- Reverence for all life is the foundation on which the use of deadly force rests. The authority to use deadly force is a tremendous responsibility given to peace officers by the people who expect them to exercise that authority judiciously. In the law enforcement/community partnership, peace officers are expected to be self-disciplined and accountable, which helps build community trust and respect. (POST Learning Domain #20: "Use of Force.")
- An officer may use deadly force to protect oneself or others when the officer has the objective and reasonable belief that his/her life, or the life of another, is in imminent danger of death or serious physical injury based upon the totality of the facts known to the officer at the time. (POST Learning Domain #20: "Use of Force.")

The decision of whether or not to use deadly force may be influenced by, but not limited to, the officer's:

- training and experience
- judgment
- mental alertness
- existing facts and circumstances
- understanding of state law, case law, and agency policy
- (emotional maturity)

(POST Learning Domain # 20: "Use of Force.")

A peace officer is justified in using deadly force upon another person only when the officer reasonably believes, based on the totality of the

Page 18 of 33

circumstances, that such force is necessary… to defend against an imminent threat of death or serious bodily injury to the officer or to another person. *(Penal Code Section 835a(c)(1)(A))* (POST Learning Domain # 20, page 4-4.)

**Serious bodily harm or injury** means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing, and serious disfigurement. (*Penal Code Section 243(f)(4)*)

**Deadly force** means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm. (*Penal Code Section 835a(e)(1)*)

**Imminent** means: a threat of death or serious injury is "imminent" when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that, from appearances, must be instantly confronted and addressed. *(Penal Code Section 835a(e)(2))*

**Totality of the Circumstances** means all facts known to the peace officer at the time, including the conduct of the officer and the subject leading up to the use of deadly force. *(Penal Code Section 835a(e)(3))*

NOTE:        *Penal Code Section 835a* prescribes the circumstances under which a peace officer is authorized to use deadly force to effect an arrest, to precent escape, or to overcome resistance. In determining whether deadly force is necessary, officers shall evaluate each situation in light of the particular circumstances of each case and shall use other available resources and techniques if reasonably safe and feasible to an objectively reasonable officer. *(Penal Code Section 835a(a)(2)).*
(POST Learning Domain # 20, page 4-7.)

According to *Penal Code Section 835a*, **fear** alone does not justify the use of deadly force. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.

Tactical repositioning or other de-escalation tactics is not "retreat."
(POST Learning Domain # 20, page 4-8.)

**POST Re-evaluation of Force Requirement:**

"Peace officers must use the force option(s) appropriate for the situation as conditions may change rapidly. Officers must continually reevaluate the subject's actions and the practical considerations involved in the situation and must be prepared to transition as needed to the appropriate force options (deescalate or escalate), so as to always remain within the bounds of conduct which is objectively reasonable under the circumstances."
(POST Learning Domain 20, page 3-7.)

In my opinion, especially when considering the video evidence that is documented related to this group-assault on Mr. Barnhill, the Officers could not have reasonably believed that Mr. Barnhill was an imminent threat of death of serious bodily injury at the time of the force; Mr. Barnhill was not assaultive immediately prior to or during the force applied; and Mr. Barnhill was not actively resistant immediately prior to or during the force applied.

<u>**Information and Training Regarding the Taser Weapon:**</u>

The Taser is classified as an Electronic Control Weapon (ECW) [originally called Conducted Energy Device - CED], and is a unique use-of-force tool typically used by law enforcement officers to overcome a suspect's assaultive/combative behavior. The most common ECWs in use throughout the nation are manufactured by Taser International, now called Axon Enterprise.

The Taser is designed to discharge electrical charges into a subject to create involuntary muscle contractions that override the suspect's voluntary motor responses. The weapon has three modes of use: "probe," "touch-stun," and "elongated stun" modes. Projectiles with wires are contained in an ECW cartridge. When fired in the probe mode, a cartridge projects, through a set of wires, a pair of barbs (or darts with hooks) that attach to clothing or penetrate the skin after the Taser is fired, delivering an electrical charge. As the barbs penetrate, the electrical current is sent down the wires and through the body between the two barb points. The application of the electrical energy painfully influences and incapacitates the subjects' muscles and nerves.

The effect of the Taser on a suspect through the application of an electrical pulse is called "neuromuscular incapacitation" (NMI). The NMI pulse provides electrical energy that provides the officer the ability to dominate a suspect's motor nervous system by interfering with electrical signals sent to the skeletal muscles by the central nervous

system. Since the incapacitation is proportional to the muscle mass captured by the NMI, the amount of distance between the two probes when they embed is directly proportional to the effectiveness of the NMI. It must be also noted that the infliction of pain occurs regardless of the distance between the two probes. Thus, despite the distance between the embedded probes (and NMI result), significant pain is inflicted regardless of the existence or absence of NMI.

**Standards Regarding the Use of the Taser Weapon:**

The U.S. Department of Justice (DOJ), the International Association of Chiefs of Police (IACP), the Office of Community Oriented Policing Services (COPS), the Bureau of Justice Assistance (BJA), the National Institute of Justice (NIJ), and other policing organizations and associations developed and published in 2006 and 2011 defining documents regarding the use of the Taser weapon (listed as item 16 on page 3 of this report.) Among other issues, 53 specific and necessary guidelines governing the use of the Taser weapon are listed in the 2011 publication. These guidelines include limiting taser use to no more than 3 cycles (15 seconds) and to avoid firing the weapon into the chest. As such, the 2006 and 2011 publications expresses the accepted professional standard of care and as endorsed by the U.S. Department of Justice. They have not been revised since 2011.

*TASER Training/Warnings Sent To All User Agencies Regarding Chest Shots:*

Following the original 2006 DOJ publication, in 2009 TASER International published *Training Bulletin 15.0* which acknowledged and endorsed the DOJ 2006 published guidelines (including the 15 second limit), and added to their training to avoid firing the darts into the chest. This product warning was acknowledged in the 2011 DOJ publication as follows:

"In October 2009, TASER International released "Training Bulletin 15.0 Regarding Medical Research Update and Revised Warnings," which offered a new preferred target zone for ECWs. It lowered the recommended target area from "center of mass" to "lower center of mass" for front shots. By avoiding the chest whenever possible, TASER International indicated that law enforcement agencies may avoid the "controversy about whether [ECWs] do or do not affect the human heart." (DOJ 2011 Publication, page 37.)

Since 2009, the TASER International Training/Certification lesson plans and their Product Warnings have included the 15 second limit and the increased risks to the heart when taser darts are fired into the chest.

"Experts have identified dart-to-heart distances and transcardiac (across the

heart) vectors as being key determining factors in whether an ECD can affect the heart. *The further an ECD dart is away from the heart the lower the risk of affecting the heart.*" (Taser Version 18 User Update (2012), page 44. Emphasis added.)

When the DOJ updated the 2006 publication in 2011, they included even more specific cautions regarding the medical risks connected to a Taser's use on a subject are quoted as follows:

*"Medical Considerations: Repeated or multiple applications may increase risk of death:"*

"It is important to recognize that ECWs have been cited by medical authorities as a cause of, or contributing factor in, some deaths. A number of factors appear to be associated with fatal and other serious outcomes. These factors include how the ECW was used and the physical or medical condition of the subject who received an ECW application. Indeed, in July 2010 the American Academy of Emergency Medicine issued a Clinical Practice Statement advising physicians that they should consider additional evaluation and treatment for individuals who experienced an ECW application longer than 15 seconds."

"Although causation factors are not clear, the most common factors that appear to be associated with fatal and other serious outcomes include 1) repeated and multiple applications, 2) cycling time that exceeds 15 seconds in duration, whether the time is consecutive or cumulative, and 3) simultaneous applications by more than one ECW. Officers must be trained to understand that repeated applications and continuous cycling of ECWs may increase the risk of death or serious injury and should be avoided." (Page 13.)

*"Medical Considerations: High-risk populations:"*

"Some populations currently believed to be at a heightened risk for serious injury or death following an ECW application include pregnant women, elderly persons, young children, visibly frail persons or persons with a slight build, persons with known heart conditions, persons in medical/*mental crisis*, and persons under the influence of drugs (prescription and illegal) or alcohol. (Emphasis added.) Personnel should be trained about the medical complications that may occur after ECW use and should be made aware that certain individuals, such as those in a state

of excited delirium, may be at a heightened risk for serious injury or death when subjected to ECW application or other uses of force to subdue them." (Page 14.)

*"Drive Stun: Avoid use as a pain-compliance tactic:*"

"The most commonly used ECWs can be used in two modes: probe and drive stun. Many police managers and officers erroneously believe that applications of drive stun are as effective as applications with probes, but that is not correct. The drive stun mode can be used to complete the circuit in the event that one of the probes is ineffective or becomes dislodged. The drive stun mode can also be used in close quarters for the purpose of protecting the officer or creating a safe distance between the officer and subject. Absent these circumstances, using the ECW in drive stun mode is of questionable value. The primary function of the drive stun mode, when not used to complete the circuit, is to gain subject compliance through the administration of pain. Using the ECW to achieve pain compliance may have limited effectiveness and, when used repeatedly, may even exacerbate the situation by inducing rage in the subject. For these reasons, agencies should carefully consider policy and training regarding when and how personnel use the drive stun mode, and should discourage its use as a pain compliance tactic. Drive stun has an applicable but limited purpose that should be taught, explained, and monitored during ECW training and field use." (Page 14.)

**Opinions Thus Far:**

1.      From my review of the materials provided, the use of force inflicted on Mr. Barnhill by the Defendants was inconsistent with basic law enforcement training and violated basic POST standards and the standard of care pursuant to POST and officer training - in other words, was excessive and unreasonable as defined by POST. Across the nation, for decades, law enforcement agencies have been training their personnel in proper tactical responses, use of force options, and restraint techniques for individuals taken into custody. The aim of this training is to prevent injuries, such as the ones that occurred in this case (including blowout fracture to his orbital floor, an ear avulsion, and a large parieto-occipital hematoma). These methods are well-known and proven effective for the safety and welfare of both officers and the public. The Officers in this case utterly failed

to follow these standards and their training in this incident. Had they done so, Mr. Barnhill would not have sustained irreversible injuries to his head and face.

2.    The Defendant Officers used deadly force against Mr. Barnhill by violently striking him to the face and head several times. Mr. Barnhill was not an immediate threat of death or serious bodily injury to anyone at the time of the Officers' use of deadly force.

3.    In my opinion, there were fundamental tactical errors in this incident. Based on the nature of the call, and under these circumstances, in accordance with basic officer training, the Defendant Officers failed to attempt to de-escalate the situation, failed to employ proper control hold-techniques, failed to give Mr. Barnhill a warning prior to using such extreme force, and failed to control their emotions and fears, which resulted in their overreactions and unnecessary uses of force.

4.    After being apprehended at the door to his home and during the Officer assault thereafter, Mr. Barnhill did not attempt to flee, was not resistive, was not assaultive, was willing to communicate and conveyed compliance to the Defendant Officers. It is my opinion that no force beyond that which is trained and reasonable for a compliant subject was necessary or permitted (as trained).

5.    One of an Officer's overarching duties is to protect lives of those they come in contact with and protect and provide for their safety. Competent training for officers must include their duty to intervene if fellow Officer(s) apply excessive force, particularly if that excessive force could lead to extreme pain, serious injury or death. Officers Maynard, Bishop and Aguila and Corporal Klinzing failed to uphold their duty to intervene when they did not stop their partner Officers from continuing to violently assault the compliant Mr. Barnhill.

6.    In my opinion, the Officers exhibited a gross departure from nationally accepted required tactics to minimize the use of force including lethal force. Trained and experienced officers know that failure to follow them violates professional standards and training.

Based on my review of the record, the Officers violated POST
standards, which reflects their lack of adequate training, and a direct
reflection of HPD's inadequate supervision, and training policies.
The Officers' use of force including deadly force against Mr.
Barnhill, especially when Mr. Barnhill was chest down on the
ground, unarmed, not resisting, not attempting to flee, and with at
least one hand behind his back, have not harmed any officer nor
verbally threatened any officer, but instead told Officers that he was
not resisting, demonstrates the Defendant Officers complete lack of
situational awareness, lack of control over their emotions and fears,
and their inadequate training and understanding of basic use of force
and de-escalation principles.

The HPD longstanding failure to adequately train their officers, also
demonstrated by its officers' prior use of unreasonable force against
the citizens of Hemet, has and will continue to place the community
at risk of serious injury and/or death by other officers in the
department, who have been or are now, similarly trained and/or
supervised.

**My Qualifications To Review This Case:**

My opinions are based in part on my training, professional experience and education.  I
am a twenty seven year veteran of the Los Angeles County Sheriff's Department (LASD).
I was hired on December 1, 1965, and I retired from active service on March 31, 1993.
My career included six years at the rank of Deputy Sheriff, six years as a Sergeant, and
fifteen years as a Lieutenant.  I retired holding a California Peace Officer Standards and
Training (POST) Advanced Certificate, and I am a graduate of the POST Command
College (class #5, 1988).  The POST Command College was a Masters level two-year
course of study requiring a thesis, in Police Administration, with the diploma awarded by
the California Department of Justice (and not the California University system).

During the course of my service with the department, I had a wide range of duties.  Those
duties included an 18 month assignment as a staff jail deputy and two years as an
Administrator/Lieutenant in the same jail facility (Men's Central Jail).  I also served on
the department as a patrol officer, field supervisor, jail watch commander and
administrator, station watch commander, and commanding officer of investigative units.
I was a field training officer while assigned as a patrol deputy, and I trained new officers
in POST and department approved patrol procedures, field investigations, apprehension
techniques, and emergency procedures.

I was a Station Detective and, as such, reviewed and assessed cases passed on to me by the patrol officers. Those cases included possible complaints relating to both misdemeanor and felony crimes. They frequently required follow up investigations and interviews before the exact nature of the case could be determined. As a field officer and detective, I was trained in interview and interrogation methods and subsequently trained other officers.

Among other assignments as a Sergeant, I supervised field officers and station detectives as they took complaints and conducted preliminary investigations regarding criminal and administrative matters.

As a Sergeant and as a Lieutenant, I served on the training staff of the Los Angeles County Sheriff's Department's Patrol School which taught the POST accepted patrol tactics, and investigation and apprehension methods.

As a Watch Commander and as a Lieutenant, I responded to, investigated, and reported on the use of force and officer-involved shootings. I was also assigned by my Department to sit as a member of Departmental review committees regarding the reasonable or unreasonable use of force and tactics.

As stated above, during my career I was assigned to the Los Angeles County Men's Central Jail (MCJ) for a period of 18 months as a line officer. Upon my subsequent promotion to Lieutenant, I returned to the same facility approximately 10 years later. During that time, I was assigned as a Jail Watch Commander, and as the Facility Training and Logistics Administrator. At the time of my assignment, the MCJ held a daily population in excess of 7,000 inmates, including a hospital, which was serviced by a staff of more than 900 sworn and civilian personnel.

During my assignment as the Administrative Lieutenant of the Department's Reserve Forces Bureau, I worked closely with the State of California Peace Officer Standards and Training in revamping our Reserve Academy to bring it into state compliance. This process gave me an expertise in the POST Basic curriculum. I also supervised the training of cadets at our Reserve Training Academy. They were taught proper investigation, interview, and apprehension procedures. Among other topics, I lectured the Reserve Academy on the POST syllabus: "The Legal and Moral Use of Force and Firearms."

During the 1984 Olympics held in Los Angeles, I was assigned and served as the Department's Intelligence Officer at the Los Angeles Olympics Emergency Operations Center.

During the last five and one half years of my career, I commanded a specialized unit known as the North Regional Surveillance and Apprehension Team (N.O.R.S.A.T.), which was created to investigate, locate, observe and arrest major (career) criminals. I held this position until my retirement from the Department on March 31, 1993.

Criminals investigated and arrested by N.O.R.S.A.T. included suspects involved with homicide, robbery, kidnaping, extortion, burglary, major narcotics violations and police corruption. The majority of our cases were homicide cases, including the murder of police officers. Arrests frequently occurred in dynamic circumstances including crimes in progress.

My unit also conducted major narcotics investigations including undercover narcotics buys, buy busts, and reverse stings. We frequently deployed at the request of investigative units, such as Narcotics, which provided the initial investigative leads for our operations. These narcotics cases usually involved multiple kilogram quantities of drugs and amounts of money ranging from one hundred thousand to more than one million dollars.

Approximately 80% of cases assigned to N.O.R.S.A.T. were active Homicide investigations. In that regard, the unit processed, under my command and supervision, various aspects (depending on the complexity of the cases involved) of approximately 1,000 Homicides ranging from deaths of police officers to serial homicide suspects.

Additionally, the majority of the over 2,300 cases for which I have been retained as a consultant (since 1993) have involved injuries or deaths connected with some aspect of force during either apprehension or while in police custody.

During the first three months of my command of N.O.R.S.A.T., the unit had three justifiable shooting incidents. From that time, and over the next five years of my command, N.O.R.S.A.T. established a remarkable record of more than two thousand arrests of career criminals without a single shot fired – either by my officers or by the suspects whom we arrested.

Many of these suspects were armed and considered to be very dangerous. Some were apprehended during the course of their crimes and were very prone to use firearms to escape apprehension. This record of excellence was accomplished through the use of proper tactics, management and supervision of personnel, training in correct apprehension methods, and adherence to the moral and ethical standards endorsed by California POST and my Department. These methods and principles are also embraced by every state training commission of which I am aware, as well as the national standards established by the U.S. Department of Justice.

As a result of my position and record as the commanding officer of N.O.R.S.A.T., I was assigned to author Field Operations Directive 89-3, "Tactical Operations Involving Detective Personnel." This order remained in force 20 years (until September 30, 2009), and included the basic standards and considerations with which investigative officers must comply in the event of a tactical deployment such as the dynamic entry into a building for the purpose of an arrest and/or seizure of evidence.

Since my retirement, I have testified as an expert on use of force, jail procedures and jail administration, investigations, police procedures, police tactics, investigative procedures, shooting scene reconstruction, and police administration in Arizona State Courts, California State Courts, Washington State Courts and Federal Courts in Arizona, California, Colorado, Florida, Illinois, Indiana, Louisiana, Missouri, Nevada, Ohio, Oregon, Pennsylvania, Texas, Utah, Washington, New Mexico, New York and Wisconsin. I have testified before the Los Angeles Police Department Board of Rights and the Los Angeles County Civil Service Commission. I have testified before the Harris County (Texas) Grand Jury and the Cleveland Grand Jury. I have also submitted written opinions in matters before Alaska, Delaware, Idaho, Montana, North Carolina, New York, Oregon, Kentucky, and Wyoming Federal and State Courts. I was selected (January 20, 2007) to present on the topic of: "Police Experts" at the National Police Accountability Project held at Loyola Law School, Los Angeles, California. I was selected (September 23, 2010) to present on the topic of: "Using POST Modules to Establish Police Officer' Standard of Care" at the National Police Accountability Project, National Lawyers Guild Convention, in New Orleans, Louisiana. I was selected (March 30, 2012) to present to the Kern County Public Defenders in Bakersfield, California, on the topics of "Ethics, Police Investigations, the California POST Curriculum, and the M26 and X26 Taser weapons." On August 7, 2013 I was invited and presented to the Texas Civil Rights Project (TCRP) 2013 Annual Legal Summit in Austin, Texas on the topic: "Ethically Working with Experts from the Prospective of a Police Expert." On October 15, 2015 I was the invited presenter at a Community Forum in Victorville, California on the topics of Police Procedures, Community Policing, Use of Force, and features of the M26, X26 and X2 Taser weapons. I was selected (January 24, 2020) to present on the topic of: "Use of force litigation under California's negligence standard and the impact of AB 392" at the National Police Accountability Project held at Loyola Law, Los Angeles, California. On February 18, 2020, and on March 10, 2021, I lectured (at request) at the University of California - Irvine, School of Law, Civil Rights Litigation Clinic.

I have worked on several projects with the Paso Del Norte (El Paso, Texas) Civil Rights Project and the Texas Civil Rights Project (Austin, Texas). As a result of my expert testimony in *Border Network, et al. v. Otero County, et al.*, Case No. 07-cv-01045

(D.N.M. 2008), a federal court issued a temporary injunction to stop the illegal and widespread immigration raids in Chaparral, New Mexico, implemented pursuant to Operation Stonegarden. The case resulted in the adoption of a model policy for inquiring into a person's immigration status, which has been adopted nationwide and has also been presented to the United States Senate, the Secretary of Homeland Security, and other government officials seeking to reform immigration enforcement.

I have been recognized, and my expert report was quoted by the USDC in *Burns v. City of Redwood City*, 737 F.Supp.2d.1047. I have been recognized, and my expert report was quoted by, the United States Court of Appeals for the Ninth Circuit as an expert in Police Administration and Use of Force in *Blankenhorn v. City of Orange, et al.*, 485 F.3d 463, 485 (9th Cir. 2007). The Ninth Circuit also drew from my expert report in a second published case involving Police Detective Investigations. *Torres, et al. v. City of Los Angeles, et al.*, 540 F.3d 1031, 1042-43 (9th Cir. 2008). The *Torres* case was appealed to the U.S. Supreme Court and returned for trial. I provided the expert opinion in *Chavies Hoskin v. City of Milwaukee, et al.* (E.D. Wis Case No. 13-cv-0920), regarding field strip and cavity searches, hiring, training, discipline and supervision, and which resulted in significant policy changes within the MPD. My opinions supported argument in the Ninth Circuit case: *A. D., a Minor; J. E., a Minor; Sue Casey, Plaintiffs-Appellees, v. State of California Highway Patrol, Defendant, and Stephen Markgraf.*, No. 09-16460, D.C. No. 3:07-cv-05483-SI (9th Circuit, Published Opinion). My opinions supported argument in the Ninth Circuit case: *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1102 (9th Cir. 2014). The Ninth Circuit also drew from my expert reports regarding credible threats justifying the use of force, *Hayes v. County of San Diego*, 658 F.3d 867 (9th Cir. 2011), and *(Baton use) Young v. County of Los Angeles*, 655 F.3d 1156 (9th Cir. 2011). The Ninth Circuit also drew from my expert reports regarding Jail Administration and Administrative Responsibilities, *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011). The Ninth Circuit also drew from my expert reports regarding an officer's violation of the 14th Amendment if an officer kills a suspect when acting with the purpose to harm, unrelated to a legitimate law enforcement objective, in *AD v. California Highway Patrol*, 712 F. 3d 446 (9th Cir. 2013). The Fifth Circuit drew from my expert report regarding search and seizure, investigations and no-knock requirements in *Bishop et al. v. Arcuri et al.*, 674 F.3d 456 (5th Cir. 2012). The Ninth Circuit also drew from my expert report regarding the use of impact weapons (PepperBall) on civilians in *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012). I was the expert in the Ninth Circuit opinion regarding the allegations proffered by police officers and their use/display of firearms against civilians in *Green v. City and County of San Francisco*, 751 F. 3d 1039 (9th Cir. 2014). Most recently, I was the expert in an important Ninth Circuit opinion regarding the allegations proffered by police officers and their use of lethal force against unarmed persons in *Jennifer Cruz, et al., v. City of Anaheim, et al.*, 765 F.3d 1076 (9th Cir. 2014). I was the expert at trial in the Ninth Circuit opinion regarding the order of evidence at trial in

*Estate of Manuel Diaz, v. City of Anaheim*, et al., No. 14-55644. My opinion is quoted in
the Ninth Circuit opinion regarding the use of lethal force in *A.K.H. a minor, et al, v. City
of Tustin, et al.*, No. 14-55184. My opinions supported argument in the Ninth Circuit
case: *Estate of Angel Lopez, et al., v. Kristopher Michael Walb*, No. 14-57007 (not for
publication) wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by
the District Court. My opinions supported argument in the Ninth Circuit case: *Estate of
Shakina Ortega, et al., v. City of San Diego, et al.* No. 14-56824 (not for publication)
wherein the Ninth Circuit Affirmed the Denial of Summary Judgement by the District
Court. My opinions supported argument in the Ninth Circuit case: *Jerry Newmaker, et
al., v. City of Fortuna, et al.* No. 14-15098 (for publication). My opinions supported
argument in the Ninth Circuit Case: *Tonya E. Shirar, v. Miguel Guerrero, et al.* regarding
use of lethal force and "suicide by cop," No. 15-55029 (not for publication). My
opinions supported argument in the Ninth Circuit Case *Angel Mendez; Jennifer Lynn
Garcia, v County of Los Angeles, et al.,* Nos. 13-56686, and 13-57072 (for publication)
and which was settled before the Supreme Court, No. 16-369, regarding the use of lethal
force and searches. My opinions supported argument in the Ninth Circuit case: *Chien
Van Bui, et al, v City and County of San Francisco, et al*, No. 14-16585 (not for
publication), regarding the use of lethal force. My opinions supported argument in the
Sixth Circuit opinion, Case No. 16-5322*, Carey Woodcock v. City of Bowling Green, et
al,* Originating Case No. 1:13-cv-00124 regarding the use of lethal force. My opinions
supported argument in the Ninth Circuit opinion, Case No. No. 14-17388 (for
publication), *Johnathan Jones, et al v. Las Vegas Metropolitan Police Department, et al,*
Originating Case No. 2:12-cv-01636- regarding the use of lethal force and Taser
weapons. My opinions supported argument in the Ninth Circuit opinion, Case No. 16-
15606 (for publication), *Christian Longoria, et al v. Pinal County, et al,* Originating Case
No. 2:15-cv-00043, PHX SRB, regarding the use of lethal force after a vehicle pursuit.
My opinions supported argument in the Ninth Circuit case: *S. B. v. County of San Diego,*
864 F.3rd 1010 (9th Cir. 2017), (for publication) regarding issues of qualified immunity.
My opinions supported argument in the Tenth Circuit case: *Russell Tenorio v. Brian
Pitzer,* Case No. 2012-CV-01295 (U.S. Supreme Court No. 15-795) regarding issues of
qualified immunity and use of deadly force. I participated as a retained expert in the
USDC Fifth District case, *Stephen McCollum et al., v. Texas Department of Criminal
Justice, et al.,* Case No.3:12-CV-02037 regarding in-custody hyperthermia deaths. My
opinions supported argument (and I was cited by name) in the Ninth Circuit opinion, Case
No. 17-55116 (for publication), *Susan Mellen, et al v. Marcella Winn, et al,* D.C. Case
No. 2:15-cv-03006, GW AJW, regarding Detective Investigations and Qualified
Immunity. My opinions supported argument in the Ninth Circuit Case *Richard Vos;
Jenelle Bernacchi, v City of Newport Beach, et al.,* Nos. 16-56791 (for publication) and
which was settled by the Supreme Court, No. 16-56791, regarding the use of lethal force
and mental illness. My opinions (and quoted by name) supported argument in the Ninth
Circuit Case *S.R. Nehad, et al. v. Browder, et al.*, No. 18-55035 (for publication)

regarding the use of lethal force and custom and practice. My opinions supported argument in the Ninth Circuit opinion, Case No. 17-55930 (not for publication), *Estate of Kevin Brown, et al. v. Michael Lambert, et al.*, D.C. No. 3:15-cv-01583-DMS-WVG, regarding Detective Investigations and Qualified Immunity. My opinions supported argument in the Ninth Circuit opinion, Case No. 15-56339 (for publication), *Shane Horton, by his Guardian Ad, Litem Yvonne Horton, v. City of Santa Maria; Santa Maria Police Department; Andrew Brice*, D.C. Case No. 2:14-cv-06135- SJO-PJW, and *Jonathan Michael Castro v. County of Los Angeles, et al,* D.C. Case No. CV 10-5425 DSF (JEMx), 833 F.3d 1060 (9th Cir. 2016) (en banc), regarding jail standards, in-custody suicidal prisoners and qualified immunity. My opinions supported argument in the Ninth Circuit opinion, Case No. 17-56270 (not for publication), *James Soler v. County of San Diego, et al.,* D.C. No. 3:14-cv-02470-MMA-RBB, regarding required verification of persons taken into custody pursuant to a warrant of arrest. My opinions supported argument in the Ninth Circuit opinion, Case No. 18-17404 (for publication) *Tan Lam, v. City of Los Banos, et al.* D.C. No. 2:15-cv-00531-MCE-KJN, regarding the use of lethal force. My opinions supported argument (and I was cited by name) in the Ninth Circuit opinion, Case No. 19-56035 (for publication), *Tiffany Tabares, et al v. City of Huntington Beach, et al*, D.C. Case No. 8:18-cv-00821, JLS-JDE, regarding use of force and subjects suffering mental illness. I was retained as consultant regarding the October 15, 2019 Law Enforcement Activity Related Death (including positional asphyxia) of Mr. Angel Zapata-Hernandez by San Diego Metropolitan Transit System (MTS) Code Compliance Officers. My consultations included recommendations and resulted in significant changes in policy and training by the MTS. I was a retained expert in the Temporary Restraining Order restricting the use of kinetic weapons during demonstrations issued April 19, 2021 in *Black Lives Matter v. City of Los Angeles, et al*, Case No.: CV 20-5027 CBM (Asx).. My opinions supported argument in the Ninth Circuit opinion, Case No. 20-16351 (not for publication), *Terrance Amons, et al., v. Dillon Tindall et al.* D.C. No. 4:19-cv-00301 KAW regarding use of lethal force. My opinions supported argument in the Ninth Circuit opinion, Case No. 20-56254, D.C. No.2:19-cv-05370-CAS-JC (for publication), *Paulette Smith, individually and as Successor in Interest to Albert Dorsey, deceased, v. Edward Agdeppa, and City of Los Angeles, et al.*, regarding the use of lethal force. My opinions supported argument in the Ninth Circuit opinion, Case No. 21-16709 (for publication), *Jose Murguia for himself and for the Estates of Mason and Maddox Murguia, v. Heather Langdon, et al.* D.C. No. 4:19-cv-00942 DAD-RAM regarding "State-created danger." My opinions supported argument in the Ninth Circuit opinion, Case No. 20-15651, D.C. No.2: 17-cv-02776 - JCM-NJK (for publication), *Rudy Rivera, v. Corrections Corporation of America*, regarding false imprisonment and callous disregard. My opinions supported argument in the Ninth Circuit opinion, Case No. 19-56462, D.C. No.5: 18-cv-00762 - DMG-SP (for publication - Declined Review by the Supreme Court), *Estate of Clemente Najera*

*Aguirre; J.S.;Y.S., v. County of Riverside; Dan Ponder* regarding the inflection of lethal force.

The California Court of Appeal (Second Appellate District) drew in part from my expert report regarding search warrant service, *Macias v. County of Los Angeles*, 144 Cal. App.4th 313, 50 Cal. Rptr.3d 364 (2006). The California Supreme Court drew in part from my expert opinion regarding police tactics and the use of deadly force, *Hayes et al. v. County of San Diego et al.*, 57 Cal.4th 622 (2013). I was quoted by the California Appellate Court (Second Appellate District, Division Three) and the California Supreme Court in *B.B., a Minor, etc., et al., v. County of Los Angeles, et al., Case No. B264946 Super. Ct. Nos. TC027341, TC027438, BC505918* regarding positional asphyxia issues.

On February 10, 1989, I was personally commended at the Los Angeles County Hall of Administration by United States Attorney General, the Honorable Edwin Meese III, for my work to establish California Penal Code Section 311.11 (forbidding the Possession of Child Pornography). On February 22, 1993 (at the time of my retirement), Mr. Meese presented a second personal commendation for the success of this critical five-year effort to bring this law into effect. California Penal Code Section 311.11 is required training for all Law Enforcement Officers in California and taught extensively in the POST Basic Learning Domain #9: "Crimes Against Children,"pages 1-18 to pages 1-21.

On December 7, 2015 I was requested by the Cleveland District Attorney to present my opinions to the Cleveland Grand Jury regarding the November 22, 2014 shooting death of Tamir Rice by City of Cleveland police officers. In March, 2016 I was requested by the Delaware Attorney General to review and provide my opinions regarding the shooting death of Jeremy McDole. The AG report was published May 12, 2016. I provided a written Opinion for New Mexico AG regarding the shooting Death of Teresa Anaya that included requested training opinions. I have also consulted with, and provided written opinions at the request of the U.S. Attorney (New York), the Santa Clara County District Attorney, and the San Francisco District Attorney. On June 16, 2021, I was selected by the Los Angeles County District Attorney as a member of FACCT - an independent team assigned to re-examine fatal use of force incidents by law enforcement officers and recommend further action when appropriate. On November 7, 2021, I was an Honoree of the 2021 National Lawyers Guild of Los Angeles at their annual Awards Gala as a recognized defender of Constitutional Rights. I was the retained Use of Force consultant regarding the May 28, 2010 homicide of Mr. Anastacio Rojas (USDC Case No. 11-CV-0522-L NLS) and which was taken under formal consideration by the Inter-American Commission on Human Rights (an international human rights tribunal) on November 2022.

I have been found competent by both Federal and State Courts to render opinions as to responsibilities as occurred in this case. A number of my cases have involved law enforcement officers as civil plaintiffs and as criminal defendants.

Since my retirement, I have become an expert in the features and the use of TASER International's products, including the Model M26, Model X26 and Model X2 ECDs. I own each, along with the download software. I have reviewed all the TASER training materials and am familiar with the risks and tactics associated with these potentially lethal devices. I have qualified as an expert on TASER products and testified both in deposition and before juries on their usage. Two published examples are *Lee v. Nashville*, 596 F. Supp. 2d 1101, 1121-22 (M.D. Tenn. 2009), and *Heston v. City of Salinas*, 2007 U.S. Dist. LEXIS 98433, *25-*26 (E.D. Cal. 2007). My most recent Federal acceptance/certifications as an expert in the general use and deployment of the TASER weapon (including Taser International product warnings/bulletins sent to every agency using the Taser weapon) occurred in Los Angles, California on November 7, 2017 in *William Mears, et al., v. City of Los Angeles, et al,* USDC Case No.: CV 15-08441 JAK (AJWx) and on February 22, 2018 in *Maria Hernandez; A.J., Jr., et al, v. City of Los Angeles, et al,* USDC Case No. 2:16-c-02689 AB (JEMx), and on May 3, 2018 in Heleine Tchayou, et al. v. City of Los Angeles, et al., Case No. 16-cv-06073-TJH-MRW, and on November 1, 2018 in *Alma Rosa Godinez, v. San Diego County, et al. Case No. 3:16-cv-00236 BAS-NLS.* There are many others.

Attached as Exhibit A is a statement listing my law enforcement qualifications and experience; Exhibit B is my fee schedule; Exhibit C is a listing of matters in which I have testified in the last four years as an expert; and Exhibit D are relevant screenshots of the provided Officer body-worn camera videos with commentary.

I reserve the right to modify my opinions to the extent additional information is provided.

I declare under penalty of perjury that the foregoing is true and correct. Executed October 10, 2025, at Santee, CA

Roger A. Clark

# "EXHIBIT A"

**ROGER A. CLARK**

*10207 Molino Road • Santee CA 92071 • Telephone: (208) 351-2458.  Fax: (619) 258-0045.*

EXPERIENCE

**Police Procedures Consultant (self employed)**
April 1, 1993 to Present................................................................. **31 years**

I have been certified by Federal and State courts as expert in jail and police procedures in Federal and State Courts.  I select my cases carefully and have consulted in approximately 2650 cases thus far since my retirement from the Los Angeles County Sheriff's Department.

**Substitute Teacher, Madison School District**
August 1994 to 2003......................................................................... **9 years**

I substitute teach at all levels in the school district (elementary to high school).  As a volunteer, I wrote and managed a $85,000.00 federal grant for our Central High School.  This grant is in its sixth year and has generated $510,000.00 for the school.

**District Liaison, State of Idaho Department of Juvenile Corrections**
August 1, 1995 to March 1, 1997.........................................**1 year, 7 months**

I represented the new Department of Juvenile Corrections to the ten counties in the Seventh Judicial District.  As such, I worked closely with Probation Officers, County Commissioners, Judges, other state agencies, private care providers, etc. in the implementation of the new Idaho Juvenile Corrections Act of 1995.  I wrote or participated in the writing of several federal grants for the District.  I conducted training - both formal and informal - and developed a series of new therapy programs for juveniles with private care providers.  I also served as the Director of the Detention Center and the State Placement Coordinator during this time.

-1-

**Los Angeles County Sheriff's Department**
December 1, 1965 to March 31, 1993.................................**27 years 4 months**

**Note:**  In 1993 the Los Angeles County Sheriff's Department had 7,000 sworn and 3,000 civilian personnel and a daily County Jail inmate population of 23,000.

**Service as a Lieutenant (15 Years, 0 Months):**

1.  **Field Operations Region I**
    **NORSAT**                         11/15/87 to 3/31/93   **64 months**

I commanded a specialized unit created to investigate, locate, observe and arrest major (career) criminal offenders.  This unit was designed as a multijurisdictional effort for the cities in the northern region of Los Angeles County.  The command consisted of four (4) Sergeants, seventeen (17) Deputies, four (4) Police Officers, twenty five (25) Reserves, and three (3) civilian employees.  The 1992 budget set at $1.5 million.  The arrest rate averaged 500 career criminal arrests per year with a 97% conviction rate and no shots fired (on either side) for 61 consecutive months.

Significant contributions while assigned at this Bureau were:

•        Increase in participating police agencies.
•        Direct participation with corporate (private) agencies.
•        Formation of a reserve and volunteer unit.
•        Establishment of NORSAT Foundation private funding.
•        Computerization of the unit.
•        Promotion of fourteen personnel.
•        Fleet expansion from 13 to 28 vehicles (donated).
•        Formation of the DEA Valley Task Force.
•        Field Operations Directive 89-3.

2.        **Executive Offices**
          **Reserve Forces Bureau**        05/01/84 to 11/15/87  **42 months**

I was the administrative officer to a specialized bureau responsible for coordinating the activities of 1,000 sworn reserve personnel, 900 civilian

volunteers, and 450 law enforcement explorer scouts.  The Bureau identifies programs for their effective utilization throughout the Department; develops and tracks training programs; sponsors activities designed to promote growth and keep morale at high levels.

Significant contributions while assigned at this bureau are:

- Total restructure of the Academy training process for reserve Deputies.
- Implementation of upgrade programs to move lower level reserves to level I status.
- Departmental Reserve Certification procedures.
- Annual leadership seminar.
- The Reserve News, a nationally recognized police magazine.
- Computerization of the Bureau.


3. **Field Operations Region I**
   **Crescenta Valley Station**      04/01/80 to 05/01/84  **49 months**

Crescenta Valley Station is a full service police facility of 100 personnel serving a population of 50,000 (including the Contract City of La Canada-Flintridge) and a total area of 250 square miles. During my four years service at this facility I served in every management role:

- **Nine months** as the Station Commander during an extended absence by the Captain (08/01/83 TO 05/01/84).
- **Sixteen months** as the Operations Lieutenant (03/01/82 TO 08/01/83).
- **Twelve months** as the station Detective Bureau Commander (03/01/81 to 01/01/82).
- **Twelve months** as a Watch Commander (04/01/80 to 03/01/81).

Significant contributions while assigned at this command are:

- Negotiation of an enhanced city contract (at a savings to the City).
- Formation of a volunteer community support group.
- Development and implementation of an integrated community emergency response plan.
- High School undercover narcotics operation.
- Restructure of the Station Detective Bureau.
- The annual station picnic, which was effective in boosting station morale.

4.     **Custody Division**
       **Central Jail**                04/01/78 to 04/01/80  **24 months**

The Los Angeles County Central Jail is the largest jail facility in the State of California, with a daily inmate population of seven thousand (7,000), an assigned staff of six hundred (600), and two hundred (200) civilian personnel. My service at this command was equally divided into two major assignments:

•     Training and Logistics Lieutenant (04/01/79 to 04/01/8).
•     Watch Commander (04/01/78 to 04/01/79).

Significant contributions while assigned at this command are:

•     "Hot Fire" Training program, which is now a State (POST) mandated training module for all custody personnel throughout California.
•     The "Defend in Place" fire safety operational plan for jail facilities.
•     New fire safety specifications for jail bedding and mattresses.
•     The development of fire safe jail mattress material.
•     The development of a facility emergency response plan.
•     The computerization of training, timekeeping, and scheduling for the facility (800 sworn and 200 civilian personnel).
•     "Spouse day at CJ"--A program for spouses of employees.


**Service as a Sergeant (6 Years, 4 Months):**


5.     **Administrative Division**
       **Federal Surplus Property**   01/12/76 to 04/01/78  **27 months**

This program was entirely my idea and developed while I was assigned at my previous assignment (Emergency Operations Bureau).  The unit provides millions of dollars in free federal excess and surplus food and property from clothing to heavy equipment and aircraft to the department each year.  I am very proud of this contribution to the Department.

During this time I remained staff (Personnel Sergeant) of the Emergency Operations Bureau.  This was simply a technical (paper) transfer.


6.     **Patrol Division**
       **Emergency Operations**       02/01/74 to 01/12/76  **23 months**

I was among the original personnel that formed this unit which blended the

-4-

activities of the Department's planning    unit with emergency operations planning and preparation.  I was assigned as the Personnel and Logistics Sergeant.

Significant contributions while assigned at this command are:

•      Formation of a new County Emergency Operations Center.
•      Participation in the 1974 Federal earthquake studies of Los Angeles County.
•      Development of the Department's specialized Field Command Post equipment.
•      Development of the Department's Field Booking Team.
•      Collateral assignment to the Patrol School


**7.**     **Patrol Division**
       **Civil Defense Bureau**       12/01/73 to 02/01/74 **02 months**

I was assigned to this unit to facilitate the orderly transition into the new Emergency Operations Bureau.


**8.**     **Patrol Division**
       **San Dimas Station**       12/12/72 to 12/01/73 **12 months**

I performed all the duties of a Watch and Patrol Sergeant.  I also frequently served as the Watch Commander.


**9.**     **Technical Serviced Division**
       **Communications Bureau**    12/01/71 to 12/12/72 **12 months**


I served as the Watch Commander in The Sheriff's Department's old radio room located at the Hall of Justice, and assisted in the transition to the existing communications facility.


**Service as a Deputy (6 Years, 0 Months):**


**10.**    **Patrol Division**
       **San Dimas Station**
       **Detective Bureau**       01/01/70 to 12/01/71 **23 months**

I served as a Station Detective assigned to the evening watch.  I handled the first response to all crimes requiring investigations.  I processed all evening juvenile matters, prepared criminal complaints and juvenile petitions.

11.  **Patrol Division**
     **San Dimas Station Patrol**    01/29/68 to 01/01/70  **24 months**

I performed all duties assigned to Station Patrol:  Jailer, Desk, Watch Deputy, Patrol, and Traffic.

12.  **Technical Services Division**
     **Transportation Bureau**      11/01/67 to 01/29/68  **02 months**

I was temporarily assigned to the Beverly Hills Municipal Court pending my assignment to a Patrol Station.

13.  **Custody Division**
     **Central Jail**               05/06/66 to 11/01/67  **18 months**

I returned to my previous assignment at the Central Jail after graduation from the Academy.  I performed all aspects of a Custody Deputy i.e. Module Officer, Prowler, Control Booth, High Power, etc.

14.  **Administrative Division**
     **Academy**                    01/17/66 to 05/06/66  **04 months**

I was a Sheriff's trainee assigned to Class #110.

15.  **Custody Division**
     **Central Jail**               12/01/65 to 01/17/66  **01 month**

I was a pre-academy Custody Deputy assigned to the Central Jail as an "off the street" Deputy Sheriff.

## DEGREES AND CERTIFICATION

| | | |
|---|---|---|
| P.O.S.T. Command College (Class #5) | POST | 1988 |
| Management Certification | POST | 1980 |
| Advanced Certification | POST | 1975 |
| Associate of Science Degree | Chaffey College | 1971 |

# "EXHIBIT B"

# Roger A. Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  rclark9314@aol.com

October 10, 2025

Trenton C. Packer, Esq.
Law offices of Grech & Packer 7095
Indiana Ave Ste 200
Riverside, CA 92506

**Regarding:**     *Henry Barnhill, vs. City of Hemet; Officer Brett Maynard; Officer Joshua Bishop; Officer Pedro Aguila; Corporal Douglas Klinzing; Jamie Gonzalez; Catherine Tipton, et al., Case No.: 5:23-CV-00589-JGB-SB.*

Dear Mr. Packer:

My Fee Schedule is as follows:

- Travel time at the rate of $50.00 per hour.
- (Travel via automobile to and from San Diego to Los Angeles 8 hours $400.00)
- All case review, consulting, and writing of expert opinions (such as Rule 26 reports) at $250.00 per hour.
- All testimony (either at trial or deposition) at $350.00 per hour, with a two hour minimum required.
- A retainer fee of $4,000.00 when initially retained will be used against the above listed fees.  Subsequent billings at the rates specified.
- A "rush fee" of $500.00 for work required less than three weeks from notice/retention.
- An invoice will be submitted periodically upon request reflecting the activities and charges associated with the account.  Payment is due upon receipt of the invoice.

There is no formal contract required.  My Federal Tax ID Number is **72-1576857.**

Sincerely,

Roger A. Clark

# "EXHIBIT C"

# Roger Clark

## Police Procedures Consultant, Inc.

10207 Molino Road.  Santee, CA 92071
Phone: (208) 351-2458,  rclark9314@aol.com

**UPDATED LIST OF SWORN TESTIMONY FOR RULE 26**

**October8, 2021 to October 9, 2025**
(Revised October 9, 2025

**Deposition:**  October 8, 2021.  Patrick Pursley, v. City of Rockford, Illinois, et al. Case No. 3:18-cv-50040.

**Deposition:**  October 18, 2021.  Estate of Toby Diller, et al. v. City of San Diego, et al.  Case No.: 20CV1003

**Deposition:**  October 21, 2021.   Cherish Thomas, v. City of Rio Vista, et al.  Case No.: 2:20-cv-00899 KJM-DB.
Client Attorney:

**Deposition:**  November 3, 2021.  Brejanea Burley, et al., v. County of Los Angeles, et al., State of California Superior Court (Los Angeles County),  Case No. TC027341.,

**Deposition:**  November 17, 2021.  Elijah McKnight vs. Sheriff Tyler Brown, et al.  Case No.: 1:20-cv-03678-PAB-SKC.

**Deposition:**  November 18, 2021.  People v. Douglas Alan Bohren, Superior Court, San Diego County (California), Case No.: CT No. M264544.

**Deposition:**  November 19, 2021.  Dione Mendoza, et al. v. County of San Bernardino, et al. Case No. 5:19-cv-01056 JGB-SHK.

**Deposition:**  November 22, 2021.  R.H., A minor (Eric Jay Hames Deceased), v. City of Redding, et al., Case No.: 2:20-cv-01435-WBS-DMC.

**Deposition:**  November 29, 2021.  R.A., and M.A., (Randolph Aguirre Deceased), et al. v. City of La Habra, et al. Case No. 8:20-cv-01829 CJC (ADSx)

**Deposition:**  November 30, 2021.  Brent Gustine, v. County of San Diego, et al., Case No.: 3:19-cv-00903-LAB-NLS.

**Deposition:**  December 2, 2021.  Adeline Lorraine Herrera, et al, v. City of Montebello, et al.

Page 1 of  23

Case No.: 2:20-cv-00590-MWF-SK

**Deposition:**  December 8, 2021.  Jorge Enrique Serrano Robles Senior, and Yuridia Dolores
Miranda, et al. vs. County of Los Angeles, et al, Case No.: 2:20-CV-6648-ODW-PLA.

**Deposition.**  December 9, 2021.  Jeffrey Drevdahl v. City of Fairfield, et al. Case No.:
2:20-cv-00859-WBS-DB.

**Deposition:**  December 13, 2021.  Darla Drinan, vs. United States of America, Joshua Bisch,
Douglas Christner, et al., Case No.: CV 20-1634-GW-SHKx

**Deposition:**  December 14, 2021.  Alexandrew Orellana v. County of Riverside, et al.  USCD
Case No. 5:19-CV-01263-JGB-SHK

**Deposition:**  December 14, 2021.  Luke Carlson, et al v. City of Redondo Beach, et al.  Case No.
2:20-cv-00259-ODW (AFMx).

**Deposition:** December 29, 2021.  Kevin Howard v. City of West Covina, Officer Matthew
Munoz, Officer Joshua Brenes, Officer Doug Weischedel and Officer C. Gonzalez, Case No.:
2:19-cv-08281-CMB-MRW.

**Deposition**:  January 6, 2022.  Donelle Wear (Blanchard), v.United States of America , et al.
Case No.: 8:20-cv-02438-JVS-DFM, consolidated with Case No.: 8:20-cv-00459-JVS-DFM.

**Deposition:**  January 17, 2022.  Angela Hernandez, (Steven Schiltz, deceased), v. City of
Huntington Beach, et al.  Orange County Superior Court Case No. 30-2020-01137606 CU-CR-
CJC

**Deposition:**  January 21, 2022.  CJ Montano vs. City of Los Angeles Chief Michael Moore, et
al., Case No.: 2:20-cv-07241.

**Deposition:**  January 28, 2022.  Kelly Lynch vs. City of Los Angeles, Sergeant Lankford, Officer
Wall, Officer Brandt, et al., Case No.: 2:20-cv-07931.

**Trial:**  February 15, 2022Susan Huntzinger, et al, v, Toby Coyle, et al.USDC (Kentucky) Case
No. 5:17-cv-00184 KKC

**Trial:**  February 17, 2022.  People v. Terrance Stangle, Superior Court (San Francisco County),
Case No 20013301, IIB #A 2019.10.07, ISD #2019-0045.

**Trial:**  February 22, 2022.  Angela Hernandez, (Steven Schiltz, deceased), v. City of Huntington
Beach, et al.  Superior Court (Orange County) Case No. Case No. 30-2020-01137606, CU-CR-
CJC.

**Deposition:** February 25, 2022.  Tracy Garrett, v. Lieutenant Eric Nipper, et al.  USDC
(Kentucky) Case No:  5:20-CV-64 KKC-MAS.

**Trial:**  March 1, 2022.  Lydia Vasquez-Brenes and Ricardo Brenes, v Las Vegas Metropolitan
Police Department.  USDC Case No.: 2:12cv1635-JCM-VCF.

**Deposition:**  March 15, 2022.  Brian Joshua Cook, vs. County of Los Angeles, et al., Case No.:
2:19-cv-02417-JVS-KS:

**Deposition:**  March 16, 2022.  Elena Mondragon v. City of Fremont, et al.; Case No.: 5:18-cv-
01605-NC.

**Deposition:**  March 21, 2022.  Lisa Marie Close vs. City of Vacaville and Stuart K. Tan, Case
No.: 2:17-cv-01313-WBS-DB.

**Trial:**  March 30, 2022.  Curtis Jacob Davis, v. Wakulla County, et al.  Superior Court  (Wakulla
County, Florida) Case N. 15-ca-FLA BAR NO.: 0739685.

**Deposition:** April 4, 2022.  Rosalinda Ibarra v. Lee, et al.; (Oklahoma) Case No.
20-cv-00598-TCK-SH

**Deposition:**  April 4, 2022.  Rex G. Smith v. Shaun Parsley, City of Concord, et al.  Superior
Court, (Contra Costa County) Case No.: MSC20-01316

**Trial:**  April 6, 2022.  Rosa "Patti" Andrade, et al., vs. City of Tucson, et al.  Case No.
C20194291.

**Deposition:**  April 7, 2022  Jeanne Llera (Gomez), et al. v. Las Vegas Metropolitan Police
Department, et al. Nevada Case No. 2:20-cv-01589 RFB-BNW.

**Deposition**:  April 8, 2022  V.V., et al.  v. City of Los Angeles, et al.; Case No. 2:21-cv-01889-
MCS-PD

**Deposition:**  April 11, 2022.  Edgar Sanchez vs. City of San Jose, Christopher Weber, Melissa
Villasenor, et al., Case No.: 20-CV-05919-JD.-cv-10758

**Deposition:**  April 11, 2022.  Clark, et. al. v. City of Sacramento, et al.  Case No: 2:19-cv-00171-
JAM (JDP).

**Deposition:**  April 12, 2022.  Annie Lee Oliver, Jeremy Wright, and Jeremy Wright as Personal
Representative of the Estate of Michael Benford v. Pemiscot County; Tommy Greenwell,
Individually and in His Official Capacity; et al. Case No. 19-CV-00137 (SNLJ).

**Deposition:**  April 13, 2022.  March 1, 2022.  Lourdes Vaughan (Richard Posadas Deceased) et al.  v. City of Arvin, et al.  Case No.: 1:20-CV-00473-NONE-JLT

**Trial:**  April 15, 2022.  Rex G. Smith v. Shaun Parsley, City of Concord, et al.  Superior Court, (Contra Costa County) Case No.: MSC20-01316.

**Deposition:**  April 19, 2022.  Estate of Eric Esteban Briceno, Deceased, et al, v. County of Los Angeles, et al. Case No.: 2:21-cv-01388-SB-E

**Deposition:**  April 20, 2022.  Breya A Barello, vs. County of Los Angeles, Alex Saldana, Edward Gonsalves, et al., Case No.: 2:21-cv-01909-FMO-AGR.

**Deposition:**  April 22, 2022.  Nathan Schneider v. County of Sacramento, et al.  Case No.: 2:20-cv-00383 TLN-EFB.

**Deposition:**  April 28, 2022.  2318.  Anthony Echevarria, v. City of Santa Monica, et al.  Case No.: 2:21-CV-05603 SVW-AGR.

**Deposition:**  April 29, 2022.  Jose Luis Rodriguez, Jr. v. City of Salinas, Et Al. (Kile, Pritt, Neff).  Case #: Monterey County Superior Court 20CV001293.

**Deposition:**  May 2, 2022. Deandre Bolden, v. Contra Costa County, et al.  Case No.: 3:20-CV-04254 SK.

**Deposition:**  May 9, 2022.  William Wynne, Administrator of the Estate of Andrew Lenetis, vs. Town of East Hartford, Officer Kevin Beeman, and Officer Kwanza Clayton, Case No.: 3:20-cv-01834.

**Deposition:**  May 17, 2022.  Cindy Wagner vs. Shasta County, Shasta County Sheriff's Department, et al., Case No.: 2:20-CV-000403-JAM-DMC.

**Deposition:**  May 24, 2022  Maria Elena Vazquez, et al. v. City of San Jose, et al.  Case No.: 5:19-cv-08441-EJD.

**Trial:**  May 25, 2022.  Araceli Flores (Juan Barillas), v. City of Los Angeles, et al.  Case No. 2:18-cv-09936.

**Trial:**  June 1 & 2, 2022.  The Estate of Cecil Elkins, Jr., et al., v. California Highway Patrol, et al., Case No.: 1:13-CV-01483-AWI-SAB.

**Deposition:** June 3, 2022.  Rosalina Calonge vs. City of San Jose, a Municipal Public Entity;

Edward Carboni, et al., Case No.: 20-CV-07429 NC.

**Deposition:**  June 9, 2022.  R.E., et al.  v. State of California, et al.; Case No. 2:21-cv-06072-SB-KS.

**Deposition:**  June 14, 2022.  Charles Hayes v. Las Vegas Metropolitan Police Department, Case No.:. 2:20-cv-02048-KJD-BNW.

**Trial:**  June 16 &17, 2022.  Mondragon v. City of Fremont, et al.; Case No.: 5:18-cv-01605-NC.

**Deposition:**  June 20, 2022.  Greg Banks, and Alexis Avalos, vs. Michael Mortimer; Ryan White; City of Antioch; Dawnmarie Delucchi, et al, Case No.: 4:18-cv-07931-HSG.

**Trial:** July 14, 2022. V.V., et al. v. City of Los Angeles, et al.; Case No. 2:21-cv-01889-MCS-PD

**Deposition:** July 19, 2022: Israel Hernandez and Jully Romero, vs. City of Los Angeles, OfficerJames Welch, Detective Jose Chavez, el al., Case No.: 2:19-cv-00441.

**Trial:** July 28, & 29, 2022: Jennifer Landeros, Individually and as Successor in Interest to Daniel Landeros, et al., v. City of Elk Grove, et al. Case No.: 2:17-cv-02598-KJM-CKD.

**Trial:** August 4, 2022. State of Texas v. Russell Butler, Burnet County, (Texas) District Court Case No.: DA-19-0029

**Deposition:** August 8, 2022. Candido Sesma, et al. v. State of California (CHP), et al. Case No. 5:21-cv-01694 JWH-KK.

**Deposition:** August 17, 2022. John Hermann v. County of San Bernardino, et al. Case No.: 5:20-cv-01682-JAK-SP.

**Deposition:** August 18, 2022. I.C.E. Agent Demetrik Herd, v. County of San Bernardino, et al. Case No. 5:20-CV-02335-JWH-KKX.

**Deposition:** August 19, 2022. Deposition #2335. Benjamin Montemayor, v. City of Los Angeles, et al. Case No.: 2:21-cv-03124 CBM (ASx) (Related to Case No. 2:20-cv-05027-CBM (Asx).

**Deposition:** August 22, 2022. Cole Wilkins v. Wesley VanDiver and Joseph Morrison.; Case No. 8:20-cv-02417-JSL (DFMx)

**Deposition:** August 23, 2022. Mario Carrasco, v. Glendora Police Department, et al. Case No.: 2:21-cv-05965-MWF-AS.

**Deposition:** August 25, 2022. Vega-Colon v. City of Wethersfield, et al. Case No: 3:21-cv-

00175 (KAD).

**Disciplinary** Hearing: September 7, 2022.  Hillsborough County (Florida) Sheriff's Department
v. Deputy Kirby Lavallee Case No.: 1208-036

**Deposition:** September 15, 2022. Kinberly Perez, et al. v. County of Sacramento, et al. Case No.:
2:21-cv-00356-TLN-JDP

**Deposition:** September 20, 2022. S.C.D.P.,(Brian Statler, Jr. Deceased), et all. v. City of
Inglewood, et al. Case No.: 2:19-cv-10712-DMG-MRW.

**Deposition:** September 21, 2022. Vangv. City of Sacramento, et al.;Case
No.:2:19-cv-00374-JAM-JDP

**Deposition:** September 22, 2022. Kelly Lorenz and Alykhan Popat v. Superior Court of San
Bernardino, et al. Case No. 5:22-cv-00143-PA-JPR

**Deposition**: September 23, 2022. Gary Salzman, et al., vs. County of Los Angeles, et al., Case
No.: 21-CV-4604-PA-SK.

**Trial:** October 12, 2022. Kimberly Marroquin, vs. Unidentified LAPD Officer (Dimaggio Rico);
Captain Richard Paul Stabile; City of Los Angeles, et al., Case No.: 2:21-cv-07607-RGK-JEM.

**Trial:** October 14, 2022, and October 19, 2022. Vangv. City of Sacramento, et al.;Case
No.:2:19-cv-00374-JAM-JDP

**Trial:** October 18, 2022. Diane Lang (Donnell Lang) v. City of Redding, et al, Superior Court
(Shasta County) Case No. 193947.

**Deposition:** October 20, 2022. Michael George Tater and Kyla Skye Staniskis (Shannon
Michelle Tater deceased), v. City of Huntington Beach, et al. , et al. Case No.: 8:20-cv-01772
Case No. 8:20-cv-01772-MEMF-JDEx.

**Deposition:** October 26, 2022. Cyrus Greene, vs. Bay Area Rapid Transit, a Municipal
Corporation; P. Chehal (#684), Individually; T. Matthews (#716) Individually, et al., Case No.:
4:21-cv-00113-DMR.

**Deposition:** October 28, 2022. Nicholas Ramirez, v. City of San Jose, et al., Case
No.:5:21-CV-08127-VKD

**Deposition:**  November 3, 2022.  Akaysia Pearson, et al. v. Otto Aragon, et al., Case No. 3:20-
05726-CRB

**Deposition:** November 9, 2022. John Bien, Vs. City of Fresno, Brad Oliver, et al., Case No.:1:20-CV-01159-AWI-BAM.

**Deposition:** November 11, 2022. Hector Hernandez, et al. v. City of Fullerton, et al. Case No.: 8:20-cv-01747-CJC-JDE

**Trial:** November30, 2022 and December 1, 2022. People v. Ricky Butler, 2022. San Bernardino County (California) Superior Court DA Case No. 2017-00-0042929.

**Deposition:** December 19, 2022. Angelina Smalls (Branch) , et al, v. City of Tacoma, et al., Case No.: 3:22-cv-05013.

**Deposition:** December 22, 2022. Joseph L. Garces vs. City of Santa Paula, a municipal entity, Officer Chris Rivera; Case No.: 2:21-cv-06730.

**Deposition:** December 23, 2022. City of Santa Ana, et al. v. Orange County Association for Mental Health DBA Mental Health Association of Orange County, et al., Case No. 30-2020-01124174-CU-MC-CJC.

**Deposition:** December 28, 2022. Scottlynn Moorman, (Minor), v. City of San Bernardino, et al. Case No. CIVDS1818724

**Deposition:** December 30, 2022. Bryanna Berry v City of San Jose Officer Lindsay Parodi (4426), CASE NO.: 5:21-cv-8436

**Deposition:** January 4, 2023. Cecilia Vargas, et al. v. County of San Bernardino, et al. Case No.: 5:20-cv-02646-JGB-KK.

**Deposition:** January 10, 2023. Estate of Oral W. Nunis, et al v. City of Chula Vista, et al. Case No.: 3:21-cv-01627-AJB-DEB

**Deposition:** January 12, 2023. Estate of Nicholas Burgos, et al. v. County of Los Angels, et al. Case No. : 2:21-cv-05566.

**Deposition:** January 19, 2023. Myles Ramsey, v. City of Santa Ana, Peter Beaumarchais, Jeremy Reguerin, Ronald Sandoval, Christopher; Shynn, and Peter Thai. Case N.: 8:21-cv-00825-JLS-KES.

**Deposition:** January 20, 2023. Abbie Gray, v. City of Los Angeles, et al. Superior Court (Los Angeles County) Case No. BC6869939

**Deposition:** February 1 2023. Ayana Maroney, vs. County of Riverside, Deputy Mark Rodriguez, Deputy David Ruiz; et al., Case No: 5:21-cv-00497-JGB (SPx).

**Deposition:**  February 6, 2023.  Irina Rusanovskaya, et al, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. 20STCV33203.

**Deposition:**  February 9, 2023,  David Cordero, v. City and County of San Francisco, et al.  Case No.: 3;19-cv-01834.

**Deposition:**  February 13, 2023.  Ignacio Escalante, v. County of Los Angeles, et al.  Superior Court (Los Angeles County) Case No.: 19STCV29783.

**Deposition**:  February 15, 2023.  Edwin Williams, v. County of San Bernardino, et al.  Superior Court (San Bernardino County), Case No. CIVDS1600447

**Deposition:**  February 16, 2023.  Julie Fernandez, v. City of Los Angeles; et al., Case No.: 2:20-cv-07306.

**Deposition:**  February 17, 2023.  David Baxter, v. City of Hemet, et al..  Case No.: 5:21-cv-01331-JWH(SPx)

**Deposition:**  February 22, 2023.  Kyle Peterson v. County of Los Angeles, et al.  Case no: 2:21-cv-05510-JAK-ADS.

**Deposition:**  February 23, 2023.  Jarett Jakarr Waddell v. City of Burbank, et al.  Superior Court (Los Angeles County) Case No.: 21STCV4560.

**Deposition:**  February 24, 2023.  Maria Teresa Gonzalez, (Eloy Maris Gonzalez Jr., Deceased) v. County of Stanislaus, et al.    Case No: 1:21-cv-01091 DAD-HBK

**Deposition:**  March 9, 2023.  Eric Reason, et al v. Sergeant Virgal Thomas, and City of Richmond, et al.  Case No.: 2:20-cv-1900 WBS-JDP

**Deposition:**  March 14, 2023.  Charles Hayes v. Kern County et al.  Case No.: 1:19-cv-01722 BAK

**Trial:**  March 22, 2023 and March 23, 2023,  Irina Rusanovskaya, et al, v. City of Los Angeles, et al.  Superior Court (Los Angeles County) Case No. 20STCV33203.

**Trial:**  March 30, 2023.  Marina Borawick, v. City of  Los Angeles, et al.  Case No. 2:17-cv-02036 BRO-JC

**Trial:**  April 19, 2023.  D.T., a Minor by and Through His Guardian Tanika Tyler  vs. San Diego Metropolitan Transit Services, et al., Case No.: 3:19-cv-1523-LAB-AHG.

**Trial:** April 21, 2023 & April 24, 2023. The Estate of Clemente Najera-Aguirre, et al, vs. County of Riverside, et al. Case No.: 5:18-cv-00762-DMG-SP.

**Trial**: April 24, 2023. Christian Pineda, vs. City of Los Angeles; Chief Michel Moore; Colton Haney, and Stephen McClean, Case No.: 2:21-cv-06470-CBM-ASx.

**Deposition:** May 3, 2023. The Estate of Jose Alfredo Castro Gutierrez, et al. v. The City of San Diego, et al. Case No:. 21-cv-01292 H-BGS

**Deposition:** May 9, 2023. Jeremy James Cotten, et al, v. City of Los Angeles et al. Superior Court Case No.: Case No.: 19STCV40052

**Deposition:** May 11, 2023. Nicole Hook, and Jonson Tyler Hook, v. City of Redding, et al. Case No.: 2:20-cv-02365- MCE-DMC.

**Deposition:** May 15, 2023: Gabrielle Bynum, v. Cit of Los Angeles, et al., Case No.: 2:21-cv-4453 JPR

**Trial:** May 16, 2023 Angelina Smalls (Branch) , et al, v. City of Tacoma, et al., Case No.: 3:22-cv-05013.

**Deposition:** May 17, 2023 Ashley Blackmon, v. City of Beverly Hills, et al. Case No.: 2:21-CV-08381

**Deposition:** June 8, 2023, Audery G., et al, v. City of Lafayette, et al. Case No.: 3:21-cv-03545 WHO.

**Deposition:** June 8, 2023 Jolie Savage v. City of Whittier, et al. USDC CASE NO. CV21-08067 VAP (PD).

**Deposition:** June 9, 2023. Alma L. Figueroa De Magdaleno, et al., vs. County of Riverside, et al., Case No.: 5:21-cv-02027-JGB-SHK

**Deposition:** June 14, 2023. Alexandria Garcia, et al., vs. County of Los Angeles, et al., Case No.: 20STCV39464.

**Deposition:** June 19, 2023. 2464. Ernest Simon, Jr., an Individual,v. City of Los Angeles, et al.Case No.: 2:22-cv-01775 SSS-GJS.

**Trial:** June 22, 2023. A.G.1., a Minor (Raymond, Gonzalez) et al. v. City of Fresno, et al. Case No. 1:16-CV-01914 JO-SAB

**Deposition:** June 26, 2023.  Matthew Wilson and L.M., individually and as a successor-interest to Decedent, Joshua Barnes, by and through her Guardian ad Litem Tilde Barnes vs. California Highway Patrol Officers Kevin Domby; Sean Deise and Jose Ortega, et al., Case No.: 21-CV-03824-M.C.

**Deposition:** June 27, 2023.  Kyle Johnson vs. City of San Jose; San Jose Police Department Officer James Adgar, et al., Case No. 5:21-cv-01849-BLF.

**Deposition:** June 30, 2023.  Robert W. Hirsh v. California Commerce Club, Inc., et al. U.S.D.C. Case No. 2:22-cv-05701-MCS-AS.

**Deposition:** July 6, 2023.  Calvin Rush Annd Jayme Rush, v. City of Fairfield, Officers Zachary Sandoval and Dustin Joseph.  Case No.: 2:20-CV-01966-WBS-KJN.

**Deposition:** July 11, 2023.  Bashar Zeidan vs. City of Richmond; Case No. 3:21-cv-04010-TLT.

**Deposition:** July 17, 2023.  Tracy Pachote, et al., vs. County of Contra Costa, et al. 3:21-cv-04097-SK.

**Deposition:** July 19, 2023.  Gloria Black-Meadows, (Lashanda Anderson Deceased) et al, vs. Deptford Township, et al.  Case No.: 1:20-cv-06951.

**Deposition:** July 21, 2023.  Angelina Atabekova-Michaelidis and Vardoui Michaelidou; (Melkon Michaelidis deceased), vs. City of Los Angeles, et al.  Case No.: 2:22-cv-05620 - MCS-MAAx.

**Deposition:** July 22, 2023.  Pamela Reny Monk, v. Matthew Diller, Amal Pal, Brad Gorby, Shawn Murphy, Matthew Mcnulty, Los Angeles Police Department, et al.  Case No. BC660220

**Deposition:** July 26, 2023.  Jeanette Ayala-Rios, vs. California Highway Patrol, Officers Jordan W. Richardson, Michael W. Richardson, Ubaldo Ferreira, Matthew Barawed, Brent R. Logar, et al., Case No.: 4:22-cv-02550HSG.

**Deposition:** July 27, 2023.  Maria Elena Garcia, et al. vs. City of Farmersville, et al. Case No. 1:21-cv-00482-JLT-EPG

**Deposition:** August 1, 2023.  Mary Ellen Lennox, (Jordan Zenka, deceases(, v. City of Sacramento, et al,  Case No.: 2:21-CV-02075-TLN-KJN

**Trial:** August 3 & 4, 2023.  Jeremy Holloway, Plaintiff, vs. County of Orange, Deputy Chad Renegar, individually and as a peace officer, et. al, Case Number: 8:19-cv-01514-DOC-DFM.

**Trial:**  August 9 & 10, 2023.  Desabian Wilson, Edwin (Edwin Williams deceased). v. San Bernardino County, et al.  Superior Court Case No.: CIVDS1600447.

**Deposition:**  August 14, 2023.  Foucha Coner, v. City of Sacramento, et al.  Superior Court Case No.: 34-2020-00285118

**Deposition:**  August 18, 2023.  Braydon Lee Esqueda, vs. County of San Bernardino; Wynn Srisutasanavong and Cory Vigil, et al., Case No.: 5:20-cv-01743-MWF-SHK

**Deposition:**  August 22, 2023.  Deovante L. Guy, by and through the Guardian Ad Litem for Deovante L. Guy, Quintasia Walker vs. Matthew Lorenzen; Annie Brady, et al., Case No.

**Deposition:**  August 25, 2023.  Nathan Rocky Glover, v. City of Los Angeles, et al.  Case No.: CV21-09915 FWS (ASx).

**Deposition:**  August 29, 2023.  Bradley Steyn, v. City of Los Angeles, et al.  Case No.: - 20STCV34657.

**Trial:**  August 30, 2023.  Winston Durrell Settrini, v. City of San Diego, et al.  Case No.: 20-cv-02273 CAB-BGS.

**Deposition:**  September 11, 2023.  Richard Payne, Janchai Payne, K.P. a minor, v, City of Los Angeles, et al.  Case No.: 2:17-cv-09044 (Ksx)

**Deposition:**  September 12, 2023.  Ellen Williams, also known as Ellen Girma, an individual, v. City of Pleasanton, et al.  Case No.: 3:20-cv-08720 WHO

**Deposition:**  September 13, 2023.  Art Hernandez, Alfred Gonzalez, Benjamin Zaredini, David Casas, Louis Granados, Mario Contreras, Oscar Escobedo, Ariela Lemus, et al. v. County of Loa Angeles, Los Angeles County Sheriff's Department (LASD), et al. Case No.: 19STCV33158.

**Deposition:**  September 18, 2023.  Emily Garcia and C.G. et al. vs. City of Tustin, Estella Silva, et al., Case No.: 8:22-cv-00131.

**Trial:**  September 19, 2023.  Bradley Steyn, v. City of Los Angeles, et al.  Case No.: - 20STCV34657.

**Deposition:**  October 2, 2023.  Estate of David Angel Villalobos Valdovinos,  by its successor in interest Eve Samantha Arriaga et al., vs. Ryan Gonsalves, the United States of America, et al., Case No.: 22-cv-0315-L-AHG.

**Deposition:**  October 5, 2023.  Arnold Day, v. Kenneth Boudreau, William Foley, Jude Evans, Michael Kill, Dan Mcweeny, James Brennan, Anthony Watson, Marty Radtke, City of Chicago,

and Unidentified Employees of the City of Chicago . Case No.: 19-cv-07286.

**Deposition:** October 11, 2023.  Matthew D. Rifat, and Tracy M. Rifat, v. Dave Jones; David Steele; et al.  Case No.: 21-CV-1667-L-KSC.

**Deposition**: October 18, 2023.  Brenda Allen vs. State of California, Department of Corrections and Rehabilitation, Corrections Officer O. Barraza, Corrections Officer V. Veloz, Corrections Officer M. Roque, Sergeant Amaya, et al., Case No.: 5:22-CV-01288-RGK-PLA.

**Trial:** October 20, 2023.  Jarett Jakarr Waddell v. City of Burbank, et al.  Superior Court (Los Angeles County) Case No.: 21STCV4560.

**Deposition**: October 23, 2023.  Deshawn M. Wright, v. City of San Bernardino, et al  Case No.: 5:22-cv-001327-GW-(JCx).

**Trial:** October 27, 2023.  John Hermann v. County of San Bernardino, et al. Case No.: 5:20-cv-01682-JAK-SP.

**Trial:** November 1, 2023.  Alexandria Garcia, et al., vs. County of Los Angeles, et al., Case No.: 20STCV39464.

**Deposition:** November 3, 2023.  Jose Gutierrez, v. County of Los Angeles, et al.  Case No.: 2:21-cv-08223 FMO-PLKA

**Trial:** November 6, 2023.  Francisco Rodriguez, v. Los Angeles Dodgers, et al.  Superior Court, (Los Angeles County) BC714498

**Deposition:** November 7, 2023.  Jimmy Southern, (Jeremy Southern deceased), v. City of Sacramento, et al.  Case No.: 2:20-CV-01765 - MCE-AC

**Deposition:** November 14, 2023.  Blanca & Brian Mendoza v. City of Hanford, et al.  Case No.: 1:21-cv-00721 JLT-BAM

**Deposition:** November 15, 2023.  Ricardo Martinez, v. County of Orange, et al.  Superior Court Case No.: 30-2021-01208196 CU-NP- NJC.

**Deposition:** November 30, 2023.  Dora Galinda, et al., vs. City and County of San Francisco, et al., Case No.: 3:21-cv-08133-JSC.

**Deposition:** December 5, 2023.  Deonta Jackson, Plaintiff, vs. City of Los Angeles; Victor Morales #96038, individually, and as a Peace Officer; et al., Case No.: 2:22-cv-06523.

**Deposition:** December 8, 2023.  Maria Segura, et al. v. City of San Bernardino, et al.  Case No.: 5:22-cv-00277-JGB-SP.

**Deposition:** December 11, 2023.  Kendrick Sampson v. City of Los Angeles, et al. Case No.: 2:22-cv-03346 JAK-ADS

**Deposition:** December 22, 2023.  Carlos Towns, & Barsha Knox, v. County of Los Angeles, rt al. Case No.: 2:23-cv-01635-MEMF-PD.

**Deposition:** January 2, 2024.  Daniel Cohen vs. Los Angeles County, et al., Case No.: CV15-3376 RSWL AGR.

**Deposition:** January 3, 2024.  Xavier Lopez, v. City of Riverside, et al.  Case No.: 5:21-cv-02140 ODW.

**Deposition:** January 5, 2024.  Maribel Murillo v. City of Los Angeles, et al., USCD Case No. 2:22-cv-03188 DMG (Skx).

**Deposition:** January 9, 2024.  Ronnie Parham v. City of West Covina, Officer N. Robles, Officer C. Gonzalez, Officer A. Hernandez and Officer M. Munoz.  Case No.: 2:21-cv-09114.

**Deposition:** January 11, 2024.  Slade Douglas, v. City of Las Angeles, et al.  Case No. 2:20-cv-07439-FMO(PDx.

**Deposition:** January 12, 2024.  Jessica Romero and Brian Roserio, v. Los Angeles County, et al. Case No.: 2:21-cv-03972-FLA-JEM.

**Deposition**: January 15, 2024.  Jessica Woodward, Vishal Singh, Scott Taylor, and Erik Boyd,, et al. vs. City of Los Angeles, et al. USDC C.D. Cal., Case No. 2:22-cv-01306 GW-JEM.

**Deposition:** January 16, 2024.  Edwin Vasquez, v. City of Los Angeles, et al.  Case No.: 2:22-cv-04661 DSF-MRW.

**Deposition:** January 19, 2024.  Daniel Antunez v. LA Dodgers, LLC, et al.  Case No.: 19STCV13057.

**Hearing:** January 22, 2024 and January 22, 2024.  Douglas Ray Stankewitz, Petitioner, On Habeas Corpus, Fresno County Superior Court Case No.: 21CRWR685993.

**Deposition:** January 29, 2024.  Matthew Stewart, v. City of Los Angeles, et al.  Case No.: 2:22-cv-04922.

**Deposition:** January 31, 2024.  Ricardo Dennis Cordova v. Deputy Sheriff Aaron Clark, Lake County, et al; Case No.: 4:18-cv-00367-JSW.

**Deposition:**  February 2, 2024.  Anastasia Martinez v. County of Los Angeles, et al. USDC CASE NO. CV22-06589 DSF (MAR).

**Deposition**: February 8, 2024.  Estate of Rosendo Olivio vs. City of Los Angeles, USDC Case Number: 2:23-cv-01516-FMO-E.

**Deposition:**  February 13, 2024.  Michael Deleon, v. City of ;Los Angeles, Detective Jose Martinez, et al.  Case No.: 2:22-cv-06315 AB-MA.

**Deposition:**  February 15, 2024.  Adrian Abelar, v. County of Los Angeles, Los Angeles County Sheriffs Department, Deputy Yen Liu, et al.  Case No.: 2:23-cv-01606R GK (MRWx).

**Trial:**  February 21, 2024.  Daniel Antunez v. LA Dodgers, LLC, et al.  Case No.: 19STCV13057.

**Trial:** March 1, 2024.  The State of Texas v, Deputy James Johnson and Deputy Zachary Camden Judicial District Court Travis County (Texas) Case No.: DPS 09990017

**Trial:**  March 13, 2024.  Daniel Cohen, v. Los Angeles County, et al.  Case No: 2:15-CV-03576 JAK

**Deposition:**  March 14, 2024.   Frank Benavente and Nicole Ventress v. City of Ontario and Albert Alvarado, Case No.: 5:23-cv-00266-SSS-KK.

**Deposition:**  March 25, 2024.  Cristina Ramirez Fonua; B.E.R., et al. v.  City of Hayward, Kyle Martinez, et al.  Case No.: 3:21-cv-03644 RS.

**Trial**: April 22, 2024. Scottlynn Moorman, (Minor), v. City of San Bernardino, et al.  Case No. CIVDS1818724.

**Trial:**  April 24, 2024.  Estate of Oral W. Nunis, et al v. City of Chula Vista, et al.  Case 3:21-cv-01627-AJB-DEB.

**Deposition:**  April 25, 2024.  Melina Abdullah v. City of Los Angeles, et al.  Superior Court Case No.: 21STCV34800.

**Trial**: April 30, 2024.  DeShaun Johnson. v.  Officer Ryan Morning.  Case No: 21-cv-00879.

**Trial:**  May 1, 2024.  Kelly Jones (Michael Townsend Deceased), v. City of Portland.  Case No.: 22CV05575 (Oregon).

**Deposition**: May 9, 2024.  Frances Enyart, (William Enyart, Deceased), v. County of San

Bernardino, et al., Case No.: 5:23-cv-00540-RGK-KK.

**Deposition:**  May 10, 2024.  Sergeant Frederick Villalpando,v. State of California, et. al.. Superior Court Case No.: CVDS2018655.

**Deposition:**  May 13, 2024.  Juvenal Nunez, v. County of Los Angeles, et al.  Case No.: 2:23-cv-04409- MCS (PVCx).

**Trial:**  May 17, 2024.  Melina Abdullah v. City of Los Angeles, et al.  Superior Court Case No.: 21STCV34800

**Deposition:**  May 20, 2024.  Esteban Hernandez, v, City of Rialto, et al.  Case No. 5:22-cv-01807

**Deposition:**  May 21, 2024.  Christina Cardenas, v. California Department of Corrections, et al. Case No.: BCV-20-101420.

**Trial**:  May 22, 2024.  Frances Enyart, (William Enyart, Deceased), v. County of San Bernardino, et al., Case No.: 5:23-cv-00540-RGK-KK.

**Hearing:**  May 28, 2024.  Sergeant Frederick Villalpando, v. State of California, et. al.  Case No.: CVDS2018655.  (San Bernardino County)

**Trial:**  May 29, 2024. .  Shana Anglin; Christopher Dean Ebersole, and minors Elijiah Makar and Rozlynn Makar, through their Guardian Ad Litem Shana Anglin, vs. Patrice Loraine Burton; Alex Villanueva, in his official capacity as Sheriff of Los Angeles County, et al., Case No.: 21STCV17381.

**Deposition:** May 31, 2024.  Mari Ann Sartor and Roy Eugene Jackson, individually, and as successors in interest to Jay J. Jackson, vs. County of Riverside; Robert Carrasco; et al., Case No.: 5:22-cv 01410 JGB (Spx).

**Deposition:**  June 3, 2024.  Jonathan Peltz and Kathleen Gallagher, v. City of Los Angeles, et al. Case No.: 2:22-cv-03106-MWF-AGR

**Deposition:**  June 4, 2024.  McKinley Kekona, Jr. v. City of San Diego, Officer Allen (#7372), and DOES 1 through 10, inclusive, Case No. 3:22-cv-00745-MMA-WVG

**Deposition:**  June 7, 2024Phillip Brooks, v. City of Palm Phillip Brooks,  Case No.: 5:12-cv-00745 JGB-SP:

**Deposition**:  June 14, 2024.  Vincent Bryant, et al. v. City of Berkeley, et al.; Case No.: 3:21-cv-08169-AGT.

**Trial:** June 18, 2024,. Lawrence, et al. v. Las Vegas Metropolitan Police Department, et al. (USDC Case No. 2:16-cv-03039-JCM-NJK)

**Deposition:** June 24, 2024. Joseph Frias vs. County of San Diego, et al., Case No: 3:22-cv-00675-JO-AHG.

**Deposition:** June 25, 2024. Danielle Houston, v, City of Fairfield, et. al,. Case No.: 2:22-cv-01045 JAM DB.

**Deposition:** July 1, 2024. Adrian Aldaco, v. Los Angeles Police Department, et al. Case No.: 2:23-cv-03585 HDV-AGR.

**Deposition:** July 5, 2024. Alexander Torres, v. County of Los Angeles, et al. Case No.: 2:22-cv-07450 MWF-MAR.

**Trial:** July 15, 2024. Jessica Romero and Brian Roserio, v. Los Angeles County, et al., Case No.: 2:21-cv-03972-FLA-JEM.

**Deposition:** July 19, 2024. Edgar Solis, v. County of Riverside; State of California, et al. Case No.: 23-cv-00515 HDV-JPR

**Deposition:** July 21, 2024. Maritza Padilla, et al, v. California Highway Patrol et al. Case No.: 22STCV00661.

**Deposition:** July 24, 2024. David Zuniga, v. City of Los Angeles, et al., Case No.: 2:22-cv-03665-CBM-AS.

**Deposition:** July 30, 2024. Michael Shoar and Cindy Shoar, v. Orange County, et al. Superior Court (Orange County) Case No.:·30-2019-01061107.

**Deposition:** July 31, 2024. Gerald LaMont Pitts, v California Highway Patrol (CHP), et al. Case No: 2:20-cv-01243 WBS-JDP

**Deposition:** August 2, 2024 Therese l. Lesher, v. City of Anderson, et al. Case No.: 2:21-cv-00386-WBS-DMC

**Deposition:** August 19, 2024. Ricky Butler vs. County of San Bernardino, et al. Case No.: 5:23-cv-02147RGK-E

**Deposition:** August 20, 2024, Arash Eteghaei and Mitra Zade, v, County of Almeda, et al. Case No.: 4:22-cv-04298 KAW

**Deposition:** August 21, 2024. A.H. and H.H, (Shane Holland, deceased), et al. v. County of San Bernardino, et al. Case No.: 5:23-cv-01028 JGB-SHK.

**Deposition:** August 23, 2024, and August 28, 2024. Christina Astorga (Khan, et al.) v. City of Los Angeles, et al., C.D. Cal. Case No. 21-CV-03289-CAS (MARx)

**Deposition:** August 26, 2024. Bruno Mattar Lima, v. City of Los Angeles, et al. Case No.: 21STCV26150.

**Deposition:** August 30, 2024, Juan Oseguera, v. City of Hayward, Officer J. Lutzinger et al. Case No.: Case No;: 3:23-cv-00621 - SK

**Deposition:** September 3, 2024. The Estate of Omar Moreno Arroyo, et al. v. The County of San Diego, et al. Case No: 21-cv-01956-RBM-SBC.

**Deposition**: September 5, 2024. Derek Stenson (Joshua Sarrett deceased) v. Jacob Leenstra and King County et al. Case No.: 2:23-cv-01316 (Washington).

**Deposition:** September 6, 2024. Salvador Garcia, et al. v. County of Los Angeles, et al. Los Angeles County Superior Court Case No 20STCV00967.

**Trial:** September 11, 2024. Anyka Harris, et al. v. City of Tulare, et al. Superior Court Case No.: VCU299232.

**Deposition:** September 13, 2024. William Schell Morton v. County of San Bernardino, et al. Case No.: 5:21-cv-00052 JGB-SHK.

**Deposition:** September 16, 2024. Juan Laspada and Rebecca Rodriguez, v. City of Antioch and Antioch Police Officers, et al. Case No.23-cv-01955-JSC.

**Trial:** September 18, 2024. 2632. People v. Alfredo Armando Morales. Superior Court, (San Bernardino County). Case No.:16CR-004762.

**Deposition:** September 25, 2024. Samuel D. Castro, v. City of Whittier, et al. Case No.: Case No.: 2:2023-cv-03424-DSF-RAO.

**Trial:** October 7, 2024. David Zuniga, v. City of Los Angeles, et al., Case No.: 2:22-cv-03665-CBM-AS.

**Trial**: October 10, 2024. Estate of Tyler S. Rushing, Scott K. Rushing, and Paula L. Rushing, vs. AG Private Protection, Inc.; Edgar Sanchez, City of Chico Police Department, et al., Case No. 2:18-cv-01692-MCE-AC

**Deposition:** October 14, 2024. William Martin and Michael Martin, vs. Miami-Dade County

(Florida), et al.  Case No.: 20-CV-22107-MGC

**Deposition:**  October 15, 2024.  Mariela Valadez, (Cristopher Valadez deceased), et al. v. City of Rialto, et al.  Case No.: CIVSB2200927.

**Trial:**  October 17, 2024.  Michael Shoar and Cindy Shoar, v. Orange County, et al.  Superior Court (Orange County)  Case No.: 30-2019-01061107.

**Deposition:**  October 18, 2024.  Shawn Brye, v. City of Stockton, et al.  Case No.: 2:23-CV-00343 KJM-KJN

**Trial:**  October 22, 2024:  Paxton Williams, v. Des Moines, et al.  USDC Case No. 4:22-cv-240 SBJ.

**Deposition:**  October 28, 2024. Julio Jimenez Lopez and Yesenia Cruz Cruz vs. City of San Rafael; San Rafael Police Department; Daisy Mazariegos; and Brandon Nail.  Case No. 3:23-cv-03652-VC.

**Deposition:**  October 29, 2024.  Sarah Aragon, v. City of Los Angeles, et al.  Case No.: 2:23-cv-09522 DDP (JPRx).

**Trial:**  November 7, 2024.  Gerald LaMont Pitts, v California Highway Patrol (CHP), et al. Case No: 2:20-cv-01243 WBS-JDP

**Deposition:**  November 8, 2024.  Ari Gold and Liza Gold v. California Highway Patrol, et al.Case No.: 5:23-cv-03414-CRJ.

**Deposition:**  November 14, 2024.  Michael Goulding, (Jana Goulding, Deceased), et al, v. City of Placentia, Officer Larrissa Perez, et al. Case No.: 8:23-cv-02332-JWH-KES

**Deposition:**  November 15, 2024,  Helen Abascal vs. County of Los Angeles, et al.  Case No.: 2:23-cv-05246 HDV (Jcx).

**Deposition:**  November 19, 2024.  Jay Campos (Joshua Campos, deceased), et al. v. , County of Orange, et al.  Case No.: 8:23-cv-00072 JVS (JDEx).

**Deposition:**  November 20, 2024. Estate of Richard Ward, and Kristy Ward Stamp, v. Pueblo County, et al. (Colorado).  Case No.: 23-cv-00473-CNS-MBD

**Trial:**  December 4, 2024.  Candido Sesma, et al. v. State of California (CHP), et al. Case No. 5:21-cv-01694 JWH-KK

**Deposition:**  December 7, 2024.  Felix Tellez, v. County of Riverside, et al.  Case No. 5:23-CV-00755-WLH-SHK

**Deposition:** December 9, 2024. Bueno-Zaragoza et al. v. Lynch et al. Case No. 2:21-CV-02294-TLN-JDP

**Deposition:** December 10, 2024. Veronica Gonzalez and Juan Luis Duran v. City of Tustin, et. al. Case No;: 8:23:-cv-01274 FWS (ADSX)

**Deposition:** December 11, 2024. Therese l. Lesher, v. City of Anderson, et al. Case No.: 2:21-cv-00386-WBS-DMC.

**Deposition:** December 17, 2024. The Estate of Richard Risher, Jr., et al. v. City of Los Angeles, et al. Court Case No. 5:17-cv-00995-MWF-KK

**Deposition:** January 6, 2025. Monica Valdez, vs. City of Whittier; Officer Gamino; Officer Corona; Officer Baltazar; Officer Estrada, et al., Case No.: 2:23-cv-04668-SPG-KS.

**Deposition:** January 7, 2025. D.E., a Minor, by and through his Guardian Ad Litem, Brittany Dominguez, v. Los Angeles Police Department, et al.

**Trial:** January 10, 2025. Kyle Johnson vs. City of San Jose; San Jose Police Department Officer James Adgar, et al., Case No. 5:21-cv-01849-BLF.

**Deposition:** January 16, 2025. Jacy Houseton and Damon Barnes, v. County of Los Angeles, Deputy Trevor Kirk. Case No.: 2:23-cv-06887-SVW-MRW

**Deposition**: January 20, 2025, Todderick Randall, v. County of San Bernardino, et al. Case No. 5:24-cv-00086-SSS-SP

**Deposition:** January 23, 2025. Allen Dekeyser vs. Milwaukee Police Officer Leon Burns, et al, Case No.: 2:24-cv-00231.

**Deposition:** February 1, 2025. Brian Howell v. County of Kern, et al. Superior Court (Kern County) Case No. BCV-20-103043.

**Trial:** February 5, 2025. United States of America, v. Trevor James Kirk. Case No.: 2:24-CR-527-SVW

**Trial:** February 6, 2025. The Estate of Richard Risher, Jr., et al. v. City of Los Angeles, et al. Court Case No. 5:17-cv-00995-MWF-KK

**Deposition:** February 13, 2025, Nicholas Schwab (Alivia Schwab, deceased), v. Morris Police Officer Nicholas Pampinella, et al., Case No.: 1:23-cv-16607.

**Deposition:** February 14, 2025. Armando Munoz v. City of Costa Mesa, et al. Case No. 8:23-cv-01959-JWH-ADS

**Trial:** February 20, 2025 & February 24, 2025. Edgar Solis, v. County of Riverside; State of California, et al. Case No.: 23-cv-00515 HDV-JPR

**Trial:** February 21, 2025. Maritza Padilla, et al, v. California Highway Patrol et al. Case No.: 22STCV00661.

**Deposition:** February 25, 2025. Leonides Enriquez, v. City of Long Beach, et al. Case No.: 2:23-cv-06464-ODW-AJR

**Deposition:** March 11, 2025, and March 14, 2025. L.C., et al. v. State of California, et al., case No. 5:22-cv-00949-KK-SHK, & Botten, et al. v. State of California, et al., case no.5:23-cv-00257-KK-SHK

**Trial:** March 12, 2025. Jay Campos, et al. County of Orange, et al. Case No.: 8:23-cv-00072-WLH-JDE

**Deposition:** March 27, 2025. Jaylen Fisher vs. Officer Grady Kissee #3102 Individually and in the capacity as a Columbus Police Officer, The City of Columbus, Ohio, Columbus Police Department, et al. Case No.: 2:24-cv-00906.

**Trial:** April 9, 2025. Rosalina Calonge vs. City of San Jose, a Municipal Public Entity; Edward Carboni, et al., Case No.: 20-CV-07429 NC.

**Deposition**: April 10, 2025. Johnathan Cain, v. County of San Bernardino, et al. Case No.: 5:24-cv-01682-KK-SHK.

**Deposition:** April 15, 2025. S.L., a minor (Johnny Ray Llamas deceased), et al. v County of Riverside, et al. Case: No.: 5:24-cv-00249-CAS-SP.

**Trial**: April 17 & 18, 2025. Helen Abascal vs. County of Los Angeles, et al. Case No.: 2:23-cv-05246 HDV (Jcx).

**Deposition:** April 23, 2025. Gwendolyn Adams, individually, and as successor in interest to D'son Woods, deceased; and Glenn Tyler Bolden, an individual, v. California Department of Corrections and Rehabilitation, a public entity, Michael William Becker, an individual, and DOES 1 through 50, inclusive. Case No.: CIVDS 1831184.

**Deposition:** April 24, 2025. Gabriela Stephanie Barrios, v. Antelope Valley Chevrolet, Inc., Los Angeles Sheriff's Department, Detective Michael Gelardo, et al. Case 2:23-cv-10476-AB-JC.

**Deposition:**  April 29, 2025.  A.C., C.C. (Charles Chivrell deceased), vs. City of Arcata, Brian Hoffman, et al. Case No.: 4:22-cv-04804-HSG.  And  Estate of Charles Chivrell, et al. v. City of Arcata, State of California, California Highway Patrol (CHP), et al., Case No. 4:22-cv-00019-HSG.

**Trial:** May 7, 2025.  Jeremy Holloway, Plaintiff, vs. County of Orange, Deputy Chad Renegar, individually and as a peace officer, et. al, Case Number: 8:19-cv-01514-DOC-DFM.

**Deposition**:  May 8, 2025.  Paulette Smith (Albert R. Dorsey), v. City of Los Angeles, et al. Case No.: 2:19-cv-05370 CAS-JC

**Deposition:**  May 9, 2025.  Cuauhtemoc Lugo, vs. City of Los Angeles; Officer Carlos; Officer De Haro; Sergeant Johnson, Sergeant Kiefer, et al., Case No.: 2:24-cv-05496-RGK-E.

**Deposition**:  May 10, 2025.  Myesha Lopez, et al. v. County of Los Angeles, et al.  Case No.: 5:21-cv-00290 MEWF-SHK.

**Trial:**  May 13, 2025.  Gwendolyn Adams, et al. v. California Department of Corrections and Rehabilitation, a public entity, Michael William Becker, an individual, et al.  Case No.:  CIVDS 1831184.

**Deposition:**  May 14, 2025.  Samuel Rosas, v. Robert Glenn, et al.  Case No. 3:23-CV-04913-SK

**Deposition:**  May 15, 2025.  Vanessa Sanchez.: et al. v. County of Los Angeles, et al.  Case No.: 2:22-cv-00603-JAK-JEM

**Deposition:**  May 16, 2025.  S.L., a minor, (Luna) by and through her guardian ad litem, Patricia Guevara, v. City of Los Angeles et al.  Case No.: 2:24-cv-00679 MRA-AGR

**Deposition:**  May 19, 2025.  Sharon Sanders ,(Chris Smith deceased), v. North Las Vegas , et al. Case No.: 2:24-cv-00845-CDS-NJK

**Trial:**  May 20, & 21, 2025.  Liza Gold, individually and as successor in interest to Ari Gold, v. California Highway Patrol, Christopher Weaver, Kristi Cho.

**Trial:**  May 22, 2025.  Leonides Enriquez, v. City of Long Beach, et al.  Case No.: 2:23-cv-06464-ODW-AJR.

**Deposition:**  May 28, 2025.  Ryan Garnow, v. Multi-County (Ohio) Correctional Center, et al. Case No.: 3:23-cv-00743-JGC

**Deposition:**  May 29, 2025.  Lance Downes-Covington, et al, v. Las Vegas Metropolitan Police

Department, et al.  Case No.: 2:20-cv-01790-CDS-DJA

**Deposition:**  May 30, 2025.  Isaac Anthony Romero vs. Riverside County Sheriff's Department, et al. USDC Case Number: 5:24-CV-192-JGB-SHK

**Deposition:**  June 4, 2025.  Andrew Gomes vs. California Highway Patrol, et al. USDC Case Number: 2:24-cv-00213-DSF-BFM

**Deposition:**  June 13, 2025.  E.V. and X.V., (Daniel Luis Valdivia deceased), et al, v. City of Covina, et al.  Case No.: 5:23-cv-01562

**Deposition:**  June 16, 2025.  Estate of Oscar Leon Sanchez, v. City of Los Angeles et al.  Case No.: 23STCV11956

**Deposition:**  June 17, 2025.  Estate of Richard Matus, et al,. v. County of Riverside, et al.  Case No.: 5:23-cv-00506-MEMF- SP.

**Trial:**  July 1, 2025. People v. Jonathan Rodriguez (Juvenile).  Case No.: EL1234A

**Trial:**  July 2, 2025.  David Baxter, v. City of Hemet, et al..  Case No.: 5:21-cv-01331-JWH(SPx)

**Deposition:**  July 8, 2025.  Kisana Carroll, and T.R., v. City of Stockton, et al.  Case No.: 2:23-cv-00194-DAD-DB

**Deposition**: July 14, 2025.  Tynesha Dixon, & Ladonya Irvin, v. City of Los Angeles, et al. Case No.: 23STCV01320.

**Trial**. July 15, 2025.  Estate of Oscar Leon Sanchez, v. City of Los Angeles et al.  Case No.: 23STCV11956.

**Deposition.**  July 22, 2025.  Estate of Michael Vasquez, v. County of Riverside, et al.  Case No. 5:23-cv-00988-JGB-KK.

**Deposition.**  July 24, 2025.  Joseph LaRocca, v. City of Los Angeles, et al.  Case No.: 24CVST07744.

**Deposition.**  July 25, 2025.  Estate of Miguel Chavez et al, v Santa Ana Police Department, et al. Case No.: 8:24-cv-1899 FWS-ADS

**Deposition:**  August 1, 2025.  Tawanda Chandler, in her capacity as the Personal Representative of the Estate of Christopher Lee, Plaintiff, vs. Tuscaloosa County, Alabama, et al., Case No.: 7:23-cv-01174-LSC.

**Deposition**   August 18, 2025.  Jane Doe v. County of Los Angeles, et al. Case No. 2:24-cv-08649-SPG(SKx)

**Deposition:** August 24, 2025.  Shamika Collier, et al, v. County of Los Angeles, et al,  Case No.: 2:20-cv-02748-ODW-PVC

**Deposition:**  September 9, 2025.  Christopher Sean Mohan, v. City of Placentia, et al.  Case No.: 8:24-cv-01105-SB–KES

**Trial:**  September 19, 2025 & September 23, 2025.  People v. San Rafael Police Officer Brandon Carl Nail,  Superior Court, (Marin County) Case No.: CR0000077.

**Trial**:  September 26, 2025  Paulette Smith (Albert R. Dorsey), v. City of Los Angeles, et al. Case No. 2:19-cv-05370 CAS-JC

**Deposition:**  October 1, 2025.  Taneysha Carter, vs. Officer Drew Lawrence, in his individual capacity, City of Mesa, a municipality, el al., Case No.: 2:24-CV-00670-PHX-MTL.

**Trial:**  October 9, 2025.  Mari Ann Sartor and Roy Eugene Jackson, individually, and as successors in interest to Jay J. Jackson, vs. County of Riverside; Robert Carrasco; et al., Case No.: 5:22-cv 01410 JGB (Spx).

# "EXHIBIT D"



Apparently in response to Officers Maynard and Bishop commands, "Show us your hands. Show us your hands. Do it now. Show us your hands!", Mr. Barnhill complied and put his visibly empty hands in the air. (Maynard BWC video at approx. 2:41).



As Mr. Barnhill reached the door to his home, he appeared to attempt to put the key in the door. Any reasonable officer would recognize at this time that Mr. Barnhill's hands were void of any weapon. Officer Maynard commanded, "Show us your fucking hands. Show us your fucking hands." (Maynard BWC video at approx. 2:47).



Officer Maynard tackled Mr. Barnhill, pushing him away from the door and onto a patio chair. (Bishop BWC video at approx. 2:50).



Mr. Barnhill sat on the patio chair, was no longer attempting to flee, apparently did not resist, and did not show aggressive or assaultive conduct. At approximately this time, Officer Maynard commanded, "Get the fuck on the ground." (Bishop BWC video at approx. 2:51).



Officer Bishop yelled to partner officers, "Taser," approximately six times and told them to "back up" so that he can deploy the Taser. At that time, Mr. Barnhill's hands were visibly empty, and he was appearing to comply with officers. (Aguila BWC video at approx. 2:30).



Officer Aguila controlled Mr. Barnhill's left hand and arm with a one-hand grip on the wrist as he holsters his firearm with his right hand. (Maynard BWC video at approx. 2:51).



Officer Bishop deployed his Taser designed to cause NMI, for a 5-second cycle from approximately 6 feet away. (Aguila BWC video at approx. 2:32).



Mr. Barnhill showed obvious signs of pain and the apparent effectiveness of the Taser immediately after it was deployed. At the time both his arms are stretched out by the officers and visibly empty. Officer Maynard again commanded, "Get the fuck on the ground." (Maynard BWC video at approx. 2:52).



As the Taser is being deployed and while Mr. Barnhill's visibly empty hands are being controlled by officers, Officer Maynard brought his right fist back, getting ready to punch Mr. Barnhill's face. (Maynard BWC video at approx. 2:53).



Officer Maynard violently struck the compliant Mr. Barnhill to the face while the Taser is cycling. (Maynard BWC video at approx. 2:53).



Officer Maynard immediately attempted to strike Mr. Barnhill's face a second time with a hammer fist. (Maynard BWC video at approx. 2:53).



The Taser continued to cycle, apparently causing Mr. Barnhill's body to constrict and caused pain as indicated visually and verbally by Mr. Barnhill. Mr. Barnhill's hands remain in control by officers and visibly empty. (Aguila BWC video at approx. 2:35).



Mr. Barnhill continues to express pain, has his empty hands controlled, and the apparent effect of NMI caused him to slide down to the ground. (Maynard BWC video at approx. 2:55).



Mr. Barnhill continues to slide to the ground with his body appearing rigid from the Taser, with his legs generally straight out. Mr. Barnhill told officers, "I'm on the ground. I'm on the ground." (Maynard BWC video at approx. 2:55).



On the way to the ground, Officer Maynard struck Mr. Barnhill to the body with his knee. (Bishop BWC video at approx. 2:59).



Officer Maynard held Mr. Barnhill's fingers. (Maynard BWC video at approx. 2:56).



Officer Aguila immediately placed Mr. Barnhill's left hand behind his back without resistance using a single hand. At approximately that time, Officer Bishop deployed his Taser a second time, for a 5-second cycle, and caused Mr. Barnhill to yell in pain. (Aguila BWC video at approx. 2:38).



Mr. Barnhill's right hand was not under his body and was not near his waistband and was not reaching for anything. Instead, it was visibly empty and out to his front and side. (Maynard BWC video at approx. 2:57).



Officer Maynard grabbed Mr. Barnhill's hood area and pushed his face up against the brick wall. (Aguila BWC video at approx. 2:39).



At the time Officer Maynard had control of Mr. Barnhill's right hand and could have controlled it better with a two-hand grip as trained but chose to push his head instead. (Maynard BWC video at approx. 2:58).



Officer Maynard moved to a two-hand grip of Mr. Barnhill's right hand. At that time, Mr. Barnhill stated, "I didn't do nothing." (Maynard BWC video at approx. 2:59).



At that time, Officer Aguila cranked Mr. Barnhill's left hand high up the center of his back. (Aguila BWC video at approx. 2:44).



Officer Bishop stepped back and called for additional resources while two officers are physically controlling Mr. Barnhill, whose legs are flat on the ground and appeared to be making no effort to stand or resist. (Bishop BWC video at approx. 3:07).



Officer Maynard removed his two-handed grip on Mr. Barnhill's right hand and grabbed Mr. Barnhill's hood again. At approximately that time, Mr. Barnhill begged, "I'm not refusing. I'm not refusing. I'm not refusing. I'm not refusing." (Aguila BWC video at approx. 2:48).



Another view of Officer Maynard grabbing Mr. Barnhill. Officer Maynard, commanded, "Get your fucking hand behind your back." (Maynard BWC video at approx. 3:07).



Officer Bishop joins in going hands on while still holding his Taser. (Bishop BWC video at approx. 3:11).



Officer Bishop lifts up on Mr. Barnhill's hood before pushing his head back to the ground. (Aguila BWC video at approx. 2:50).



It appears Officer Bishop attempted a Drive-Stun-Mode deployment of the Taser to the back of Mr. Barnhill's neck. (Bishop BWC video at approx. 3:14).



Officer Aguila deploys body punch No. 1 while Officer Maynard is bringing Mr. Barnhill's right hand around and to his back. (Aguila BWC video at approx. 2:51).



Officer Aguila body punch No. 2. (Aguila BWC video at approx. 2:52).



Officer Aguila body punch No. 3. (Aguila BWC video at approx. 2:52).



Officer Aguila body punch No. 4 despite Officer Maynards pulling Mr. Barnhill's right hand to his lower back. (Aguila BWC video at approx. 2:53).



Officer Aguila body punch No. 5. (Aguila BWC video at approx. 2:53).



Officer Aguila body punch No. 6. (Aguila BWC video at approx. 2:54).



Officer Aguila body punch No. 7 despite Mr. Barnhill's right hand being brought to his lower back. (Aguila BWC video at approx. 2:54).



Officer Aguila body punch No. 8 nearly striking Mr. Barnhill's right hand that was at his lower back. (Aguila BWC video at approx. 2:55).



While Officer Maynard was placing Mr. Barnhill's right hand behind his back, and while Officer Aguila repeatedly deployed body strikes on Mr. Barnhill, Officer Bishop struck Mr. Barnhill to the head with his Taser. (Maynard BWC video at approx. 3:10).



Mr. Barnhill again begged, "They're behind my back. They're behind my back. They're behind my back. They're behind my back." Officer Bishop struck Mr. Barnhill to the head with his Taser. (Bishop BWC video at approx. 3:14).



Officer Bishop struck Mr. Barnhill with such force with his Taser that the Taser body appeared to break off or separate from the handle of the Taser. (Bishop BWC video at approx. 3:14).



At this approximate time, Mr. Barnhill's visibly empty hands are being held behind his back by officers. (Aguila BWC video at approx. 2:55).



Officer Bishop then grabs Mr. Barnhill's hood with one hand and ponytail with the other, and lifts Mr. Barnhill's head off the ground. (Bishop BWC video at approx. 3:22).



Despite both hands being behind his back, an officer commanded, "Put your fucking hands behind your back," to which Mr. Barnhill immediately replied, "They're behind my back. They're behind my back," and Officer Bishop proceeded to slam Mr. Barnhill's head to the ground immediately causing blood to spatter on the ground. (Bishop BWC video at approx. 3:23).



Officers proceed to handcuff Mr. Barnhill. (Aguila BWC video at approx. 3:14).



Fully handcuffed and secured. (Bishop BWC video at approx. 3:20).



The Officers searched Mr. Barnhill, finding no weapons, then rolled Mr. Barnhill into a seated position.

Officer force based on officer admission and video evidence within approximately 50 seconds, when Mr. Barnhill showed several acts of compliance, was not resisting, was not fleeing, was not armed, was not assaultive, including while he was chest down on the ground with his hands behind his back:

| Officer Maynard | Officer Bishop | Officer Aguila |
|---|---|---|
| • Tackled/pushed to chair.<br>• Hands-on.<br>• Kneed to the body.<br>• First punch to face.<br>• Hammer fist to face.<br>• Pushed face against wall.<br>• Secured right arm. | • Taser probe-mode deployment #1 (5 sec).<br>• Taser probe-mode deployment #2 (5 sec).<br>• Hands on.<br>• Pulled on hood.<br>• Possible drive-stun deployment.<br>• Taser strike to head as improvised weapon #1.<br>• Taser strike to head as improvised weapon #2.<br>• Slammed head on ground. | • Hands on.<br>• Secured left arm.<br>• Body strike #1.<br>• Body strike #2.<br>• Body strike #3.<br>• Body strike #4.<br>• Body strike #5.<br>• Body strike #6.<br>• Body strike #7.<br>• Body strike #8. |