1  **LAW OFFICES OF DALE K. GALIPO**
   Dale K. Galipo, Esq. (SBN 144074)
2  dalekgalipo@yahoo.com
   Marcel F. Sincich, Esq. (SBN 319508)
3  msincich@galipolaw.com
   21800 Burbank Boulevard, Suite 310
4  Woodland Hills, CA 91367
   Phone: (818) 347-3333
5  Fax: (818) 347-4118

6  **GRECH, PACKER, & HANKS**
   Trenton C. Packer (SBN 241057)
7  tpacker@grechpackerlaw.com
   7095 Indiana Ave Ste 200
8  Riverside, CA 92506
   Tel:   (951) 682-9311
9
   *Attorneys for Plaintiff*, HENRY BARNHILL
10

11

12

13

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16

| | |
|---|---|
| 17  HENRY BARNHILL, | **Case No.: 5:23-cv-00589-JGB-SP** |
| 18       Plaintiff, | [*Honorable Jesus G. Bernal* <br> Magistrate Judge Sheri Pym] |
| 19    v. | |
| 20  CITY OF HEMET; OFFICER BRETT | **PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** |
| 21  MAYNARD; OFFICER JOSHUA <br> BISHOP; OFFICER PEDRO AGUILA; | |
| 22  CORPORAL DOUGLAS KLINZING; <br> JAMIE GONZALEZ; CATHERINE | **Final Pretrial Conference:** <br> Date:   March 16, 2026 |
| 23  TIPTON; and DOES 1-10, inclusive, | Time:   11:00 a.m. <br> Place:  1 |
| 24       Defendants. | **Trial:** <br> Date:   April 7, 2026 |
| 25 | Time:   09:00 a.m. |
| 26 | Place:  1 |
| 27 | |
| 28 | |

-1-

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION: ...........................................................................5

II.     CONTENTIONS OF FACT: .........................................................5

III.    PLAINTIFFS' CLAIMS: ...............................................................9

        A.      Elements and Legal Contentions ........................................9

                1.      Claim 1: Excessive Force (42 U.S.C. §1983)..............9

                2.      Claim 2: *Monell* Liability – Unlawful Official Policy, Practice, or Custom (42 U.S.C. §1983). ....................12

                3.      Claim 3: *Monell* Liability – Failure to Adequately Train (42 U.S.C. §1983)........................................14

                4.      Claim 4: *Monell* Liability – Ratification (42 U.S.C. §1983). .................................................................15

                5.      Claim 5A: Battery by a Peace Officer (Non-Deadly Force). ..................................................................16

                6.      Claim 6A: Negligent Use of Force by a Peace Officer (Non-Deadly Force)...............................................19

                7.      Claim 7: Violation of the Bane Act (Cal. Civ. Code §52.1).....................................................................21

        B.      Plaintiff's Key Evidence to Support Their Claims ..............22

IV.     ANTICIPATED EVIDENTIARY ISSUES: ................................23

V.      BIFURCATION OF ISSUES: .....................................................25

VI.     THE TRIAL IS BY JURY: .........................................................25

VII.    ATTORNEYS' FEES...................................................................25

VIII.   ABANDONMENT OF ISSUES: ................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

*Bender v. Cnty. of Los Angeles*,
    217 Cal. App. 4th 968 (2013)............................................................................21

*Brown v. Ransweiler*,
    171 Cal.App.4th 516 (2009)............................................................................17

*Bryan v. McPherson*,
    630 F.3d 805 (9th Cir. 2010)..........................................................................10

*Cameron v. Craig*,
    713 F.3d 1012 (9th Cir. 2013)........................................................................21

*Chaudhry v. City of Los Angeles*,
    751 F.3d 1096 (9th Cir. 2014)........................................................................21

*Cornell v. City & Cnty. of San Francisco*,
    17 Cal. App. 5th 766 (2017)...........................................................................22

*Deorle v. Rutherford*,
    272 F.3d 1272 (9th Cir. 2001).................................................................10, 11

*Glenn v. Washington*,
    673 F.3d 864 (9th Cir. 2011)..........................................................................10

*Graham v. Connor*,
    490 U.S. 386 (1989) ......................................................................................10

*Headwaters v. County of Humboldt*,
    240 F.3d 1185 (9th Cir. 2000)........................................................................11

*John R. v. Oakland Unified School Dist.*,
    48 Cal. 3d 438 (1998).....................................................................................17

*Knapps v. City of Oakland*,
    647 F. Supp. 2d 1129 (N.D. Cal. 2009) .........................................................21

*LaLonde v. County of Riverside*,
    204 F.3d 947 (9th Cir. 2000)..........................................................................12

*Meredith v. Erath*,
    342 F.3d 1057 (9th Cir. 2003)........................................................................10

*Moreland v. Las Vegas Metro. Police Dep't.*,
    159 F.3d 365 (9th Cir. 1998).............................................................13, 15, 16

*Munoz v. City of Union City*,
    120 Cal. App. 4th 1077 (2004)......................................................................17

*N.E.M. v. City of Salinas*,
    761 F. App'x 698 (9th Cir. 2019)...................................................................12

3

*Nelson v. City of Davis*,
   685 F.3d 867 (9th Cir. 2012) ............................................................... 10

*Reese v. County of Sacramento*,
   888 F.3d 1030 (9th Cir. 2018) ........................................................ 21, 22

*Santos v. Gates*,
   287 F.3d 846 (9th Cir. 2002) ............................................................... 10

*Scott v. Harris*,
   550 U.S. 372 (2007) ............................................................................ 10

*Simmons v. Superior Court*,
   7 Cal. App. 5th 1113 (2017) ............................................................... 21

*Smith v. City of Hemet*,
   394 F.3d 689 (2005) ........................................................................... 11

*Smith v. City of Hemet*,
   394 F.3d 689 (9th Cir. 2005) ............................................................. 10

*Tan Lam v. City of Los Banos*,
   976 F.3d 986 (9th Cir. 2020) ............................................................. 12

*Tennessee v. Garner*,
   471 U.S. 1 (1985) ......................................................................... 10, 11

*Yount v. City of Sacramento*,
   43 Cal. 4th 885 (2008) ....................................................................... 17

### Statutes

42 U.S.C. §1983 ....................................................................................... 5

42 U.S.C. §1988 ................................................................................. 5, 25

Cal. Civ. Code §52(b) ........................................................................... 25

Cal. Civ. Code §52.1 ............................................................................. 21

Cal. Code Civ. Proc. §1021.5 .............................................................. 25

Cal. Gov. Code §815.2(a) ..................................................................... 17

Cal. Gov. Code §820(a) ........................................................................ 17

Judicial Council of California Civil Jury Instructions, No. 1305B ..... 18, 19

Judicial Council of California Civil Jury Instructions, No. 3066 .......... 22

Judicial Council of California Civil Jury Instructions, No. 441 ...... 20, 21

Case No. 5:23-cv-00589-JGB-SP
PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**TO THIS HONORABLE COURT, AND TO DEFENDANTS AND
THEIR ATTORNEYS OF RECORD HEREIN:**

Pursuant to Local Rule 16-4 and this Court's Scheduling and Case
Management Order, Plaintiff hereby submits the following Memorandum of
Contentions of Fact and Law.

This memorandum may be modified as necessary pursuant to this Court's
pending rulings on the parties' various motions *in limine*.

## I.    INTRODUCTION:

This 42 U.S.C. §1983 civil rights action arises from the excessive and
unreasonable force of Plaintiff Henry Barnhill ("Barnhill") by City of Hemet Police
Department Officers Brett Maynard ("Maynard"), Joshua Bishop ("Bishop"), Pedro
Aguila ("Aguila"), Douglas Klinzing ("Klinzing"), on April 29, 2022. Plaintiff
seeks compensatory damages, punitive damages, reasonable costs, attorneys' fees
under 42 U.S.C. §1988, and any other relief that this Court deems appropriate.

## II.    CONTENTIONS OF FACT:

This entire incident is captured on the several body-worn camera videos of the
Defendant Officers showing the following. This entire incident lasted approximately
3 minutes. The event from the night before, despite being the substance of this call,
did not involve a gun; Barnhill did not point a gun or have a physical altercation with
anyone. The allegations required investigation not punishment. Defendants Maynard,
Bishop and Aguila responded and saw a car that matched the description given with
Barnhill alone inside. Barnhill merely sat in his car until he saw out of the corner of
his eye from the side mirror, someone approaching him with a gun, so he turned the
car on and drove home to get somewhere safe out of great fear, not realizing it was
the police. Even while driving, Barnhill does not recall knowing it was the police or
seeing lights and sirens, he was just afraid of being killed and tried to get away from
danger. The pursuit lasted approximately 2 minutes until the car stopped and Barnhill
exited then went towards the house while Maynard, Bishop, and Aguila pursued with

guns drawn. Officers simultaneously gave commands, including, "Show me your hands," to which Barnhill complied by raising his visibly empty hands up. However, after putting his hands up, Barnhill hurried a short distance to his front door trying to get somewhere safe – there the pursuit ended. Thereafter, Barnhill did not attempt to flee, did not go into the house, and could was surrounded by walls and the approaching officers.

Further, during the physical altercation, Barnhill did not resist and did everything he could to obey and comply with commands, trying to do everything he could to show the officers that he was not a threat so that the beating would stop. At the door, Barnhill saw the person running at him, realized it was an officer, and froze "like a deer caught in headlights." As the Maynard charged towards the frozen Barnhill, he braced for the impact of being tackled. Seeing only keys in his hands, Maynard immediately closed the distance, tackled and pushed Barnhill away from the door, causing him to stumble backwards and become seated in a patio chair. Barnhill dropped to the patio chair and immediately raised his hands in surrender as Bishop and Aguila also joined. Maynard holstered his gun, and grabbed Barnhill's right wrist, while Aguila grabbed Barnhill's left wrist. Bishop drew his Taser and while Maynard and Aguila held Barnhill's hands controlling him, Bishop yelled, "Taser out" to get his partners to move out of the way and deployed the Taser for 5 seconds on Barnhill. Tasers cause neuromuscular incapacitation ("NMI"), causing the subject to lose control of his muscles and ability to move. The Taser darts made contact with Barnhill causing him to stiffen up from the shock and NMI.

While the Taser was being deployed, and while Maynard and Aguila held Barnhill's visibly empty hands stretched out, Maynard violently punched Barnhill in the face twice with a closed fist and a third time with a hammer fist. The Taser continued to cycle, causing Barnhill's body to constrict while Barnhill's visibly empty hands remained in control of the officers. As Barnhill began to go to the ground, Maynard delivered a knee strike on Barnhill. Barnhill tried to comply with

commands to get on the ground, but he could not voluntarily move while being Tased; still his rigid and locked up body easily slid down to the ground at the control of Maynard and Aguila. The officers jumped on Barnhill and started pounding him under the observation and supervision of Klinzing. Klinzing approached and saw Barnhill on the ground and Aguila immediately placed Barnhill's left hand behind his back without any resistance using a single hand and held it in place controlling Barnhill's left hand and arm. Aguila maintained control of Barnhill's left hand behind his back with a firm grip while Bishop and Maynard took control of the right hand. On the ground, Maynard used his right knee to deliver one strike to Barnhill's face. Bishop also reenergized the Taser and deployed it again for another 5 second cycle. As he was being Tased, an officer commanded, "Put your hands behind your back," and Barnhill again tried to comply but could not move because he was locked up. Barnhill was "being hit all over the place by the officers [while] being simultaneously tased." With the officers on top of him and all the force being deployed, Barnhill felt like he was being Tased the entire time.

Using his entire body weight to control Barnhill's right hand, Maynard chose to let go and push Barnhill's head and face up against a brick wall. Barnhill pled with the officers, "I didn't do nothing" as Aguila also began to crank Barnhill's left hand high up the center of his back. During the assault, Officers commanded Barnhill to put his hands behind his back, and Barnhill would state that his hands were behind his back, and while Barnhill was complying, Officers would let go and start hitting Barnhill in the face causing him to instinctively react by protecting his face from being hit again. Being controlled by four Officers, Barnhill said, "My arms are behind my back. My arms are behind my back," and "I'm not resisting," pleading that they did not have to keep hitting him.

However, Bishop stepped back and called for additional resources while two officers are physically controlling Barnhill, whose legs are flat on the ground and appeared to be making no effort to stand or resist. Maynard removed his two-handed

grip on Barnhill's right hand and grabbed Barnhill's hood again, at which time Barnhill begged, "I'm not refusing. I'm not refusing. I'm not refusing. I'm not refusing." Even with both hands being held behind his back, officers kept striking Barnhill in the face. Then, Bishop then joined in going hands on while still holding his Taser, including grabbing Barnhill's hair and pulling it back. It appears Bishop attempted a Drive-Stun-Mode deployment of the Taser to the back of Barnhill's neck. Barnhill again begged, "They're behind my back. They're behind my back. They're behind my back. They're behind my back."

Aguila also deployed six body punches while Maynard was bringing Barnhill's right hand to his back. Aguila deployed two additional body punches despite Barnhill's right hand being brought to his lower back, including nearly striking Barnhill's right hand because it was at his lower back. While Barnhill's visibly empty hands were being held behind his back after Aguila repeatedly deployed body strikes on Barnhill, Bishop struck Barnhill to the head with his Taser twice, as an improvised device, with such force that the Taser body broke off from the handle and the Taser flew out of Bishop's hand. The reason Officers could not get Barnhill's hand behind his back was because they were piled on top of each other and had their own legs and arms blocking the path to his lower back. As soon as Klinzing moved his leg, officers easily placed Barnhill's right hand behind his back. But the assault was over. Bishop grabbed Barnhill's hood with one hand and hair with the other and lifted his head off the ground. Despite both hands being behind his back, an officer strangely commanded, "Put your f***ing hands behind your back," to which Barnhill immediately replied, "They're behind my back. They're behind my back," then with two hands Bishop excessively slammed Barnhill's face so hard onto the concrete floor that blood immediately spattered on the ground. Barnhill was searched with no weapons found, then rolled Barnhill into a seated position.

There were reasonable, less-intrusive alternatives taking Barnhill into custody including verbal commands, de-escalation, and control holds, without overreaction

and escalating the situation into substantial quality and quantity of force. There was no warning given prior to any force being used. Barnhill was not in proximity to any weapon. Barnhill never struck an officer and never attempted to strike an officer; Barnhill never punched, kicked, kneed, elbowed, or grabbed an officer and never attempted the same; was not assaultive; never verbally threatened any officer; was not verbally or physically aggressive; and did not express or show any intent to harm any officer. Barnhill could not harm any person while being held chest-down on the ground by Officers who knew nothing about Barnhill's background or history. Nevertheless, Defendants used deadly force against Barnhill despite him never being an immediate threat of death or serious bodily injury.

The City's training and policies are inadequate, including given the officers lack of understanding of training, lack of training, failure to intervene, failure to report, failure to follow training, and lack of situational awareness. Further, City ratified the Defendant Officers' uses of excessive force. The Defendant Officers' credibility must be tested by a jury given their statements in contradiction to the video evidence showing their use of unnecessary force causing Barnhill great bodily injury.

III.   **PLAINTIFFS' CLAIMS**:

    **A.**   **Elements and Legal Contentions**

        1.   <u>Claim 1: Excessive Force (42 U.S.C. §1983).</u>

Plaintiff contends that Defendant Officers used excessive force when they individually and collectively beat Plaintiff while he was not fleeing, not resisting, not aggressive, not assaultive, and not an immediate threat of harm to any person. Defendants acted under the color of state law and within the course and scope of their employment during the incident.

The law governing the use of deadly force is well established. "[A] Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381

(2007). The reasonableness of any seizure is determined by "'careful[ly] balancing ... the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) ("Whether an otherwise valid search or seizure was carried out in an unreasonable manner is determined under an objective test, on the basis of the facts and circumstances confronting the officers").

The Court must "'balance the amount of force applied against the need for that force.'" *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). "[A]ll force—lethal and non-lethal—must be justified by the need for the specific level of force employed." *Id.* at 825. Even where some force is justified, the amount actually used may be excessive. *Santos v. Gates*, 287 F.3d 846, 853-54 (9th Cir. 2002). Government interest factors to balance against the type of force used include "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight," *Graham*, 490 U.S. at 396, (4) the availability of alternative methods to effectuate an arrest or overcome resistance, *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005), and (5) the giving of a warning prior to the use of force, *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012). *See Glenn v. Washington*, 673 F.3d 864, 872 (9th Cir. 2011); *see also Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001). The "most important" factor is whether the plaintiff posed an immediate threat to the safety of the officers or others. *Bryan*, 630 F.3d at 826. Here, Plaintiff was not an immediate threat of safety to any person, and the Officers also used deadly force on Plaintiff who was obviously not an immediate threat of death or serious bodily injury to any person.

Another factor to consider is the availability of alternative methods to effectuate an arrest or overcome resistance. *Smith v. City of Hemet*, 394 F.3d 689,

701 (2005) (en banc). "[P]olice are 'required to consider what other tactics if any were available to effect the arrest.'" *Headwaters v. County of Humboldt*, 240 F.3d 1185, 1204 (9th Cir. 2000). Police officers are trained to provide warnings prior to using force where feasible, even when the force is less than deadly, and the failure to give such a warning is a factor to consider in determining whether the force was excessive. *See Deorle*, 272 F.3d at 1284. In the context of deadly force, "whenever practicable, a warning must be given before deadly force is employed." *Harris*, 126 F.3d at 1201. Here, the Defendant Officers did not warn Plaintiff that any force would be used and did not warn Plaintiff that deadly force would be used, even though they had the opportunity to do so.

Because Defendant Officers' conduct with respect to Plaintiff also constitutes deadly force, this conduct requires the highest justification, as follows:

> The intrusiveness of a seizure by means of deadly force is unmatched. The suspect's fundamental interest in his own life need not be elaborated upon. The use of deadly force also frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment.

*Garner*, 471 U.S. at 9. "'Deadly force' means any use of force that creates a substantial risk of causing death or serious bodily injury, including, but not limited to, the discharge of a firearm." Pen. Code §835a(e)(1); *Smith*, 394 F.3rd at 693; *Stephenson v. California*, 761 F.Supp.3d 1242, 1263 (C.D. Cal. 2025). "'Serious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss of impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement." Pen. Code §417.6(b) (emphasis added); 21 U.S.C §802(25); W.I.C. §15610.67 (including requiring medical intervention including surgery). "A desire to resolve quickly a potentially dangerous situation" does not justify the use of force. *Deorle*, 272 F.3d at 1281.

Further, the Ninth Circuit recently affirmed the long-standing principle that even if force was reasonable at one point, once the subject is no longer a threat, additional force is unreasonable. *See generally Tan Lam v. City of Los Banos*, 976 F.3d 986, 1001 (9th Cir. 2020); *LaLonde v. County of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000); *Zion v. County of Orange*, 874 F.3d 1072, 1076 (9th Cir. 2017).

Further, the law was clearly established at the time of the incident that the use of force under these circumstances violates the Constitutional rights of Plaintiff. *See Aguirre v. County of Riverside*, 29 F.4th 624, 629 (9th Cir. 2022); *Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007); *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007).

Plaintiff seeks compensatory damages for the violation of his rights, costs, punitive damages, and reasonable attorneys' fees under this claim.

Elements of Excessive Force:

1.    Defendant Officer acted under color of law.

2.    Defendant Officer used excessive force against Plaintiff.

3.    The excessive force was a substantial factor in causing harm, injury, or damage to Plaintiff.

Source: Ninth Circuit Manual of Model Jury Instructions, No. 9.25 (2025 Edition).

2.    Claim 2: *Monell* Liability – Unlawful Official Policy, Practice, or Custom (42 U.S.C. §1983).

Plaintiff contends that the City of Hemet maintained an unconstitutional custom and practice of using excessive force, including deadly force, by viciously beating a person merely for fleeing and based on allegations when that person was not an immediate threat of harm, and not an immediate threat of death of serious bodily injury, a policy and custom of ratifying excessive uses of force, a policy and custom of failing to discipline officers who use excessive force, a policy and custom of failing to train officers adequately for the situations which they are expected to deal, and a policy and custom of failing to adequately investigate use of force

incidents. Plaintiff contends that Defendant City's unlawful custom, practices, and policies were the moving force behind the deprivation of Plaintiff's constitutional rights.

This claim is brought by Plaintiff against Defendant City of Hemet. To show the existence of an unconstitutional custom, practice, and/or policy, Plaintiff need not present facts showing that similar conduct has repeatedly occurred in the past. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 fn. 11 (1986). This standard would require a "strained" reading of Supreme Court precedent. *Id*. "[A] single instance" would be sufficient if "the unconstitutional act was taken pursuant to a municipal policy." *Id*. (*citing Oklahoma City v. Tuttle*, 471 U.S. 808, 822-24 (1985)). Moreover, "[a] policy can be one of action or inaction." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Plaintiff seeks compensatory damages, costs, and reasonable attorneys' fees under this claim.

Elements of Unlawful Official Policy, Practice, or Custom:

1.    Defendant Officers acted under color of state law.

2.    Defendant Officer deprived Plaintiff of his particular rights under the United States Constitution.

3.    Defendant Officer acted pursuant to an expressly adopted official policy or a widespread or longstanding practice or custom of the Defendant City of Hemet.

4.    Defendant City of Hemet's official policy or widespread or longstanding practice or custom caused the deprivation of the Plaintiff's rights by the Defendant Officers; that is, the City of Hemet's official policy or widespread or longstanding practice or custom is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

Source: Ninth Circuit Manual of Model Jury Instructions, No. 9.5 (2025 Edition).

3.     Claim 3: *Monell* Liability – Failure to Adequately Train (42 U.S.C. §1983).

Plaintiff contends that Defendant City of Hemet failed to implement proper training regarding the use of force, including deadly force with deliberate indifference to the constitutional rights of Plaintiff. "[A] local government body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional right." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992). (*citing City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006); *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001).

"[T]he inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. "[T]he failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id*. The failure to train here is evident by the officers failure to understand what deadly force is, what type of force qualifies as deadly force, failure to assess the need for force, failure to intervene, failure to report and investigate uses of force adequately.

Plaintiff seeks compensatory damages, costs, and reasonable attorneys' fees under this claim.

Elements of Failure to Adequately Train:

1.     The acts and/or failure to act of the Defendant Officer(s) deprived
Plaintiff of his particular rights under the United States Constitution.

2.     Defendant Officer acted under color of state law.

3.     The training policies of the Defendant City of Hemet were not adequate
to prevent violations of law by its employees or to train its officers to handle the
usual and recurring situations with which they must deal.

4.     Defendant City of Hemet was deliberately indifferent to the substantial
risk that its policies were inadequate to prevent violations of law by its employees or
known or obvious consequences of its failure to train its officers adequately.

5.     The failure of the Defendant City of Hemet to prevent violations of law
by its employees or to provide adequate training caused the deprivation of Plaintiff's
rights by the Defendant Officer's; that is, Defendant City of Hemet's failure to
prevent violations of law by its employees or to train played a substantial part in
bringing about or actually causing the injury or damage to Plaintiff.

Source: Ninth Circuit Manual of Model Jury Instructions, No. 9.8 (2025 Edition).

4.     Claim 4: *Monell* Liability – Ratification (42 U.S.C. §1983).

Plaintiff contends that Defendant City of Hemet ratified the use of force,
including deadly force used against Plaintiff. *See Lassiter v. City of Bremerton*, 556
F.3d 1049, 1055 (9th Cir. 2009); *Lytle v. Carl*, 382 F.3d 978, 987-88 (9th Cir.
2004). Liability under Section 1983 *Monell* theory may attach when a final
policymaker ratifies a subordinate's unconstitutional action and the basis for it.
*Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (*citing City of St. Louis v.
Praprotnik*, 485 U.S. 112, 127 (1988) (plurality)); *see generally Monell v. Dep't of
Soc. Servs.*, 436 U.S. 658 (1978); *see also Lytle v. Carl*, 382 F.3d 978, 987-88 (9th
Cir. 2004) ("[R]atification requires both knowledge of the alleged constitutional
violation, and proof that the policymaker specifically approved of the subordinate's
act.").

Plaintiff seeks compensatory damages, costs, and reasonable attorneys' fees under this claim.

<u>Elements of Ratification:</u>

1.      Defendant Officer acted under color of state law.

2.      The acts and/or failure to act of the Defendant Officer deprived Plaintiff of his particular rights under the United States Constitution.

3.      The final policymaker acted under color of state law.

4.      The final policymaker had final policymaking authority from Defendant City of Hemet concerning the acts and/or failure to act of the Defendant Officers.

5.      The final policymaker ratified the Defendant Officer's acts and/or failure to act, that is, the final policymaker knew of and specifically made a deliberate choice to approve the defendant officer's acts and/or failure to act and the basis for it.

<u>Source</u>: Ninth Circuit Manual of Model Jury Instructions, No. 9.7 (2025 Edition).

5.      <u>Claim 5A: Battery by a Peace Officer (Non-Deadly Force).</u>

Plaintiff contends that Defendants, while acting in the course and scope of their employment as City of Hemet employees, used unreasonable force against Barnhill when Maynard violently tackled Barnhill, pushing him onto a patio chair with his visibly empty hands in the air in compliance with officers; Aguila grabbed Barnhill's left wrist while Maynard held Barnhill's right wrist, then Bishop Tased Barnhill; under the effects of the Taser causing neuromuscular incapacitation, arms spread and held by the officers, Maynard violently struck Barnhill in the face twice; the Tasing caused Barnhill's body to constrict and slide down to the ground while Maynard kneed Barnhill's body; on the ground Aguila immediately placed his left hand behind his back without any resistance; Maynard violently kneed Barnhill in the face and grabbed Barnhill's hood and ponytail and slammed his face against the brick wall; Bishop lifted Barnhill's head and pushed it into the ground, then uses the

Taser in drive-stun-mode to the back of Barnhill's neck; Aguila violently deploy eight (8) punches to Barnhill's lower back; Bishop struck Barnhill to the back of the head with his Taser twice; Bishop grabbed Barnhill's ponytail again, lifted his head off the ground, and slammed it into the ground; causing Plaintiff serious bodily injury and harm. At all times relevant, Barnhill was not an immediate threat to the safety of others, there were reasonable less-intrusive alternatives available, no warning was given, and Mr. Barnhill was not attempting to evade detention. The City of Hemet is vicariously liable pursuant to Cal. Gov. Code §§815.2(a); 820(a). Plaintiff seeks compensatory damages, and punitive damages under this claim. Where California and federal law conflict and where California law is more prohibitive of recovery, federal law governs given the remedial purposes of civil rights claims.

State law battery claims that police officers used excessive force in the course of an arrest, investigatory stop or other "seizure" of a free citizen, are analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution. *See Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008); *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 n.6 (2004); *Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2009). Defendant Officers were acting in the course and scope of their employment during this incident. "'[A]n employer's liability extends to torts of an employee committed within the scope of his employment.'" *John R. v. Oakland Unified School Dist*., 48 Cal. 3d 438, 447 (1998) (internal citations omitted). The City of Hemet is vicariously liable pursuant to Cal. Gov. Code §§815.2(a); 820(a).

Plaintiff seeks compensatory damages, and punitive damages under this claim. Where California and federal law conflict and where California law is more prohibitive of recovery, federal law governs given the remedial purposes of civil rights claims.

Elements for Battery by a Peace Officer (Non-Deadly Force):

1.    That the Defendant intentionally touched Plaintiff;

2.    That the Defendant used force on Plaintiff;

3.    That Plaintiff did not consent to the use of that force;

4.    That Plaintiff was harmed; and

5.    That defendant's use of unreasonable force was a substantial factor in causing Plaintiff's harm.

Source: CACI No. 1305A, (2025 Edition).

Claim 5B: Battery by a Peace Officer (Deadly Force).

Plaintiff contends that Defendants, while acting in the course and scope of their employment as City of Hemet employees, used unreasonable deadly force against Barnhill when Maynard violently kneed Barnhill in the face; Bishop struck Barnhill to the back of the head with his Taser twice; and when Bishop grabbed Barnhill's ponytail, lifted his head off the ground, and slammed it into the ground; causing Plaintiff serious bodily injury. At all times relevant, Barnhill was not an immediate threat of death or serious bodily injury, there were reasonable less-intrusive alternatives available, no warning was given, and Mr. Barnhill was not attempting to evade detention. At all relevant times, any reasonable officer would know that striking a chest-down subject to the face and head with their knee, with an improvised weapon, and by lifting and slamming the face and head into the ground creates a substantial risk of causing death or serious bodily injury; and this force in fact caused serious bodily injury. State law battery claims that police officers used excessive force in the course of an arrest are analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution. *See Yount v. City of Sacramento*, 43 Cal. 4th 885, 902 (2008); *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 n.6 (2004); *Brown v. Ransweiler*, 171 Cal.App.4th 516, 527 (2009); CACI 1305B (Battery by Peace Officer). "'[A]n employer's liability extends to torts of an employee committed within the scope of his employment.'" *John R. v. Oakland Unified School Dist*., 48 Cal. 3d 438, 447 (1998) (internal

citations omitted). The City of Hemet is vicariously liable pursuant to Cal. Gov. Code §§815.2(a); 820(a).

Plaintiff seeks compensatory damages, and punitive damages under this claim. Where California and federal law conflict and where California law is more prohibitive of recovery, federal law governs given the remedial purposes of civil rights claims.

Elements for Battery by a Peace Officer (Non-Deadly Force):

6.    That the Defendant intentionally touched Plaintiff;

7.    That the Defendant used deadly force on Plaintiff;

8.    3.    That the Defendant's use of deadly force was not necessary to defend human life;

9.    That Plaintiff was harmed; and

10.    That defendant's use of unreasonable force was a substantial factor in causing Plaintiff's harm.

Source: CACI No. 1305B, (2025 Edition).

6.    Claim 6A: Negligent Use of Force by a Peace Officer (Non-Deadly Force).

Plaintiff contends that Defendant City of Hemet Police Officers, while acting in the course and scope of their employment as City Police Officers, were negligent in their pre-force tactics and conduct and in using force against Barnhill. *See Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 635-8 (Cal. 2013). Plaintiff's negligence claim comprehends the Officers' negligent pre-force tactics including their failure to have an adequate tactical plan; failure to communicate with Barnhill properly; failure to communicate with other officers properly; failure to provide a verbal warning; failure to de-escalate the situation; and failure to attempt less intrusive alternatives without unnecessarily escalating the level of force.

The City of Hemet is vicariously liable pursuant to Cal. Gov. Code §§815.2(a) ("A public entity is liable for injury proximately caused by an act or

omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.") and 820(a).

Plaintiff seeks compensatory damages under this claim.

Elements for Negligent Use of Deadly Force by a Peace Officer:

1.    Defendants used force on Plaintiff.

2.    The amount of force used by the Defendant was unreasonable.

3.    Plaintiff was harmed.

4.    Defendants' use of unreasonable force was a substantial factor in causing Plaintiff's harm.

Source: CACI No. 440, (2025 Edition).

Claim 6B: Negligent Use of Force by a Peace Officer (Deadly Force).

Plaintiff contends that Defendant City of Hemet Police Officers, while acting in the course and scope of their employment as City Police Officers, were negligent in their pre-force tactics and conduct and in using deadly force against Barnhill. *See Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 635-8 (Cal. 2013). Plaintiff's negligence claim comprehends the Officers' negligent pre-force tactics including their failure to have an adequate tactical plan; failure to communicate with Barnhill properly; failure to communicate with other officers properly; failure to provide a verbal warning; failure to de-escalate the situation; and failure to attempt less intrusive alternatives without unnecessarily escalating the level of force.

The City of Hemet is vicariously liable pursuant to Cal. Gov. Code §§815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.") and 820(a).

Plaintiff seeks compensatory damages under this claim.

Elements for Negligent Use of Deadly Force by a Peace Officer:

1.    The Defendant Officer was a peace officer.

2.    Defendants used deadly force on Plaintiff.

3.    Defendants' use of deadly force was not necessary to defend human life.

4.    Plaintiff was harmed.

5.    Defendants' use of deadly force was a substantial factor in causing Plaintiff's harm.

<u>Source</u>: CACI No. 441, (2025 Edition).

7.    <u>Claim 7: Violation of the Bane Act (Cal. Civ. Code §52.1).</u>

Plaintiff contends that Defendant Officers deprived Plaintiff of his constitutional rights when he used excessive force. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-06 (9th Cir. 2014) cert. denied sub nom; *City of Los Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295 (2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013); *Bender v. Cnty. of Los Angeles*, 217 Cal. App. 4th 968, 977 (2013); *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009). The City of Hemet is vicariously liable pursuant to Cal. Gov. Code §815.2(a) ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.").

The California Court of Appeals has held that intentional conduct that is separate and independent from an arrest gives rise to a Bane Act claim. *Simmons v. Superior Court*, 7 Cal. App. 5th 1113, 1125-27 (2017). The Ninth Circuit in *Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018) stated, "it is not necessary for the defendants to have been 'thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" 888 F.3d 1030 (9th Cir. 2018) (quoting *United States v. Reese*, 2 F. 3d 870 (9th Cir. 1993). Here,

21                          Case No. 5:23-cv-00589-JGB-SP

there are a number of facts that establish that Defendant Officers acted with reckless disregard for Plaintiff's constitutional rights. First, Defendant Officers also used deadly force against Plaintiff, without warning, after he was on the ground and unarmed, and when Plaintiff was compliant and was not even an immediate threat of harm to any person. Defendant Officers had time during the encounter to deliberate, plan, analyze, and determine the appropriate level of force, if any.

Plaintiff seeks compensatory damages and attorneys' fees including treble damages or a multiplier under this claim.

Elements of Violation of the Bane Act:

1.    Defendant Officer used excessive force against Plaintiff.

2.    Defendants intended to violate the Plaintiff's right to be free from excessive force by acting with a reckless disregard for the Plaintiff's constitutional rights.

3.    Defendants' use of excessive force was a substantial factor in causing Plaintiff's harm.

Source: CACI No. 3066 (2025 Edition) (modified); *Reese*, 888 F.3d at 1042.

**B.    Plaintiff's Key Evidence to Support Their Claims**

1.    Testimony of Henry Barnhill

2.    Testimony of Brett Maynard

3.    Testimony of Joshua Bishop

4.    Testimony of Pedro Aguila

5.    Testimony of Douglas Klinzing

6.    Testimony of Jamie Gonzalez

7.    Testimony of Catherine Tipton

8.    Testimony of Michael Arellano

9.    Testimony of Ryan O'Connor, M.D., Plaintiff's medical expert

10.    Testimony of Dana Tannenbaum, M.D., Plaintiff's medical expert

11.    Testimony of Roger Clark, Plaintiff's police practices expert

12.    Testimony of Stephanie Anne Loe, M.D., treating provider

13.    Testimony of Karim Rasheed, M.D., treating provider

14.    Videos of the Incident

15.    Screenshots of Videos

16.    Photographs of Injuries

17.    Relevant portions of Plaintiff's Medical Records

18.    Demonstrative Exhibits of Experts

## IV.    <u>ANTICIPATED EVIDENTIARY ISSUES:</u>

Plaintiff has filed Motions *in Limine* regarding and anticipate that there will be evidentiary issues related to the following:

A.    **Personal History**: Plaintiff's irrelevant and unrelated personal and family history including relationship history, unrelated arguments or domestic dispute history, residence history, education history, disciplinary history, work history, children's history, social media history, text messages and living arrangements, and license suspension. All this information was unknown to the Defendant Officers, irrelevant to this matter, hearsay, unduly prejudicial, confuses the issues, risks misleading the jury, and includes impermissible character evidence, therefore should be excluded from trial.

B.    **Medical History**: Plaintiff's unrelated and unclaimed medical history, including being born with a heart murmur or having an irregular heartbeat, and whether Plaintiff has PTSD from an unrelated incident and under different and unrelated circumstances. This information was unknown to the Defendant Officers, irrelevant to this matter, hearsay, unduly prejudicial, impermissible character evidence, private and confidential, and therapist-patient privilege, therefore should be excluded from trial.

C.    **After-Acquired Investigatory Information**: including (i) 9-1-1 call recordings and information therefrom (this motion does not request exclusion of

23    Case No. 5:23-cv-00589-JGB-SP

1   information known to the Defendant Officers at the time of the incident from

2   another source); and (ii) after-acquired investigatory records (post-incident

3   discovered, drafted, created) and information therefore, including Defendant Officer

4   reports and declarations (unless for record refresh or impeachment), videos

5   regarding taking with other officers, videos regarding talking with 911 caller,

6   interview with witnesses, videos regarding gun, videos regarding search of home,

7   search and/or safety sweep videos, post-search photographs and videos, photos of

8   guns and ammunition, and social media profile. This information was clearly

9   unknown to the Defendant Officers, irrelevant to this matter, hearsay, unduly

10  prejudicial, confuses the issues, risks misleading the jury, and impermissible

11  character evidence, therefore should be excluded from trial.

12      **D.      Pre-Incident Criminal History and Bad Acts**: Plaintiff's pre-incident

13  criminal history including any contacts with law enforcement, arrests, convictions,

14  custody, incarcerations, probation, parole, allegations of criminal conduct, and any

15  criminal records, including that related to possession of controlled substance,

16  receiving money from prostitution, and domestic violence. This information was

17  unknown to the Defendant Officers, irrelevant to this matter, hearsay, unduly

18  prejudicial, and impermissible character evidence, therefore should be excluded

19  from trial.

20      **E.      Incident Related Criminal Action**: Plaintiff's criminal history and

21  records related to this current incarceration that stems from this incident, including

22  booking photographs and records, criminal complaint, incident reports,

23  supplemental reports, case reports, DMV photo record, Challenger DMV

24  information, statement of the case, adult disposition of arrest and court action,

25  District Attorney complaint and records, property reports and documents, crime

26  incident report, mugshot, bail enhancement forms, arrest reports, trial transcripts and

27  records, including related to convictions of criminal threat, possession of a firearm,

28  delaying and evading. This post-incident information and records thereof were

1  unknown to the Defendant Officers, irrelevant to this matter, hearsay, unduly

2  prejudicial, and impermissible character evidence, therefore should be excluded

3  from trial. Alternatively, Plaintiff proposes that if the Court finds that there is any

4  minimal probative value to Plaintiff's current incarceration and reason for it, that the

5  testimony and argument be limited in time and scope, briefly, to the fact of

6  Plaintiff's conviction, the title of claims for which he was convicted, and the fact of

7  current incarceration.

8      F.    **District Attorney and Hemet Police Department Findings**: Hemet

9  Police Department and District Attorney's Office findings and analysis, including

10  whether the force was within policy, whether the force was subject to criminal

11  charges, investigative reports and memos, and press releases. This information and

12  records thereof were after-acquired investigatory materials, unknown to the

13  Defendant Officers, irrelevant to this matter, hearsay, unduly prejudicial, and

14  impermissible character evidence, therefore should be excluded from trial.

15  **V.    BIFURCATION OF ISSUES:**

16      Plaintiff does not request any bifurcation and contends that all liability and

17  damages should be tried together with the predicate question of punitive damages

18  and would agree to bifurcate the amount of punitive damages only.

19  **VI.    THE TRIAL IS BY JURY:**

20      The issues herein are triable to a jury as a matter of right. The parties made a

21  timely demand for trial by jury.

22  **VII.    ATTORNEYS' FEES.**

23      If Plaintiff prevails at trial, reasonable attorney fees are recoverable pursuant

24  to 42 U.S.C. §1988 and Cal. Code Civ. Proc. §1021.5. Under the provisions of Cal.

25  Civ. Code §52(b), Defendants are also liable for reasonable attorneys' fees and a

26  civil penalty of $25,000 on Plaintiff's Bane Act claim.

27  **VIII. ABANDONMENT OF ISSUES:**

28      Plaintiff does not abandon any of his claims.

1

2  Respectfully submitted,

3  DATED: February 23, 2026          **LAW OFFICES OF DALE K. GALIPO**

4                                    **GRECH, PACKER, & HANKS**

5                                    By:    */s/ Marcel F. Sincich*

6                                           Dale K. Galipo
                                            Trenton C. Packer
7                                           Marcel F. Sincich
                                            *Attorneys for Plaintiff*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28