UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 23-589 JGB (SPx)** | Date | June 3, 2026 |
|---|---|---|---|

| Title | *Henry Barnhill v. City of Hemet, et al.* |
|---|---|

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **Order (1) GRANTING-IN-PART and DENYING-IN-PART Defendants' Motion for Summary Judgment (Dkt. No. 48) and Motion to Exclude Expert Testimony of Roger Clark (Dkt. No. 56); (2) DENYING Defendants' Motion to Exclude Expert Testimony of Ryan O'Connor (Dkt. No. 55); and (3) VACATING the June 8, 2026 Hearing (IN CHAMBERS)**

Before the Court are three motions filed by Defendants City of Hemet, Brett Maynard, Joshua Bishop, Pedro Aguila, Douglas Klinzing, Jamie Gonzalez, and Catherine Tipton (collectively, "Defendants"): (1) a motion for summary judgment ("MSJ," Dkt. No. 48); (2) a motion to exclude certain opinion and testimony of expert Dr. Ryan O'Connor ("O'Connor MTE," Dkt. No. 55); and (3) a motion to exclude certain opinion and testimony of expert Roger Clark ("Clark MTE," Dkt. No. 56). The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the matters, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the MSJ and Clark MTE and **DENIES** the O'Connor MTE.

## I. BACKGROUND

This case arises from officers' alleged excessive use of force during an investigation of a 911 call regarding Plaintiff Henry Barnhill ("Barnhill"). Barnhill commenced this action on April 3, 2023, against Defendants and Does 1–10. ("Complaint," Dkt. No. 1.) The Complaint asserts seven causes of action: (1) unreasonable search and seizure, excessive force in violation of 42 U.S.C. § 1983 (against Defendants Brett Maynard, Joshua Bishop, Pedro Aguila, Douglas Klinzing, and Does 1–6 ); (2) municipal liability for unconstitutional custom, practice, or policy

| Page 1 of 20 | **CIVIL MINUTES—GENERAL** | Initials of Deputy Clerk mg |
|---|---|---|

in violation of 42 U.S.C. § 1983 (against Defendants City of Hemet, Jamie Gonzalez, Catherine Tipton, and Does 7–10); (3) municipal liability for failure to train in violation of 42 U.S.C. § 1983 (against Defendants City of Hemet, Jamie Gonzalez, Catherine Tipton, and Does 7–10); (4) municipal liability for ratification in violation of 42 U.S.C. § 1983 (against Defendants City of Hemet, Jamie Gonzalez, Catherine Tipton, and Does 7–10); (5) battery (against all Defendants); (6) negligence (against all Defendants); and (7) violation of the Bane Act, Cal. Civ. Code § 52.1 (against all Defendants). (Id.)

On January 12, 2026, Defendants filed the MSJ and the following documents in support:

- Defendants' Statement of Undisputed Facts and Conclusions of Law ("DSUF," Dkt. No. 48-4);
- Declaration of Andrea Kornblau ("Kornblau MSJ Declaration," Dkt. No. 48-2);
- Declaration of Sergeant Gabriel Gomez authenticating County documents and filed ("Gomez Declaration," Dkt. No. 48-3);
- Hemet Police Department's Audio Recording detailing a 911 Dispatch Call from Barnhill's girlfriend from 4/29/2022 (MSJ, Ex. A);
- Hemet Police Department's April 29, 2022 Booking Records regarding Barnhill (MSJ Ex. D);
- Officer Maynard's Body Cam Footage (BWC) dated April 29, 2022, pertaining to the subject incident (Ex. M);
- Officer Bishop's Body Cam Footage (BWC) dated April 29, 2022, pertaining to the subject incident (Ex. N);
- Officer Aguila's Body Cam Footage (BWC) dated April 29, 2022, pertaining to the subject incident (Ex. O);
- Relevant Excerpts of Hemet Police Department Policy Manual related to Use of Force Policy in place at the time of the incident (Ex. Q);
- Relevant excerpts of Riverside University Health Systems Medical Center records of Plaintiff Henry Barnhill obtained pursuant to subpoena (Ex. R);
- Training Profile for Douglas Klinzing from Hemet Police Department (Ex. S);
- Training Profile for Brett Maynard from Hemet Police Department (Ex. T);
- Training Profile for Joshua Bishop from Hemet Police Department (Ex. U); and
- Training Profile for Pedro Aguila from Hemet Police Department (Ex. V).

On January 19, 2026, Barnhill filed an opposition to the MSJ. ("MSJ Opposition," Dkt. No. 52.) In addition, Barnhill filed the following documents in support of the MSJ Opposition:

- Barnhill's Statement of Genuine Disputes of Material Fact ("PSGD," Dkt. No. 52-1);
- Barnhill's Additional Material Facts ("PSMF," Dkt. No. 52-2);
- Declaration of Marcel F. Sincich ("Sincich Declaration," Dkt. No. 52-3);
- Declaration of Ryan O'Connor ("O'Connor Declaration," Dkt. No. 52-18);
- Declaration of Roger Clark ("Clark Declaration," Dkt. No. 52-19)

- Barnhill's Objections to Defendants' Evidence in Support of the MSJ ("Pl. Evid. Obj.," Dkt. No. 52-20).

On January 26, 2026, Defendants filed a reply in support of the MSJ. ("MSJ Reply," Dkt. No. 54). In support of the MSJ Reply, Defendants filed the following:

- Defendants' Objections to Barnhill's Evidence in Support of the MSJ Opposition ("Defs. Evid. Obj.," Dkt. No. 54-1);
- Defendants' Reply to Barnhill's PSMF ("PSMF Reply," Dkt. No. 54-2); and
- Defendants' Reply to Barnhill's Statement of Genuine Disputes of Material Fact ("RSUF," Dkt. No. 54-3).

On the same date, Defendants filed the O'Connor MTE and the Clark MTE. In support of the O'Connor MTE, Defendants filed:

- Excerpts from O'Connor's Deposition (O'Connor MTE, Ex. A, Dkt. No. 55-1)
- Barnhill's Medical Records from Riverside University Health System (O'Connor MTE, Ex. B, Dkt. No. 55-2); and
- County of Riverside Health Care Records concerning Barnhill (O'Connor MTE, Ex. C, Dkt. No. 55-3).

In support of the Clark MTE, Defendants filed Excerpts from Clark's Deposition (Clark MTE, Ex. A).

## II. EVIDENTIARY OBJECTIONS & MOTIONS TO EXCLUDE EXPERT TESTIMONY & OPINIONS

### A. Evidentiary Objections[1]

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." <u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 773 (9th Cir. 2002); <u>see</u> Fed. R. Civ. Proc. 56(e). At the summary judgment stage, district courts consider evidence with *content* that would be admissible at trial, even if the *form* of the evidence would not be admissible at trial. <u>See, e.g.</u>, <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003).

//

---

[1] "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are therefore "redundant" and unnecessary to consider here. <u>Burch v. Regents of Univ. of California</u>, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").

### 1.  Barnhill's Objections

Barnhill objects to the following Exhibits filed by Defendants: (1) Exhibit A, Hemet Police Department's Audio Recordings detailing a 911 Dispatch Call from Barnhill's girlfriend from 4/29/2022; (2) Exhibit D, Hemet Police Department's April 29, 2022 Booking Records regarding Barnhill; (3) Exhibits J, K, and L, crime incident and use of force reports filed by Officer Maynard, Officer Bishop, and Officer Aguila; (4) Exhibit P, Barnhill's criminal case report.  (See Pl. Evid. Obj.)  Barnhill relies on FRE 401, 402, 403, 404, and 801 and primarily argues this evidence should not be considered in evaluating the MSJ because the information contained therein was unknown to officers during the incident and therefore is irrelevant to Barnhill's claims for excessive force.  (Id.)  The Court **SUSTAINS** Barnhill's objections and agrees that the exhibits are not relevant to what the officers knew at the time of the incident in determining whether the officers' use of excessive force was reasonable, deliberately indifferent, or shocked the conscience, or was negligent.  See Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015).

### 2.  Defendants' Objections

Defendants object to the following exhibits filed by Barnhill: (1) Exhibit 5, Barnhill deposition; (2) Exhibits 8, 9, and 10, video screenshots; (3) Declaration of Roger Clark; Declaration of Dr. Ryan O'Connor.  (See Defs. Evid. Obj.)

With respect to the declarations of Barnhill's experts, Clark and Dr. O'Connor, the Court addresses Defendants' objections in Section II.B.1.,2., below.

With respect to the video screenshots, the Court does not rely on the video screenshots, and therefore the objection is **OVERRULED AS MOOT**.

Lastly, Defendants contend that during his deposition, Barnhill testified "that he has an altered, faulty, unreliable, and false memory".  (Defs. Evid. Obj. at 2.)  Specifically, at the time of the incident, Barnhill "did not know what happened and was piecing it together over the course of days."  (Id.)  Defendants argue that, based on Barnhill's memory issues, he should be deemed unavailable under Federal Rule of Evidence 804(a)(3).  The Court has reviewed the highlighted deposition testimony (Ex. F, at 52:23 - 53:20; 85:2–87:4, 92:4–92:19, 98:18–99:5) and finds that the potential holes or distortions in Barnhill's perception of the incident go to the weight of his testimony, not its admissibility.  Beitch v. Wheeler, No. CV-15-00872-VBF-GJS, 2017 WL 4221101, at *5 (C.D. Cal. July 18, 2017), report and recommendation adopted, No. LACV-15-000872-VBF-GJS, 2017 WL 4217236 (C.D. Cal. Sept. 21, 2017) ("The fact that perceptions are sparse or shallow goes to the weight of the testimony, not its admissibility."); see also U.S. v. Evans, 484 F.2d 1178, 1181 (2d Cir. 1973) ("[I]t has long been established that 'the result of the witness' observation need not be positive or absolute certainty . . . it suffices if he had an opportunity of personal observation and did get some impressions from this observation'") (quoting 2 Wigmore, Evidence § 658 (3d ed. 1940)).  Therefore, Defendants' objection to Exhibit 5 is **OVERRULED**.

---

### B.  Motions to Exclude

Federal Rule of Evidence 702 ("FRE 702") allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if four conditions are met: (a) the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue"; (b) "the testimony is based on sufficient facts or data"; (c) "the testimony is the product of reliable principles and methods"; and (d) "the expert has reliably applied the principles and methods to the facts of the case."  FRE 702(a)-(d).

The trial court is accorded wide discretion to act as gatekeepers for the admissibility of expert testimony.  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 151–52 (1999).  A court may consider several factors to determine the reliability of an expert's opinion, including whether a theory or technique has been tested, has been subjected to peer review and publication, has a high known or potential rate of error, and "enjoys 'general acceptance' within a 'relevant scientific community.'"  Id. at 149–50 (quoting Daubert v. Merrell Dow Pharm., 509 U.S. 579, 592–94 (1993)).  "The party offering the expert bears the burden of establishing that Rule 702 is satisfied."  Sundance Image Tech., Inc. v. Cone Editions Press, Ltd., 2007 WL 935703, *4 (S.D. Cal. Mar. 7, 2007).  FRE 702 should be applied in accordance with the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion testimony.'"  Daubert, 509 U.S. at 588.

#### 1.  O'Connor MTE

Defendants seek to exclude the opinions of Barnhill's medical expert, Dr. O'Connor, regarding his conclusions that the incident resulted in Barnhill sustaining certain injuries. (O'Connor MTE at 5-7.)  In opposition, Barnhill argues that Dr. O'Connor is qualified to opine on Barnhill's injuries as he is a 20-year attending ER physician who is board-certified and completed several clinical rotations in neurology, ophthalmology, biomechanics, general surgery, and traumatic medicine, among others, and holds a Master of Science in criminalistics with education in crime scene reconstruction.  (O'Connor MTE Opp'n at 6–10.)

Defendants base their arguments on the fact that (1) Dr. O'Connor is an ER doctor, rather than a specialist in ophthalmology; (2) Dr. O'Connor relied more heavily on the officers' statements as opposed to the video evidence; and (3) Dr. O'Connor failed to take into consideration all of Barnhill's medical history.  (Id.)  However, given Dr. O'Connor's education, credentials, and experience, Defendants' concerns speak to the weight, rather than admissibility under FRE 702 and Daubert.  See Primiano v. Cook, 598 F.3d 558, 564–65 (9th Cir. 2010) ("When an expert meets the threshold established by Rule 702 as explained in Daubert, the expert may testify and the jury decides how much weight to give that testimony."); see also Calloway v. Contra Costa Cnty. Jail Correctional Officers, No. C 01-2689 SBA, 2007 WL 134581, at *16 (N.D. Cal. Jan. 16, 2007), aff'd, 243 Fed. Appx. 320 (9th Cir. 2007) (unpublished) ("[A] medical expert . . . is entitled to review documents for the purpose of informing his medical opinion[.]").  Therefore, Defendants' O'Connor MTE is **DENIED**.

---

## 2. Clark MTE

Defendants seek to exclude opinions by Barnhill's police practices expert Roger Clark regarding his "conclusions of law regarding the use of force by Officers, standards within the City of Hemet and Hemet Police Department, Officers' mental and emotional states and intentions, determinations of what the videos taken from Officer body cameras, and all other conclusions and opinions because of Clark's flawed methodology that leaves out important information found in the footage and is admittedly impermissibly intertwined with Plaintiff's Counsel's opinions." (Clark MTE at 7.)

To the extent Clark makes legal conclusions, such as the officers used unreasonable, excessive force during the incident, Defendants' Clark MTE is **GRANTED**. See Valtierra v. City of Los Angeles, 99 F. Supp. 3d 1190, 1198 (C.D. Cal. 2015) (discussing that such opinions are "not helpful to the jury because they constitute impermissible legal conclusions"). But where Clark's testimony is limited to whether the officers' conduct was consistent with California Peace Officer Standards and Training ("POST") on the use of force, Defendants' Clark MTE is **DENIED**. See Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir. 2005) (holding that a jury could rely on expert testimony as to whether police conduct comported with POST standards). This includes determinations made based on Clark's review of the video evidence, which demonstrate how Barnhill was responding, and are relevant to whether the officers' conduct comported with POST standards in light of Barnhill's conduct. With respect to Clark opining on the officers' intent and emotions and the medical cause of Barnhill's injuries, Defendants' Clark MTE is **GRANTED**. See Lanard Toys Ltd. v. Anker Play Prod., LLC, No. CV 19-4350, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind."); see also Clark MTE, Ex. A at 17 (stating Clark is not a medical doctor).

## III. FACTS

Except as noted, the following material facts are sufficiently supported by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for purposes of the Motion. See Fed. R. Civ. P. 56(e)(2); L.R. 56-4.

On April 29, 2022, at approximately 7:36 a.m., Defendant Officer Brett Maynard ("Officer Maynard") responded to a dispatch call at the elementary school.[2] (RSUF ¶ 6.) The

---

[2] It is unclear what was said on the dispatch call, as it was not produced as evidence for the MSJ. It is uncontested that Officers Maynard and Bishop did not have any background on Barnhill aside from what was relayed on the dispatch call. (PAMF ¶ 162.) However, in addition to the lack of clarity about what was said on the dispatch call, it also appears that officers received information from various sources. For example, Officer Maynard stated in his deposition that he received information that Barnhill had threatened his girlfriend with a gun the night before from the dispatch call. (See Ex. G at 17:13–21.) But Officer Bishop, who reported to the scene

allegations on the call warranted an investigation, rather than a call for a crime in progress. (PAMF ¶ 90.)  Officer Mayard saw a black 2019 Dodge Challenger that matched the vehicle description given in the dispatch call.  (RSUF ¶ 7.)  Along with Officer Maynard, Defendants Officers Joshua Bishop ("Officer Bishop") and Pedro Aguila ("Officer Aguila") arrived at the scene.  (RSUF ¶ 9; PAMF ¶ 91.)  The windows were "very tinted," so Officer Maynard did not clearly see Barnhill in the vehicle.  (Ex. G at 22: 11.)  Officers Maynard, Bishop, and Aguila then set up behind the vehicle with their police cars, which had the lights on.  (Id. at 22: 16–20.)  At that time, Officers Maynard, Bishop, and Aguila began issuing commands to the vehicle's driver, Barnhill.  (Id.)  According to Barnhill, he was in the vehicle on his phone when he saw in the mirror someone with a gun approaching his car.  (Ex. 5 at 74:1–7.)  At that point, Barnhill "took off," commencing a car chase.  (Id.; PAMF ¶ 95; RSUF ¶ 15; Ex. M at 00:30–00:35.)

The pursuit lasted approximately two minutes.  (PAMF ¶ 95.)  During the pursuit, Officers Maynard, Bishop, and Aguila utilized their lights and sirens.  (RSUF ¶ 15.)  While driving, Barnhill was scared and "does not recall" seeing police cars behind him.  (Ex. 5 at 85: 2–21.)  The pursuit ended when Barnhill arrived at his house, exited the vehicle, and ran to the front porch, where he finally made physical contact with the officers.  (PAMF ¶ 95; RSUF ¶¶ 17–18.)  As Barnhill approached his house, Officers Maynard, Bishop, and Aguila exited their vehicles with guns drawn, and Officer Maynard repeatedly stated, "Show us your hands!"  (Ex. M at 2:35–47.)  As Officer Maynard ran toward Barnhill, he appeared to be attempting to get into his house, with his hands on the doorknob.  (Id. at 2:46.)

Officer Maynard made physical contact with Barnhill, pushing him into a patio chair, and demanding that Barnhill get on the ground.[3]  (Id. 2:47–50.)  Officer Aguila then approached Officer Maynard and Barnhill, while Officer Bishop stood back with a taser.  (Ex. N at 2:51–53.)  Officer Maynard was to Barnhill's right, while Officer Aguila was to his left, grasping Barnhill's left arm.  (Id.)  Officer Bishop then yelled "taser, taser," prompting Officer Aguila to step back, but both he and Officer Maynard continued to hold Barnhill's stretched out arms in the air while Officer Bishop deployed the taser.  (Id. at 2:53–56.)  Officer Maynard continued holding Barnhill's arm with his left hand, and then used his right hand, in a closed fist, to strike Barnhill in the face.  (Ex. M at 2:52–54.)  Barnhill then ducks his head, trying to block another punch from Officer Maynard.  (Id.)

The taser made contact with Barnhill, landing on his shorts, prompting Barnhill to scream.  (Ex. N at 2:53–56.)  Officers Maynard and Aguila continue grasping Barnhill's arms and hands, forcing him out of the patio chair and onto the ground.  (Id. at 2:57–3:00.)  At this point, Barnhill is on his stomach, face on the ground, yelling, "I'm on the ground!"  (Id.)  Officer

---

concurrently with Officer Maynard, stated he learned that information from Detective Corporal Andrew Reynoso.  (See Ex. H at 28:23–25, 29:1–7.)

[3] Officer Maynard attests that Barnhill kneed him in the chest as Barnhill landed in the chair.  (RSUF ¶ 28.)  Based on the review of the video evidence is unclear if Barnhill intended to knee Officer Maynard, or if it was a reaction to being pushed into the patio chair and trying to protect himself.  (See Ex. M at 2:47–50.)

Aguila has Barnhill's left arm behind his back, and Officer Maynard attempts to move Barnhill's right arm behind his back, but the positioning of Officer Aguila makes that difficult, given that he is over Barnhill, with his right elbow pressing into Barnhill's upper right arm, while holding Barnhill's left arm. (Id. at 3:00–03.) Barnhill starts yelling repeatedly, "I'm not refusing," while Officer Maynard repositions himself and hits Barnhill in the face with his right knee and then grabs the back of Barnhill's neck. (Ex. O at 2:45–47.) Officer Bishop approaches, situating himself between Officers Maynard and Aguila, and pulls Barnhill's hood back, and proceeds to hit Barnhill in the head twice with the taser. (Id. at 2:48–50; Ex. N at 3:11–15.) Officer Aguila then punches Barnhill eight times on his side. (Ex. O at 2:50–55.) One or more officers continue to yell, "Hands behind your back," to which Barnhill responds, "They're behind my back!" (Ex. O at 2:50–2:55.)

Defendant Sergeant Douglas Klinzing ("Sergeant Klinzing") arrives at the scene, directing the officers to get Barnhill's hands and crouching down between Officers Maynard and Aguila. (Ex. O at 2:54–57.) Officers then confirm they have his hands, with Officer Maynard and Sergeant Klinzing holding Barnhill's right hand, while Officer Aguila holds his left. (Id. at 2:57–3:02.) After officers confirm they have Barnhill's hands, Officer Bishop pulls Barnhill's head back and slams it into the concrete, resulting in a splatter of blood on the ground. (Ex. N. at 3:20–25.) Sergeant Klinzing then comments that Barnhill is "stiff" and then instructs Officers Maynard and Aguila to use two sets of handcuffs to account for Barnhill's inability to stretch his hands behind his back further. (Ex. O. 3:00–24.)

Officer Aguila then pats down Barnhill, who states he doesn't have anything, which Officer Aguila confirms. (Id. at 3:35–57.) Sergeant Klinzing and Officer Aguila then sit Barnhill up, whose face is covered in blood. (Id. at 4:00–4:05.) An ambulance was called for Barnhill. (Id. at 5:35–40.) As a result of this incident, Barnhill sustained the following injuries: "an avulsion to the left ear meaning the top portion of the ear was almost entirely detached; a closed blow out fracture to the orbit that required surgery and reconstruction and resulted in [Barnhill] receiving screws in his face, extensive suturing; permanent loss of peripheral vision; and check and lip numbness likely due to nerve damage." (O'Connor Declaration ¶ 4; PAMF ¶ 175.)

## IV. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Id. at 325.

Instead, the moving party need only prove there is an absence of evidence to support the non-moving party's case. Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The moving party must show that "under the governing law, there can be but one reasonable

---

conclusion as to the verdict." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). It is not the court's task to scour the record in search of a genuine issue of triable fact. <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996). The non-moving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. <u>Id.</u> If the non-moving party fails to make this showing, then "[t]he moving party is entitled to a judgment as a matter of law." <u>Celotex</u>, 477 U.S. at 323.

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the nonmoving party based on the record taken as a whole. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## V.   DISCUSSION

Defendants move for summary judgment on Barnhill's seven causes of action: (1) unreasonable search and seizure, excessive force in violation of 42 U.S.C. § 1983 (against Officers Maynard, Bishop, Aguila, and Sergeant Klinzing, and Does 1–6 ); (2) municipal liability for unconstitutional custom, practice, or policy in violation of 42 U.S.C. § 1983 (against Defendants City of Hemet, Jamie Gonzalez, Catherine Tipton, and Does 7–10); (3) municipal liability for failure to train in violation of 42 U.S.C. § 1983 (against Defendants City of Hemet, Jamie Gonzalez, Catherine Tipton, and Does 7–10); (4) municipal liability for ratification in violation of 42 U.S.C. § 1983 (against Defendants City of Hemet, Jamie Gonzalez, Catherine Tipton, and Does 7–10); (5) battery (against all Defendants); (6) negligence (against all Defendants); and (7) violation of the Bane Act, Cal. Civ. Code § 52.1 (against all Defendants). (<u>See</u> MSJ.) Defendants also seek summary judgment on Barnhill's claim for punitive damages. (<u>Id.</u> at 23.)

### A.   Claims against Defendants Jamie Gonzalez and Catherine Tipton

The Court notes that not one fact in the RSUF or PAMF pertains to Jamie Gonzalez or Catherine Tipton. (<u>See</u> RSUF, PAMF.) Accordingly, the Court is persuaded that there is no genuine dispute as to any material fact and Jamie Gonzalez and Catherine Tipton are entitled to judgment as a matter of law on Claims Two through Seven. <u>See</u> <u>Anderson</u>, 477 U.S. 250. Therefore, the Court **GRANTS** Defendants' MSJ Motion as to Claims Two, Three, Four, Five, Six, and Seven against Jamie Gonzalez and Catherine Tipton.

### B.   Claim One: Unreasonable Search and Seizure – Excessive Force

Barnhill argues Officers Maynard, Bishop, Aguila, and Sergeant Klinzing "used force and deadly force" against him, which was unreasonable in light of Barnhill not being a threat or even attempting to evade arrest. (MSJ Opp'n at 14–21.) Defendants argue the force applied was reasonable in light of the circumstances. (MSJ at 10–14.)

Qualified immunity protects government officials "from liability or civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Courts generally apply a two-pronged test: whether "(1) the facts alleged, taken in the light most favorable to the party asserting injury, show that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood her conduct to be unlawful in that situation." Torres v. City of Madera, 648 F.3d 1119, 1123 (9th Cir. 2011) (citing Saucier v. Katz, 533 U.S. 194, 201–02 (2001)). If both prongs are met, the officer will be denied qualified immunity. Id.

### 1.  Constitutional Violation

The Court first considers whether the facts, taken in the light most favorable to Barnhill, show that the officer's conduct violated a constitutional right. See Saucier, 533 U.S. at 201. Barnhill's excessive force claim is properly analyzed under the Fourth Amendment's "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989); see also Tennessee v. Garner, 471 U.S. 1, 7 (1985) ("[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment."). "The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." A.K.H. ex rel. Landeros v. City of Tustin, 837 F.3d 1005, 1010 (9th Cir. 2016) (quoting Graham, 490 U.S. at 397). A court "appl[ies] Graham by first considering the nature and quality of the alleged intrusion; [and] then consider[s] the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir. 2011) (en banc). These factors are not exhaustive. S.R. Nehad v. Browder, 929 F.3d 1125, 1137 (9th Cir. 2019).

### a.  Nature and Quality of Intrusion

Taken in the light most favorable to Barnhill, the evidence shows that Officer Maynard pushed Barnhill into a patio chair, punched Barnhill in the face, and struck Barnhill in the face with his knee. (Ex. M at 2:47–54; Ex. O at 2:45–47.) Officer Bishop tased Barnhill; hit Barnhill in the head twice with a taser; slammed Barnhill's face into the ground, resulting in a splatter of blood, after Officers Maynard and Aguila and Sergeant Klinzing had completely restrained Barnhill. (Ex. N at 2:53–56; Ex. O at 2:48–50; Ex. N at 3:11–15.) Officer Aguila punched Barnhill eight times. (Ex. O at 2:50–55; Ex. N. at 3:20–25.) Barnhill experienced these various hits and blows in the span of three minutes. (PAMF ¶ 88.) And his face was covered in blood. (Ex. O. at 4:00–4:05.) The nature and quality of the intrusion on Barnhill's Fourth Amendment interests was "severe." See Santos v. Gates, 287 F.3d 846, 853–54 (9th Cir. 2002), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009) (holding that force was severe where a plaintiff suffered injury that caused "pain" or "immobility," or that "endured for a significant period of time"); Young v. Cnty. of Los Angeles, 655 F.3d 1156, 1161 (9th Cir. 2011) (holding that

---

"forms of force capable of inflicting significant pain and causing serious injury," like pepper spray and baton blows, constitute "intermediate force").

Defendants describe these forms of force as "objectively reasonable" to detain Barnhill because Barnhill's "suspected and observable crimes are patently severe." (MSJ at 10–11.) Defendants premise this argument that the officers knew Barnhill was suspected of felony assault with a firearm and criminal threats. (Id. at 12.) But this assertion is not supported by the record. It is uncontested that Officers Maynard and Bishop did not have any background on Barnhill aside from what was relayed on the dispatch call. (PAMF ¶ 162.) However, as discussed above, it is unclear what was said on the dispatch call, as it was not produced as evidence in support of the MSJ. What the officers knew is further muddled by seemingly conflicting deposition testimony: Officer Maynard stated he received the information from the dispatch call, but Officer Bishop, who arrived on the scene at the same time, stated he received it from Detective Corporal Andrew Reynoso. (See Ex. G at 17:13–21; Ex. H at 28:23–25, 29:1–7.) Thus, based on the evidence, the Court can only conclude that the officers responded to a dispatch call at an elementary school and knew that Barnhill was in a car that matched the provided description. (RSUF ¶¶ 6, 7.) With respect to Barnhill's alleged "observable crime," Defendants reference Barnhill driving away from them when they approached his car at the school. (MSJ at 11.) However, Barnhill states that all he saw was a person with a gun approaching, which made him take off, and that he did not recall seeing police cars behind him as he drove home. (Ex. 5 at 74:1–7, 85:2–21.) Although it may be hard to believe Barnhill's claim that he did not see three police cars in tow, the Court must view the evidence in the light most favorable to Barnhill and accepts his version of events.

To constitute "deadly force," the force used by the officers must "create[] a substantial risk of causing death or serious bodily injury." Smith, 394 F.3d at 706. Strikes to the head can become deadly force in some circumstances if employed in a manner that creates a substantial risk of death or serious bodily injury. See Seidner v. de Vries, 39 F.4th 591, 597 (9th Cir. 2022) ("[P]hysical contact like hitting and shoving must be quantified based on the circumstances of the situation."); Garlick v. Cty. of Kern, 167 F.Supp. 3d 1117, 1147 (E.D. Cal. 2016) (internal citation omitted) ("A reasonable jury could conclude that the alleged baton blows to the head constitute deadly force."); see also Williamson v. City of Nat'l City, 23 F.4th 1146, 1152 (9th Cir. 2022) (stating that the "the nature and degree of physical contact" and the "risk of harm and the actual harm experienced" are relevant to whether the use of a certain type of force was reasonable). Here, Barnhill asserts that "everything went black" whenever he was hit. (PAMF ¶ 173.) Barnhill also presents expert opinion evidence that he suffered the following injuries: "an avulsion to the left ear meaning the top portion of the ear was almost entirely detached; a closed blow out fracture to the orbit that required surgery and reconstruction and resulted in [Barnhill] receiving screws in his face, extensive suturing; permanent loss of peripheral vision; and check and lip numbness likely due to nerve damage." (O'Connor Declaration ¶ 4.) Based on the foregoing, the Court finds that a reasonable jury could find Officers Maynard, Aguila, and Bishop deployed severe or deadly force.

//

The same cannot be said for Sergeant Klinzing, who arrived at the tail end of the incident and only applied force by holding Barnhill's hand and helping the officers with handcuffing Barnhill. (Ex. O at 2:54–57.) Barnhill points to no evidence that a reasonable jury could conclude he engaged in unreasonable use of force. Therefore, the Court **GRANTS** Defendants' MSJ as to Claim One against Sergeant Klinzing.[4]

### b. Governmental Interests

### i. Severity of the Crime

First, the severity of the crime is difficult to weigh in this instance because, as discussed, it is unclear what crime Barnhill was suspected of, if any, during this incident. The Ninth Circuit has applied this factor in two ways. S.R. Nehad v. Browder, 929 F.3d 1125, 1136 (9th Cir. 2019). First, "a particular use of force would be more reasonable, all other things being equal, when applied against a felony suspect than when applied against a person suspected of only a misdemeanor." Id. Second, the "severity of the crime at issue" serves "as a proxy for the danger a suspect poses at the time force is applied." S.R. Nehad, 929 F.3d at 1136. Even so, to the extent that the officers suspected Barnhill of engaging in domestic violence, risks to officers responding to domestic violence calls are "less salient 'when the domestic dispute is seemingly over by the time the officers begin their investigation.'" George v. Morris, 736 F.3d 829, 839 (9th Cir. 2013). Thus, when the suspect is separated from the alleged victim of a crime, as Barnhill was here, "the nature of the crime at issue provides little, if any, basis for the officers' use of physical force." Smith, 394 F.3d at 702–03. Moreover, the dispatch call was to investigate the situation, not to report a crime in progress. (PAMF ¶¶ 89, 90.) As such, the Court finds that the nature of the crime at issue was not severe and weighs against the use of force.

### ii. Resisting Arrest or Flight

The resisting arrest factor weighs in favor of Barnhill. "[T]he crux of [the second] Graham factor is compliance with the officers' requests, or refusal to comply." Mattos v. Agarano, 661 F.3d 433, 450 (9th Cir. 2011). Courts "draw a distinction between a failure to facilitate an arrest and active resistance to arrest." Id. "[A] failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force." Nelson v. City of Davis, 685 F.3d 867, 881 (9th Cir. 2012). Defendants argue that Barnhill attempted to escape into his house and resisted arrest. (MSJ at 13.) Barnhill contends he was not resisting, as depicted on the video evidence, or

---

[4] Because Barnhill's Fifth, Sixth, and Seventh claims against Sergeant Klinzing are premised on his alleged unreasonable force, those claims necessarily fail. See Morales v. City and Cnty. of San Francisco, 603 F. Supp. 3d 841, 851 (N.D. Cal. 2022) ("As such, without excessive force, all of the state claims fail."). Likewise, Barnhill's request for punitive damages also fails. Therefore, the Court **GRANTS** Defendants' MSJ as to Claims Five, Six, and Seven and punitive damages against Sergeant Klinzing.

---

attempting to evade arrest.  (MSJ Opp'n at 20; see also Ex. O at 2:45–47 (hearing Barnhill yell
"I'm not refusing").)

It is undisputed that during the applications of force, Barnhill was on the ground, with
three officers over him, and that the officers consistently restrained his hands.  (See Exs. M, N,
O.)  Nonetheless, Officer Maynard stated Barnhill kneed him in the chest at the start of the
interaction.  (RSUF ¶ 28.)  Officers Maynard, Bishop, and Aguila also claim that Barnhill was
taller and heavier than they were, so their combined strength and use of force was necessary.
(MSJ at 13–14.)  Based on the video evidence (see Exs. M, N, O), it is not clear to what extent, if
any, Barnhill was resisting.  As such, whether Officers Maynard, Bishop, and Aguila genuinely
struggled to subdue a resisting Barnhill is a credibility determination that a jury should make.
Moreover, a reasonable jury could conclude that Officer Bishop used excessive force when he
slammed Barnhill's face into the ground, resulting in a splatter of blood, even though at that time,
Officers Maynard and Aguila had confirmed control over Barnhill's hands.  (Ex. N. at 3:20–25.)

Further, given the numerous applications of force in rapid succession, any purported
resistance on Barnhill's part could be viewed as reasonable.  See Blankenhorn v. City of Orange,
485 F.3d 463, 478–80 (9th Cir. 2007) (a reasonable jury could find that the plaintiff acted within
his "limited right to offer reasonable resistance to an arrest" when he "struggled" with officers
after being gang-tackled and "tried to stay on his feet while [the] officers wrestled with him");
Ballew v. City of Pasadena, 642 F.Supp.3d 1146, 1182–83 (C.D. Cal. 2022) (a reasonable jury
could find officers' provocative conduct gave rise to limited resistance based on plaintiff's
assertion that officer struck him with baton even though plaintiff complied with the officers'
orders); Clark v. Cnty. of Los Angeles, No. CV 20-304-DMG (MRWx), 2021 WL 6882325, *6
(C.D. Cal. Dec. 13, 2021) (a reasonable jury could find plaintiff exercised reasonable resistance
when he "arched his back and thrashed his legs in an attempt to get out from under" the officer
after the officer "pushed him to the ground swiftly").

As such, drawing all inferences in the light most favorable to Barnhill, he was not
resisting arrest or attempting to evade the officers, and was subject to unreasonable force under
the circumstances.

### iii.    Immediate Threat

Of the three Graham factors, the "most important" is whether the suspect posed an
immediate threat to the safety of the officers or the public.  Est. of Strickland v. Nevada Cnty.,
69 F.4th 614, 620 (9th Cir. 2023) (quoting Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir.
2010)).  To determine "whether there was an immediate threat, a 'simple statement by an officer
that he fears for his safety or the safety of others is not enough; there must be objective factors to
justify such a concern.'"  Mattos, 661 F.3d at 441–42 (quoting Deorle v. Rutherford, 272 F.3d
1272, 1281 (9th Cir. 2001)).  In the deadly force context, a court cannot "simply accept what may
be a self-serving account by the police officer."  Scott v. Henrich, 39 F.3d 912, 915 (9th Cir.
1994).  "The judge must carefully examine all the evidence in the record . . . to determine
whether the officer's story is internally consistent and consistent with other known facts.'"  Cruz

---

v. City of Anaheim, 765 F.3d 1076, 1079 (9th Cir. 2014) (quoting Scott, 39 F.3d at 915).  This
includes "circumstantial evidence that, if believed, would tend to discredit the police officer's
story."  Id. (quoting Scott, 39 F.3d at 915).

In an attempt to assert that Barnhill was a threat, Defendants argue that "Defendant
Officers were informed that Plaintiff was armed the previous night and was possibly armed that
day[,] which they learned of while making chase as Plaintiff evaded arrest."  (MSJ at 12.)  Once
again, the evidence does not make it clear that Officers Maynard, Bishop, and Aguila knew that
Barnhill was "possibly armed".  Further, "[t]he record does not reveal any basis for believing
that [Barnhill] was armed or that he posed an immediate threat to anyone's safety."  Smith, 384
F.3d at 702.  Barnhill did not make any threats, nor did he have any weapons.  Officer Maynard,
however, stated Barnhill kneed him in the chest at the start of the interaction.  (RSUF ¶ 28.)
Based on the review of the video evidence, it is unclear if Barnhill intended to knee Officer
Maynard, or if it was a reaction to being pushed into the patio chair and trying to protect himself.
(See Ex. M at 2:47–50.)  "Although [Barnhill] continued to move somewhat on the ground, he
was [facedown, restrained] and surrounded by multiple officers, [such that] a jury could
reasonably conclude that he was no longer providing any serious resistance and that 'he posed
only a minimal threat to anyone's safety.'"  Spencer v. Pew, 117 F.4th 1130, 1144 (9th Cir. 2024).
Accordingly, the Court finds that, viewing the evidence in the light most favorable to Barnhill, a
reasonable jury could conclude that he did not pose an immediate threat to the safety of Officers
Maynard, Bishop, or Aguila.

### c.  Other Factors

"Other factors, in addition to the three Graham factors, may be pertinent in deciding
whether a use of force was reasonable under the totality of the circumstances."  S.R. Nehad, 929
F.3d at 1137.  Here, Barnhill argues that Defendants "ignored less-intrusive alternatives and
failed to give warnings."  (MSJ Opp'n at 19.)

First, "[w]hether an officer warned a suspect that failure to comply with the officer's
commands would result in the use of force is another relevant factor in an excessive force
analysis."  S.R. Nehad, 929 F.3d at 1137.   "Appropriate warnings comport with actual police
practice."  Deorle v. Rutherford, 272 F.3d 1272, 1284 (9th Cir. 2001).  "[A]n officer must give a
warning before using deadly force 'whenever practical.'"  Gonzalez v. City of Anaheim, 747 F.3d
789, 794 (9th Cir. 2014).  Second, "[t]he availability of alternative methods of capturing or
subduing a suspect" is a relevant factor.  Chew v. Gates, 27 F.3d 1432, 1440 n.5 (9th Cir. 1994).
"Police need not employ the least intrusive means available; they need only act within the range
of reasonable conduct."  S.R. Nehad, 929 F.3d at 1138.  Here, the video evidence clearly shows
that no officer issued any warning before using force.  (See Exs. M, N, O.)  Officers Maynard,
Bishop, and Aguila ordered Barnhill to put his hands up, then put them behind his back.  (Id.)
Throughout the encounter, Barnhill complied and attempted to comply while also responding to
the multiple assaults on his body.  (Id.)  Furthermore, Barnhill presents evidence in the form of a
police practices expert, Roger Clark, who opines that due to the nature of the call and
circumstances, "in accordance with basic officer training, the Defendant Officers failed to

attempt to de-escalate the situation . . . failed to give Mr. Barnhill a warning prior to using such extreme force[.]" (Clark Decl. ¶ 9.)  Rather than try to rebut Barnhill's argument, Defendants assert that just because an officer "theoretically" could have used a less intrusive method, it does not automatically render the force unreasonable.  (MSJ at 13.)  Thus, the Court finds that Barnhill raises a triable issue wherein a reasonable jury could find that giving a warning was practical and less-intrusive methods could have been utilized in light of Barnhill's conduct.

### d.  Balancing Interests

Under the totality of the circumstances, the Court "cannot say a verdict in favor of the defendants on the claim for excessive force is the only conclusion that a reasonable jury could reach."  Gonzalez, 747 F.3d at 797.  Because a reasonable jury, viewing the evidence in the light most favorable to Barnhill, could find that Officers Maynard, Bishop, and Aguila violated Barnhill's Fourth Amendment rights, summary judgment is not appropriate on this basis.  Id. ("[The Ninth Circuit has] held that summary judgment should be granted sparingly in excessive force cases.").

### 2.  Clearly Established Law

The Court next applies the second Saucier prong to determine whether Officers Maynard, Bishop, and Aguila are entitled to qualified immunity.  Defendants contend that they are entitled to qualified immunity because they did not violate Barnhill's rights.  (MSJ at 15–17.)

Qualified immunity generally protects government officials so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Baker v. Racansky, 887 F.2d 183, 186 (9th Cir. 1989).  To determine if an officer is entitled to qualified immunity, a two-step test is employed.  "[F]irst, we decide whether the officer violated a plaintiff's constitutional right; if the answer to that inquiry is 'yes,' we proceed to determine whether the constitutional right was 'clearly established in light of the specific context of the case' at the time of the events in question."  Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011) (quoting Robinson v. York, 566 F.3d 817, 821 (9th Cir. 2009)).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  Pearson v. Callahan, 555 U.S. 223, 236 (2009).

For law enforcement officers to violate a "clearly established" right, "[t]he contours of the right must be sufficiently clear that a reasonable [officer] would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The clearly established law must be "particularized" to the facts of the case.  White v. Pauly, 137 S. Ct. 548, 552 (2017).  Section 1983 plaintiffs need not point to circumstances where "the very action in question has previously been held unlawful."  Anderson, 483 U.S. at 640.  "[O]fficials can still be on notice that their conduct violates clearly established law even in novel factual circumstances."  Hope v. Pelzer, 536 U.S. 730, 741 (2002); see also Deorle v. Rutherford, 272 F.3d 1272, 1285 (9th Cir. 2001) ("[N]otwithstanding the absence of direct precedent, the law may be, as it was here,

clearly established."). However, prior cases tend to show "the light of pre-existing law," which might make unlawfulness apparent. <u>Anderson</u>, 483 U.S. at 640. "[T]he salient question … is whether the state of the law [at the time of the incident] gave [officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." <u>Hope</u>, 536 U.S. at 741.

Defendants assert that the officers "could not have known" their actions would violate Barnhill's rights. (MSJ at 16.) However, the Court determines that "existing precedent . . . place[s] the lawfulness of the particular [action] beyond debate." <u>City of Escondido, Cal. v. Emmons</u>, 586 U.S. 38, 44 (2019) (citing <u>D.C. v. Wesby</u>, 583 U.S. 48, 64 (2018)). Since 2001, it has been clearly established that the use of significant force against an individual who does not pose an imminent threat or risk of flight, or who is not actively resisting arrest, violates the Fourth Amendment. See <u>Young v. Cnty. of Los Angeles</u>, 655 F.3d 1156, 1168 (9th Cir. 2011). Several cases support the clear establishment of the right to be free from being struck by a police officer while complying with orders, restrained, not attempting to evade, and posing no threat. See <u>Cheairs v. City of Seattle</u>, 145 F.4th 1233, 1246 (9th Cir. 2025) ("We observed that it is rarely, if ever, necessary 'for a police officer to employ substantial force without warning against an individual who . . . is not resisting arrest, and, most important, does not pose any apparent threat to officer or public safety.'") (quoting <u>Young</u>, 655 F.3d at 1167).

Moreover, "[t]he determination of whether a reasonable officer could have believed his conduct was lawful is a determination of law that can be decided on summary judgment only if the material facts are undisputed." <u>LaLonde v. County of Riverside</u>, 204 F.3d 947, 953 (9th Cir. 2000); <u>see also</u> <u>Glenn</u>, 673 F.3d at 870 (the resolution of material factual disputes "is critical to a proper determination of the officers' entitlement to qualified immunity"). Thus, where "there is a material dispute as to the facts regarding what the officer or [Barnhill] actually did, the case must proceed to trial, before a jury if requested." (<u>Id.</u>)

Therefore, the Court **DENIES** Defendants' MSJ Motion as to Claim One against Officers Maynard, Bishop, and Aguila.

## C.  Claim Two, Three, and Four: Municipal Liability

### 1.  Unconstitutional Policy

Under <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978), municipalities are subject to damages under Section 1983 in three situations: when the plaintiff was injured pursuant to (1) an express municipal policy, such as an ordinance, regulation, or policy statement; (2) a "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law"; or (3) the decision of a person with "final policymaking authority." See <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 123, 127 (1988) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167–68 (1970)); <u>see also</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481–83 (1986). When plaintiffs seek municipal liability based on an unofficially adopted practice or custom, the practice or custom "may not be predicated on isolated or sporadic incidents." <u>Trvenio v. Gates</u>, 99 F.3d

911, 918 (9th Cir. 1996). Instead, "it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Id. "While there is no per se rule for the amount of unconstitutional incidents required to establish custom under Monell, 'one or two incidents ordinarily cannot establish a … custom, while more incidents may permit the inference of a [custom], taking into account their similarity, their timing, and subsequent actions by the municipality.'" Wettstein v. County of Riverside, 2020 WL 2199005, at *5 (C.D. Cal. Jan. 22, 2020) (quoting J.M. by & through Rodriguez v. County of Stanislaus, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018)).

Based on the MSJ Opposition, it appears Barnhill has abandoned this claim because it is not addressed. Ramirez v. City of Buena Park, 560 F.3d 1012, 1026 (9th Cir. 2009) (affirming district court's grant of summary judgment on claims a party fails to address in his opposition to the motion for summary judgment). Further, Barnhill presents no evidence of widespread wrongdoing amounting to an adopted custom or practice. Thus, Defendant City of Hemet is entitled to summary judgment on Barnhill's Second Claim. Therefore, the Court **GRANTS** Defendants' MSJ as to Claim Two.

### 2. Failure to Train

To state a claim for failure to train or supervise under Monell, Barnhill must establish "that (1) [he was] deprived of a constitutional right, (2) the County had a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom its [deputies] are likely to come into contact; and (3) [his] constitutional injury would have been avoided had the [City] properly trained those [officers]." C.B. v. Moreno Valley Unified Sch. Dist., --- F. Supp. 3d ---, 2021 WL 2644101, at *11 (C.D. Cal. June 17, 2021) (citing Blankenhorn, 485 F.3d at 484). A city's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 407 (1997). "[T]he existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved . . . is the 'moving force' behind the plaintiff's injury." Id. (citing City of Canton v. Harris, 489 U.S. 378, 390–91 (1989)). "A county's failure adequately to train its employees to implement a facially valid policy can amount to deliberate indifference." Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1188 (9th Cir. 2006). "Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." Oviatt by and through Waugh v. Pierce, 954 F.2d 1470, 1478 (9th Cir. 1992).

To the extent that Barnhill argues that the use of force inflicted on him violated basic POST training, it is insufficient. (PAMF ¶ 216.) Failure-to-train liability requires more than an officer's failure to abide by training. "The issue is the adequacy of [the] training." Davis v. Mason Cnty., 927 F.2d 1473, 1483 (9th Cir. 1991), superseded by statute on other grounds as recognized in, Davis v. City and Cnty. of San Francisco, 976 F.2d 1536 (9th Cir. 1992). Barnhill fails to submit any evidence that raises the inference of "a program-wide inadequacy in

---

training." Alexander v. City and Cnty. of San Francisco, 29 F.3d 1355, 1367 (9th Cir. 1994), abrogated on other grounds by Cnty. of Los Angeles v. Mendez, 137 S. Ct. 1539 (2017). Further, Barnhill's argument rests on an impermissible conclusion reached by his expert, Clark. (See Section II.B.2.) Therefore, the Court **GRANTS** Defendants' MSJ as to Claim Three against Defendant City of Hemet.

### 3. Ratification

"A municipality . . . can be held liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions. Christie v. Iopa, 176 F.3d 1231, 1238 (9th Cir. 1999). "Ordinarily, ratification is a question for the jury," but "as with any jury question, a plaintiff must establish that there is a genuine issue of material fact regarding whether a ratification occurred." Id. To show ratification, Barnhill must prove that a subordinate committed an unconstitutional act; that the authorized policymakers knew of the alleged constitutional violation; and that "the authorized policymakers approve[d] a subordinate's decision and the basis for it." See id. (citations omitted). A "policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval." Id.

Barnhill argues that "[d]espite conducting an investigation, the City ratified the officers' conduct and chose not to discipline or retrain the officers and made no changes to their policies or training." (MSJ Opp'n at 28.) But a mere failure to discipline a subordinate does not amount to ratification. Sheehan v. City & Cnty. of San Francisco, 743 F.3d 1211, 1231 (9th Cir. 2014), reversed in part on other grounds, 135 S. Ct. 1765 (2015). Barnhill's ratification claim also fails because he fails to identify who the policymaker is, let alone whether that individual had knowledge of the constitutional violation or how they may have approved it. Barnhill thus fails to establish "that there is a genuine issue of material fact regarding whether a ratification occurred." Christie, 176 F.3d at 1238. Therefore, the Court **GRANTS** Defendants' MSJ as to Claim Four against Defendant City of Hemet.

## D. Claim Five: Battery

Defendants only argue that Barnhill's battery claim fails because Officers Maynard, Bishop, and Aguila acted in an objectively reasonable manner. (MSJ at 17.) The Court's finding that a reasonable jury may conclude otherwise repudiates this position. Therefore, for the reasons noted above, the Court **DENIES** Defendants' MSJ as to Claim Five.

## E. Claim Six: Negligence

"The elements of a negligence cause of action are: (1) a legal duty to use due care; (2) a breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care." Brown v. Ransweiler, 171 Cal. App. 4th 516, 534 (2009).

//

---

Again, Defendants argue that Barnhill's negligence claim fails because the officers' use of force was objectively reasonable.  (MSJ at 17.)  But, as discussed above, a reasonable jury may conclude from the evidence that the officers' force was excessive in violation of Barnhill's Fourth Amendment right.  See, e.g., Vos v. City of Newport Beach, 892 F.3d 1024, 1037–38 (9th Cir. 2018) ("Because the district court erred in holding that use of deadly force was objectively reasonable under the Fourth Amendment, we reverse its summary judgment of the [Plaintiffs'] negligence[, assault, battery, and California Civil Code § 52.1] claim[s].").

Defendants also assert they are immune from liability for their "discretionary conduct" under Section 820.2 of the California Government Code.  (MSJ at 18.)  "But it has long been established that this provision does not apply to officers who use unreasonable force in making an arrest."  Blankenhorn, 485 F.3d at 487.  Accordingly, the Court concludes that summary judgment is not appropriate on this basis.  Therefore, for the reasons noted above, the Court **DENIES** Defendants' MSJ as to Claim Six.

## F.  Claim Seven: Bane Act

To prevail on a Bane Act claim, Barnhill must establish that "(1) [Defendants] violated [his] Fourth Amendment rights to be free from unreasonable seizures and excessive force, and that (2) the violations were carried out with specific intent to deprive [Barnhill] of those rights."  Rodriguez v. Cnty. of Los Angeles, 654 F. Supp. 3d 1029, 1053 (C.D. Cal. 2023).  "Specific intent turns on (1) the right at issue being 'clearly delineated and plainly applicable under the circumstances of the case,'" and (2) the officer "commit[ting] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right."  Sandoval v. Cnty. of Sonoma, 912 F.3d 509, 520 (9th Cir. 2018) (quoting Cornell v. City & Cnty. of San Francisco, 17 Cal. App. 5th 766, 800–02 (2017), as modified (Nov. 17, 2017)); see also S.R. Nehad, 929 F.3d at 1142 n.15 ("Although Bane Act claims do require the specific intent to deprive a person of constitutional rights, such intent can be proven by evidence of recklessness.").

Defendants argue that summary judgment is warranted because the officers did not use excessive force.  (MSJ at 18.)  But, as discussed above, a reasonable jury may conclude from the evidence that the officers' force was excessive in violation of Barnhill's Fourth Amendment right.  Moreover, viewing the evidence in the light most favorable to Barnhill, a jury could conclude that Officers Maynard, Bishop, and Aguila acted in reckless disregard for Barnhill's rights to be free from unreasonable use of force while handcuffed, compliant, on the ground, and posing no threat.  Accordingly, whether Defendants acted with "specific intent for a Bane Act claim is a question that is 'properly reserved for the trier of fact.'"  Chinaryan v. City of Los Angeles, 113 F.4th 888, 907 (9th Cir. 2024) (quoting Hughes v. Rodriguez, 31 F.4th 1211, 1224 (9th Cir. 2022)).  Therefore, for the reasons noted above, the Court **DENIES** Defendants' MSJ as to Claim Seven.

//

### G.  Punitive Damages

Defendants also seek summary judgment on Barnhill's claim for punitive damages.  (MSJ at 23.)  Defendants argue there is no evidence that Defendants acted with evil motive or intent, or reckless or callous indifference toward Barnhill in exercising force.  (Id.)  Indeed, punitive damages are not available for Section 1983 claims filed against municipalities based on the actions of their officials.  See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 524 (9th Cir. 1999).  Therefore, **GRANTS** the MSJ Motion as to Defendant the City of Hemet.

However, because a punitive damages claim applies the same "reckless disregard" standard required for the Bane Act claim, the Court again finds that genuine disputes of material fact preclude summary judgment here.  Whether Barnhill is entitled to punitive damages is a question for the jury.  Egan v. Mut. of Omaha Ins. Co., 24 Cal. 3d 809, 821 (1979) ("Determinations related to assessment of punitive damages have traditionally been left to the discretion of the jury.").  Therefore, the Court **DENIES** Defendants' MSJ as to Officers Maynard, Bishop, and Aguila.

## VI.  CONCLUSION

For the reasons discussed above, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the MSJ and Clark MTE and **DENIES** the O'Connor MTE.  Further, the Court **VACATES** the June 8, 2026 hearing.

**IT IS SO ORDERED.**